UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons,<br><br>                    Plaintiff<br><br>          v.<br><br>SABA UNIVERSITY SCHOOL OF MEDICINE; and R3 EDUCATION, INC.,<br><br>                    Defendants. | Civil Action No.: 1:23-cv-12002-WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Saba University School of Medicine and R3 Education, Inc. submit this

Memorandum in support of their Motion to Dismiss Plaintiff's class action Complaint.  Although

Saba and R3 are separate legal entities – R3 is the corporation that owns the medical school,

Compl., Dkt. 1, ¶ 13 – they are referred to collectively as "Saba" for purposes of this Motion.

**INTRODUCTION**

Saba University School of Medicine is located on the island of Saba in the Caribbean.

Compl. (Dkt. 1), ¶¶ 12, 19.  It is accredited by Nederlands-Vlaamse Accreditatieorganisatie, *id*.,

¶ 22, and is qualified to participate in federal financial aid programs under Title IV of the Higher

Education Act.  *Id*. ¶33.

Plaintiff enrolled at Saba on June 29, 2019.[1]  She attended the first five semesters of

instruction, which make up the "Basic Sciences Curriculum."  *Id*.  ¶ 94.  In order successfully to

complete the Basic Sciences Curriculum and proceed to the final five semesters of clinical

---

[1] A copy of Plaintiff's June 29, 2019 "Letter of Intent to Enroll and Tuition Deposit Form" is attached as **Exhibit A**.  This enrollment document is integral to Plaintiff's claims and thus is proper for the Court to consider, as further set forth below.

education, students must pass the capstone course Foundations of Clinical Medicine, which requires them to pass a comprehensive basic sciences examination ("Comp Exam").  *Id*. ¶¶ 53, 54, 88.

A student also must pass the Comp Exam before Saba will qualify them to sit for the USMLE Step 1 examination – the first of several USMLE exams that are required for licensure as a physician in the United States.  *Id*. ¶¶ 87-88.  Plaintiff failed in three attempts to pass the Comp Exam.  *Id*. ¶¶ 95-96.  Accordingly, pursuant to Saba's policies on satisfactory academic progress, she was dismissed from the program.  *Id*. ¶ 96.

When Plaintiff was deciding where to attend medical school, she allegedly reviewed and relied upon statements by Saba that its students had a first-time pass rate on the USMLE Step 1 exam of 98-100%.  *Id*. ¶¶ 57, 68-76.  In order for Saba to maintain its eligibility to participate in federal financial aid programs, Saba students must have an annual pass rate of at least 75% on each part of the USMLE.  *Id.* ¶ 86 & n.52.  The first-time pass rate for the USMLE is calculated according to federal requirements and is simply the number of Saba students who pass the Step 1 exam on their first attempt divided by the total number of Saba students making that first attempt.  *Id*.; *see* 34 C.F.R. § 600.55(f)(1)(ii); 34 C.F.R. § 600.55(d)(1)(iii)(2023).

Plaintiff alleges that Saba's statements about its first-time pass rates on USMLE Step 1 were misleading by omission because Saba failed to disclose that a significant percentage of its students never reach the point of sitting for the USMLE Step 1 exam.  Compl. ¶¶ 78, 82.  She further alleges that Saba maintains its high first-time pass rates by using the Comp Exam to "cull out" weaker students and prevent them from taking the Step 1 exam, and that "[t]he existence of this internal Saba pretest is not disclosed to potential students in Saba's advertising and

promotional materials, nor is it clearly set out in its course catalog or during the first semesters of [a student's] education." *Id*. ¶¶ 87-92.

Plaintiff alleges that by not disclosing its attrition rate along with the first-time pass rate for USMLE Step 1 and by not disclosing the Comp Exam requirement for taking USMLE Step 1, Saba engaged in unfair and deceptive acts or practices in violation of the Massachusetts consumer protection statute, Chapter 93A (Count I); engaged in untrue, deceptive, and misleading advertising in violation of Massachusetts General Laws Chapter 266, § 91 (Count II); and was unjustly enriched (Count III). Plaintiff claims she was harmed by paying tuition and fees to Saba, for which she seeks recovery in this case along with injunctive relief. *Id*., ¶¶ 10, 85, 125, 132, 137, *Prayer for Relief*, ¶ 4.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must "disregard conclusory allegations that merely parrot the relevant legal standard" and "then inquire whether the remaining factual allegations state a plausible, rather than merely possible, assertion of defendants' liability." *Dumont v. Reily Foods Co.,* 934 F.3d 35, 39-40 (1st Cir. 2019) (*citing Young v. Wells Fargo Bank, N.A*., 717 F.3d 224, 231 (1st Cir. 2013)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In ruling on a motion to dismiss, the Court may consider not only documents attached to the complaint but also documents to which the complaint refers and documents that otherwise

3

are "integral" to the plaintiff's claim.  *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008); *Beddall v. State St. Bank & Trust Co*., 137 F.3d 12, 17 (1st Cir. 1998). When such a document contradicts an allegation in the complaint, the document trumps the allegation.  *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co*., 228 F.3d 24, 32 (1st Cir. 2000) (*citing Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)); *see also Young*, 717 F.3d at 232-33; *Henning v. Wachovia Mortg., FSB*, 969 F. Supp. 2d 135, 147 (D. Mass. 2013).

ARGUMENT

## I.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER CHAPTER 93A.

### A.     Plaintiff Has Not Plausibly Alleged an Unfair or Deceptive Act or Practice.

Plaintiff alleges that Saba violated Chapter 93A because it failed to disclose two things – (1) along with the first-time pass rate for USMLE Step 1, the percentage of students who never reach the point of taking the Step 1 exam, and (2) the fact that in order to take the Step 1 exam, students first must pass the Comp Exam that is part of the capstone course Foundations of Clinical Medicine.  Neither aspect of the claim is plausible.

#### 1.     The first-time pass rate for USMLE Step 1

Plaintiff's claim in relation to the first-time pass rate fails because the only statement Saba made was true:  Saba's statements about its first-time pass rates were made in accordance with federal requirements and are accurate.  True statements like this cannot be unfair or deceptive under Section 93A.  *Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 374 (2009); *see Ortiz v. Examworks, Inc*., 470 Mass. 784, 794 (2015).

Saba made no statement at all about the percentage of students who reach Step 1.  Such a "pure omission," in FTC parlance – "a subject upon which the [defendant] has simply said

nothing, in circumstances that do not give any particular meaning to [its] silence" – also is not deceptive under Chapter 93A.  *See In re International Harvester Co.*, 104 F.T.C. 949, 1059 (1984); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60 (1st Cir. 2020).

An advertisement is deceptive only "when it has the capacity to mislead consumers, ***acting reasonably under the circumstances***, to act differently from the way they otherwise would have acted …." *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 396 (2004) (emphasis added); *see also Edlow v. RBW, LLC*, 688 F.3d 26, 39 (1st Cir. 2012) (applying standard from *Aspinall*).  This standard "depends on the likely reaction of a ***reasonable consumer*.*"  *Aspinall*, 442 Mass. at 395 (emphasis added).  The "reasonable consumer" in relation to Saba's promotional materials is highly educated and intelligent – someone who is qualified to attend medical school.  Such a person would understand that the pass rate for an exam refers only to those persons who take the exam; they would not understand the pass rate to include any representation about those persons who, for whatever reason, never take the exam.  And such a person would understand that not every medical student who enrolls will successfully complete the Basic Sciences Curriculum and thus reach the point of taking the Step 1 exam.

Plaintiff's Complaint confirms this.  She knew that medical students "take the USMLE Step 1 [only] after they complete their basic science courses." *Id.*, ¶ 54.  She conducted "online research" about the school and requested information about its curriculum and academic programs. *Id.*, ¶ 68.  That information, as further discussed in subsection 2 just below, makes clear that only students who successfully complete the Basic Science Curriculum go on to take the Step 1 exam.

The fact that medical schools including Saba have some degree of attrition, and thus not all medical students will sit for the Step 1 exam is both self-evident and easily ascertained.

Ample information is available online about attrition rates of medical schools generally[2] and Caribbean medical schools specifically, including Saba.[3]

Simply put, a reasonable consumer could not have inferred from Saba's statements about its first-time pass rates that all or virtually all students who enroll at Saba will take the USMLE Step 1 test.

Moreover, insofar as Plaintiff alleges that Saba's statements amounted to "false assurances of success," *id.*, ¶ 3, "false guarantees of passing" the USMLE, *id.* ¶ 4, or false statements that students "are near certain to succeed," *id.*, ¶ 9, any such statements are not actionable under Chapter 93A. Putting aside the fact that Saba made no such guarantees, any such statements would be in the nature of "a prediction about the future," which cannot support a claim of fraud for allegedly concealing "past or present conditions." *Cohen v. State St. Bank & Tr. Co.*, 72 Mass. App. Ct. 627, 631 (2008) (*citing Stolzoff v. Waste Sys. Intl., Inc.*, 58 Mass. App. Ct. 747, 759 (2003)).

### 2. The Comp Exam requirement

The Complaint makes plain that Plaintiff knew or should have known before she enrolled that Saba students must take and pass what she describes as the "pre-test" for the USMLE Step 1 exam. This "pre-test" serves as the final exam in the course "Foundations of Clinical Medicine,"

---

[2] See, e.g., https://medschoolinsiders.com/pre-med/medical-school-dropout-rates/ (noting overall medical school graduation rate after four years ranges from 81.7% to 84.1%).

[3] See, e.g., https://willpeachmd.com/how-hard-is-it-to-get-into-saba-medical-school (noting approximate 35% attrition rate at Saba); https://medschooltips.com/best-caribbean-medical-schools/ (noting attrition/dropout rates at Caribbean medicals schools, including Saba); https://www.internationalstudent.com/study_caribbean/comparing-schools/ (noting attrition rates at Caribbean medicals schools); https://doctorscrossing.com/caribbean-medical-schools-whats-the-scoop/ (noting attrition rates of up to 40% at Caribbean medicals schools).

also known as MED 918 – the final class in the five-semester Basic Sciences Curriculum, which

Plaintiff describes in her Complaint. *Id.*, ¶ 24. It is listed in the Course Catalog, which Plaintiff

cites repeatedly in her Complaint,[4] – and information about it is available on the Saba website,

which Plaintiff researched while considering medical schools, *id.*, ¶ 68:

- The Saba website contains a prominent section describing the "Basic Sciences Curriculum," which contains a full description of the course Foundations of Clinical Medicine – including the Comp Exam. https://web.archive.org/web/20170813233241/http://saba.edu/academics/basic-sciences-curriculum (archived Aug. 13, 2017).

- The website contains another section devoted entirely to "USMLE Step 1 Exam Prep," which further describes the course and says, "At the end of the course, you are administered a full-length simulated comprehensive exam. https://web.archive.org/web/20170826132846/http://www.saba.edu/academics/basic-sciences-curriculum/usmle-step-1-exam-prep (archived Aug. 13, 2017).

- The Course Catalog similarly discloses that "[a]t the end of the course students are administered a full-length, simulated comprehensive exam." *Catalog* at 28 (https://www.saba.edu/media/1855/saba-catalog.pdf).

- Saba's *Program of Medicine* for 2018-2020, specifies that completing "the 5th semester successfully, including passing the 'Comp [Exam],' is a requirement for both completing the fifth semester and taking the USMLE Step 1 exam. *Program*, at 33 (https://www.saba.edu/media/1812/saba_oer.pdf).

Plaintiff also references Saba's Student Consumer Information in her Complaint, Compl.,

¶¶ 25-28 & nn.15-17. That information says that a Saba medical student must "maintain

satisfactory academic performance," meet "all graduation requirements specified in the catalog,"

and may be dismissed from the program if they "fail to maintain sufficient academic progress."

https://web.archive.org/web/20170720220311/http://saba.edu/images/Saba_Student_Consumer_I

nformation.pdf (archived July 20, 2017). The Student Consumer Information also says that "a

student must have successfully completed 100% of the total number of credit hours required to

---

[4] Compl. ¶¶ 12 n.5, 20 n.12, 47, 48 n.24, 92.

complete the basic science portion of the curriculum" by "the end of her time in the Basic Sciences Curriculum." *Id*.

Based on all this readily available information, a "reasonable consumer" in Plaintiff's shoes should know that she would not take the USMLE Step 1 Exam until she successfully completed the "Basic Sciences Curriculum," including passing the Comp Exam. *See Gomez-Jimenez v. New York L. Sch.*, 943 N.Y.S.2d 834, 853-54 (Sup. Ct.), *aff'd*, 956 N.Y.S.2d 54 (2012) (allowing motion to dismiss plaintiffs' claims they were misled by statements in law school's marketing materials; as prospective law students, plaintiffs "had ample opportunity to discover their realistic post-graduation employment prospects by consulting the many sources of information they cite in their complaint"); *Casey v. Fla. Coastal Sc. of L., Inc.*, No. 3:14-CV-1229-J-39PDB, 2015 WL 10096084, at *15 (M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, No. 3:14-CV-01229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015) (a person considering law school "is college-educated and may be reasonably expected to perform some due diligence that goes beyond glancing at a for-profit enterprise's self-serving numbers before plunging into substantial debt"); *see also Bevelacqua v. Brooklyn L. Sc.*, 975 N.Y.S.2d 365 (Sup. Ct. 2013) ("plaintiffs' decision to enroll and remain in school, predicated solely, as they allege, on the strength of a bare-bones employment statistic, was unreasonable under the circumstances").

### B.    The 93A Claim Also is Untimely.

Assuming for the sake of argument that Plaintiff had pleaded a plausible 93A claim, it is barred by the statute of limitations in any event.

Federal courts sitting in diversity apply the substantive law of the state, including the applicable limitations period and when the cause of action accrues. *Quality Cleaning Prod. R.C.,*

*Inc. v. SCA Tissue North America, LLC*, 794 F. 3d 200, 204 (1st Cir. 2015).  The limitations

period for a Chapter 93A claim is four years from the time the claim accrues.  Mass. Gen. L. c.

260, § 5A.  The claim accrues "at the time injury results from the assertedly unfair or deceptive

acts."  *Cambridge Plating Co. v. Napco, Inc*., 991 F.2d 21, 25 (1st Cir. 1993); *George v.*

*Stonebridge Mortg. Co., LLC,* 988 F. Supp. 2d 142, 150-51 (D. Mass. 2013) (collecting

authorities).

      Plaintiff's 93A claim accrued no later than June 29, 2019 – the date on which she

enrolled and began to pay tuition and fees to Saba.  *See supra* n.1.  Those are the only injuries

she claims in this case.  Compl., ¶¶ 10, 85, 125, 132, 137, *Prayer for Relief*, ¶ 4.  The claim thus

is barred because it accrued more than four years before the Complaint was filed on August 30,

2023.  Dkt. 1.

      Plaintiff may argue her claims are saved by the "discovery rule," claiming it was not until

after she enrolled that she learned Saba's publications about the first-time Step 1 pass rate were

(in her view) deceptive and learned of the Comp Exam requirement.  Any such argument will

have no merit.

      The discovery rule "operates to toll a limitations period until a prospective plaintiff learns

or should have learned that he has been injured," but only in three circumstances: "where a

misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a

wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a

cause of action through some affirmative act done with the intent to deceive." *Loguidice v.*

*Metro. Life Ins. Co*., 336 F.3d 1, 6 (1st Cir. 2003) (quoting *Patsos v. First Albany Corp*., 433

Mass. 323, 328 (2001)).  Plaintiff alleges no such facts.  Nor could she.  As discussed above,

none of the information on which Plaintiffs' claims are based was "inherently unknowable" to

her at the time she decided to enroll.  Massachusetts courts hold plaintiffs seeking to invoke the

discovery rule to a high standard – rejecting such arguments where, for example, a plaintiff has

failed to read monthly statements sent by their securities broker or information relating to their

insurance policies.  *Loguidice*, 336 F.3d at 7 (collecting authorities).  Similarly in this case,

Plaintiff was obligated to read the material available to her on Saba's website, which she claims

to have researched in connection with her decision to enroll, and other information readily

available to her online.  Plaintiff makes no allegation that Saba endeavored to conceal any of this

information from her, nor does she allege a basis for any duty on the part of Saba to disclose

more information than it did.

  Because the 93A claim is time-barred, it may be dismissed on this basis alone.

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER CHAPTER 266.

### A. The Complaint Fails Plausibly to Allege Any False Advertising.

  Chapter 266, § 91 prohibits the publication, dissemination, or circulation of

advertisements containing "any assertion, representation or statement of fact which is untrue,

deceptive or misleading."  A "plaintiff must plead this claim with specificity, as it falls within the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *Blake v. Pro. Coin*

*Grading Serv.*, 898 F. Supp. 2d 365, 395 (D. Mass. 2012) (citing *Martin v. Mead Johnson*

*Nutrition Co.,* No. 09-11609-NMG, 2010 WL 3928707, at *4 (D. Mass. Sept. 30, 2010)).

  Where, as in this case, a complaint fails to state a claim under Chapter 93A, courts

routinely find the complaint fails to state a claim under c. 266, § 91 for the same reasons.  *See,*

*e.g. Bernstein v. Conopco, Inc.*, No. 3:21-CV-10160-KAR, 2022 WL 2161149, at *5 (D. Mass.

June 15, 2022), *appeal dismissed*, No. 22-1519, 2022 WL 20275196 (1st Cir. Dec. 30, 2022);

*Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 116 (D. Mass. 2022), *appeal dismissed*, No. 22-1255, 2022 WL 4844337 (1st Cir. July 18, 2022) (same).

Such is the fate of Plaintiff's claim under c. 266, § 91.  Like her 93A claim, it fails because the statements Saba made were true and all of the information Plaintiff now claims she did not know was readily available to her.

The claim fails for an additional reason.  The statute provides no private right of action for damages, *Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998), and Plaintiff lacks standing to pursue the injunctive relief that she seeks – enjoining Saba "from continuing to misrepresent Saba's USMLE passage rate, Compl., *Request for Relief*, ¶ 3, and enjoining Defendants from collecting on any private loans or other tuition payment plans of Plaintiff or members of the [putative] Class."  *Id.*, *Request for Relief,* ¶ 7.  Plaintiff lacks standing to seek injunctive relief because – having been dismissed from Saba – she understandably does not allege that she is likely to re-enroll in the future.  Plaintiff also does not allege that she took out any private loans from Saba or entered any tuition payment plan.  Where, as here, a "plaintiff is under no threat whatsoever of future injury, [s]he cannot maintain a claim for injunctive relief." *Derby v. Jos A. Bank Clothiers, Inc.,* 2014 WL 7361023, at *7-8 (D. Mass. 2014); *see also O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 466–67 (D. Mass. 2018), *on reconsideration*, 370 F. Supp. 3d 204 (D. Mass. 2019).

### B.  The Claim Also is Untimely.

Assuming for the sake of argument that Plaintiff alleged a plausible claim under the statute, the claim is time-barred in any event.

The limitations period for Plaintiff's claim is three years, because the claim sounds in tort and no other applicable limitations period applies.  Mass. Gen. L. c. 260, § 2A.  Alternatively, the claim has a four-year limitations period pursuant to Mass. Gen. L. c. 260, § 5A, which applies to statutory claims intended to protect consumer.  Either way, the claim is untimely.

The claim accrued on June 29, 2019, when Plaintiff first suffered the injury for which she seeks relief – the payment of tuition and fees – because a claim which sounds in tort accrues at the time of injury.  *Town of Sturbridge v. Mobil Corp.*, 195 F. Supp. 2d 330, 335 (D. Mass. 2002).  The "gist" of Plaintiff's deceptive advertising claim is in tort, not contract, because the claim depends entirely on the information she reviewed before she decided to enroll.  Where, as in this case, the claim arises from alleged actions that occurred "during" the formation of a contractual relationship, the claim sounds in tort, not in contract, even if a contract eventually was formed.  *See Loguidice*, 336 F.3d at 6 (the "alleged breaches of legal duties here, having been committed by the defendants prior to the formation of any agreement, are essentially tortious … they are not properly regarded as contractual in 'gist.'").

The discovery rule is inapplicable to this claim for the same reasons it is inapplicable to the 93A claim.  Thus, because the claim was filed more than four years after June 29, 2019, it is untimely and may be dismissed for this reason alone.

## III.     THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

### A.     The Claim Fails Because Plaintiff Has an Adequate Remedy at Law.

A party "with an adequate remedy at law cannot claim unjust enrichment."  *Shaulis v. Nordstrom, Inc.,* 865 F.3d 1, 16 (1st Cir. 2017) (collecting authorities).  Plaintiff's assertion of claims under Chapter 93A and Chapter 266 thus precludes her claim for unjust enrichment, whether those statutory claims ultimately are viable or not.  *Fernandes v. Havkin*, 731 F. Supp.

2d 103, 114 (D. Mass. 2010).  It is "the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment."  *Shaulis*, 865 F. 3d at 16, *citing Reed v. Zipcar, Inc*., 883 F. Supp. 2d 329, 334 (D. Mass. 2012).

### B.     The Claim Also is Untimely.

Assuming it were viable, the claim is untimely in any event.  The limitations period for an unjust enrichment claim is three years because the claim sounds in tort and no other limitations period applies.  Mass. Gen. L. c. 260, § 2A.  The "statute of limitations applicable to unjust enrichment depends upon the 'essential nature of plaintiff's claim.'" *Epstein v. C.R. Bard, Inc*., No. 03–12297–RWZ, 2004 WL 1598912, at *3 (D. Mass. July 19, 2004) (citing *Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir. 1967)), *aff'd*, 460 F.3d 183 (1st Cir. 2006); *see Sacks v. Dissinger*, 488 Mass. 780, 791 n.14 (2021) (presuming that limitations period for unjust enrichment claim based on tortious conduct is three years).  Plaintiff alleges that she "would not have paid" the tuition and fees "if [Saba] had provided truthful or accurate information regarding the USMLE Step 1 pass rate."  Compl., ¶ 140.  Her unjust enrichment claim depends solely on the advertisements she reviewed before she decided to enroll, like her earlier claims.  Because those claims arose "during" the formation of a contractual relationship, the claim sounds in tort. *See Loguidice,* 336 F.3d at 6.

The unjust enrichment thus accrued by June 29, 2019, and expired on June 30, 2022, well before the Complaint was filed.

## CONCLUSION

Defendants Saba and R3 respectfully request that the Court allow their Motion to Dismiss, dismiss the Complaint with prejudice, and award such other and further relief as the Court finds just and appropriate.

November 3, 2023

SABA UNIVERSITY SCHOOL OF
MEDICINE, and R3 EDUCATION, INC.,

*/s/ Daryl J. Lapp*
Daryl J. Lapp, BBO # 554980
daryl.lapp@lockelord.com
Elizabeth H. Kelly, BBO # 672277
liz.kelly@lockelord.com
LOCKE LORD, LLP
111 Huntington Avenue, 9th Floor
Boston, MA  02199
617.239.0100

Dale A. Evans, Jr., (*pro hac vice pending*)
dale.evans@lockelord.com
LOCKE LORD, LLP
777 South Flagler Drive – East Tower Suite 215
West Palm Beach, FL  33401
561.820.0248

Michael J. McMorrow (*pro hac vice pending*)
michael.mcmorrow@lockelord.com
LOCKE LORD, LLP
111 S. Wacker Drive
Chicago, IL 60606
312.443.0246

## Certificate of Service

I certify that on November 3, 2023 this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

*/s/Daryl J. Lapp*
Daryl J. Lapp

14

135103412v.8