UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons,<br><br>       Plaintiff<br><br>    v.<br><br>SABA UNIVERSITY SCHOOL OF MEDICINE; and R3 EDUCATION, INC.,<br><br>       Defendants. | Civil Action No.: 1:23-cv-12002-WGY |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Saba University School of Medicine and R3 Education, Inc. submit this Reply Memorandum in support of their Motion to Dismiss Plaintiff's class action Complaint.[1]

Plaintiff's Opposition to the Motion to Dismiss ("Opposition" or "Opp.") does nothing to meaningfully counter any of the arguments raised in the Motion. It fails to demonstrate that Plaintiff has adequately pled a claim for relief under the Massachusetts consumer protection statute, Chapter 93A (Count I), or engaged in untrue, deceptive, and misleading advertising in violation of Massachusetts General Laws Chapter 266, § 91 (Count II), or was unjustly enriched (Count III). It fails to show that any of the claims was timely filed, and it fails to show that the limitations periods applicable to the claims were extended either by the discovery rule or by the Orders of the Massachusetts Supreme General Court ("SJC"). For the reasons set forth in the Motion and herein, all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6).

---

[1] Undefined capitalized terms used herein are the same as referenced in the Memorandum in Support of the Motion to Dismiss ("Motion" or "Mot.").

**ARGUMENT**

**I.      THE COMPLAINT FAILS TO STATE A CLAIM UNDER CHAPTER 93A.**

Plaintiff makes no attempt to address the fact that Saba's advertised passage rates on the

USMLE Step 1 Exam are true.  As discussed in the Motion, the advertised passage rates are both

accurate, and calculated in accordance with federal requirements[2] required for the same student

loans that Plaintiff used to fund her medical education.  Mot. at 4.  True statements cannot be

unfair or deceptive under Section 93A.  *Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 374 (2009);

*see Ortiz v. Examworks, Inc*., 470 Mass. 784, 794 (2015).  Plaintiff makes no attempt to address

this point.  On this basis alone, her claim under Section 93A should be dismissed.

Plaintiff complains that Saba "makes no argument" as to the truth of other statements

beyond the USMLE passage rate statistics.  Opp. At 7.  But the statement that "virtually every

Saba student passes the USMLE on their first attempt," is simply another way of stating the same

statistics that Saba demonstrates are true in its Motion.  Virtually every Saba student does pass

the USMLE on their first attempt.  Those who do not attempt the test are not included.  The other

statements that Plaintiff cites are similarly true or are not statements of fact, and thus are not

actionable under Section 93A.  *See Quinlan v. Clasby*, 71 Mass. App. Ct. 97, 102 (2008)

(liability under Section 93A "is premised on a willful misstatement of fact"); *Mayer v. Cohen-*

*Miles Ins. Agency, Inc*., 48 Mass. App. Ct. 435, 443 (2000) (requiring "nondisclosure of material

---

[2] Plaintiff's attempted disavowal of the statistics reported to the U.S. Department of Education and used in Saba's advertised USMLE passage rates as "irrelevant," *see* Opp. at 8, fails.  Plaintiff relied on those same statistics in her Complaint, *see* Compl. ¶ 86 & fn. 52 (defining USMLE passage rate as the "percent of the school's students and graduates who took that step/test of the examination [and] received a passing score on that step/test and are taking the step/test for the first time"), and the federal loans which funded her two years of medical education, *Id*. ¶85, were available to her only because Saba accurately reported that information to the Department of Education.

fact" under 93A and finding that the two-year suicide provision was not a fact which, if

disclosed, would have influenced [the insured] not to purchase term life insurance).[3]

Plaintiff quietly abandons part of her claim in her Opposition.  Buried in a footnote,

Plaintiff states that she "does not claim that failure to disclose the Comp Exam was itself a

Chapter 93A violation."  Opp. At 7, fn. 7.  This disavowal comes despite devoting an entire

section of her Complaint to the false claim that Saba failed to disclose the Comp Exam to

prospective students, and despite referencing the Comp Exam twelve times in the Complaint.

Considering the ample availability of information about that Comp Exam, which was

demonstrated in the Motion (Mot. at 6-8) and not mentioned in the Opposition, abandoning this

theory of liability is not surprising.

Abandoning this part of her claim does not save the rest, however.  The entire basis of

Plaintiff's claim that Saba's USMLE Step 1 passage rate statistics are misleading hinges on the

fact that the statistics do not include students who never sit for the test.  That does not render the

statistics misleading.  *See Gossels*, 453 Mass. at 372 (finding that bank's failure to inform

plaintiff, when accepting his check in euros, that his account would be credited in dollars, that he

would not receive provisional credit, or that banks were entitled to different exchange rates than

customers were all "bare nondisclosures" which do not trigger liability).  As discussed in the

Motion, Saba made no statement at all about the percentage of students who take the USMLE

Step 1 Exam.  Such a "pure omission," also is not deceptive under Chapter 93A.  Mot. at 4-5,

*citing In re International Harvester Co.*, 104 F.T.C. 949, 1059 (1984); *Tomasella v. Nestle USA,*

---

[3] The statement that Saba's USMLE passage rates are better than most U.S. based medical schools, which is also true, is irrelevant to Plaintiff's claim.  She does not allege that she saw the advertisements containing that assertion, and all of the advertisements referenced in the Complaint that make this statement were made after she failed out of Saba.  *See* Compl. ¶¶ 5, 58, 93.  They could not have deceived her.

*Inc.*, 962 F.3d 60 (1st Cir. 2020).

Plaintiff claims that the "pure omission" standard of *Tomasella* and *International Harvester* would apply only if "Saba had said nothing at all about its USMLE Step 1 passage rates," Opp. at 9, fn. 10, but the "pure omission" standard does not require silence as to any advertised fact, as these very cases demonstrate. As the First Circuit stated, the "allegation that Defendants did not correct at the point of sale Tomasella's 'false, pre-existing conception' that their chocolate products were completely free of the worst forms of child labor does not translate into deception liability." 962 F.3d at 74. Similarly here, Plaintiff cannot claim to be deceived by what Saba did not say.

Under Plaintiff's theory, there is simply no limit on what would have to be disclosed by Saba beyond the USMLE Step 1 Exam passage rate. It is easy to imagine further striation of passage rates based on MCAT scores, grade point averages, gender, marital status, age, or any other factor upon which Plaintiff would claim deception. *Tomasella* and *International Harvester* themselves make this point, stating that the:

> number of facts that may be material to consumers -- and on which they may have prior misconceptions -- is literally infinite. … Since the seller will have no way of knowing in advance which disclosure is important to any particular consumer, he will have to make complete disclosures to all … the resulting costs and burden on advertising communication would very possibly represent a net harm for consumers.

*Tomasella*, 962 F.3d at 73 (citing *International Harvester*, 104 F.T.C. at 1059-60). As in those cases, here there is no deception from the omission. Plaintiff's "false, pre-existing conception" that she would take, and pass, the USMLE Step 1 Exam by merely enrolling in medical school "does not translate into deception liability," as it did not in *Tomasella*. *See* 962 F.3d at 74.

Plaintiff's reliance upon *Aspinall v. Philip Morris Co.*, 813 N.E.2d 476 (Mass. 2004) for the notion that "half-truths" are actionable, Opp. at 8-9, is similarly misplaced. The *Tomasella*

decision demonstrates the error amply, stating that in *Aspinall*, the "plaintiffs alleged that a

cigarette company violated Chapter 93A by 'marketing ... Marlboro Lights as 'light' cigarettes

that deliver 'lowered tar and nicotine' despite having intentionally designed 'light' cigarettes to

deliver as much, if not more, tar and nicotine than regular cigarettes." 962 F.3d at 79 (citing

*Aspinall,* 813 N.E.2d at 479). Nothing of the sort is alleged here. In both *Tomasella* and in this

case, the "heart of the dispute at hand centers around whether Defendants' staying silent …

constitutes a deceptive act." *Id*.[4]

The other cases cited by Plaintiff similarly do not support her argument. Plaintiff devotes

an entire page to arguing *Dumont v. Reilly Foods*, 934 F. 3d 35 (1st Cir. 2019). *Dumont* dealt

with the question of whether it was deceptive to label a food product as containing an ingredient

it did not contain. The label for the product (coffee) indicated that it contained "hazelnut crème"

when it contained none. Nothing of the sort happened here. And Plaintiff's attempts to

analogize the facts of that case to this one are unavailing. Plaintiff suggests that the "fine print"

of the label in that case (which would reveal that there was no hazelnut in the coffee) is similar to

"warning students that only half of them would ever sit for the USMLE." Opp. at 10.

Grabbing a can of coffee off a grocery shelf while shopping bears no relation whatsoever

to choosing which medical school to attend. No "reasonable consumer of medical schools," as

plaintiff describes it (*see* Opp. at 7, fn. 8), would agree. Plaintiff herself lauds the months of

work she put into researching medical schools throughout her Complaint. The standard for

whether an advertisement is deceptive is whether it "has the capacity to mislead consumers,

---

[4] Without saying so, Plaintiff is arguing in favor of a theory of fraud by omission, which "requires both concealment of material information and a duty requiring disclosure." *Sahin v. Sahin*, 435 Mass. 396, 402 n.9 (2001). But Plaintiff neither pleads nor argues such a claim. Such a claim would fail, anyway. A university owes no fiduciary duty to students, *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 67 (1st Cir. 2020), so Saba had no duty to disclose any additional facts to Plaintiff, only to state what facts it did state truthfully.

5

***acting reasonably under the circumstances***, to act differently from the way they otherwise

would have acted," and this "depends on the likely reaction of a ***reasonable consumer.***"

*Aspinall*, 442 Mass. at 395 (emphasis added). The "reasonable consumer" in relation to Saba's

promotional materials is, as discussed in the Motion, highly educated and intelligent. Mot. at 5.

Any such person would understand that the pass rate for an exam refers only to those persons

who take the exam.  And such a person would understand that not every medical student who

enrolls will successfully complete the Basic Sciences Curriculum and thus reach the point of

taking the Step 1 exam.[5]

Plaintiff's Complaint confirms this.  She knew that medical students "take the USMLE

Step 1 [only] after they complete their basic science courses."  *Id*., ¶ 54.  She conducted "online

research" about the school and requested information about its curriculum and academic

programs.  *Id*., ¶ 68.  That information makes clear that only students who successfully complete

the Basic Science Curriculum go on to take the USMLE Step 1 Exam.  *See* Mot. at 6-8.

Plaintiff next argues that the (obvious) fact that not every person who enrolls at Saba

takes the USMLE exam is not a fact that could have been determined by her prior to enrolling.

Why Plaintiff makes this argument is confusing; she abandoned her claim about Saba's

disclosure of the requirement to pass the Comp Exam before taking the USMLE Step 1 Exam in

her Opposition.  *See* Opp. at 7, fn. 7 ("Ms. Ortiz does not claim that the failure to disclose the

Comp Exam was itself a Chapter 93A violation").  Moreover, she states plainly in her response

that no "reasonable consumer of medical schools" would simply accept at face value a medical

---

[5] It is also noteworthy that in choosing which statistics to use to show how many students sit for the USMLE Step 1 Exam, Plaintiff cites to statistics that end in 2019 for students at U.S. medical schools, Opp. at 4, but cites to statistics that include the pandemic years of 2020 and 2021 for Saba, during which time Saba's USMLE rate of students sitting for the USMLE dropped by more than half. *Id*.

school's claims about its USMLE Step 1 Exam passage rates.  Opp. at 7, n.7.  Her Complaint

makes the same point, alleging that "Caribbean medical schools provide students an alternative

pathway to becoming a doctor, typically admitting applicants with lower GPAs and MCAT

scores than their United States counterparts." Compl., ¶2.  No "reasonable consumer of medical

schools" could simply assume that every single student "with lower GPAs and MCAT scores"

who got into medical school would complete her education and sit for the USMLE Step 1 Exam.

Nonetheless, Plaintiff argues for *just* that proposal.  She claims that "reasonable

consumers" (reasonable medical school applicants) are "not required to read the fine print" or

"conduct their own research" before enrolling in a graduate program after which they expect to

become doctors.  Mot. at 11.  As discussed above, however, deciding which medical school to

attend is not the same process as grabbing a can of coffee at the grocery store.  And assuming

that you will be successful in medical school (or any school) simply because you were accepted

into it is nonsensical.

Plaintiff cites to cases which she claims make it a "factual determination" to "determine

whether the statements like those at issue here are true."  Opp. at 11, *citing Dumont*, 934 F.3d at

40, and *citing Munsell v. Colgate-Palmolive Co*., 463 F. Supp. 3d 43, 52 (D. Mass. 2020).  But

neither case has any bearing here, nor does either case deal with objectively true statements like

Saba's statements about its USMLE Step 1 Exam passage rate.  Both *Dumont* and *Munsell* deal

with statements that are objectively false.  In *Dumont*, as discussed above, the coffee claimed to

contain hazelnut crème when it contained none.  In *Munsell*, the seller's claim that its products

used only "natural" ingredients was false, as the products "each contain artificial, synthetic

and/or chemically processed ingredients, including xylitol, sodium lauryl, glycerin, xantham

gum, sorbitol, glycerin, ascorbic acid and aluminum chlorohydrate." 463 F. Supp. 3d at 49.  In

both cases, the statement made by the seller was false, which is not the case here.  And both

cases dealt with items found in a grocery store, which is a far cry from a medical education.

Plaintiff's attempt to fact-check the websites that demonstrate there is some attrition in

medical schools (including Saba), Opp. at 12, misses the point of referencing those websites.

Saba's purpose in citing to those websites is not to suggest that all the information in those

websites is accurate; they simply show that ample information was freely available when

Plaintiff was "researching" medical schools to show even the least-informed medical school

applicant that gaining admission to a medical school is not the same as graduating from one.[6]

Plaintiff's theory of liability relies on the falsity of statements that Saba never made.

Every statement contained in the Complaint and made by Saba is a statement of what happened

in the past, all the statements are accurate, and Plaintiff cannot dispute their accuracy.  While the

Complaint claims that Saba made "false assurances of success" to students, Compl., ¶3, giving

them "false guarantees of passing" the USMLE, *id*., ¶4, and stating that they were "near certain

to succeed," *id*., ¶9, Saba made no such statements, and the Complaint identifies none.  These,

rather, are assumptions of *future events* Plaintiff took from true facts Saba presented as to *past*

*events*.  Liability cannot rest on such statements.  The Section 93A claim must be dismissed.

---

[6] Likewise, Saba's citation to three cases about law school advertising, *see* Motion at 8, are not claimed to be "controlling."  *See* Opp. at 13.  Those cases merely demonstrate that graduate students are expected to do some level of due diligence before enrolling.  Plaintiff's reliance on *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 650 (D.N.J. 2013) does not change this fact.  *Harnish* was distinguished in *Casey vs. Florida Coastal Sch. of Law, Inc*., No. 3:14-CV-1229-J-39, 2015 WL 10096084, at *15 (M.D. Fla. Aug. 11, 2015) on the fact that in *Harnish* there was an allegation that the school advertised non-legal employment under the "misleading heading" of "Full Time Legal Employers."  Nothing similar is alleged here. Unlike *Harnish*, where the school mislabeled non-legal jobs as "Legal Employers," here Saba did not mislabel those who passed the USMLE Step 1 Exam; Saba correctly disclosed them as "first-time test takers."  Compl. ¶ 57.  *Harnish* was distinguished again (in the District of New Jersey), where the court rejected a claim that the defendant "failed to disclose to plaintiffs at the time it performed services that it would charge patients without insurance or patients whose insurer denied coverage non-market rates." *Leslie v. Quest Diagnostics, Inc*., No. CV171590, 2018 WL 1535235, at *4 (D.N.J. March 29, 2018). Finding that these allegations "that Quest failed to advise them of the non-discounted rates—even when viewed in Plaintiffs' favor—do not constitute a deceptive or unfair trade practice under the state consumer-fraud statutes," the court dismissed the case.

## II.   THE COMPLAINT FAILS TO STATE EITHER A CLAIM UNDER CHAPTER 266, §91 OR FOR UNJUST ENRICHMENT.

Plaintiff's arguments that her claim under Chapter 266, § 91, and her claim for unjust enrichment are valid require little further discussion.  While Saba demonstrates that the Chapter 266 claim fails for the same reasons the Chapter 93A claim fails, Plaintiff argues that the claim succeeds for the same reason that her Chapter 93A claim succeeds.

Plaintiff argues that nominal damages and declaratory relief are available under Chapter 266.  Opp. at 14.  They are not.  The plain text of Chapter 266, § 91 limits relief for a private litigant to an injunction, not to equitable relief generally.  No case or other authority suggests that nominal damages or declaratory relief are available under Chapter 266.  None of the cases cited by Plaintiff support the idea that either type of relief is available under the statute.  Plaintiff's plea that it would be "fundamentally inequitable" to deny relief under Section 266, Opp. at 14-15, cites no authority, makes no sense, and ignores the authority cited in the Motion, that a claim for injunctive relief requires a threat of future injury, which is lacking here.  *See* Mot. at 11.

Plaintiff's argument in favor of her unjust enrichment claim fares no better.  She admits that the claim cannot stand where there is an adequate remedy at law, whether that claim is viable or not.  Opp. at 15.  Yet she argues that the nonviability of her remedies at law makes them "insufficient" and cites to *Tomasella*, 962 F. 3d at 84.  *Tomasella*, however, makes it clear that an unjust enrichment claim must be dismissed where a Chapter 93A claim is available, whether or not it is viable.  The Chapter 266 and unjust enrichment claims must be dismissed.

## III.   PLAINTIFF'S CLAIMS ARE ALL BARRED BY THE RESPECTIVE STATUTES OF LIMITATIONS.

Plaintiff's claims are all barred by the Statute of Limitations.  Even assuming that a four-year limitations period applies to Plaintiff's statutory claims, they were filed too late, as the

9


Motion demonstrates.  All of Plaintiff's claims depend solely on the advertisements she allegedly saw before she enrolled at Saba on June 29, 2019.  All of her claims accrued by no later than that date.  Her unjust enrichment claim and her Chapter 266, § 91 claims expired on June 30, 2022, and her claim under Chapter 93A expired on June 30, 2023, both of which precede her filing of the Complaint.  All of her claims are barred by the applicable statutes of limitations.

### A.      The Covid Tolling Orders Do Not Apply to Plaintiff's Claims.

Plaintiff claims that the SJC's emergency Orders during the Covid-19 pandemic save her claim because, as she argues, those emergency Orders tolled all statutes of limitations for 105 days.  Opp. at 17.  They do not.  Plaintiff cites to two cases (one from this Court) which applied the 105-day extension of the limitations period for filings made shortly after the extension ended.  *Shaw's Supermarkets, Inc. v. Melendez*, 488 Mass. 338 (2021), and *Silva v. City of New Bedford*, 602 F. Supp. 3d 186 (D. Mass. 2022).  Plaintiff does not cite any Order establishing the tolling upon which she relies and ignores the fact that the Order at issue in those cases has been repealed, and no longer has any effect.  *See Fourth Updated Order* and *Fifth Updated Order*. [7]

Both cases interpreted the SJC's *Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic*, entered June 24, 2020. The *Third Updated Order* affirmed prior Orders which tolled the statute of limitations for all civil actions between March 17, 2020 and June 30, 2020.  *See* Ex. 1, ¶13.  The *Third Updated Order* was repealed and replaced by the *Fourth Updated Order* on September 17, 2020, which may or may not have re-authorized the 105-day period; the language is unclear.  *See* Ex. 2, ¶ 14 & n.7.  The *Fourth Updated Order* was repealed and replaced by the *Fifth Updated*

---

[7] True and correct copies of *the Third, Fourth, Fifth, Sixth*, and *Seventh Updated Orders* and the amendments thereto, are attached hereto as Exhibits 1-8, respectively.

*Order* on February 24, 2021, after the Complaints were filed in both *Shaw's Supermarkets* (September 24, 2020), and in *Silva* (October 15, 2020).  *See* Ex. 3, ¶1. The filing date in both cases was shortly after the expiration of the period of tolling, and both cases were filed months before the *Fifth Updated Order* repealed the tolling provisions of the prior orders.  The *Fifth Updated Order* says nothing about tolling limitations periods and contains no saving clause or similar language, nor does the *Sixth Updated Order*, the *Seventh Updated Order*, its amendments, or the recent Order rescinding the *Seventh Updated Order*.

Because the SJC repealed the *Third Updated Order* upon which the tolling in both *Shaw's Supermarkets* and *Silva* was based, that Order no longer has any effect.  Absent a savings clause, repeal of the prior Covid-19 tolling orders "destroys the right," and the repeal operated retroactively.  *See Parello v. McKinney*, 46 Mass. App. Ct. 785, 788 (1999) (repeal of amendment to state building code which had extended strict liability for injuries applied retroactively to bar claim that accrued prior to repeal); *see also Sliney v. Previte*, 473 Mass. 283, 288 (2015) (altering statute of limitations is procedural and such statutory amendments are "commonly are treated as operating retroactively"); *Comm. v. Bargeron*, 402 Mass. 589, 594 (1988) (statute of limitations is procedural and does not "affect substantive rights when held to operate retroactively").[8]  Here, at the time the Fourth and/or Fifth Updated Orders repealed the Third Updated Order in 2020 or 2021, Plaintiff's statute of limitations had not expired, and she could have filed suit.

The *Third Updated Order* cannot form the basis to toll a limitations period two years after it was repealed.  The *Third Updated Order* is simply a nullity.  When a court "vacates an

---

[8] While the SJC is not the Legislature and the Covid-19 Orders are not statutes, this case law provides a useful analogy.

order previously entered, the legal status is the same as if the order never existed." *Animal Legal Def. Fund v. Veneman*, 490 F.3d 725, 730 (9th Cir. 2007) (Thomas, J., concurring).  The "vacating of an order deprives the order of any effect." *Bryan v. BellSouth Comm., Inc*., 492 F.3d 231, 240 (4th Cir. 2007).  *See* 60 C.J.S. *Motions and Orders* § 72 (footnotes omitted) ("When an order is set aside or vacated, the result is the destruction of the order in its entirety … the effect is the same as though the order had never existed. A vacated order is null and void and has no legal force or effect on the parties or the matter in question").

Because Plaintiff cites to no valid authority to toll the statute of limitations, this Court should simply apply the terms of the statute.  "Statutes of limitations are critically important in the due administration of justice.  They should not lightly be discarded." *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012).  Generally, if "an action is barred by the terms of a statute, it must be dismissed." *Hallstrom v. Tillamook Cnty*., 493 U.S. 20, 31 (1989).  A statute of limitations applies to each of the three claims pled by Plaintiff, and those limitations periods reflect the policy judgment of the Massachusetts legislature.  Those limitations periods should not be discarded simply because they would leave Plaintiff without a recovery.

In light of more recent case law, even if the *Third Updated Order* remained valid, it would have no effect on this Court.  The SJC has clarified that the Covid-19 tolling orders have "limited reach," to actions in "inferior courts," meaning actions filed Massachusetts state courts. *See Dunn v. Langevin*, 492 Mass. 374, 377–80 (2023) (Covid-19 tolling orders do not apply to toll claims filed before MCAD); *Graycor Constr. Co. Inc. v. Pac. Theatres Exh. Corp.*, 490 Mass. 636, 645 (2022) (Covid-19 tolling orders do not apply to deadline for recording notice of contract in registry of deeds to perfect mechanic's lien).

The statutory authority for the Covid-19 tolling orders is G.L. ch. 211, § 3,[9] which

provides for the "general superintendence of all courts of inferior jurisdiction."  *Dunn*, 492 Mass.

at 375.  In *Dunn*, the SJC held that because the MCAD is an executive branch agency, not a

"court of inferior jurisdiction," the Covid-19 orders did not apply to toll the statute of limitations

for the plaintiff's state discrimination claims.  *Id.*  As with the MCAD, this Court is not a

"court[] of inferior jurisdiction" over which the SJC has general superintendence. G.L. c. 211, §

3.  The SJC has noted that "the provision in each order that tolled statutory deadlines was

designed to encompass only those statutory deadlines that affect court operations," *Graycor*, 490

Mass. at 45, and that the orders "were limited to court operations under the exigent

circumstances created by the COVID-19 pandemic, including electronic filing, remote

proceedings, and controlling physical access to court houses," *Dunn*, 492 Mass. at 377–80.

Those supervisory orders do not affect the operations of this Court, which operate independently

from the state courts.  Even though this Court took measures to prevent the spread of Covid-19,

---

[9] While the SJC's authority to issue the *Third Updated Order* during the Covid emergency might have been valid due to the exigent circumstances of the moment, it cannot be construed to simply extend all statutes of limitation indefinitely, as Plaintiff (impliedly) contends.  The *Shaw's Supermarkets* court itself noted its unease, stating that "all of these orders are relatively new." 488 Mass. At 345.  Those Orders are no longer new – they were all repealed over two years ago. G.L. ch. 211, § 3, the authority upon which the SJC relied in issuing the Orders, also states that the court's "general superintendence shall not include the authority to supersede any general or special law."  *Id*. Massachusetts statutes of limitation are enacted by the legislature, not the SJC.

While a court has equitable power to toll the statute of limitations in a particular case based on the facts of that case, it does not follow that a court has the power to amend a statute of limitations generally.  Art. 30 of the Mass. Decl. of Rights states that "the judicial shall never exercise the legislative and executive powers, or either of them."  The "principle of separation of powers set forth [in Article 30] prevents the 'judiciary [from] substituting its notions of correct policy for that of a popularly elected Legislature.'" *Comm. v. Leno*, 415 Mass. 835, 841 (1993) (citation omitted).  The SJC has recognized that, even when "extraordinary circumstances require us to make policy judgments that, in ordinary times would be best left to the Legislature, our remedy must be 'no more intrusive than it ought reasonably be to ensure the accomplishment of the legally justified result." *Goldstein v. Sec'y of Comm.,* 484 Mass. 516, 527–28 (2020).  A recent decision rejected the idea that a judge can extend limitations periods indefinitely, stating that the "judge's power to stay the time period for filing counterclaims simply does not extend to also having the general ability to extend statutes of limitation." *Sabatini v. Knouse*, No. 2021-J-0540, 2021 WL 6051869, at *3 (Mass. App. Ct.  Dec. 1, 2021).  The SJC's powers under G.L. ch. 211, § 3 cannot be interpreted to amend a statute of limitations generally.  But this is a point that need not be decided, as the Order in question no longer exists and does not apply outside Massachusetts state courts.

none of those measures involved interrupting the civil filings in the Court or the electronic filing

system, through which Plaintiff was free to file her claim here at any time. *See*

https://www.mad.uscourts.gov/general/covid.htm.

 While ordinarily, federal courts follow state rules for tolling, *see e.g., Bd. of Regents of*

*Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 485 (1980), in light of the recent SJC decisions,

this Court should not apply the Covid-19 tolling orders. Unlike ordinary tolling rules, as

explained above, the SJC's Covid-19 orders were *sui generis*; they had "limited reach" and were

specific to and applicable only to the Massachusetts inferior courts under the SJC's general

superintendent authority.  Nothing in the orders or in the SJC's authority made the orders

applicable to this Court.  Put another way, in light of the recent SJC decisions, the applicable

state rule on tolling to apply in this case is that such tolling applies only in the inferior

Massachusetts state courts.  Thus, this Court should appropriately follow the state tolling rules by

declining to apply the Covid-19 tolling orders.

> **B.     The Discovery Rule Does Not Apply to Plaintiff's Claims.**

 Plaintiff's remaining arguments against the limitation periods are unavailing and ignore

the Motion.  As set forth in the Motion, the Court may consider not only documents attached to

the complaint but also documents to which the complaint refers and documents that otherwise

are "integral" to the plaintiff's claim.  Mot. at 3-4, citing *Trans-Spec Truck Serv., Inc. v.*

*Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008);[10] *Beddall v. State St. Bank & Trust Co.*, 137

F.3d 12, 17 (1st Cir. 1998).  The "Letter of Intent to Enroll and Tuition Deposit Form" (Motion,

Ex. A) is such a document.  Plaintiff's Complaint fails to set out when she enrolled at Saba, but

---

[10] Plaintiff's own citation to *Trans-Spec Truck Serv., Inc*., Opp. at 18, ignores the next page of that opinion, which
supports consideration of the document on a Rule 12(b)(6) motion (and was cited for this point in the Motion).

her enrollment is integral to her claims, and the Letter of Intent establishes the fact and the date of both her enrollment and her claimed injury.

Plaintiff's claim that the Letter of Intent cannot contradict the allegations of the Complaint, Opp. at 18, is incorrect, as also demonstrated in the Motion.  When such a document contradicts an allegation in the complaint, the document trumps the allegation. Mot. at 4, *citing Clorox Co. P.R. v. Proctor & Gamble Commercial Co*., 228 F.3d 24, 32 (1st Cir. 2000) (*citing Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)); *see also Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 232-33 (1st Cir. 2013).  Thus, the Letter of Intent establishes that Plaintiff's injuries, if any, accrued by June 29, 2019.  They are time-barred, whether applying a three-year or four-year limitation period.

Plaintiff's argument that she did not learn, and could not have learned, of "Saba's deceptive conduct until long after she started classes," Opp. at 18, is not supported by any allegation of the Complaint, which says nothing about when Plaintiff learned of her supposed injury.  As the Motion demonstrates, and Plaintiff ignores, a claim accrues "at the time injury results from the assertedly unfair or deceptive acts."  Mot. at 9, *citing Cambridge Plating Co. v. Napco, Inc*., 991 F.2d 21, 25 (1st Cir. 1993); *George v. Stonebridge Mortg. Co., LLC,* 988 F. Supp. 2d 142, 150-51 (D. Mass. 2013) (collecting authorities).  Plaintiff's claimed injuries – the money she paid to attend Saba – began to accrue when she enrolled and started to pay money to Saba, not when she started attending classes.  That date is June 29, 2019, not some later date.

Plaintiff nonetheless argues that her claims are saved by the "discovery rule."  Opp. at 18, Plaintiff has shown no basis to apply that rule.  The discovery rule, as discussed in the Motion, "operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured," but only in three circumstances: "where a misrepresentation concerns a

15

fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." Mot. at 9, *citing Loguidice v. Metro. Life Ins. Co.*, 336 F.3d 1, 6 (1st Cir. 2003) (*quoting Patsos v. First Albany Corp.*, 433 Mass. 323, 328 (2001)). Plaintiff alleges none of these three circumstances and argues none in her Opposition. The discovery rule is inapplicable.

Plaintiff cites to *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) for the proposition that the facts establishing a limitations defense must: (1) be "definitively ascertainable from the complaint and other allowable sources of information," and (2) "suffice to establish the affirmative defense with certitude." Opp. at 19. *Gray* is inapplicable; it does not even mention the statute of limitations. Even if that were the standard, it would be met. The Letter of Intent establishes the date of Plaintiff's claimed injuries, and Plaintiff alleges no facts that, if believed, demonstrate that the discovery rule applies.

Plaintiff's citation to *Maffeo v. White Pine Investments*, 537 F. Supp. 3d 45, 48 (D. Mass. 2021), demonstrates both the applicability of the discovery rule to the facts of that case, and its inapplicability to the facts of this one. The plaintiff in that case "plausibly states in his complaint that he was unaware of any misrepresentations … until plaintiff retained a new investment firm in the spring of 2020." *Id.* That described a "factual predicate which, if proved, would warrant the tolling of the statute of limitations until that alleged discovery date." *Id.* No similar allegations were made in Plaintiff's Complaint. No facts on which the discovery rule could apply were pled in the Complaint here, and none are referenced in the Opposition.

The discovery rule is not part of the statute of limitations – it is an exception to the statute of limitations. Plaintiff cannot simply plead nothing and expect it to apply. As Plaintiff's own

authority demonstrates, it applies only when the facts that support it are pled in the Complaint.

No such facts were pled here, so the exception does not apply.

<div align="center">CONCLUSION</div>

For the reasons stated above and in each of their Motion to Dismiss and Memorandum in

Support, Defendants Saba and R3 respectfully request that the Court allow their Motion to

Dismiss, dismiss the Complaint with prejudice, and award such other and further relief as the

Court finds just and appropriate.

December 15, 2023                                    SABA UNIVERSITY SCHOOL OF
                                                     MEDICINE, and R3 EDUCATION, INC.,

                                                     */s/ Daryl J. Lapp*
                                                     Daryl J. Lapp, BBO # 554980
                                                     daryl.lapp@lockelord.com
                                                     Elizabeth H. Kelly, BBO # 672277
                                                     liz.kelly@lockelord.com
                                                     LOCKE LORD, LLP
                                                     111 Huntington Avenue, 9th Floor
                                                     Boston, MA  02199
                                                     617.239.0100

                                                     Dale A. Evans, Jr., (*pro hac vice*)
                                                     dale.evans@lockelord.com
                                                     LOCKE LORD, LLP
                                                     777 South Flagler Drive – East Tower Suite 215
                                                     West Palm Beach, FL  33401
                                                     561.820.0248

                                                     Michael J. McMorrow (*pro hac vice*)
                                                     michael.mcmorrow@lockelord.com
                                                     LOCKE LORD, LLP
                                                     111 S. Wacker Drive
                                                     Chicago, IL 60606
                                                     312.443.0246

<div align="center">17</div>

**Certificate of Service**

   I certify that on December 15, 2023 this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

               */s/Daryl J. Lapp*
               Daryl J. Lapp

135635074v.4