UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons, <br><br>          Plaintiff <br><br> v. <br><br> SABA UNIVERSITY SCHOOL OF MEDICINE; and R3 EDUCATION, INC., <br><br>          Defendants. | Civil Action No.: 1:23-cv-12002-WGY |

**DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**LOCKE LORD LLP**
Daryl J. Lapp, BBO # 554980
daryl.lapp@lockelord.com
Elizabeth H. Kelly, BBO # 672277
liz.kelly@lockelord.com
111 Huntington Avenue, 9th Floor
Boston, MA  02199
617.239.0100

Dale A. Evans, Jr. (admitted *pro hac vice*)
dale.evans@lockelord.com
777 South Flagler Drive – East Tower Ste 215
West Palm Beach, FL  33401
561.820.0248

Michael J. McMorrow (admitted *pro hac vice*)
michael.mcmorrow@lockelord.com
111 S. Wacker Drive
Chicago, IL 60606
312.443.0246

*Counsel for defendants Saba University School of Medicine and R3 Education, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

I.    FAILURE TO ADDRESS CHOICE OF LAW REQUIRES DENIAL OF
      THE MOTION. .......................................................................................... 1

      A.    Massachusetts Law Cannot Apply to Claims of Class Members from
            Other States and Countries. ............................................................... 1

      B.    Massachusetts Choice of Law Principles Require Application of the
            Law of Each Class Member's Home State or Country. ................... 3

      C.    Plaintiff Fails to Demonstrate that Massachusetts Law Applies to Any
            Class Member, Including Herself. ...................................................... 3

      D.    Variations in State Laws Would Render a Class Action
            Unmanageable. ................................................................................... 5

II.   PLAINTIFF'S DAMAGES THEORY IS UNWORKABLE ON A CLASS
      BASIS. ...................................................................................................... 6

      A.    Plaintiff Presents No Cognizable Theory to Calculate Damages on a
            Class Basis. ........................................................................................ 7

      B.    Plaintiff Cannot Show a Causal Connection Between the Allegedly-
            Deceptive Advertisements and Any Injury to Her or the Class. ...... 8

      C.    Plaintiff Fails to Demonstrate Standing Either for Herself or Any
            Class Member. .................................................................................... 9

III.  PLAINTIFF FAILS TO SATISFY THE FACTORS OF RULE 23(a). .... 10

      A.    Plaintiff Fails to Identify a Single Class Member, Failing Numerosity. ........ 10

      B.    Plaintiff Fails to Identify Any Common Question Generating
            Common Answers. ............................................................................ 12

IV.   PLAINTIFF FAILS TO SATISFY EITHER FACTOR OF RULE 23(b)(3). ........... 14

      A.    Plaintiff Fails to Show that Common Questions of Law or Fact
            Predominate. ..................................................................................... 14

            1.    Varying Applicable Liability Standards, Statutes of Limitation, and
                  Individualized Tolling Questions Prevent Predominance. ................. 14

i

2.    Plaintiff Has Failed to Present Any Cognizable Theory of Damages that Could Apply to the Proposed Class, Which Prevents Predominance. ..................................................................................... 15

a.    Plaintiff's Damages "Theory" is Incapable of Classwide Measurement. ...................................................... 15

b.    Plaintiff Cannot Show a Causal Connection Between the Allegedly-Deceptive Advertisements and Any Injury by Her or the Class. .................................................. 17

B.    Plaintiff Fails to Show that A Class Action is Superior to Other Available Methods For Fairly and Efficiently Adjudicating the Controversy. ...................................................................................... 18

CONCLUSION .................................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Davis–Miller v. Auto. Club of S. California*,
  201 Cal. App. 4th 106, 121 (2011) ............................................................................... 11

*Henry v. Bozzuto Mgt. Co*.,
  98 Mass. App. Ct. 690 (Mass. App. Ct. 2020) ............................................................... 12

*Adardour v. Am. Stlmnts. Inc*.,
  2009 WL 1971458 (E.D. Va. 2009) ................................................................................. 5

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 2, 19, 20, 23

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ....................................................................................................... 23

*Andrews v. Bechtel Power Corp*.,
  780 F.2d 124 (1st Cir. 1985) ......................................................................................... 23

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ..................................................................................... 10, 20

*Aspinall v. Phillip Morris Cos.*,
  442 Mass. 381 (2004) ......................................................................................... 13, 18, 23

*Barnes v. Am. Tobacco Co*.,
  161 F.3d 127 (3d Cir. 1998), *cert. denied*, 526 U.S. 1114 (1999) .................................. 6

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015) ............................... 23

*Boggs v. Alto Trailer Sales*,
  511 F.2d 114 (5th Cir. 1975) ......................................................................................... 19

*In re Bos. Sci. Corp. Sec. Litig*.,
  604 F. Supp. 2d 275 (D. Mass. 2009) ........................................................................... 23

*Camey v. Force Factor, LLC*,
  No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. 2016) ............................................ 3

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig*.,
  65 F. Supp. 3d 283 (D. Mass. 2014) ............................................................................... 3

*In re Celexa and Lexapro Mktg. and Sales Prac. Litig.*,
   291 F.R.D. 13 (D. Mass. 2013) ................................................................... 10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .................................................................... 7, 15, 23

*Commonwealth v. Corinthian Colleges, Inc.*,
   No. 2014-1093-E (Mass. Super. Ct. Aug. 1, 2016) ..................................... 16

*Correa v. Pecos Valley Dev. Corp.*,
   617 P.2d 767 (Ariz. Ct. App. 1980) ............................................................. 5

*Costa v. FCA US LLC*,
   2022 WL 18910359 (D. Mass. 2022) .......................................................... 23

*In re Credit Suisse–AOL Sec. Litig.*,
   253 F.R.D. 17 (D. Mass. 2008) .................................................................. 13

*Cruz v. Andrews Rest., Inc.*,
   364 S.W.3d 817 (Tex. 2012) ........................................................................ 5

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ....................................................................... 9

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ........................................................................ 9

*Deposit Guar. Nat. Bank v. Roper*,
   445 U.S. 326 (1980) ................................................................................... 23

*Douglas v. EF Inst. for Cultural Exch.*,
   No. 20-cv-11740-DJC, 2024 WL 3070251 (D. Mass. June 20, 2024) .......... 17, 18

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   177 F.R.D. 54 (D. Mass. 1997) .................................................................. 23

*Eldridge v. Provident Cos., Inc.*,
   No. CIV. A. 97-1099, 2000 WL 289640 (Mass. Super. 2000) ........................ 4

*In re Evenflo Co.*,
   54 F.4th 28 (1st Cir. 2022) ........................................................................... 9

*Faherty v. CVS Pharmacy, Inc.*,
   No. No. 09–CV–12102, 2011 WL 810178 (D. Mass. 2011) ........................... 4

*Feeney v. Dell Inc.*,
   454 Mass. 192, 908 N.E.2d 753 (2009) ...................................................... 23

*Garcia-Rubiera v. Calderon*,
   570 F.3d 443 (1st Cir. 2009)...............................................................................23

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
   285 F.R.D. 169 (D. Mass. 2012)...........................................................................23

*Gonzalez v. XPO Last Mile, Inc.*,
   579 F. Supp. 3d 252 (D. Mass. 2022).....................................................................23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)............................................................................................23

*Heller Fin. v. Ins. Co. of N. Am.*,
   410 Mass. 400 (1991).........................................................................................18

*Henderson v. Bank of New York Mellon, N.A.*,
   332 F. Supp. 3d  419(D. Mass. (2018................................................................... 2

*Hershenow v. Enterprise Rent-A-Car Company Of Boston, Inc.*,
   445 Mass. 790 (2006)....................................................................................8, 17

*Hogan v. InStore Group, LLC*,
   512 F. Supp. 3d 157 (D. Mass. 2021).....................................................................23

*Kwaak v. Pfizer, Inc.*,
   71 Mass. App. Ct. 293 (2008)..............................................................................13

*Lannan v. Levy & White*,
   186 F. Supp. 3d 77 (D. Mass. 2016).....................................................................23

*Levy v. Gutierrez*,
   448 F. Supp. 3d 46 (D.N.H. 2019)........................................................................15

*Loughlin v. Vi-Jon, LLC*,
   No. CV 20-11555, 2024 WL 1347092 (D. Mass. Mar. 29, 2024)...................6, 8, 10, 20

*Lyon v. Caterpillar, Inc.*,
   194 F.R.D. 206 (E.D. Pa. 2000).......................................................................5, 19

*In re M3 Power Razor System Marketing & Sales Practice Litigation*,
   270 F.R.D. 45 (D. Mass., 2010)...........................................................................23

*Makuc v. Am. Honda Motor Co.*,
   835 F.2d 389 (1st Cir. 1987)...............................................................................12

*Matamoros v. Starbucks Corp.*,
   699 F.3d 129 (1st Cir. 2012)...............................................................................23

*McCuin v. Sec'y of Health & Hum. Servs.*,
   817 F.2d 161 (1st Cir. 1987)..................................................................................23

*Moelis v. Berkshire Life Ins. Co.*,
   451 Mass. 483 (2008) ............................................................................................6

*Mowbray v. Waste Mgmt. Holdings, Inc.*
   189 F.R.D. 194 (D. Mass. 1999), *aff'd* 208 F.3d 288 (1st Cir. 2000) (Young, J.) .......... 2, 6, 14, 15

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008)....................................................................................23

*In re Nexium*,
   297 F.R.D. 168 (D. Mass. 2013), *aff'd* 777 F.3d 9 .......................................2, 7, 14, 16

*In re Nexium*,
   777 F.3d at 19 ......................................................................................................10

*Novell v. Migliaccio*,
   749 N.W.2d 544 (Wis. 2008)..................................................................................5

*Omori v. Brandeis Univ.*,
   673 F. Supp. 3d 21 (D. Mass. 2023) ......................................................................7

*Ouadani v. Dynamex Operations East, LLC*,
   405 F. Supp. 3d 149 (D. Mass. 2019) ..................................................................23

*Oxford Global Res., LLC v. Hernandez*,
   480 Mass. 462 (2018) ............................................................................................3

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005)..............................................................................4

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008)..............................................................................5

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..............................................................................................19

*Plastic Surg. Assocs., S.C. v. Cynosure, Inc.*,
   407 F. Supp. 3d 59 (D. Mass. 2019) ....................................................................13

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004)............................................................................4

*In re Relafen Antitrust Litigation*,
   218 F.R.D. 337 (D. Mass. 2003)..........................................................................23

*Ruiz v. NEI Gen. Contracting, Inc.*,
    No. CV 21-11722, 2024 WL 869445 (D. Mass. Feb. 29, 2024) ...................................... 10, 13, 23

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017) ................................................................................................ 8, 17

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    200 F.R.D. 5 (D. Mass. 2001), vacated and remanded (July 12, 2001) ........................................ 23

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) .......................................................................................... 7, 19, 23

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    No. CIV.A. 97-10307REK, 2002 WL 34216846 (D. Mass. Apr. 10, 2002), rev'd
    and remanded, 323 F.3d 32 (1st Cir. 2003) .................................................................................. 23

*Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*,
    241 F.R.D. 85 (D. Mass. 2007) .............................................................................................. 3

*Tietsworth v. Harley-Davidson, Inc.*,
    677 N.W.2d 233 (Wis. 2004) .................................................................................................. 5

*Tigges v. AM Pizza, Inc.*,
    2016 WL 4076829 (D. Mass., 2016) ...................................................................................... 23

*Tomasella v. Nestlé USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) .................................................................................................. 17

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................................... 9

*Tyler v. Suffolk Cnty.*,
    253 F.R.D. 8 (D. Mass. 2008) ............................................................................................... 23

*Tyrrell v. Toumpas*,
    2010 WL 174287 (D.N.H. 2010) .......................................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................................................ 6

*Vara v. DeVos*,
    No. CV 19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25, 2020) ........................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................................... 12, 13

*Weinberg v. Sun Co., Inc.*,
    777 A.2d 442 (Pa. 2001) ...................................................................................................... 5

**Statutes and Rules**

Ala. Code § 8-19-10(f) ....................................................................................................... 5

Fed. R. Civ. P. 23(b)(3)(A-D) ........................................................................................... 18

Fla. Stat. 95.11(3)(i) ......................................................................................................... 5

Ga. Code § 10-1-399(a) ..................................................................................................... 5

Ga. Code § 10-1-401 .......................................................................................................... 5

Idaho Code § 48-619 .......................................................................................................... 5

Mass. Gen. Laws Ann. Ch. 93A § 2 ................................................................................... 1

MCL Sec. 445.911 (9) ....................................................................................................... 5

Mont. Code § 30-14-133(1)(a) ........................................................................................... 5

Ohio Rev. Code § 1345.10(c) ............................................................................................ 5

Rule 23 ........................................................................................................................ 1, 13

Rule 23(a) ..................................................................................................... 1, 10, 13, 14

Rule 23(a)(3) .................................................................................................................... 13

Rule 23(b) ................................................................................................................... 10, 15

Rule 23(b)(3) ................................................................................... 1, 2, 7, 14, 15, 18, 19, 20

Tenn. Code § 47-18-109(g) ................................................................................................ 5

Tex. Bus. & Comm. Code § 17-565 ................................................................................... 5

Utah Code § 13-11-19(2) .................................................................................................... 5

Va. Code § 59.1-204.1(A) .................................................................................................. 5

Wis. Stat. § 100.18(1) ........................................................................................................ 5

**Treatises and Commentary**

Restatement (Second) of Conflict of Laws ......................................................................... 3

INTRODUCTION

Plaintiff's Motion fails to satisfy any of the elements required to certify a class under Rule 23. It meets none of the requirements of Rule 23(a) and satisfies neither the predominance nor superiority inquiry of Rule 23(b)(3). The Motion fails for many reasons, but two stand out above the rest and permeate the discussion of every element of the class certification inquiry: choice of law and damages.

Plaintiff engages in no choice of law analysis, and assumes that Mass. Gen. L. Ch. 93A, § 2, applies to every member of her class. But she presents no evidence that any class member lives in Massachusetts, and Massachusetts' choice of law principles dictate that the laws of their home states and countries–which she fails to identify–apply. Plaintiff also presents no damages theory, instead claiming the entire cost of education for every class member as damages, assuming the value of a Saba[1] education is zero. The law allows neither assumption. Plaintiff's failure to address choice of law and damages in any meaningful manner permeates nearly every aspect of the class certification analysis, so they are discussed first and separately before applying them to the certification requirements.

The Motion fails to identify a single ad that any class member saw, does not show that Plaintiff or any class member was influenced by any ad, and makes no attempt to assess the value of a medical school education or demonstrate which law applies. It fails to show that anyone is a member of the class Plaintiff pleads and instead suggests that Article III jurisdiction is lacking. It should be denied.

ARGUMENT

## I.   FAILURE TO ADDRESS CHOICE OF LAW REQUIRES DENIAL OF THE MOTION.

### A.   Massachusetts Law Cannot Apply to Claims of Class Members from Other States and Countries.

The Motion makes no attempt to analyze the law that would apply to the claims of any proposed class members, and instead assumes that Mass. Gen. Laws Ann. Ch. 93A § 2, applies to the claims of

---

[1] The term "Saba" includes defendants R3 Education, Inc. and Saba University School of Medicine collectively unless otherwise noted.

all class members. Dkt. 51 at 10, 12, 13, 15, 16, 19. It does not. The class Plaintiff purports to represent consists of all former Saba students since 2017 who did not sit for the USMLE Step 1 exam. This includes students from 40 states, the District of Columbia, Puerto Rico, and at least 13 foreign nations. *See* Declaration of Terry Moya ("Moya Declaration"), ¶4. The Motion sets forth no evidence that any class member has ever lived in Massachusetts. Yet Plaintiff engages in no choice of law analysis to account for the variations of law in any of these other jurisdictions, which she fails to identify.

The Motion cites repeatedly to this Court's ruling in *In re Nexium*, 297 F.R.D. 168 (D. Mass. 2013), *aff'd* 777 F.3d 9, likely because the opinion emanated from this very courtroom. But the similarities end there. As this Court stated, the "trial court must perform a 'rigorous analysis' [at class certification] that will often 'entail some overlap with the merits of the plaintiff's underlying claim.'" 297 F.R.D. at 175. This Court engaged in a thorough assessment of the antitrust statutes of all 50 states, dismissing the claims under the laws of 26 states and Puerto Rico, before concluding "that the variance in state laws and statutes of limitations [of the remaining 24] do not bar class certification under Rule 23(b)(3)." *Id.* at 168, 175–76. The Court engaged in this analysis because "variations in state law [must not] swamp any common issues and defeat predominance." *Id.*, citing *Mowbray v. Waste Mgmt. Holdings, Inc.* 189 F.R.D. 194, 199 (D. Mass. 1999), *aff'd* 208 F.3d 288 (1st Cir. 2000) (Young, J.)."[2]

Plaintiff cites no case where a court certified a nationwide class on a contested certification motion under a single state's law. Most of the cases Plaintiff cites are single-state classes, arise under federal law, or settlement classes where a "court need not inquire whether the case, if tried, would present intractable management problems."[3] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiff makes no attempt to identify what laws apply to the claims of the class, nor whether

---

[2] In *Mowbray*, this Court analyzed differences in warranty law among nine states and found that "no significant multistate conflict exists." 189 F.R.D. at 199. Likewise, in *Henderson v. Bank of New York Mellon, N.A.*, the plaintiffs demonstrated that the laws of the 18 states at issue all adopted the Uniform Trust Code, the law at issue, and that "the pertinent statutes are substantially similar on these key points." 332 F. Supp. 3d 419, 428–29 (D. Mass. 2018).

[3] A list of the class certification cases cited by plaintiff and grouped into these categories is attached as **Appendix A**.

variations in them would "swamp any common issues." The Motion should be denied on this basis.

**B.      Massachusetts Choice of Law Principles Require Application of the Law of Each Class Member's Home State or Country.**

Courts do not certify nationwide classes for litigation under Chapter 93A. Massachusetts follows the choice of law principles found in Restatement (Second) of Conflict of Laws, *see Oxford Global Res., LLC v. Hernandez*, 480 Mass. 462, 467 (2018), which dictate that the law to apply to each class member's claims here is such class member's home state – or home country.[4]

"Under the choice of law rules in Massachusetts for fraud and misrepresentation, the law of the state in which a plaintiff took action in reliance on a defendant's representations applies." *Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc*., 241 F.R.D. 85, 93 (D. Mass. 2007); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig*., 65 F. Supp. 3d 283, 295 (D. Mass. 2014) ("Massachusetts choice-of-law rules, which govern in this case because the complaint was filed in the District of Massachusetts," mandate that "class members' consumer protection claims are governed by the laws of their home states."); *Camey v. Force Factor, LLC*, No. 14-14717-RWZ, 2016 WL 10998440, at *2–3 (D. Mass. 2016) (rejecting nationwide application of 93A).

**C.      Plaintiff Fails to Demonstrate that Massachusetts Law Applies to Any Class Member, Including Herself.**

Plaintiff has put forth no evidence to support the existence of a significant contact or aggregation of contacts with Massachusetts, and no argument why Massachusetts law should apply to any claim of any class member. Because "the primary aim of . . . consumer protection laws generally . . . is compensating consumers, not policing corporate conduct . . . [,] the more significant contact in this context [is] . . . the location of the injury—that is, the location of the sales to the end payor

---

[4] Although Plaintiff mentions nothing of it, her motion papers themselves demonstrate that the class she seeks to represent includes citizens not just of the United States, but at least thirteen other nations—Afghanistan, Bangladesh, Canada, China, Ghana, Haiti, India, Japan, Jordan, Kenya, Nigeria, Syria, and Venezuela. *See* Dkt. 53 (Siller Decl.), Ex. 40. Plaintiff does not address whether foreign students would even be bound by a determination of the issues in this case on a class basis, let alone the applicable law and limitations periods of those nations.

plaintiffs." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276-77 (D. Mass. 2004). The *Relafen* court refused to apply Pennsylvania consumer protection law to out-of-state purchasers because "[a]pplying Pennsylvania law to these wholly out-of-state transactions would be at best a 'novelty,' and at worst a violation of constitutional limitations," even where defendant was based in Pennsylvania.[5]

The location of Plaintiff's injuries—where she received the ads, where she made the agreement to enroll at Saba, where her mother paid her tuition—were all in Florida, not Massachusetts. Plaintiff has never lived in Massachusetts and has never been in Massachusetts other than a few family visits. *See* Plaintiff's Deposition Transcript ("Pl. Dep."), attached as **Ex. 1** to Declaration of Dale Evans ("Evans Declaration"), at 14:21–16:24. Plaintiff does not know if any class members reside in Massachusetts, Pl. Dep. 207:14–16, and has identified no class members who do.

A thorough analysis of the problems in certifying a nationwide class under 93A is found in *Faherty v. CVS Pharmacy, Inc.*, No. No. 09–CV–12102, 2011 WL 810178, at *5 (D. Mass. 2011), which refused to certify a nationwide consumer fraud case under Massachusetts or Rhode Island law. *Id.* at *6. The court noted:

> Massachusetts' interest in applying its own laws to protect [its] consumers would outweigh any secondary interest Rhode Island might have in policing the conduct of [its] corporations in other states. … This is also true with respect to putative class members who are domiciled outside of Massachusetts—in their case, the consumer protection laws of their respective home states would apply for the same reason. …[t]he choice-of-law analysis militates strongly against the certification of a nationwide class as that would require the certifying court to apply a state-by-state legal analysis.

*Id.*[6] Here, likewise, this Court would need to apply an analysis of 40 states and 13 countries. Plaintiff

---

[5] The mere fact that Saba is alleged to have its principal place of business in Massachusetts cannot displace the consumer protection laws of other states. *See, e.g., In re Pharm. Indus. Avg. Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) (rejecting application of the law of a defendant's principal place of business to a nationwide class even if "tempting" because "under the Restatement, the laws of the home states of the consumers govern").

[6] A Massachusetts state court has certified a national class under Chapter 93A, but that case was brought under Section 11 of the statute, not Section 9, as this case is.  Section 11 allows "any person who engages in the conduct of any trade or commerce" to make a claim, whereas Section 9 allows any person <u>other than</u> a person entitled to bring a claim under Section 11 to bring a claim.  In that case, *Eldridge v. Provident Cos., Inc.*, No. CIV. A. 97-1099, 2000 WL 289640, at *2 (Mass. Super. 2000), plaintiffs sought to certify a nationwide class of brokers whose commissions were reduced in violation of both their contracts and Chapter 93A. The analysis focused on due process issues centering

has not given the Court any tools to engage in that analysis, thus her Motion should be denied.[7]

### D. Variations in State Laws Would Render a Class Action Unmanageable.

Although the Motion presents no choice-of-law analysis, even a cursory review of potentially-applicable laws demonstrates that conflicts abound. For example, several states bar class actions in consumer protection claims as substantive, not procedural, law. *See, e.g.*, Ala. Code. § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation"); *see also* Ga. Code § 10-1-399(a); Mont. Code § 30-14-133(1)(a); Tenn. Code § 47-18-109(g); Utah Code § 13-11-19(2). Many states also require individualized reliance in order to bring claims under their consumer fraud statutes.[8] At least one state requires affirmative misrepresentation and does not allow a consumer fraud claim on omission.[9] The different limitations periods of the states also warrant against class certification.[10] While Plaintiff argues that "any issues presented by the statute of limitations … do not prevent class certification[,]" Dkt. 51 at 17, n. 36, there are not mere "possible differences" here.

---

around Massachusetts' certification procedures, and did not raise the propriety of applying 93A to out-of-state plaintiffs.

[7] *See, e.g., Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 220 (E.D. Pa. 2000) (denying certification where plaintiffs failed to do a "thorough and comprehensive" state-by-state analysis of consumer protection laws) (internal quotation marks omitted); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) ("proposing to certify a class requiring the application of the laws of numerous jurisdictions, plaintiffs must shoulder the herculean burden of conducting an extensive review of state law variances to demonstrate how grouping would work").

[8] *See, e.g., Correa v. Pecos Valley Dev. Corp.*, 617 P.2d 767, 771 (Ariz. Ct. App. 1980) ("Injury occurs when the consumer relies on the misrepresentation"); *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) (same); *Cruz v. Andrews Rest., Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) (requiring reliance); *Adardour v. Am. Stlmnts. Inc.*, 2009 WL 1971458, at *3 (E.D. Va. 2009) (same); *Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008) (same).

[9] *See Tietsworth v. Harley-Davidson, Inc.*., 677 N.W.2d 233, 245 (Wis. 2004) ("omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1)"). Plaintiff offers no evidence that any statement by Saba was untrue, so Saba's silence on what percentage of its students sit for the USMLE Step 1 Exam would not be actionable.

[10] Each state that allows consumers to file actions under their consumer protection statutes has its own limitations period. Plaintiff lives in Florida, Pl. Dep. 14:14, so its four-year period applies to her claim. Fla. Stat. 95.11(3)(i). Class members in other states – which Plaintiff fails to identify – face a variety of limitations periods. In Michigan, the period is six years. MCL Sec. 445.911 (9). In Georgia, Virginia, Texas, Idaho and Ohio, the period is two years. Ga. Code § 10-1-401; Tex. Bus. & Comm. Code § 17-565; Idaho Code § 48-619; Va. Code § 59.1-204.1(A); Ohio Rev. Code § 1345.10(c). Application of the "discovery rule," which Plaintiff has argued applies here, complicates matters further. In some jurisdictions, the "discovery rule" can toll a limitations period. In others, it cannot. In Texas, limitations can be tolled only for cause and for 180 days. Tex. Bus. & Comm. Code § 17-565. In Ohio, it cannot be tolled at all. Ohio Rev. Code § 1345.10(c).

Affirmative defenses should be considered in making class certification decisions. *Mowbray*, 208 F.3d at 295. Complex limitations issues require denial of certification. In *Moelis v. Berkshire Life Ins. Co.*, 451 Mass. 483 (2008), the court upheld denial of certification where the "inquiry regarding the statute of limitations could require determining when each plaintiff knew or reasonably should have known" of their injuries, 451 Mass. at 491, and found that "where individualized inquiry is necessary to resolve a statute of limitations defense, a variety of jurisdictions have found class certification to be inappropriate." *Id.* at 490–91, *citing Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998), *cert. denied*, 526 U.S. 1114 (1999). Like in *Moelis*, application of the limitations question for each class member here will be "a highly fact-specific inquiry." 451 Mass. at 491. Although not exhaustive, the difficulty in applying the laws of 40 states and 13 countries to a single class is apparent. *See* Moya Declaration, ¶4; Siller Decl., Ex. 40. No choice-of-law analysis could lead to certification of a worldwide or nationwide class under Massachusetts Chapter 93A. The Motion should be denied.

## II.   PLAINTIFF'S DAMAGES THEORY IS UNWORKABLE ON A CLASS BASIS.

A question this Court must examine in deciding Plaintiff's Motion is whether the class members were injured by Saba's allegedly deceptive act—here, its advertisements of USMLE Step 1 first-time pass rates.[11] *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 461 (2016) ("[T]he question whether uninjured class members may recover is one of great importance."); *see also Loughlin v. Vi-Jon, LLC*, No. CV 20-11555, 2024 WL 1347092, at *9 (D. Mass. Mar. 29, 2024) ("[A] plaintiff must demonstrate that each member of the proposed class suffered an injury-in-fact as an element of both Article III standing and a Chapter 93A claim."). Plaintiff's Motion fails to demonstrate: (1) any cognizable theory to calculate damages on a class basis; (2) that she or any class member has standing

---

[11] Plaintiff does not contend Saba's USMLE Step 1 first-time pass rates are false. Instead, she complains that Saba does not also publish an additional data point—attrition—along with its Step 1 advertising. Pl. Dep. 116:14-22. But Plaintiff concedes attrition happens in all medical schools. *Id.* at 184:14-16. Further, Plaintiff is unaware of any other medical schools that publish attrition information alongside Step 1 advertising (*id.* at 168:11-13) and failed to put forth any such evidence in the Motion.

in this case; or (3) that any injury was caused by the USMLE Step 1 first-time pass rates advertisements.

### A.    Plaintiff Presents No Cognizable Theory to Calculate Damages on a Class Basis.

Plaintiff sets forth ***no*** damages theory whatsoever. She claims simply that all class members are entitled to the entirety of their tuition, fees, and costs of attending Saba. Dkt. 51 at 16. "The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013). This Court engaged in a thorough damages analysis at certification in *In re Nexium*, noting that "the moving party [must] present a damages model that directly reflects and is linked to an accepted theory of liability under Rule 23(b)(3)." 297 F.R.D. at 183; *see also Comcast Corp.*, 569 U.S. at 35 (damages model must be consistent with liability case). Here, there is no damages model at all.

Damages also must be capable of measurement on a classwide basis. *See Comcast Corp.*, 569 U.S. at 34. Here, the calculation of damages would not be mechanical as to cost and value. The cost of the education depends on length of time, scholarships, loans, gifts from others (*e.g.*, plaintiff's mother supposedly paid $57,970, *see* Plaintiff's Supplemental Responses to Interrogatories ("Pl. Suppl. Res. Int."), attached as **Ex. 2** to Evans Declaration, at Interrogatory No. 1; Pl. Dep. 36:9–37:2, and how much of any loans were repaid. The value of the education similarly is going to depend on many factors – (a) success as a student; (b) transfer of credits; (c) usefulness of education in different career besides doctor; (d) intrinsic value of a science education; and (e) length of time of study; among others. "Courts have denied class certification where these individual damages issues are especially complex or burdensome." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 n.8 (1st Cir. 2003); *see also Omori v. Brandeis Univ.*, 673 F. Supp. 3d 21 (D. Mass. 2023) (affirming denial where damages implicated subjective and individualized questions to determine value of online education). The individual damages here would be complex and burdensome, and not capable of measurement on a class basis.

**B.      Plaintiff Cannot Show a Causal Connection Between the Allegedly-Deceptive Advertisements and Any Injury to Her or the Class.**

Plaintiff does not demonstrate an injury to herself or anyone else. To prove an injury, Plaintiff or any class member will need to show "an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself." *Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 10 (1st Cir. 2017); *see Hershenow v. Enterprise Rent-A-Car Company Of Boston, Inc*., 445 Mass. 790, 791 (2006) ("causal connection" between deceptive act and loss is "essential predicate for recovery"). Plaintiff must demonstrate that the "product itself [the education] was deficient in some objectively identifiable way" and show something that the claimant "bargained for that she did not, in fact, receive." *Shaulis*, 865 F.3d at 12. Plaintiff has pled nothing that she bargained for that she did not receive.

*Shaulis* demonstrates that Plaintiff herself has no claim to injury or damages under Chapter 93A—if it even applies—nor would any class member have injury under it. The *Shaulis* court found that plaintiff "identifie[d] no objective injury traceable to the purchased item itself" and refused to apply "a consumer's disappointed expectations of value in place of an allegation of real economic loss" because it "fails to identify anything objective that Shaulis bargained for that she did not, in fact, receive." 865 F.3d at 11-12; *see Loughlin*, 2024 WL 1347092, at *12 (following *Shaulis*). Here, Plaintiff admits she received all the classes that she bargained for, Pl. Dep. 174:15-18, credits for the classes she passed, Pl. Dep. 174:19-21, and that she learned the materials in the classes she passed. *Id.* 174:22-175:3. She admits that if she was able to transfer her credits to another medical school, that would save her money.[12] *Id.* 175:22 – 176:2. Plaintiff also admits that if she "had actually passed Foundations of Clinical Medicine and passed Step 1, [she] obviously wouldn't say [her] basic sciences course work was worthless," Pl. Dep. 176:4-8, and that her "class doesn't include these students" who passed the Step 1 Exam because "they were able to take the USMLE." *Id.* 170:8-19. Therefore, Plaintiff

---

[12] Plaintiff admits her classmates transferred their credits to other schools. Pl. Dep. 204:22-205:2; 205:22-206:6.

suffered no injury under Chapter 93A, nor did other class members. *See In re Deepwater Horizon*, 739 F.3d 790, 801 (5th Cir. 2014) (holding that the class must "be defined in such a way that anyone within it would have standing.") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006)).

Even if there were "injury", there was no causal connection to Saba's advertisements. Although the Complaint alleges that Saba's "unfair or deceptive acts" were "making assertions that over 98% of Saba's students passed the USMLE Step 1" and that Plaintiff was therefore "harmed by [her] decision to attend Saba," Dkt. 1, ¶¶ 119, 125, her deposition testimony demonstrates that those allegations are not true. Plaintiff openly acknowledged in her deposition that Saba's advertised USMLE Step 1 pass rate was not a meaningful factor in her decision to attend Saba, that the most important factor was its rolling admissions policy, whereby students could commence their medical school studies at one of three times throughout the year as opposed to waiting an entire year, as would be the case in the United States. Pl. Dep. 55:13-55:23; 95:23-96:2. She stated that "Having a high USMLE Step 1 first-time pass rate, that specifically was not important to me." *Id.* 91:21-22. She reiterated that she "thought I had what it took to pass the Step 1, but that wasn't important to [her], because to [her] what was important is the education you are getting." *Id.* 92:17-22. As discussed above, she received that education.

### C.   Plaintiff Fails to Demonstrate Standing Either for Herself or Any Class Member.

Without injury, Plaintiff has no standing, and there is no Article III jurisdiction over this case. An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *In re Evenflo Co.*, 54 F.4th 28, 34 (1st Cir. 2022), *citing TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In a class action, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431. Plaintiff fails to demonstrate standing either for herself or any member of the class. Her Motion fails as a result.

Although a class action may contain a "*de minimis* number" of uninjured class members, as

this Court held in *Ruiz v. NEI Gen. Contracting, Inc.*, No. CV 21-11722, 2024 WL 869445, at *9 (D. Mass. Feb. 29, 2024), this class would contain many more than a *de minimis* number of uninjured members. All of the "class members" identified by Plaintiff are uninjured, as explained below, and it is evident that the class definition includes a large number of uninjured members: those that never saw any ads, those who were not influenced by them, and those that transferred their credits or graduated cannot have been damaged. Even if the number of uninjured members were *de minimis*, this Court could only certify the class if Plaintiff demonstrated that "it will later be possible to establish a mechanism for distinguishing the injured from the uninjured class members." *In re Nexium*, 777 F.3d at 19. Such a mechanism must be both "administratively feasible and protective of defendants' Seventh Amendment and due process rights." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 52 (1st Cir. 2018). Even if there were a *de minimis* number of uninjured members (which there is not), Plaintiff cannot meet these two prongs. In *Loughlin*, the court held that the plaintiff failed the requirements under Rule 23(a) and 23(b) because it was "likely that a substantial number of putative class members ha[d] not suffered an economic injury." 2024 WL 1347092, at *9. The same reasoning applies here.

## III.    PLAINTIFF FAILS TO SATISFY THE FACTORS OF RULE 23(A).

### A.    Plaintiff Fails to Identify a Single Class Member, Failing Numerosity.

Plaintiff fails the first element of Rule 23(a)—numerosity. She defines the class to include all individuals who enrolled at Saba, are no longer enrolled, and did not sit for the USMLE. Dkt. 51 at 7. This definition suffers from two problems, both of which affect numerosity. First, it has no reference to the claims she pleads—the class is not limited to those who saw the same ads Plaintiff claims to have seen – and does not explain how people were influenced by ads they did not see. When "the class action is based on alleged misrepresentations ... [denial of class certification is appropriate] when individual evidence will be required to determine whether the representations at issue were actually made to each member of the class." *In re Celexa and Lexapro Mktg. and Sales Prac. Litig.*, 291 F.R.D.

13, 20–21 (D. Mass. 2013), *citing Davis–Miller v. Auto. Club of S. California*, 201 Cal. App. 4th 106, 121 (2011). Plaintiff identifies no "advertisements" that she saw prior to her enrollment at Saba other than emails that were sent only to her. Plaintiff's discovery responses identify the advertisements she saw prior to enrollment. Fourteen of the fifteen identified "advertisements" are emails only to her. Pl. Supp. Resp. to Interr., No. 10, attached as **Exs. 3A–3N** to Evans Declaration; Pl. Dep. 36:9–37:2. The last item identifies ten "advertisements," but all these advertisements postdate her enrollment at Saba. *Id.*, attached as **Ex. 3O** to Evans Declaration; Pl. Dep. 36:9–37:2. These could not have influenced her decision to enroll at Saba.[13] Second, the definition is not limited to those who suffered an injury. Her class includes students who transferred to other medical schools, dropped out for various non-academic reasons (financial, medical, family, career change), were expelled for misconduct, or took leaves of absence. Plaintiff admits that, if someone "indeed graduated, she wouldn't be a member of the class because she wasn't damaged." Pl. Dep. 203:14-17. She also admits that if she "had actually passed Foundations of Clinical Medicine and passed Step 1, [she] obviously wouldn't say [her] basic sciences course work was worthless." Pl. Dep. 176:4-8.

The only individuals Plaintiff identifies as class members either passed the USMLE Step 1 Exam, transferred to another medical school with their credits from Saba, or took a leave of absence and can return to Saba.[14] Moreover, Plaintiff has put forth no evidence any of these or other "class members" saw any advertisement for Saba, were influenced by it, or that it was the same advertisement

---

[13] Plaintiff admitted in her deposition that she never saw the advertisements in her Complaint. She admits to having never seen the advertisements listed in Paragraphs 58A, 58B, 58C, 60A, 60B, and 60C of the Complaint prior to her deposition. Pl. Dep. 176:9–179:7. Plaintiff does not remember whether she saw the advertisements listed in Paragraphs 61A, 61B, 61C or 61D of her Complaint. *Id.* 179:17–181:1. At best, Plaintiff claims a "vague recollection" that she saw the advertisements in Paragraphs 61C and 61D but has no idea where she saw them. *Id.* 180:12-181:1. Plaintiff did not identify a single public advertisement that she definitively saw.

[14] Plaintiff identifies ███████████, ███████████, and ███████████ as class members. Pl. Supp. Resp. to Interrog., at No. 2. In her deposition, Plaintiff also identified "████████████████" as a class member. Pl. Dep. 196:23-197:1. Drs. ████ █████, and █████ all graduated from Saba and are doctors. *Id.* 203:1-9; 204:3-5; 197:9-14; Moya Declaration, ¶¶ 6-8. Ms. █████ and Mr. ████ both transferred to other schools. Pl. Dep. 204:14-15; 205:22-206:6. Their credits transferred with them, Pl. Dep. 205:22-206:6; 204:22-205:2; Moya Declaration, ¶¶ 9-10. As to Mr. █████, Plaintiff admits that "I don't know if he graduated or not." Pl. Dep. 203:22-23, and he was on a leave of absence. Moya Declaration, ¶ 5.

seen by Plaintiff.

Where a plaintiff does "not offer anything more than argument and speculation about whether and how the defendant's practices … affected anyone else," numerosity is lacking because there is "no evidentiary showing that any other person was affected as the plaintiffs were, let alone that there were numerous such persons." *Henry v. Bozzuto Mgt. Co.*, 98 Mass. App. Ct. 690, 696 (Mass. App. Ct. 2020). *See Makuc*, 835 F.2d at 394–95 (affirming dismissal of class claims where "plaintiff was unable to provide any evidence that even one other person was injured"); *Tyrrell v. Toumpas*, 2010 WL 174287, at *4 (D.N.H. 2010) (rejecting numerosity where plaintiff failed to submit report that might have shown potential class members). Here, Plaintiff has offered no evidence that any purported class members saw any advertisements for Saba. A class action cannot proceed in this circumstance.

### B.   Plaintiff Fails to Identify Any Common Question Generating Common Answers.

The choice of law discussion above shows the fallacy of Plaintiff's argument on commonality. Plaintiff states that the "claims of every class member depend on the answer to the same question: Is Saba's widespread marketing of its USMLE Step 1 passage rates deceptive or misleading under Chapter 93A?" Dkt. 51 at 10. That is not a common question, and Plaintiff fails to demonstrate that it is relevant to any class member, having identified none who reside in Massachusetts.

Plaintiff also claims that "Saba has used—and continues to use—the same USMLE advertising campaign to attract students." Dkt. 51 at 10. But Plaintiff has not demonstrated that any class member saw any "advertisement" other than the emails sent to Plaintiff alone. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011). The Motion cites no ad to which any class member was exposed, and her class definition is not limited to those who saw an ad. Without identifying an advertisement that any class member saw other than the emails sent only to her, Plaintiff cannot claim commonality.

*Kwaak v. Pfizer, Inc.*, 71 Mass. App. Ct. 293, 299–300 (2008) distinguished *Aspinall v. Phillip Morris Cos.*, 442 Mass. 381, 383 (2004), a case on which Plaintiff relies for the notion that Plaintiff's claim "stems from Saba's widely-disseminated USMLE Step 1 representations," Dkt. 51 at 12, 15, on grounds that are notable here. The court noted that certification might be appropriate where, as in *Aspinall*, "the members of each class had been directly presented with the same significant, deceptive information" because "every package of Marlboro Lights had been labeled 'lowered tar and nicotine'" and each plaintiff "received the same, essential misinformation." *Id*. But where "there is insufficient information in the record to identify any such similarity of exposure, deception, and causation" the court refused to certify a class "regardless whether a purchaser was exposed to the campaign." *Id*.; *see also Plastic Surg. Assocs., S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 74 (D. Mass. 2019) (distinguishing *Aspinall*). There is no such information in the record here.

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. A party "must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." that "generate common answers apt to drive the resolution of the litigation." *Id.; see Ruiz*, 2024 WL 869445, at *4. The Motion does not identify which class members saw what ads. It does not demonstrate that the ads influenced any class members' enrollment decision, and they didn't influence Plaintiff's. The Motion does not demonstrate what laws apply to any class member, whether any class member has been damaged, or in what amount. Nothing in the Motion demonstrates that a class will generate common answers to any question that will drive resolution of the litigation.[15] Plaintiff's failure to satisfy any of the elements of Rule 23(a) requires the denial of the Motion.

---

[15] For the same reasons, the proposed class fails the typicality requirement of Rule 23(a)(3). Typicality is met when the class's "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse–AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). That has not been shown.

IV.     **PLAINTIFF FAILS TO SATISFY EITHER FACTOR OF RULE 23(B)(3).**

A.      **Plaintiff Fails to Show that Common Questions of Law or Fact Predominate.**

Individualized issues predominate over common ones in this case. The Motion does little to address the individualized issues in this class action, limiting the argument to two points: that liability determinations and damages are both common. Dkt. 51 at 15-17. Neither argument is valid.  The Motion's application of predominance flows from three assumptions: that Massachusetts law applies to all class members, that all saw and were swayed by the same ads, and that all are entitled to their full tuition, fees, and costs, placing the value of the Saba education at zero.  None of these assumptions is true, and problems with those assumptions prevent Plaintiff from satisfying even the looser standards of Rule 23(a)'s inquiry. Under Rule 23(b)(3)'s exacting predominance inquiry, they fare even worse.

1.      **Varying Applicable Liability Standards, Statutes of Limitation, and Individualized Tolling Questions Prevent Predominance.**

Plaintiff cannot demonstrate that Massachusetts law applies to any class member, even herself. The laws of the states and countries in which class members took action in reliance on Saba's representations (if they saw any representations) apply, not Massachusetts law. *See supra*, § I, B. Plaintiff fails to identify those places or discuss whether variation in those laws affect predominance. Some of those laws prohibit class actions. Some require a showing of reliance. The states employ a variety of limitations periods, some of which can be tolled and some cannot.

Although the Motion casually asserts that "any issues presented by the statute of limitations … do not prevent certification," Dkt. 51 at 17, fn. 36, it makes no argument to demonstrate why they do not. The First Circuit, affirming this Court's analysis of limitations problems in *Mowbray*, explicitly noted that "limitations defenses are appropriate for consideration in the class certification calculus" and "should be considered in making class certification decisions." 208 F.3d at 295; *see In re Nexium*, (same). Even if the "discovery rule" were available universally and had been pled in this case, application of it to the class would require an individualized inquiry of every class member to

determine when that class member discovered that Saba's USMLE Step 1 pass rate does not include those who do not take the test, then application of that discovery date against that state's limitations period, if that state allows tolling under the discovery rule. A "necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3)." *Mowbray*, 208 F.3d at 296. While this Court and the First Circuit found that weight overcome by the plaintiffs in that case, the Motion does nothing to overcome it.

      2.      **Plaintiff Has Failed to Present Any Cognizable Theory of Damages that Could Apply to the Proposed Class, Which Prevents Predominance.**

The Motion presents no theory of damages other than a statement that the "proposed class seeks to recover the total amount of tuition, fees, and costs paid to Saba for attendance." Dkt. 51 at 16. It contains no analysis, no expert opinion, nor the amount that Plaintiff herself paid to attend Saba.

      a.      **Plaintiff's Damages "Theory" is Incapable of Classwide Measurement.**

Rule 23(b)'s predominance element "requires, in part, that plaintiffs establish at the class certification stage "that damages are capable of measurement on a classwide basis" based on a methodology that is "just and reasonable" rather than "speculative." *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 64 (D.N.H. 2019), citing *Comcast*, 569 U.S. at 34-36. Any "model supporting a plaintiff's damages case must be consistent with its liability case" and "show that their damages stemmed from the defendant's actions that created the legal liability." *Id*. The Motion states that damages "will be calculated using a common methodology," Dkt. 51 at 16, but none is provided. Without it, the Motion fails. The Motion instead requires the court to value a Saba education as worthless, having a value of zero. The thousands of practicing doctors with Saba degrees, including three who Plaintiff identified as class members, might disagree. So might their patients. Plaintiff even agrees "yes, there was an educational value." Pl. Dep. 188:14–189:15. The Motion does not attempt to determine that value.

Plaintiff admits that if she had passed her classes, she "obviously wouldn't say your basic

sciences course work was worthless," Pl. Dep. 176:4-8, and that her putative "class doesn't include these students" who passed the Step 1 Exam because "they were able to take the USMLE and get their degree." Pl. Dep. 170:8-19. Her damages theory therefore depends upon how well she and other class members performed[16] in medical school. Perhaps no fact demonstrates the problem with Plaintiff's damages theory better than transfer students.[17] Those students transferred their Saba credits to another school, lowering the cost of an education at that school. In *In re Nexium*, the Court reviewed extensive expert testimony evidence of damages. *See* 297 F.R.D. at 183. Here, Plaintiff's "analysis" of damages is simply "the total amount of tuition, fees, and costs paid to Saba for attendance." Dkt. 51 at 16, placing the value of the education at zero. As discussed above, it is not.

The damages theory presented in the Motion relies solely upon *Commonwealth v. Corinthian Colleges, Inc.*, No. 2014-1093-E (Mass. Super. Ct. Aug. 1, 2016), an unreported opinion from an uncontested case brought by the Massachusetts Attorney General under Section 4 of Chapter 93A. It was brought against a defunct school for restitution of loans given by to its students in Massachusetts. The Motion neither attaches the court's order, nor explains why it applies. The case was not a class action, and the court not only found affirmative misrepresentations by the defendant about probability of employment, guaranteed jobs and earning potential, but relied upon a thorough expert analysis of damages. *See Corinthian Colleges* Court Order, attached as **Ex. 5** to Evans Declaration. None of these elements is present here, and *Corinthian Colleges* cannot serve as a magic wand to sweep aside the requirement of a damages model at class certification.

Having presented no damages model at all, the Motion fails for this reason alone.

---

[16] That performance itself is an individualized inquiry.  Plaintiff admits she missed class often enough that she "was given warnings when she was approaching" the maximum allowed number of absences in a class "more than once". Pl. Dep. 127:1-12. When she failed a class, rather than retake the class she "just created a study schedule for myself" and failed the course again, acknowledging in contemporaneous text messages to a friend that she "knew I wasn't going to [pass] because honestly I didn't study like I should have." Pl. Dep. 126:6-9, 134:6-16; *see* Text Messages, attached as **Ex. 4** to Evans Declaration.

[17] Plaintiff's proposed class includes students who voluntarily withdraw (Pl. Dep. 169:8-12), transfer to other medical schools (*id.* 169:13-17), and are dismissed for nonacademic reasons such as misconduct. Pl. Dep. 169: 18-22.

  **b.**  **Plaintiff Cannot Show a Causal Connection Between the Allegedly-Deceptive Advertisements and Any Injury by Her or the Class.**

As discussed above, Plaintiff does not attempt to show a causal connection between the advertisements and any injury to Plaintiff or the class she seeks to represent. *Shaulis*, discussed above, notes that a statutory violation "does not itself "satisf[y] the injury requirement of c. 93A, § 9," and hence, does not "automatically entitle[ ] the plaintiff to at least nominal damages (and attorney's fees)" under Chapter 93A. 865 F.3d at 10-11. To prove a claim, any class member must show "a causal connection between a deceptive act and a loss to the consumer" which is "an essential predicate for recovery." *Hershenow*, 445 Mass. at 791; *see also Tomasella*, 962 F.3d at 71.

Plaintiff cannot prove a causal connection here for herself, *see supra* § II, B, and it is unlikely that any class member could. Even if they could, it would be a highly individualized inquiry. Plaintiff pled nothing she bargained for that she did not receive. She received education and class credits, and she could have transferred those credits if she tried. Although her Complaint suggests that every Saba student should take (and pass) the USMLE Step 1 Exam, Plaintiff acknowledges this is not true. Plaintiff understood that "Step 1 was an exam that you took after completing the basic science portion of the degree" and that "not everyone completes the basic science program." Pl. Dep. 114:13-19. And she understood that this is "true at every university," that "if someone doesn't complete the basic science program, then necessarily they wouldn't reach the Step 1." *Id.* 114:20-115:2. She agrees that "attrition happens in all medical schools," Pl. Dep. 184:14-16, and that none of Saba's ads or emails contained a guarantee. *Id.* 164:1-4.

*Douglas v. EF Inst. for Cultural Exch.*, No. 20-cv-11740-DJC, 2024 WL 3070251 (D. Mass. June 20, 2024) applies here. In *Douglas*, parents brought claims against operators of educational group tours under 93A, after cancellation of tours amidst COVID-19. *See id.* at *2-3. Plaintiffs asserted a *per se* violation of 93A due to the contractual provisions that purported to waive travelers' right to a full refund of tour fees. *Id.* at *5. The court denied certification for several reasons, among them that

individual issues predominated with respect to causation. *Id.* at *11. As the court observed, the plaintiff must show foreseeability and a causal connection between the deception and the loss. *Id.* at *12 (citing *Heller Fin. v. Ins. Co. of N. Am.*, 410 Mass. 400, 409 (1991). Finding that individual issues predominate, the court found reason in to doubt whether, but for the terms and conditions, all class members would have acted differently, noting "travelers canceled for a variety of reasons."[18] *Id.*

Plaintiff's individual and class claims suffer from the same infirmity. Plaintiff admits that early enrollment, not the USMLE Step 1 pass rate, was "the most important factor about Saba" in her decision to enroll. *See supra* § II, B; Pl. Dep. 55:13-55:23; 95:23-96:2. Likewise, Plaintiff admits that she does not know "what was important to individual class members to their decision to enroll in Saba." Pl. Dep. 198:13-198:17. Plaintiff admits that "class members could have decided to attend Saba for reasons entirely unrelated to Step 1" (Pl. Dep. 200:20-200:24), and acknowledged it is possible putative class members could have decided to enroll at Saba due to its residence placement rates, geographic location, and/or connections of family or friends to Saba. *Id.* 201:1-201:13. Thus, individual issues as to causation are bound to predominate and class certification is improper.

### B.   Plaintiff Fails to Show that A Class Action is Superior to Other Available Methods For Fairly and Efficiently Adjudicating the Controversy.

The four matters pertinent to a Rule 23(b)(3)'s superiority finding include: class members' interests in individually controlling the prosecution of separate actions; the extent and nature of litigation concerning the controversy already begun by class members; the desirability of concentrating litigation of the claims in the forum; and the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D). Plaintiff fails to establish any of these. The Motion's brief treatment of superiority adds little to its brief treatment of predominance. It similarly relies upon assumptions that every claim will

---

[18] In reaching its decision, the Court rejected the plaintiffs' citation to *Aspinall* in support of their argument that that Chapter 93A causation is determined according to an "objective" test, finding that the SJC has moved away from a *per se* concept of injury under Chapter 93A. *Id.* at *12 n.6.

be decided under Massachusetts law, that all class members saw and were swayed by the same advertisements, and that the value of a Saba education is zero.

Plaintiff has not shown an absence of class members' interests in individually controlling the prosecution of actions or the absence of litigation begun by other class members, failing the first two elements. The "core purpose of Rule 23(b)(3) is to vindicate the claims of consumers … whose individual claims would be too small to warrant litigation." *Smilow*, 323 F.3d at 41. This core purpose is not vindicated by a class action here.  The Motion claims the absence of a strong interest by stating that "by and large, members of the proposed class are burdened with significant amounts of student debt and lack the means to effectively pay down their debt." Dkt. 51 at 19. Not a shred of evidence supports this statement.[19] The availability of attorneys' fees under Chapter 93A further warrants against class certification. *See Boggs v. Alto Trailer Sales*, 511 F.2d 114, 118 (5th Cir. 1975).

Plaintiff also claims that "many members of the proposed class would be unable to devote the time, energy and resources required to bring separate Chapter 93A lawsuits." Dkt. 51 at 19. This statement is also not only unsupported, the lawyers who filed the Motion know it is false. They are at least aware of and have spoken to another member of Plaintiff's purported class, ████████, who not only has filed an individual suit on the same basis against Saba, but recruited Plaintiff to bring this suit to them. Pl. Dep. 156:3-22; 214:24 – 215:11; *see* ████████, attached as **Ex. 6** to Evans Declaration. *See Lyon*, 194 F.R.D. 206 at 222 ("the fact that at least one putative class member resolved his claims against defendant weighs against certification.").

Plaintiff has also failed to show the desirability of concentrating the adjudication of claims in this forum, nor addressed the manageability problems of a proposed Class. A class action is superior

---

[19] An allegation of significant debt works against certification, as class actions are designed for "pool[ing] claims which would be uneconomical to litigate individually[.]" *Shutts*, 472 U.S. at 809; *see also Amchem*, 521 U.S. at 617 ("the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all"); *Lyon*, 194 F.R.D. 206 at 222 (finding a class action lawsuit was not the superior method where plaintiff asserted damages exceeding $100,000 per person).

if it will "achieve economies of time, effort, and expense, and promote" uniformity of decision "without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action." *Id.* Additionally, "to determine whether a class certified for litigation will be manageable, the district court must at the time of certification offer a reasonable and workable plan for how that opportunity will be provided in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues." *In re Asacol*, 907 F.3d at 58.

Plaintiff wholly fails to comply with these policies and requirements. She claims that class members have significant amounts of student debt, which contravenes the purpose of class actions to litigate small claims that would otherwise be difficult to litigate. Additionally, all claims are individualized ones that cannot be calculated on a classwide basis, as discussed above. Instead, all Plaintiff claims is that "a straightforward formula based on Defendants' records can easily be applied to determine the amount of tuition, fees, and costs paid to Saba by each member of the class." Dkt. 51 at 11. In *Loughlin*, such a statement was deemed insufficient to show that the calculation of damages would be manageable. *See Loughlin*, 2024 WL 1347092 at *13. The same is true here.

Plaintiff meets none of the four factors that demonstrate superiority under Rule 23(b)(3). For this reason, and all the others listed above, her certification Motion fails.

## CONCLUSION

Defendants Saba and R3 respectfully request that the Court deny Plaintiff's Motion for Class Certification, and award such other and further relief as the Court finds just and appropriate.

July 19, 2024                          SABA UNIVERSITY SCHOOL OF
                                       MEDICINE, and R3 EDUCATION, INC.,

                                       */s/ Daryl J. Lapp*
                                       Daryl J. Lapp, BBO # 554980
                                       daryl.lapp@lockelord.com
                                       Elizabeth H. Kelly, BBO # 672277
                                       liz.kelly@lockelord.com
                                       LOCKE LORD, LLP
                                       111 Huntington Avenue, 9th Floor
                                       Boston, MA  02199
                                       617.239.0100

                                       Dale A. Evans, Jr., (*pro hac vice pending*)
                                       dale.evans@lockelord.com
                                       LOCKE LORD, LLP
                                       777 South Flagler Drive – East Tower Suite 215
                                       West Palm Beach, FL  33401
                                       561.820.0248

                                       Michael J. McMorrow (*pro hac vice pending*)
                                       michael.mcmorrow@lockelord.com
                                       LOCKE LORD, LLP
                                       111 S. Wacker Drive
                                       Chicago, IL 60606
                                       312.443.0246

**CERTIFICATE OF SERVICE**

I certify that on July 19, 2024 this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

*/s/Daryl J. Lapp*
Daryl J. Lapp

## APPENDIX A
### (*Cases Cited in Plaintiff's Motion*)

The following cases cited by Plaintiff all pled classes under federal substantive law: *In re Relafen Antitrust Litigation*, 218 F.R.D. 337, 341 (D. Mass. 2003); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013); *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013); *Glass Dimensions, Inc. v. State St. Bank & Tr. Co*., 285 F.R.D. 169, 172 (D. Mass. 2012); *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 267 (2014); *In re Bos. Sci. Corp. Sec. Litig*., 604 F. Supp. 2d 275, 282 (D. Mass. 2009); *In re New Motor Vehicles Canadian Exp. Antitrust Litig*., 522 F.3d 6, 12 (1st Cir. 2008); *McCuin v. Sec'y of Health & Hum. Servs*., 817 F.2d 161, 166 (1st Cir. 1987); *Vara v. DeVos*, No. CV 19-12175-LTS, 2020 WL 3489679, at *1 (D. Mass. June 25, 2020).

The following cases cited by Plaintiff all pled single-state classes: *Aspinall v. Philip Morris Companies, Inc*., 442 Mass. 381, 383 (Mass. 2004); *Matamoros v. Starbucks Corp*., 699 F.3d 129, 138 (1st Cir. 2012); *Gonzalez v. XPO Last Mile, Inc*., 579 F. Supp. 3d 252, 257 (D. Mass. 2022); *Ruiz v. NEI General Contracting, Inc*., 2024 WL 869445, at *8 (D. Mass. 2024); *Costa v. FCA US LLC*, 2022 WL 18910359, at *12 (D. Mass. 2022); *Feeney v. Dell Inc*., 454 Mass. 192, 208, 908 N.E.2d 753, 767 (2009); *Hogan v. InStore Group, LLC*, 512 F. Supp. 3d 157, 186 (D. Mass. 2021); *Ouadani v. Dynamex Operations East, LLC*, 405 F. Supp. 3d 149, 160 (D. Mass. 2019); *Tigges v. AM Pizza, Inc*., 2016 WL 4076829, at *2 (D. Mass., 2016); *Lannan v. Levy & White*, 186 F. Supp. 3d 77, 84 (D. Mass. 2016); *Tyler v. Suffolk Cnty*., 253 F.R.D. 8, 9 (D. Mass. 2008); *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). *Andrews v. Bechtel Power Corp*., 780 F.2d 124, 129 (1st Cir. 1985) and *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 328 (1980) both pled single-state classes under federal law.

The following cases cited by Plaintiff all involved class action settlement hearings, and not contested certification motions: *Amchem*, 521 U.S. 591; *In re M3 Power Razor System Marketing & Sales Practice Litigation*, 270 F.R.D. 45 (D. Mass., 2010); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 330 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015); *Duhaime v. John Hancock Mut. Life Ins. Co*., 177 F.R.D. 54, 57 (D. Mass. 1997)

In *Smilow v. Sw. Bell Mobile Sys., Inc*., 323 F.3d 32, 35 (1st Cir. 2003), the court certified a class of "Massachusetts and New Hampshire residents who subscribed for Cellular One services under this contract." The First Circuit did not address any choice of law argument. In the case below, the Defendant did not argue that any different law should apply to the claims of the Massachusetts and New Hampshire residents. *See Smilow v. Sw. Bell Mobile Sys., Inc*., 200 F.R.D. 5, 6 (D. Mass. 2001), vacated and remanded (July 12, 2001); *Smilow v. Sw. Bell Mobile Sys., Inc.*, No. CIV.A. 97-10307REK, 2002 WL 34216846, at *1 (D. Mass. Apr. 10, 2002), rev'd and remanded, 323 F.3d 32 (1st Cir. 2003).