UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, Individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SABA UNIVERSITY SCHOOL OF MEDICINE and R3 EDUCATION, INC.,<br><br>*Defendants*. | Case No. 1:23-cv-12002<br><br>Honorable William G. Young |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS

Pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 37 and Local Rule 37.1 of the United States District Court for the District of Massachusetts, Plaintiff Natalia Ortiz files this memorandum of law in support of her motion to compel Defendants Saba University School of Medicine and R3 Education, Inc. to produce non-privileged documents discussing or referencing *FTC v. St. James School of Medicine,* No. 1:22-cv-1919 (N.D. Ill.). Defendants' internal communications about the *St. James* litigation—which was filed 1.5 years prior to this case and contains substantially similar allegations about misleading USMLE passage rates by a competitor Caribbean medical school—are relevant to (among other things): (i) Saba and R3's apparent defense that their USMLE misrepresentations were consistent with industry standards and (ii) Plaintiff's allegation of Defendants' knowledge that it was publishing misleading USMLE rates, constituting a willful and knowing violation within the meaning of Mass. Gen. Laws Ann. ch. 93A, § 9(3). The parties have conferred multiple times regarding this discovery dispute but, as set forth in the Local Rules 7.1 and 37.1 certifications below, are unable to reach a resolution.

1

I.   **BACKGROUND**

   A.  ***FTC v. St. James School of Medicine***

On April 14, 2022, approximately 1.5 years before Ms. Ortiz filed the complaint in this case, the Federal Trade Commission ("FTC") filed a lawsuit against a different Caribbean medical school, St. James School of Medicine. Akin to Plaintiff claims here, the FTC alleged that St. James' USMLE Step 1 passage rate representations were false and misleading because the school did not disclose the substantial number of students who enrolled but did *not* sit for the test. Specifically, the FTC alleged:

> 19. In their sales calls, presentations, and marketing materials, Defendants represent that the first time USMLE Step 1 pass rate for SJSM students is very high. For example, Defendants distribute a brochure at their open houses that states: "96.77% FIRST TIME USMLE STEP 1 PASS RATE" and "ST JAMES IS THE FIRST AND ONLY MEDICAL SCHOOL TO OFFER A USMLE STEP 1 PASS GUARANTEE." During an open house, the presenter echoed this claim by stating that SJSM had a "USMLE Step 1 pass rate of 97%" in the preceding year and "96% pass rate for the USMLE Step 2." HRDS admissions staff have claimed to consumers that SJSM has a "94% first time pass rate." PowerPoint slides from Defendants' open house presentation also refer to the "USMLE Step 1 Guarantee."
>
> 20. In fact, the USMLE pass rate is lower than touted, and lower than that reported by U.S. and Canadian medical schools. Since 2017, only 35% of Saint James students who have completed the necessary coursework to take the USMLE Step 1 exam passed the test. Defendants allow only students that first pass a National Board of Medical Examiners ("NBME") practice exam, and meet other criteria, to take the USMLE Step 1 exam. They disclose this fact in inconspicuous places on their website and in the middle of a student handbook provided only after payment of reservation fees, but do not mention it when touting the purported high USMLE Step 1 exam rate or otherwise bring it to consumers' attention. Even when limiting the pool to those who meet Defendants' undisclosed or inadequately disclosed criteria, the rate is lower than advertised. Defendants are unable to provide a reasonable basis for the statement that the first time USMLE Step 1 pass rate for SJSM students is 94% or higher.
>
> 21. The first time USMLE Step 1 pass rate is a material fact for consumers. Consumers routinely questioned [ ] admissions staff about the first time USMLE Step 1 pass rates for SJSM students. If consumers knew that the pass rate for SJSM students was lower than advertised, then it would likely affect their conduct,

including whether to attend SJSM.

*See* Exhibit 1 to the Declaration of John Robison Alford, Jr. ("Alford Decl."), ¶¶ 19-21. The FTC announced settlement of the case on November 3, 2022.[1]

### B. Defendants' Refuse to Produce Internal Communications Relating to the *St. James* Litigation

On February 26, 2024, Plaintiff served her First Request for Production of Documents, which included a request for: "[a]ll documents discussing or referencing *FTC v. St. James School of Medicine,* No. 1:22-cv-1919 (N.D. Ill.)." Exhibit 2 to Alford Decl., Request 9 at p. 7. On April 5, 2024, Defendants objected to this request "on the grounds that it is overly broad, unduly burdensome, seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of the case, and seeks documents that are publicly available." *Id.* at pp. 7-8. Defendants stated that they "were not parties to the referenced lawsuit, and any discussions related to the referenced case would not make any fact of consequence to the claims in this lawsuit more or less likely." *Id.* Defendants further objected to the request "to the extent it seeks documents protected from discovery by the attorney-client privilege or work-product doctrine, and/or protected by FERPA." *Id.* Defendants would therefore "withhold documents responsive to this Request." *Id.*

On April 24, the parties met and conferred to discuss Defendants' written discovery responses. Exhibit 3 to Alford Decl. On April 29, Plaintiff sent a letter to Defendants explaining why documents discussing or referencing *St. James* were relevant. Plaintiff explained that "[i]n *St. James*, filed nearly 1.5 years prior to this case, the FTC made substantially similar allegations

---

[1] *See* FTC Press Release, "Federal Trade Commission Returns More Than $830,000 to Students Misled by Saint James Medical School's Deceptive Marketing Claims" (Nov. 3, 2022), *available at:* https://www.ftc.gov/news-events/news/press-releases/2022/11/federal-trade-commission-returns-more-830000-students-misled-saint-james-medical-schools-deceptive.

3

regarding misleading USMLE Step 1 passage rates at a different for-profit Caribbean medical school" and that, among other things, "any communications discussing or referencing *St. James* could be relevant to whether the USMLE representations here were 'willful or knowing' under Chapter 93A § 9(3)." Exhibit 4 to Alford Decl., at p. 4. Counsel reminded Defendants that Plaintiff had "proposed reaching an agreement on search terms to alleviate Defendants' objection regarding burden related to this request," and that, "to the extent Defendants claim any documents are privileged, they must so indicate on a privilege log." *Id.* Plaintiff's counsel asked "whether Defendants intend to stand on their objection." *Id.* On May 10, Defendants responded that they would "stand on their objection" to the request. Exhibit 5 to Alford Decl. at p. 6.

On May 17, Plaintiff sent an email to Defendants further explaining that "discussions as to how [the] *St. James* [litigation] may affect [Defendants'] business model, specifically as to advertising Step 1 passage rates, are categorically relevant to [Plaintiff's] claims." Exhibit 3 to Alford Decl. Plaintiff asked Defendant to "reconsider their objections before we are required to seek Court intervention." *Id.*

On June 6, Plaintiff again followed up on this dispute, requesting that Defendants advise whether they will search for and produce documents concerning the *St. James* litigation. Exhibit 6 to Alford Decl. On June 14, counsel had a telephonic conference to discuss pending discovery disputes, including the production of documents related to the *St. James* litigation. During the conference, counsel for Defendants stated that they would consider running search terms for communications relating to *St. James* that did not include attorneys. *See* Exhibit 7 to Alford Decl.

On July 8, Plaintiff requested an update regarding whether Defendants "have performed this search and the results thereof, or if Defendants are declining to conduct such a search." *Id*. On July 11, 2024, Defendants responded: "We have thought about your idea and we stand on our

4

objections. If there are non-privileged communications about a different lawsuit against a different school that our clients have nothing to do with, they have nothing to do with this case." *Id*.

II.   **ARGUMENT**

  A. **Legal Standard**

Under Rule 26(b)(1), a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). On a motion to compel, the party "seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Roy v. FedEx Ground Package Sys., Inc.*, 675 F. Supp. 3d 140, 144 (D. Mass. 2023) (internal quotations omitted). "At the discovery stage, relevance should be broadly construed, and information should be deemed discoverable if there is any possibility it might be relevant to the subject matter of the action." *Id.* (internal quotations omitted). "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, *any issue that is or may be in the case*." *LaRoe v. Div. of Bureau of Special Educ. Appeals*, No. 3:21-CV-30020-MGM, 2024 WL 1093052, at *2 (D. Mass. Mar. 13, 2024) (emphasis added) (citing *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (explaining that relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"). Once a "showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." *Roy*, 675 F. Supp. 3d at 144 (internal quotations omitted).

### B. Non-privileged Documents Discussing or Referencing the *St. James* Litigation are Relevant to Plaintiff's 93A Cause of Action

Defendants focus their objections on relevance, arguing that "non privileged communications about a different lawsuit against a different school that our clients have nothing to do with … have nothing to do with this case." Exhibit 7 to Alford Decl. To the contrary, these communications are relevant to multiple "issue[s] that [are] or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 351.

*First,* one of the defenses Saba and R3 appear to be asserting is that Saba's USMLE representations were consistent with standard practice in the industry.[2] Defendants cannot on the one hand place the USMLE representations of other medical schools at issue as a defense while, on the other, claim that communications about litigation over the USMLE representations at St. James are off limits. Because Defendants have placed the representations of other medical schools at issue, the narrow band of *St. James* documents that Plaintiff seeks are both relevant and proportional to the needs of the case.

*Second,* at issue in this case is whether Defendants' conduct was "willful or knowing" as defined by Mass. Gen. Laws Ann. ch. 93A, § 9(3).[3] Defendants' communications regarding the

---

[2] For example, in their Motion to Dismiss, Defendants point to the alleged publication of attrition rates by other medical schools, specifically Caribbean medical schools, to suggest that Defendants' published first-time passage rates would not cause a reasonable consumer to believe Saba's misrepresentations:

> The fact that medical schools including Saba have some degree of attrition, and thus not all medical students will sit for the Step 1 exam is both self-evident and easily ascertained. *Ample information is available online about attrition rates of medical schools generally and Caribbean medical schools specifically*, including Saba. Simply put, a reasonable consumer could not have inferred from Saba's statements about its first-time pass rates that all or virtually all students who enroll at Saba will take the USMLE Step 1 test.

Dkt. 16 (Mot. to Dismiss) at pp. 5-6 (emphasis added).

[3] *See* Dkt. 1 (Compl.) ¶ 122 ("Defendants' unfair and deceptive acts or practices, as alleged herein, were willful or knowing violations of Mass. Gen. Laws Ann. ch. 93A, § 2, within the meaning of Mass. Gen. Laws Ann. ch. 93A, § 9(3).").

6

FTC's pursuit of St. James for misleading USMLE representations bear directly on Defendants' knowledge and intent regarding the USMLE representations at issue in this case. Specifically, non-privileged communications about the *St. James* litigation could reveal that Defendants were aware that Saba's USMLE representations were similarly deceptive, but decided to continue them anyway. It is further plausible that Defendants may have discussed whether the risk of liability arising from their USMLE representations outweighed the marketing, recruiting, and financial benefits of continuing to make the same USMLE representations. In short, while Defendants are correct that *St. James* is a "different lawsuit against a different school," that fact has no bearing on whether Defendants' internal communications about the case are relevant to multiple open issues in this case.

### C. Defendants' Other Objections Lack Merit and Have Not Been Raised by Defendants at the Discovery Meetings

Apart from relevance, Defendants' other objections do not appear to be serious, as Defendants have not raised them after including them in their initial boilerplate objections. *See* Exhibits 3, 6, and 7 to Alford Decl. Specifically, in their objections Defendants state, in addition to relevance, that Plaintiff's request is overly broad, unduly burdensome, seeks documents that are publicly available, and encompasses documents protected by attorney-client privilege, the work-product doctrine, and/or protected by FERPA. Exhibit 2 to Alford Decl., at pp. 7-8. The internal communications about *St. James* that Plaintiff seeks here are clearly not "publicly available" and Plaintiff is not seeking any privileged documents or documents with student information that would be subject to FERPA (if any responsive documents are privileged, Plaintiff expects to receive a privilege log so stating).

Plaintiff's targeted and narrow request is also not overbroad or unduly burdensome. Plaintiff is not asking for all documents referring to or discussing the St. James School of Medicine,

but rather seeks only documents specifically referencing or discussing the *St. James* litigation. To that end, at the June 14, 2024 meet and confer, the parties discussed potential search terms that would target documents relating to the *St. James* litigation while excluding potentially privileged communications with attorneys. During the meet and confer process, Defendants did not claim that this request was overly broad or unduly burdensome, did not argue that the proposed search terms were too broad, and have not argued that there is anything Plaintiff can or should do to further narrow the request.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion and compel Defendants to produce all documents discussing or referencing *FTC v. St. James School of Medicine,* No. 1:22-cv-1919 (N.D. Ill.).

**DATED:** July 22, 2024

Respectfully Submitted,
*/s/ Patrick T. Egan*

BERMAN TABACCO
Patrick T. Egan (BBO #637477)
Christina L. Gregg (BBO#709220)
One Liberty Square
Boston, MA 02109
(617) 542-8300
pegan@bermantabacco.com
cgregg@bermantabacco.com

MAYNARD NEXSEN PC
Margaret M. Siller (admitted *pro hac vice*)
1131 4th Avenue South, Suite 320
Nashville, TN 37210
(629) 258-2253
msiller@maynardnexsen.com

NATIONAL STUDENT LEGAL
DEFENSE NETWORK
Alexander S. Elson (admitted *pro hac vice*)

        1701 Rhode Island Ave. NW  
        Washington, DC 20036  
        (202) 734-7495  
        alex@defendstudents.org

*Counsel for Plaintiff Natalia Ortiz*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

DATED: July 22, 2024        */s/ Patrick T. Egan*  
        Patrick T. Egan