UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons,<br><br>        Plaintiff<br><br>    v.<br><br>SABA UNIVERSITY SCHOOL OF MEDICINE; and R3 EDUCATION, INC.,<br><br>        Defendants. | Civil Action No.: 1:23-cv-12002-WGY |

**DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL**

Defendants Saba University School of Medicine and R3 Education, Inc. (collectively referred to as "Saba"), oppose the Motion to Compel (the "Motion"), Dkt. 72, filed by Plaintiff. Plaintiff's Motion fails to demonstrate that the information she requests is relevant to any issue in her case, and Plaintiff makes no attempt to demonstrate that the information she requests is proportional to the needs of this case, particularly considering the thousands of documents Saba has already produced in this case. Her Motion should be denied, for the following reasons.

**<u>ARGUMENT</u>**

**I.      Plaintiff fails to demonstrate the relevance of the requested documents.**

**a.   The allegations of this case are not "substantially similar" to the *St. James* case, and any claimed similarity has already been proven false.**

To manufacture an argument that the requested documents are relevant, Plaintiff claims twice in the Motion that Saba has raised a defense of complying with industry standards. *See* Dkt. 73 ("Br.") at 1 ("Saba and R3's apparent defense that their USMLE misrepresentations were consistent with industry standards"); Br. at 6 ("one of the defenses Saba and R3 appear to be asserting is that Saba's USMLE representations were consistent with standard practice in the

industry"). Plaintiff relies, not on any pleading, but on a passage from Saba's Motion to Dismiss, as an "example" of Saba raising this defense, Br. at 6, fn. 2; however, the passage quoted from the Motion merely points out the fact that all medical schools have some degree of attrition, and points to public websites demonstrating this fact. Plaintiff confirmed this fact in her own deposition, testifying that "attrition happens in all medical schools." *See* Pl. Dep. Transcript ("Tr."), attached hereto as **Exhibit A**, at 184:14-16. And, to the extent Plaintiff seeks discovery about "industry standards," the relevant discovery would be advertisements from similarly situated schools, not internal communications between Saba representatives about a single lawsuit.

The remainder of Plaintiff's argument rests on a different falsehood—the notion that this case "contains substantially similar allegations about misleading USMLE passage rates" as the *St. James* case. It does not. In that case, St. James University actually made <u>false</u> claims about the passage rate of its students on the USMLE Step 1 exam, <u>guaranteed</u> the success of its students on that test, used <u>high-pressure sales tactics</u> through its <u>telemarketing operations</u>, and signed students to <u>private loans</u> using terms that waived students' legal rights in connection with those loans.[1] Despite Plaintiff's futile and unabashed efforts throughout this litigation to liken the facts of this case to the *St. James* case, none of those things happened here, and none of those things are currently alleged to have happened here.

---

[1]  *See Fed. Trade Comm'n v. Human Resources Dev. Svc., Inc.*, No. 1:22-cv-01919 (N.D. Ill.), Dkt 1, ¶¶ 15 (Defendants "utilize high-pressure sales tactics" and "place outgoing telephone calls to contact potential students and conduct a sales pitch for SJSM enrollment"); 19 ("Defendants distribute a brochure at their open houses that states: '96.77% FIRST TIME USMLE STEP 1 PASS RATE" and "ST JAMES IS THE FIRST AND ONLY MEDICAL SCHOOL TO OFFER A USMLE STEP 1 PASS GUARANTEE … PowerPoint slides from Defendants' open house presentation also refer to the "USMLE Step 1 Guarantee."); 28 ("Defendants do not provide a legally mandated Holder Rule notice in their credit agreements or Credit Practices Rule disclosure in connection with their credit agreements" which "attempt to waive consumers' legal rights"). There have never been any allegations in this case about telemarketing, high-pressure sales tactics, or private loans.

This case is nothing like the *St. James* case. There are no "false claims" here, as were alleged there. Unlike that case, all of the statements made by Saba that are at issue in this case are demonstrably true, and their truth can be demonstrated by statistics published by the same federal government that prosecuted St. James University for its false claims. In the FTC action, although St. James advertised a 96.77% first time USMLE Step 1 pass rate, "only 35% of Saint James students who have completed the necessary coursework[2] to take the USMLE Step 1 exam passed the test" ¶ 20. That is not true here. The USMLE Step 1 exam passage rates that St. James advertised, according to the FTC's Complaint, were actually untrue. The USMLE Step 1 exam passage rates that Saba uses are confirmed to be true based on documents directly from the Educational Commission on Foreign Graduates—which have been produced to Plaintiff—and they are unquestionably accurate. Unlike St. James University, Saba is authorized by the Department of Education to offer access to federally backed student loans. *See Federal School Code List of Participating Schools* (2024).[3] In order to offer students access to such loans, Saba must accurately report its USMLE Step 1 Exam test results to the Department. The USMLE Step

---

[2] Although the Complaint alleges that Plaintiff "successfully completed the requirements of the basic science curriculum," Dkt. 1, ¶ 94, her deposition testimony and her discovery responses demonstrate that this allegation was false. Plaintiff testified that she understood that she "would have to pass all of [her] basic science courses to advance" and that one of those courses is "Foundations of Clinical Medicine." Tr. 120:7-23. Plaintiff admitted that she failed Foundations of Clinical Medicine, tr. 132:20-23, and that, after failing the class a second time, she "was dismissed from the basic science program." 137:5-7. She understood that "that if a student doesn't pass the things they need to pass they are dismissed." 122:12-14. Saba's Document Request No. 43 requested that Plaintiff provide "documents concerning your successful completion of the basic science curriculum at Saba as you allege in your Complaint." After objecting that such documents "are not relevant to the claims and/or defenses asserted by any party in this Action, not proportional to the needs of the case, nor reasonably calculated to lead to the discovery of admissible evidence" (emphases added), Plaintiff admitted that she "has no documents" that support the allegation.

[3] Available at https://fsapartners.ed.gov/knowledge-center/library/federal-school-code-lists/2023-10-20/2024-25-federal-school-code-list-participating-schools-november-2023.

1 passage rates that Saba advertises are those same rates that come from the ECFMG's reports.[4]
Plaintiff contests none of this.

Unlike the *St. James* case, there were no guarantees made by Saba in this case either.
Although Plaintiff's Complaint alleges that Saba made "false guarantees of passing the United
States Medical Licensing Examination ("USMLE")," Dkt. 1, ¶ 4, and that Saba communicates to
students that "they are near certain to succeed" *Id.*, ¶ 9, Plaintiff has already admitted that neither
allegation is true. During her deposition, Plaintiff admitted that none of the ads or emails contained
a guarantee, tr. 164: 1-4, and that none of Saba's ads "contain a future guarantee of success for
prospective students." 181:5-10.  She admitted "I don't know if Saba says that, the near certain to
succeed part," tr. 173:16-17, could not "specify where it says 'near certain to succeed'
specifically," 173:20-23, and admitted "I don't know where it says that, 'near certain to succeed.'
But my lawyers helped put this together." 173:18-20 (emphasis added); *see also* tr. 162:16-18
("My lawyers have been handling that side of things" in preparing the Complaint).

The Complaint's allegation that Plaintiff applied to Saba "[b]ecause of these apparent high-
performance metrics," ¶ 76, is also demonstrably false. Plaintiff freely admitted that "a high
USMLE Step 1 first-time pass rate, that specifically was not important to me." Tr. 91:21-22
(emphasis added). And although "I thought I had what it took to pass the Step 1, but that wasn't
important to me, because to me what was important is the education you are getting in order to
take this exam." Tr. 92:17-22. The decisive factor in Plaintiff's decision to attend Saba had nothing
to do with its USMLE pass rates but was "starting early." Tr. 95:23-96:2. Although the Complaint
alleges that, if "Defendants had disclosed the truth about the number of Saba students who

---

[4] The FTC action also alleged that "the match rate for SJSM students is lower than touted, and … Defendants are
unable to provide a reasonable basis for the statement that the residency match rate for SJSM students is 83% or
higher." No. 1:22-cv-01919 (N.D. Ill.), Dkt 1, ¶ 24. Plaintiff's claims in this case do not relate to Saba's match rates,
which are also accurate.

matriculate but do not sit for the USMLE, Ms. Ortiz would not have enrolled at Saba," ¶ 84, Plaintiff's testimony demonstrates that this allegation is not true. Because plaintiff no longer contends that Saba guaranteed her success, nor could she, there is no similarity to that allegation from the *St. James* case.

The only other similarity that existed between this case was abandoned by Plaintiff as a theory of recovery long before she issued any discovery. In the *St. James* case, the FTC alleged that: "Defendants allow only students that first pass a National Board of Medical Examiners ("NBME") practice exam, and meet other criteria, to take the USMLE Step 1 exam." No. 1:22-cv-01919 (N.D. Ill.), Dkt 1, ¶ 24. Here, Plaintiff initially alleged that Saba "bar[s] students from taking the [USMLE Step 1] exam by requiring them to obtain a certain score on a Saba-administered pretest." Dkt. 1, ¶ 6. But Plaintiff explicitly abandoned that theory of the case before Saba ever filed a pleading.  In her Response to Saba's Motion to Dismiss, Plaintiff stated that:

> Saba also argues that Ms. Ortiz alleges that it misrepresented "the fact that in order to take the Step 1 exam, students first must pass the Comp Exam." (Doc. 16 at 4.) But <u>Ms. Ortiz does not claim that the failure to disclose the Comp Exam was itself a Chapter 93A violation</u>.

Pl. Opposition to Motion to Dismiss, Dkt. 25, at 7, fn.7 (emphasis added). Whether Saba's disclosure of the "comp exam" prevented its advertisements from misleading students is no longer relevant to this case, and it became irrelevant before Plaintiff ever issued any discovery.

It is a good thing that Plaintiff abandoned this theory; it is not true. Although the Complaint alleges that the "existence of this internal Saba pretest is not disclosed to potential students in Saba's advertising and promotional materials, nor is it clearly set out in its course catalog or during the first semesters of their education" Dkt. 1, ¶ 92, Plaintiff's deposition has proven that this is false. Plaintiff understood that she "would have to pass all [her] basic sciences courses to advance" and that "one of those courses in basic sciences is Foundations of Clinical Medicine."  Tr. 120:7-

15.  She admitted in her deposition that "as I found out today [at the deposition], there's a mention of a pretest in their catalog" description of that course. Tr. 167:23-24. The Catalog entry for Foundations of Clinical Medicine plainly discloses that "at the end of the course, students are administered a full-length, simulated, comprehensive exam" which is "the NBME comp exam." tr. 121:2-20.  The requirement of that "pre-test" was disclosed in that Catalog, as well as in the 2018-20 "Program of Medicine" for Saba. *See* Saba Catalog, attached hereto as **Exhibit B**, at p. 14 (*see also* Tr., Ex. 14); 2018-20 "Program of Medicine," attached hereto as **Exhibit C**, at pp. 18-19, 38 (*see also* Tr., Ex. 16).

But Plaintiff looked at none of these freely available documents. Prior to enrolling, Ortiz learned nothing about the curriculum at Saba or what courses she would be taking. Tr. 87:16-19. She clicked on none of the links in the emails she received from Saba. Tr. 90:7-13. She did not look at the courses Saba required or any medical schools she was considering "because I figured they were all going to be science based and I'll learn when I'm in school."  Tr. 59:1-13. Plaintiff refused to review any of the documents that disclose the academic curriculum at Saba before applying. She did not review the Saba View Book, tr. 90:14-17, does not remember when she first received the Saba 2018-2020 catalog, tr. 117:13-24, has never seen the Saba University School of Medicine Student Handbook, tr. 123:13-21, and has never seen the 2018-20 "Program of Medicine" for Saba. Tr. 124:3-10.

Nothing about the *St. James* case is relevant in any way to any claim that Plaintiff had pending against Saba at the time that she issued her discovery requests, and the fact that her lawyers used the FTC's complaint in that case as a guide for writing their own Complaint in this one doesn't make it relevant. Plaintiff's requests for information about Saba's internal discussions of that case

(if any exist) are not relevant to any matter at issue here. Saba properly refused to expend the time and expense of searching for such documents and performing a privilege review of them.

### b. Whether Saba's conduct was "willful or knowing" is not relevant to any claim plaintiff can make.

Plaintiff claims that: "at issue in this case is whether Defendants' conduct was "willful or knowing" as defined by Mass. Gen. Laws Ann. ch. 93A, § 9(3)." Br. at 6. It is not. Plaintiff's claim—if one exists—arises under Florida law, not Massachusetts law, as dictated by Massachusetts choice of law principles and as explained in Saba's Opposition to Plaintiff's Motion for Class Certification. Plaintiff does not live in Massachusetts and has never lived in Massachusetts. Dkt. 69, § I.C. at 3. She lives in Florida, so Florida law dictates whether she has a claim against Saba for false or misleading representations, not Massachusetts law. *Id*. at 3-4. Florida's analogous law, the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213, does not have a provision for trebling damages upon a finding of willful or knowing conduct, nor any similar provision. Recovery under Florida law is limited to "actual damages, plus attorney's fees and court costs," and attorneys' fees may be assessed against the Plaintiff if the "action is frivolous, without legal or factual merit, or brought for the purpose of harassment." Fla. Stat. §501.211(2-3). Saba's state of mind in making its advertisements is irrelevant to any claim Plaintiff can properly bring under Florida law. Because Saba's state of mind is not at issue, Plaintiff's argument that any internal documents discussing the *St. James* case bear on its state of mind is pointless.

Even if Plaintiff could bring her claim to trial under Mass. ch. 93A, the *St. James* case would remain irrelevant to the claims in this case, as would any discussions of it by Saba employees. In the *St. James* case, the school published false information. That is not at issue in this case. There is no false information in Saba's ads, and Plaintiff has pointed to nothing that Saba

has ever said that was false. The only remaining claim that Plaintiff makes is that Saba's failure to publish its attrition rate alongside its USMLE passage rate renders that rate "misleading."

It is notable that, even though the Complaint loudly alleges that Saba's USMLE Step 1 passage rates are "false" – noting Saba's alleged "false guarantees of success," Dkt. 1¶ 3, "false guarantees of passing" the USMLE Step 1 exam, *id.*, ¶ 4, that passage rates were "materially false," *id.*, ¶82, and that Plaintiff was "relying on Saba's false and misleading representations," *id.*, ¶85, the Class Certification Motion does not make those claims at all, because discovery has proven that none of them are true.

Instead, the Class Certification Motion claims that the <u>only</u> relevant question is whether Saba's representations were "deceptive or misleading in violation of Chapter 93A" Dkt. 51, at 3. Gone are the claims that Saba's representations are false. Gone are the claims that Saba guaranteed passage of the USMLE or made "guarantees of success," because those have been proven false by Plaintiff's own testimony and gone are the allegations that Plaintiff relied upon Saba's representations (*see* Dkt. 51 at 17 & fn.34) (claiming that Chapter 93A "does not require reliance" wrongly, that "students' individual circumstances or subjective motivations for enrolling have no bearing on Saba's liability"), because Plaintiff admitted that Saba's USMLE passage rate was not important to her decision.

All of these allegations in the Complaint made claims of conduct that were similar to the conduct in *St. James*, but they all have been demonstrated to be untrue, which is why Plaintiff is no longer making them. Plaintiff's counsel pled the Complaint in this case to mimic the allegations of the government's claims in the *St. James* case, hoping to draw parallels between the two. Those parallels weren't there. All of these discredited allegations from the Complaint of false passage rates and false guarantees are no longer at issue. Because the allegations that the USMLE passage

rates are false is no longer at issue, the claim in Plaintiff's motion that "any communications discussing or referencing *St. James* could be relevant to whether the USMLE representations here were 'willful or knowing' under Chapter 93A § 9(3)," Mot. at 4, holds no weight.

Representations have to be false to support a claim of willfulness or knowledge under Mass. Gen. Laws Ann. ch. 93A, § 9.  As a seminal case from this Court has noted, "merely negligent (or even grossly negligent conduct, it would seem) is not culpable in the sense relevant to this determination," and only a "<u>false</u> representation made either <u>knowingly</u> or in <u>reckless disregard for truth or falsity</u>—comes within the class of "willful or knowing."  *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1375–76 (D. Mass. 1983), *aff'd*, 740 F.2d 59 (1st Cir. 1984). The statements made by Saba could not have been made with knowledge of their falsity or reckless disregard for whether they were true – because they were not false.  Plaintiff's counsel has – wisely – backed away from their earlier allegations that Saba's published USMLE passage rates were false.  But even if they could prove that the rates were "deceptive," Br. at 7, they cannot prove that they were false.

Without a false statement, the state of mind of the defendant cannot be "willful or knowing" as to its falsity.  The Motion even alludes to this.  It claims that "communications about the *St. James* litigation could reveal that Defendants were aware that Saba's USMLE representations were similarly deceptive," Br. at 7, but again, there is no claim in either Plaintiff's Motion or in her Motion for Class Certification that Saba said anything that was false.  Without a false statement, no state of mind that Saba could have would support a finding of a willful or knowing violation of Ch. 93A, §2.  Anything that Saba's employees might have said about the *St. James* case cannot make any fact in this case more or less likely to be true.

**II.     The requested discovery is not proportional to the needs of the case.**

Federal Rule 26(b)(1) states that a party may "obtain discovery regarding any nonprivileged matter that is <u>relevant to any party's claim or defense</u> and <u>proportional to the needs of the case</u>." As shown above, the requested information is not relevant to any party's claim or defense. It is not relevant to the "needs of this case," so it cannot be "proportional" to those needs.

Plaintiff mentions nothing at all about the proportionality of the discovery requests in the Motion and makes no argument that the request is proportional to the needs of the case; the Motion can be denied on this basis alone. Proportionality considers: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As Plaintiff notes, on a motion to compel, the party "seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Roy v. FedEx Ground Package Sys., Inc.,* 675 F. Supp. 3d 140, 144 (D. Mass. 2023) (internal quotations omitted). But, "discovery related to claims that have been resolved and claims that do not exist in this case is not proportional to the needs of the case." *17 Outlets, LLC Healthy Food Corp. v. ThurKen III, LLC*, No. 15-CV-101-JD, 2016 WL 6781217, at *4 (D.N.H. Nov. 16, 2016); *see also Doe v. Emerson Coll.*, No. CV 14-14752-FDS, 2016 WL 11004384, at *2 (D. Mass. Dec. 28, 2016) (finding that Plaintiff "has not articulated how information pertaining to policies and other assaults after 2013 is relevant to a showing of deliberate indifference"); *Leader v. Harvard Univ. Bd. of Overseers*, No. 16-CV-10254-DJC, 2017 WL 8224449, at *2 (D. Mass. Dec. 22, 2017) (finding that documents "that concern policies not in effect at the time of the pertinent events in this case, and for a school that Leader did not attend, are not proportional to the needs of the case").

10

The discovery Plaintiff requests regarding internal discussions of the *St. James* case fail the last two elements of proportionality under Rule 26(b)(1)—they are not important in resolving the issues, and the burden or expense of the proposed discovery outweighs its likely benefit. As demonstrated above, any internal documents that discuss the *St. James* case are not likely to make any relevant fact in this case more or less likely. Neither argument made by Plaintiff as to their relevance is valid. Plaintiff does not claim that they would bear in any way on the truth of Saba's own advertisements about its USMLE Step 1 passage rates, which are what are at issue in this case. Plaintiff does not claim that they would make any advertisement more or less misleading or unfair, and they have nothing to do with any injury or damages that Plaintiff or any putative class member could have suffered.

The only possible relevance would be to a possible finding of willfulness that is not suggested by any other documents, not relevant under the law applicable to Plaintiff's claims—the law of Florida, the state in which Plaintiff lives, and not possible without a false statement, of which there is none here. Discovery relevant only to claims that have been resolved or do not exist are not proportional. *See Race v. Cambridge Health All.*, No. 1:23-CV-10143-JEK, 2024 WL 2330741, at *4 (D. Mass. May 22, 2024) (denying motion to compel when the requested discovery would be "at most, only tangentially relevant" to the issues in the case and the "nexus" between the claims and the request was "tenuous"). That is what Plaintiff brings here.

The "burden or expense of the proposed discovery" also weighs against proportionality here. The parties have engaged in lengthy correspondence and discussions to settle this discovery matter, and Saba has continuously acted reasonably, diligently, and in good faith to accommodate Plaintiff's requests and produce responsive documents. In response to Plaintiff's counsel's unending appetite for discovery, counsel for Saba noted that Plaintiff's any responsive documents

11

would be completely irrelevant, and the requests "are overly broad and unduly burdensome, especially accounting for your request for terms to be run over 30 custodians spanning 7 years." *See* Email from Attorney Elizabeth Kelly to Plaintiff's Counsel on June 13, 2024 (at 4:52p.m.), attached hereto **Exhibit D**. Saba has already produced more than 5,500 documents in this case comprising more than 30,000 pages, and the review of these documents has taken nearly 1,000 attorney and litigation support hours at a cost of tens of thousands of dollars. Additionally, Saba has notified Plaintiff that it is in the process of producing more sets of documents. Despite this, Plaintiff has proposed an expansion of discovery to quadruple those numbers. Adding to that burden documents that have no relevance to any matter at issue in this case and/or that will likely be privileged is not proportional to the needs of the case.

By way of illustration, this discovery matter is comparable to that in *Netherlands Ins. Co. v. HP, Inc.*, 648 F. Supp. 3d 271 (D. Mass. 2022). In *Netherlands Ins. Co.*, the court denied a motion to compel holding that documents sought by the plaintiff were irrelevant and, to the extent they had any relevancy, such relevancy would be outweighed by the burden production that would be imposed upon the defendant. 648 F. Supp. 3d at 275. In that case, the court reasoned that the information plaintiff requested about other alleged printer fires was not relevant to prove the cause of fire as to the printer in that office building, and thus decided that such information was outside the scope of discovery. *Id.* at 274–75. The court also noted that the information sought dated far back in years and was voluminous such that it would be burdensome to identify responsive documents because defendant would have to determine which of its printers contained the same components specified in the request. *Id.* at 275. The same is true here.

12

### III.     Saba's Other Objections Are "Serious" Despite Plaintiff's Protestations

Plaintiff also complains that Saba's "other objections do not appear to be serious" because they consist of "boilerplate objections" to "relevance, that Plaintiff's request is overly broad, unduly burdensome, seeks documents that are publicly available, and encompasses documents protected by attorney-client privilege, the work-product doctrine, and/or protected by FERPA." Br., at 7. Prior to searching for such documents, Saba cannot say that any of these objections are inapplicable. If any documents discussing the *St. James* matter do exist, it is likely that they implicate privileged matter. It is entirely possible that there are students who applied to or attended both schools, which would implicate FERPA, or that such documents might be publicly available, such as news articles or pleadings. And as discussed above, the requests are both overly broad and unduly burdensome. Those objections are valid. Whether a later search would render some inapplicable is beside the point.

Moreover, Plaintiff is in an odd position to raise complaints about "boilerplate objections" or what objections are "serious." Plaintiff herself objected on the basis of relevance to 15 of the 16 Interrogatories propounded by Saba, and even after revising her responses, objected to the relevance of 13 of the 16 Interrogatories. She objected to the relevance of requests seeking documents "sufficient to identify the full legal name, occupation, work and home addresses, and date of birth" of herself and the members of her putative class (Document Requests 1-2), seeking "communications between any putative class members" (10), seeking documents "concerning the money you claim your family paid for your Saba education" (41), seeking documents concerning her alleged "successful completion of the basic science curriculum at Saba" (43), and seeking documents she "identified in your answers to Interrogatories" (45).

Plaintiff objected on the basis of privilege to 45 of 63 Document requests, and explicitly limited her response to "non-privileged" documents on 13 more. She objected to 46 of the 63 Document Requests on the basis that they were "vague" and "ambiguous," as well as 13 of the 16 Interrogatories.  Plaintiff's complaint that Saba's "boilerplate objections" are not serious is itself unfounded, and a little disingenuous.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants Saba University School of Medicine and R3 Education, Inc. respectfully request that the Motion to Compel filed by Plaintiff be denied, and for such other and further relief as this Court deems just and appropriate.

August 5, 2024                                   SABA UNIVERSITY SCHOOL OF
                                                          MEDICINE, and R3 EDUCATION, INC.,

                                                          */s/ Daryl J. Lapp*
                                                          Daryl J. Lapp, BBO # 554980
                                                          daryl.lapp@lockelord.com
                                                          Elizabeth H. Kelly, BBO # 672277
                                                          liz.kelly@lockelord.com
                                                          LOCKE LORD, LLP
                                                          111 Huntington Avenue, 9th Floor
                                                          Boston, MA  02199
                                                          617.239.0100

                                                          Dale A. Evans, Jr., (admitted *pro hac vice*)
                                                          dale.evans@lockelord.com
                                                          LOCKE LORD, LLP
                                                          777 South Flagler Drive – East Tower Suite 215
                                                          West Palm Beach, FL  33401
                                                          561.820.0248

                                                          Michael J. McMorrow (admitted *pro hac vice*)
                                                          michael.mcmorrow@lockelord.com
                                                          LOCKE LORD, LLP
                                                          111 S. Wacker Drive
                                                          Chicago, IL 60606
                                                          312.443.0246

**CERTIFICATE OF SERVICE**

       I certify that on August 5, 2024, this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

                                        */s/ Daryl J. Lapp*
                                        Daryl J. Lapp

138172788