```
 1                  UNITED STATES DISTRICT COURT

 2                  DISTRICT OF MASSACHUSETTS (Boston)

 3                            No. 1:23-cv-12002-WGY

 4

 5    NATALIA ORTIZ, on behalf of herself and a
      class of similarly-situated persons,
 6                 Plaintiff

 7    vs.

 8

 9    SABA UNIVERSITY SCHOOL OF MEDICINE, et al,
                  Defendants
10

11                          *********

12

13                     For Hearing Before:
                      Judge William G. Young
14

15                  Motion to Certify a Class

16

                       United States District Court
17                     District of Massachusetts (Boston)
                       One Courthouse Way
18                     Boston, Massachusetts 02210
                       Tuesday, September 17, 2024
19

20                          *******

21

22             REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
23                 United States District Court
          One Courthouse Way, Room 5510, Boston, MA 02210
24                       rhr3tubas@aol.com

25
```

```
 1                    A P P E A R A N C E S

 2


 3   MARGARET SILLER, ESQ.
     CHRISTINA FITZGERALD, ESQ.
 4      Maynard Nexsen, P.C.
        1131 4th Avenue S, Suite 320
 5      Nashville, TN 37210
        (629) 258-2253
 6      Email: Msiller@maynardnexsen.com
    and
 7   PATRICK T. EGAN, ESQ.
        Berman Tabacco
 8      One Liberty Square
        Boston, MA 02109
 9      (617) 542-8300
        Email: Pegan@bermantabacco.com
10      For Plaintiff and class

11


12   MICHAEL J. McMORROW, ESQ.
     DARYL J. LAPP, ESQ.
13   DALE EVANS, ESQ.
        Locke Lord, LLP
14      111 South Wacker Drive, Suite 4100
        Chicago, IL 60606
15      (312) 443-0700
        Email: michael.mcmorrow@lockelord.com
16      For Defendants

17

18

19

20

21

22

23

24

25
```

```
 1            P R O C E E D I N G S
 2            (Begins, 2:50 p.m.)
 3            THE CLERK:  Now hearing Civil Matter 23-12002,
 4   Ortiz vs. Saba University School of Medicine.
 5            THE COURT:  And would counsel identify themselves.
 6            MS. SILLER:  Good afternoon, your Honor, Margaret
 7   Siller on behalf of Ms. Ortiz and the putative class.
 8            MR. EGAN:  Patrick Egan, from Berman Tabacco, on
 9   behalf of the plaintiff.
10            MS. FITZGERALD:  Christina Fitzgerald on behalf of
11   the plaintiff.
12            THE COURT:  Thank you.
13            MR. McMORROW:  Good afternoon, your Honor, Mike
14   McMorrow, Locke Lord, on behalf of the defendants Saba
15   University and R3 Education Inc., and with me today are
16   Dale Evans and Daryl Lapp of the same firm.
17            THE COURT: And good afternoon to you all.  Let me
18   take, um -- let me address some preliminary matters.
19            There's a discovery issue which I have resolved,
20   that's it for document discovery.  There's a motion to
21   strike.  The motion to strike is denied.  All right,
22   those are the preliminary matters.
23            This is the -- when is this case on for trial?
24            MS. SILLER:  February 9th, your Honor, 2025.
25            THE COURT:  All right.  So tell me what class you
```

```
 1   want -- describe the class as you would have me order
 2   it.
 3        MS. SILLER:  The class is everyone that went to
 4   Saba.
 5        THE COURT:  Starting when?
 6        MS. SILLER:  Starting from September 1st, 2017 to
 7   the present, that has not taken the USMLE.
 8        THE COURT:  All right.  Now, um -- 2017.
 9        One of the curious things -- but this may well be
10   my own ignorance.  When you read these papers, it
11   doesn't look like Ms. Ortiz, your named representative
12   here, doesn't look like she relied on this deceptive
13   advertisement at all.
14        You don't have to prove reliance in this case?
15        MS. SILLER:  Correct, your Honor, we don't have to
16   prove reliance under 93A.
17        THE COURT:  And what -- I see.  Okay.  Under 93A.
18   And so the deceptive, um -- the deceptive advertising
19   alone will do it for you?
20        MS. SILLER:  Well the causation standard under
21   Rule 23 is that it's an objective test, so would it
22   reasonably have affected a student's decision-making in
23   attending the school?
24        THE COURT:  "Would it have"?
25        MS. SILLER:  Yes.  And so -- and as we pointed out
```

1   here, this is an orchestrated campaign that was across
2   Saba's and R3 Education's digital footprint, it was sent
3   to prospective students, it was on their website, it was
4   on their --
5           THE COURT:  I understand, I've read the papers,
6   and for that I, um -- that's the only reason I interrupt
7   here.
8           Let me ask this.  And then your theory of damages
9   is because you have to pass this test that -- so people
10  who attended and never even sat for that test in order
11  to pursue and ultimately become a licensed physician,
12  your theory is those who attended didn't even sit for
13  the test and your, um, measure of damages is what they
14  paid?
15          MS. SILLER:  Correct, it's the refund of their
16  tuition fees and costs.
17          THE COURT:  All right.  How -- what about those,
18  if any there be, who, um, transferred credits and
19  credits were accepted by other medical schools, were
20  there any such people?
21          MS. SILLER:  Well, your Honor, I think we would
22  point to the *Figgy* model and its progeny in terms of the
23  fraud in the selling here, they made material
24  misstatements about the kinds of --
25          THE COURT:  No, no, but this is damages.  Damages.

```
 1   So when you -- your measure of damages is everything,
 2   and I follow it.  But if you transferred some credits,
 3   you got something?
 4         MS. SILLER:  We would disagree.  We don't --
 5   there's no value to the transfer of credits.  Under
 6   *Figgy*, you should receive a full refund with no value
 7   offsets.  That being said, the ability of these students
 8   to actually transfer to other schools is nearly
 9   impossible, they can only transfer to another Caribbean
10   school, many of which are also operated by R3 Education.
11         THE COURT:  But did it happen?
12         MS. SILLER:  Your Honor, I don't think we have
13   sufficient discovery to know how many people made --
14         THE COURT:  Suppose you win but I exclude the, um,
15   anyone who transferred credits, that they can bring
16   their own actions, is that all right?
17         MS. SILLER:  I mean we would -- we would disagree
18   with that under the case law, but, um -- because there
19   should not be any sort of value offset for any of their
20   transferred credits.
21         THE COURT:  Okay.  All right.
22         MS. SILLER:  And Dr. --
23         THE COURT:  All right.  Then how -- since you want
24   -- in essence you want a nationwide class, um, and
25   that's a real issue here.  They take issue with that.
```

1   Now the deceptive advertising, if there was deceptive
2   advertising, that originated in Massachusetts, but it
3   went far beyond the borders of Massachusetts.
4           Why -- in 93A, why should I, um, resolve that
5   nationwide class arguably can get recovery under the
6   laws of Massachusetts?
7           MS. SILLER:  Of course, your Honor.
8           The defendants contend that the place of reliance
9   is the only factor that should be considered in choice
10  of law, but this is incorrect.  First of all, if that
11  were the case, no out-of-state plaintiff could ever
12  bring a case under 93A here, and we know that
13  contradicts the case law in *Geis* and *Cristostomo*.
14          In addition, they fail to acknowledge that the
15  Massachusetts Supreme Judicial Court has adopted more of
16  a functional approach to choice of law, it's not a rigid
17  categorical rule.  And under that principle -- and under
18  that functional test, you should look to the state with
19  the most significant relationship.  And as your Honor
20  pointed out, all of the ads are submitted from here, all
21  of the, um, higher executives that approve those ads
22  reside here or are employed here.  It was a widely-
23  disseminated campaign.
24          And so we would say that Massachusetts has the
25  most significant relationship with the class here.  And

1    there is evidence, contrary to what defendant said, in a
2    contested class motion where 93A has been used to
3    certify the nationwide class.
4         THE COURT:  Thank you.
5         Other matters that you want to specifically bring
6    to my attention?
7         MS. SILLER:  No, your Honor, but we're happy to
8    address any questions.  I think the choice of law and
9    the damages are the two primary issues that the
10   plaintiffs raise.
11        THE COURT:  Thank you.  And I'll hear the
12   defendant.
13        MR. McMORROW:  Thank you, your Honor.  May it
14   please the Court, Mike McMorrow on behalf of the
15   defendants.
16        Your Honor, um, 4.3, as this Court has itself
17   stated, it requires a rigorous analysis of the factors
18   of 23(a) and 23(b)(3).  And the plaintiff simply hasn't
19   given the Court the tools to engage in that analysis.
20        The plaintiff failed to demonstrate that she meets
21   any of the factors of 23(a).  She failed to demonstrate
22   that she meets any of the factors of 23(b)(3).  She's
23   failed to demonstrate that subsequent Massachusetts law
24   should apply to the claims of these students.
25        THE COURT:  Well that's conclusory, tell me why?

1          MR. McMORROW:  The simple reason why, your Honor,
2     is that you have to go through the Section 148 of the
3     Restatement analysis of choice of law.  We are in a
4     court in Massachusetts, the Massachusetts choice-of-law
5     analysis relies.  I've cited five different cases in my
6     opposition brief, **Faherty**, **In Re Pharmaceutical Industry**
7     **Average Wholesale Price Litigation**, **Southern States**
8     **Police Beneficial Association, In Re Celexa**, and **Lexapro**
9     **Marketing Sales Litigation**, all of which went through
10    this analysis, came to the conclusion that, um,
11    Massachusetts choice of law -- Massachusetts choice-of-
12    law principles dictate that you cannot certify a
13    nationwide class under 93A.
14         And the reason behind all of those is something
15    that your Honor has said in the **In Re Relafen** case.
16    This Court said, "Because the primary aim of consumer
17    protection law is generally compensating consumers and
18    not policing corporate conduct, the more significant
19    contact -- not the only contact, not the only meaningful
20    contact, but the most significant one is the location of
21    the injury, that is the location of the sales of the
22    impaired plaintiffs."  Plaintiff cites to this best to
23    spark the idea that uniform application of 93A would be
24    appropriate, but it points in exactly the opposite
25    direction.  There are huge factors here that --

1       THE COURT: Well is it -- or does it rather, where
2  the deceptive actions and statements all took place here
3  in Massachusetts, isn't a purpose of the Massachusetts,
4  um, Consumer Protection Act, which is -- which is to be
5  broadly construed, is to protect against fraudsters?
6       MR. McMORROW: That's part of it, but the main
7  purpose of the Consumer Protection Act of Massachusetts,
8  and all of the other states, is the protection of the
9  consumers who live in those states. And the few cases
10 that the plaintiff cited that have certified a
11 nationwide class under 93A only did it in the context of
12 the settlement.
13      ***Cristostomo vs. New Balance Athletics,*** which she
14 cites, she relies on it to say that 93A provides a
15 sufficient basis for a nationwide claim. It was not a
16 class certification decision, it was a motion to
17 dismiss. As you've said five times already in this
18 court today, you have to indulge the plaintiff on a
19 motion to dismiss. You don't have to indulge the
20 plaintiff on a Rule 23 decision. It's her -- it was the
21 plaintiff's job to bring the Court the evidence to make
22 this choice of law analysis and the plaintiff simply
23 hasn't done it.
24      ***Geis vs. Nestle Waters***, the same thing, it was
25 also a motion to dismiss, um, not a contested motion.

1    *Conway vs. Planet Fitness Holdings,* she cited as
2    supporting her, um, that case itself is squarely on
3    point and it demonstrates conclusively that
4    Massachusetts law cannot apply to the plaintiffs' claim.
5    The Court applied the same Restatement analysis that we
6    talk about here, Section 148, and found that
7    Massachusetts law applied because the plaintiff lived
8    there.
9         The Court stated that the plaintiff's residency is
10   a contact of particular concern.  It's not the only
11   contact, it's not the only factor, but in every case
12   that has analyzed this under Section 148 of the
13   Restatement, whether it's in Massachusetts or other
14   states that follow Section 148 of the Restatement,
15   they've all come out the same.
16        THE COURT:  Thank you.  All right.
17        MR. McMORROW:  If your Honor would like to hear
18   about damages, um, I think we've made the point in our
19   brief.  They simply don't have a damages theory.  And
20   under --
21        THE COURT: Well it's a rather simplistic theory,
22   but they have a theory, it doesn't deal with those
23   people who may have, if any there be, um, had credits
24   accepted by some other medical school, but, um -- it's a
25   simplistic theory, but it is a theory.

1          MR. McMORROW:  Right, but it's also a theory that
2     doesn't comport with, um, *Shaulis*.
3          *Shaulis*, which is First Circuit precedent, says
4     that under 93A -- even if you assume that 93A is the law
5     that applies to everyone's claims, okay, *Shaulis* says
6     that there has to be a causal connection between the
7     act, i.e. the advertisement, and the plaintiffs'
8     damages.  Okay?  It's not -- the theory that we were
9     deceived and therefore the fact that we were deceived
10    and bought the product is our damages, that is exactly
11    what was rejected by *Shaulis*.
12         *Shaulis* says that there has to be a causal
13    connection here, and she hasn't demonstrated it, she
14    hasn't given the Court the tools to show that she will
15    be able to show a causal connection between any class
16    member and these ads.  She hasn't shown any class member
17    that saw any of the ads, she hasn't shown any class
18    member that --
19         THE COURT:  But she's right though, under 93A
20    reliance is not an element?
21         MR. McMORROW:  Reliance is not, but causal
22    connection is a -- there can be no causal connection
23    between the ads and the damages, if the class member
24    never saw the ad.  Not to mention that there's two years
25    of education and what each class member did during those

1     two years that goes into that analysis as well.
2            Plaintiff herself was not a very good student,
3     okay?  How she did in school is part of that causal
4     connection between the ad and her damages.  She said
5     herself that if she had passed her classes she wouldn't
6     have been damaged.
7            THE COURT:  All right.  Thank you.
8            MS. SILLER:  Your Honor, if I may be heard in
9     response?
10           THE COURT:  No, I don't think that's necessary
11    based on that argument.
12           Here's what we're going to do.  This is a very
13    close question here, one that I find particularly
14    difficult, and I'll make no bones about it, but I'm
15    going to allow your motion for class certification, I'm
16    going to allow it in the language that you -- you,
17    plaintiffs, propose, with a modification that the class
18    will exclude anyone who, um, (1) transferred credit to
19    another school, or (2) failed to pass a majority of the
20    classes that they took, or enrolled, otherwise I will
21    allow this.
22           This ruling is subject to, um, a written opinion.
23    The discipline of writing is an appropriate discipline
24    and I'm going to have to write this up, and I will, but
25    your time is very short here, so you're going to have to

```
 1   undertake notification of the class, as I've defined it,
 2   um, at once.  That's the ruling of the Court.
 3          Subject to the risk that when I, um -- when I
 4   write my opinion, I, um, conclude, on further review,
 5   that it just won't work and I decertify the class.  But
 6   for now, because time is of the essence, that's the
 7   order of the Court, subject to the Court's written
 8   opinion.
 9          All right, that's the order.
10          (Pause.)
11          MR. McMORROW:  Your Honor?
12          THE COURT:  Yes?
13          MR. McMORROW:  There's a procedure under Rule
14   23(f) for the, um -- for us to seek review of that
15   order.
16          THE COURT:  I deny it.
17          MR. McMORROW:  Okay, thank you.
18          THE COURT:  Which of course does not preclude you,
19   but -- well real world you people ought to be talking
20   about resolving this case, but I'm sure you are.
21   Secondary, I haven't done you out of your appeal by
22   denying it.  If you don't like the written opinion, if
23   I -- if I stick to what I have said from the bench
24   today, they'll be time to appeal and you'll have
25   something that you can pick apart.  It just seems more
```

```
 1   logical.
 2          Am I missing anything when I say that?  If you
 3   want to appeal, go right ahead and appeal, but for now
 4   it's denied.
 5          Am I making sense?
 6          MR. McMORROW:  I understand what you're saying,
 7   your Honor.
 8          May I ask another question?
 9          THE COURT:  Of course.
10          MR. McMORROW:  Okay, so you have changed the class
11   definition here, you've said that --
12          THE COURT:  I have.
13          MR. McMORROW:  -- what needs to be excluded are
14   people who, um, have transferred or had failed more than
15   half of their classes?
16          THE COURT:  That's fair.
17          MR. McMORROW:  Okay.  There are also a number of
18   students -- first of all, you would be dismissed from
19   the school if you failed significantly fewer than half
20   of your classes, this is medical school.  I think that
21   setting it at half is a little arbitrary, your Honor.
22          The second thing I would say is, um, there are a
23   number of students who simply dropped out of school for
24   a variety of reasons, um, financial, or they simply
25   didn't want to go.
```

```
 1            THE COURT:  But then they've paid less, haven't
 2   they?  And, um, so that's a difficulty that I have.
 3            You know the very first sentence in Judge Keeton's
 4   really seminal work, and I hold him as a hero judging in
 5   the American legal sentence, is this sentence:  "Judging
 6   is choice, a judge has to do that."  That's what I'm
 7   doing.
 8            MR. McMORROW:  I understand that.
 9            THE COURT:  What we're about is really the highest
10   calling of the attorney.  Arguments have been made.
11   Good briefs have been filed.  I've now dealt with it.
12   Obviously we're not sitting still, it's a dynamic.  So
13   if you have something to say, I'm writing the thing up,
14   so feel free.
15            MR. McMORROW:  Thank you, your Honor.
16            THE COURT:  Does that address what you're
17   concerned with?
18            MR. McMORROW:  Um, that partially addresses it.
19            THE COURT:  The rest of it you can put in writing.
20            MR. McMORROW:  Thank you, your Honor.
21            THE COURT:  Thank you.  Thank you all.
22            (Ends, 2:15 p.m.)
23
24
25
```

```
 1                      C E R T I F I C A T E
 2
 3          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
 4     do hereby certify that the foregoing record is a true
 5     and accurate transcription of my stenographic notes,
 6     before Judge William G. Young, on Tuesday, September 17,
 7     2024, to the best of my skill and ability.
 8
 9
10
    /s/ Richard H. Romanow 09-23-24
11  _____
    RICHARD H. ROMANOW   Date
12
```