# Exhibit A



111 South Wacker Drive
Suite 4100
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Michael McMorrow
Direct Telephone: 312-443-0246
Direct Fax: 312-896-6070
michael.mcmorrow@lockelord.com

October 7, 2024

Honorable William G. Young
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

>  **Re:    Civil Action No.: 1:23-cv-12002-WGY,** *Natalia Ortiz, et al. v. Saba Univ. Sch. of Medicine and R3 Education, Inc.*, **Mot. for Class Certification**

To the Honorable Court,

During the oral argument in this matter on September 17, 2024, the Court advised the defendants, Saba University School of Medicine and R3 Education, Inc. (collectively, "Saba") that they could submit further written support of Saba's positions on class certification before the Court enters its written order. This letter is submitted pursuant to that directive.

For purposes of this letter, we will not address the arguments Saba has already made in its submissions to the court. Saba's position that class certification should be denied on those bases is as set out therein and is incorporated herein. Nonetheless, the Court should consider the following three additional matters in its continuing consideration of the Motion for Class Certification, which the Court has indicated it is inclined to certify, and which the Court's clerk indicated has already been certified as of October 1, 2024. *See* Dkt. 102.

*First*, the Court indicated that it is inclined to apply Massachusetts substantive law, specifically Mass. Gen. L. Ch. 93A, § 2, to the claims of all members of the purported class, including students from 40 states and 13 foreign nations. For the reasons stated in Saba's Opposition, Saba respectfully disagrees with such application of Massachusetts law.

But even if the Court is inclined to apply Massachusetts substantive law to all these claims, individual limitations issues will continue to predominate. The limitations period for a Chapter 93A claim is four years from the time the claim accrues. Mass. Gen. L. c. 260, § 5A. The claim accrues "at the time injury results from the assertedly unfair or deceptive acts." *Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir. 1993); *George v. Stonebridge Mortg. Co., LLC,* 988 F. Supp. 2d 142, 150-51 (D. Mass. 2013). Plaintiff filed this suit on August 30, 2023. Dkt. 1.

Any member of the class who enrolled and began to pay tuition prior to August 30, 2019, including Plaintiff Natalia Ortiz, any other former student who began classes in the same cohort as Ms. Ortiz, and every student who began classes prior to Ms. Ortiz and her cohort have claims that are presumptively time-barred. Ms. Ortiz has pled a class that includes students from her

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

cohort (which began classes in September 2019), and the six cohorts that preceded hers: September 2017, January 2018, May 2018, September 2018, January 2019, and May 2019. The claims of all of these students are presumptively time-barred.

Plaintiff has argued that her individual claims are not time barred due to application of the "discovery rule." In her opposition to Saba's Motion to Dismiss, Plaintiff claimed that the rule "tolls the statute of limitations until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant's conduct," Dkt. 25, at 18, and claims that "when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact." *Id*. (citations omitted). Presumably, the court found that application of the "discovery rule" rendered Plaintiff's claim timely in denying the Motion to Dismiss. We noted at the time that Ortiz pled no facts to support application of such a rule, and add now that she has admitted that she was aware prior to enrollment both that fewer than all students take the USMLE Step 1 Exam and that she would need to pass all her "basic science" classes in order to take the exam.

In order for the Court to apply the "discovery rule" to prevent application of the limitations bar of Mass. Gen. L. c. 260, § 5A to every member of those seven cohorts of students, the Court would have to make an individualized inquiry of each class member to determine when that class member discovered that Saba's first time USMLE Step 1 pass rate does not include those who do not take the test. A "necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3)." *Mowbray v. Waste Mgmt. Holdings, Inc*., 208 F.3d 288, 296 (1st Cir. 2000). A mini-trial to determine the date on which each member of those seven cohorts became aware of the fact that fewer than all students take the USMLE will be required.

***Second***, plaintiff is proceeding on a theory of "purchase as injury" – she claims that she was deceived by the omission in Saba's advertisements and purchased her medical education as a result, which was allegedly worthless due to the fact that she failed out and could not sit for the USMLE Step 1 Exam. Ortiz claims that the value of the education she received was zero because of the deception. Plaintiff excluded from the proposed class all students who, in her opinion, received value from the education – all students who sat for the USMLE (most of whom graduated) – and the Court has also excluded *sua sponte* other students that it presumably determined had received value by transferring to another medical school, as well as other students who failed the majority of their classes. Thus, the measure of damages is completely subjective, in that only a portion of the deceived students have been "damaged," *i.e*., those who did not graduate, but did pass half of their classes. Thus, that portion of disappointed students, and only those students, can proceed under a theory that their education was worthless.

As an initial point, plaintiff cited no case that allowed a class to proceed under such a damages theory. All of the cases on which she relies were cited for the first time in her Reply brief – to which Saba requested, but was denied, a surreply. Had Saba been allowed a surreply, it would have pointed out that none of the cases cited by Plaintiff certified a damages theory under Rule 23.

Most of the cases Plaintiff cites were Federal Trade Commission or state Attorney General enforcement actions. They are distinguishable for a number of reasons. *Commonwealth v.*

Honorable William G. Young
October 7, 2024
Page 3

*Corinthian College*, an unreported case from Massachusetts, *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993), *F.T.C. v. Ivy Cap., Inc.*, 2013 WL 1224613, at *2 (D. Nev. Mar. 26, 2013), *F.T.C. v. Trudeau*, 579 F.3d 754, 772 (7th Cir. 2009), *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000), and *State v. Minnesota Sch. of Bus., Inc.,* 935 N.W.2d 124, 129 (Minn. 2019) were all government enforcement actions seeking restitution and had nothing to do with proof of damages in a certified class under Rule 23(b)(3). Government enforcement actions do not furnish the court with an adequate "damages" model because the FTC does not seek "damages" in enforcement litigation; it seeks fines under its authority found in Section 5(m)(1)(A-B) of the FTC Act, 15 U.S.C. §45(m)(1)(A-B). And although the FTC used to seek restitution under Section 53(a) of the Act, the Supreme Court held those attempts unconstitutional in *AMG Cap. Mgmt., LLC v. F.T.C.*, 141 S. Ct. 1341 (2021) due to the FTC's abuses of this restitutionary process. All of Plaintiff's authorities predate the Supreme Court's striking of that abusive authority. Similarly, state attorneys general do not seek "damages" in enforcement actions; they seek fines or restitution. None of these cases contemplate individual assessment of damages, as this case seeks, nor do they contemplate whether those damages can be assessed in one proceeding to a class of claimants.

None of the three privately-prosecuted cases Plaintiff cited to support her theory of damages support certification of a class either. *Killian v. Pac. Educ. Servs. Co.*, 2007 WL 1303023, at *1 (D. Haw. May 3, 2007) (emphasis added) was an individual, not class, case about an "*unaccredited institution*" affirmatively making false claims about its accreditation, and the plaintiffs demonstrated reliance upon the false statements. In *Idrees v. Am. Univ. of the Caribbea*n, 546 F. Supp. 1342, 1345 (S.D.N.Y. 1982) (emphasis added), an individual, not class, claim under common law, the court found that "AUC had falsely represented that" … the *school had a library and lab facilities*", that it lied about the number of faculty, and also about the number of classes. The student withdrew from the school less than a month after he started. And in *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 639 (S.D. Cal. 2015), the one class action Plaintiff cited, the "experiences Plaintiffs received [at an unaccredited "University" that was barred by the State of New York from calling itself a University] did not include any of the core elements (an accredited university, instructors hand-picked by Trump, one year of expert support and mentoring) they purchased." Here, none of these elements are present. Moreover, even in that case, the court *decertified* the class as to damages in the same opinion, finding that it was an inappropriate to measure damages without taking into account the defenses to those damages.

In all three of the *Killian*, *Idrees* and *Makaeff* cases, unaccredited institutions promised a wholly illusory education. Even if those cases could support the idea of a zero-value damages theory, they do not fit in a case where, as here, the educational institution is accredited by several states, the U.S. Department of Education, and the Netherlands, is in compliance with those accreditations, and has produced over 3,000 doctors licensed in the United States to practice medicine.

Both this court's further striation of the class beyond Plaintiff's initial carve-out of successful students, and the opinion of Plaintiff's own damages "expert" demonstrate that there was a value of the education even without a degree or a license. By carving out students who transferred to other medical schools, the Court is acknowledging, at a minimum, that the credits and education that those students transferred to another school had value.

Plaintiff's Reply brief, to which Saba was not allowed a sur-reply, distorted the First Circuit's holding in *Shaulis* by deceptively stating that "falsely advertising a watch as a 'Rolex' is a material misstatement about the watch's quality, *sufficient to establish injury*." Br. at 14 (emphasis added). The court did not say that last part. What the court said is that: "There is an obvious distinction there: falsely advertising a watch as a 'Rolex' is a material misstatement about the watch's quality. Shaulis alludes to what she purchased as a 'phony designer sweater' but has made no allegations that Nordstrom ever represented it as such." *Shaulis*, 865 F.3d at 12. The statements plaintiff refers to demonstrate the same here: She says that Saba represented itself as "one of the world's leading *international* medical schools" and as providing a "top-notch medical education." Br. at 14 (emphasis added).

The *Shaulis* court explicitly found that these types of statements are *not sufficient to establish injury*. It noted that courts have: "declined to find injury under Chapter 93A where the plaintiff relies entirely on her *subjective* belief as to the value received [or] were not grounded in any *objective* measure." *Id*. (emphasis added). Plaintiff's purported expert, in disparaging Saba, demonstrates the subjectivity of the damages theory the Court purports to adopt. Dr. Pinsky states, in support of Plaintiff's "Fake Rolex" theory, that she "bargained for" one of "the world's leading *international* medical schools" with a "top-notch medical education." ¶ 19 (emphasis added). His testimony supports the fact that Saba is one of the top international medical schools and demonstrates the subjectivity of the value. He states that students who transfer from Saba "are limited to *lower-tiered Caribbean medical schools* that are widely considered to provide a *lower quality medical education*" than Saba. ¶ 18 (emphasis added). By describing the transfer opportunity for failed Saba students in the manner he does, Dr. Pinsky actually demonstrates the subjectivity of the damages theory. Terms involving the "quality" of the school or the "tier" of the school are inherently subjective. His statements also inadvertently acknowledge the truth of the very statements that he and Plaintiff claim are misleading – he acknowledges that Saba is one of the top Caribbean medical schools, and he acknowledges that its medical education is better than the other, "lower-tiered" and "lower quality" Caribbean medical schools.

By certifying the class, the court would be accepting plaintiff's "purchase as injury" theory and allowing plaintiff and the class to proceed under a "full refund" model of damages. As Saba pointed out in its brief and at argument, the "purchase as injury" theory has been rejected by the Massachusetts Supreme Judicial Council and the First Circuit, both of which require a causal connection" between a deceptive act and a loss as an "essential predicate for recovery." *See Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 10 (1st Cir. 2017); *Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc*., 445 Mass. 790, 791 (2006).

This issue came up in the argument, and the Court rejected the argument that Plaintiff's failure to demonstrate that any class member saw any ad prevented recovery. During the colloquy the Court likened the argument to a "reliance" requirement, which Chapter 93A admittedly does not have. But despite there being no "reliance" requirement, there can be no *causal* connection between the advertisements and the messages if the class members did not see the advertisements. The advertisement cannot have been a cause of any class member's damages if the class member did not see it. Likewise, the advertisement cannot have been a cause of any class member's damages if it did not influence that student's decision about attending Saba. As Plaintiff

acknowledged, there are many reasons a particular student may decide to enroll in a particular medical school beyond advertisements of the school's first time USMLE Step 1 pass rate. This issue came up recently in a denial of class certification in this court in *Douglas v. EF Inst. for Cultural Exch., Inc.*, No. 20-CV-11740-DJC, 2024 WL 3070251, at *12 (D. Mass. June 20, 2024). Rejecting the same "purchase as injury" or "*per se*" injury that Plaintiff seeks to apply here, the Douglas court, noting the SJC's changing standards for liability under Chapter 93A, stated that a "plaintiff's failure to establish both factual causation and proximate causation is fatal to her Chapter 93A claim." The court denied class certification because "each class member must show both factual causation and proximate causation, individual issues as to causation are bound to predominate" including whether, but for the terms and conditions of the applicable contract, all class members would have acted differently, noting "travelers canceled for a variety of reasons."

**Third**, the declaration of Dr. William Pinsky, offered for the first time in Plaintiff's Reply Brief, does not support the arguments made in the Reply Brief, as demonstrated in the since-filed rebuttal expert report of Dr. Przemyslaw Jeziorski, filed on October 4, 2024. Dkt. 103.

Dr. Jeziorski is a Professor of Marketing at University of California, Berkeley. Dkt. 103, ¶ 1. He has a PhD in Business Administration with a focus on Economics from Stanford University and 20 years of experience as a scholar in marketing and economics. *Id.*, ¶ 2. Dr. Jeziorski is responsible for PhD graduate admissions yield and retention at Berkeley. *Id.*, ¶ 5. Dr. Jeziorski notes that the Pinsky Declaration is deficient in several areas, *Id.*, ¶ 8, some of which were also noted in Saba's Motion to Strike that declaration.

Of particular importance, Dr. Jeziorski notes that the "opportunity to pursue a degree," and not the degree itself, is the "primary educational product offered by a university," as he writes in Paragraph 16 of his expert report. Dr. Jeziorski notes that Dr. Pinsky's statement about the supposedly zero value of a partial medical education "contradicts a body of economic research" which he cites, and demonstrates several ways that students can "derive value … even without completing a degree." *Id.*, ¶ 10. Dr. Jeziorski notes that Dr. Pinsky attributes the "entire value of education to the so-called sheepskin effect" which is a "contested hypothesis within labor economics" and which Dr. Pinsky had never heard of when asked about this term in his deposition. *Id.*, ¶ 13. Dr. Jeziorski posits that the "heterogeneity in the value of education" requires damages from any possible misconduct to be "evaluated on a case-by-case basis." *Id.*, ¶ 15.

The Court's basis for certifying the class rests on an assumption that there is a standardized "attrition rate" for a medical school which must be disclosed in its advertising. Dr. Jeziorski's opinion, at Paragraphs 17-20, demonstrates the falsity of this assumption pressed by Plaintiff. Dr. Jeziorski demonstrates, as Dr. Pinsky admitted in his deposition, that "there is no uniform standard for measuring graduation and attrition rates." *Id.*, ¶ 21. He notes the complexity of measuring such a rate, *id.*, ¶ 22, and notes the lack of authority for Dr. Pinsky's assumptions about the attrition rates of U.S. medical schools, the attrition rate of Saba, and Dr. Pinsky's lack of knowledge or investigation into the attrition rates of any U.S. or Caribbean medical schools. Dr. Jeziorski notes that, due to the complexities, and the potential of any stated "attrition rate" or "graduation rate" to mislead students, "schools typically do not emphasize graduation and attrition rates in their informational and promotional materials. *Id.*, ¶ 30. He also notes that Dr. Pinsky relies on no data

Honorable William G. Young
October 7, 2024
Page 6

in his assumptions about the attrition rates of U.S. medical schools and Caribbean medical schools. *Id.*, ¶ 37.

      The Court noted during the oral argument of this Motion that class certification here is a "very close question" and "particularly difficult" to the Court. Because the Defendants were not allowed an opportunity to address the new arguments raised by Plaintiff in her reply materials on this Motion, and because the Court encouraged the Defendants during the hearing to submit further arguments regarding the class-certification in writing, we respectfully submit this letter for the Court's further consideration as it writes its opinion in this matter.

Very truly yours,

*/s/ Michael J. McMorrow*

Michael J. McMorrow