# EXHIBIT A

No. 24-8030

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

NATALIA ORTIZ,
ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Respondents,*

**v.**

SABA UNIVERSITY SCHOOL OF MEDICINE, AND R3 EDUCATION, INC.,

*Defendants-Petitioners.*

---

## OPPOSITION TO DEFENDANTS' RULE 23(f) PETITION

**On Petition for Permission to Appeal from the
United States District Court for the District of Massachusetts**
(Hon. William G. Young, No. 1:23-cv-12002-WGY)

---

Patrick T. Egan
1st Cir. Bar No. 92444
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
(617) 542-8300
pegan@bermantabacco.com

Margaret M. Siller
1st Cir. Bar No. 1214229
**MAYNARD NEXSEN PC**
1131 4th Ave. S., Suite 320
Nashville, TN 37210
(629) 258-2253
msiller@maynardnexsen.com

Daniel A. Zibel
1st Cir. Bar No. 1190437
**NATIONAL STUDENT
LEGAL DEFENSE NETWORK**
1701 Rhode Island Ave. NW
Washington, DC 20036
(202) 734-7495
dan@defendstudents.org

*Counsel for Plaintiffs-Respondents*

# Table of Contents

INTRODUCTION ............................................................................. 1

LEGAL STANDARD ....................................................................... 5

ARGUMENT ................................................................................... 6

  I.   DEFENDANTS FAIL TO SHOW AN IRRESISTIBLE
PRESSURE TO SETTLE ................................................................. 6

  II.  DEFENDANTS FAIL TO DEMONSTRATE SIGNIFICANT
WEAKNESS IN THE DISTRICT COURT'S DECISION .................. 11

    A.   Chapter 93A applies to the entire Class ................................. 12

    B.   The district court properly found that Plaintiffs' damages
theory is sound and capable of classwide measurement ................ 17

    C.   The Class suffered a cognizable injury that has a causal
connection to Defendants' deception ................................................ 19

  III. PLAINTIFFS' REPLY WAS PROPER, AND DEFENDANTS
WERE NOT ENTITLED TO A SUR-REPLY ..................................... 24

CONCLUSION ................................................................................ 25

# Table of Authorities

## Cases

*Aspinall v. Phillip Morris Cos.*, 813 N.E.2d 476 (Mass. 2004)...........3, 21

*Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86
  (1st Cir. 1996) ......................................................................24

*Bezdek v. Vibram USA*, 79 F. Supp. 3d 324 (D. Mass. 2015) .................16

*Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662
  (Mass. 1985)........................................................................13

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ......................................18

*Commonwealth v. Corinthian Colls.*, No. 2014-1093-E
  (Mass. Super. Aug. 1, 2016)................................................18

*Conway v. Planet Fitness Holdings, LLC*, 189 N.E.3d 675
  (Mass. App. Ct. 2022) ..........................................................13

*Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1
  (D. Mass. 2022) .....................................................................13

*F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) ........................18

*F.T.C. v. Trudeau*, 579 F.3d 754 (7th Cir. 2009) ....................................18

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2013 WL 5466628
  (D. Mass. Sept. 30, 2013).....................................................15

*Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020)..........15

*Garcia-Rubiera v. Calderon*, 570 F.3d 443 (1st Cir. 2009).....................20

*Geis v. Nestlé Waters N. Am., Inc.*, 321 F. Supp. 3d 230
  (D. Mass. 2018) .....................................................................14

*Hebert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362
  (D. Mass. 2019) .....................................................................16

*Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc.*, 840 N.E.2d 526
    (Mass. 2006)...................................................................22

*Holbrook v. Bos. Sci. Corp.*, 487 F. Supp. 3d 100 (D. Mass. 2020).........15

*In re Atl. Pipe Corp.*, 304 F.3d 135 (1st Cir. 2002) ...............................10

*In re Lorazepam*, 289 F.3d 98 (D.C. Cir. 2002)........................................7

*In re M3 Power Razor*, 270 F.R.D. 45 (D. Mass. 2010).....................16, 22

*In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003)..............20

*Klairmont v. Gainsboro Rest., Inc.*, 987 N.E.2d 1247 (Mass. 2013).......18

*Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631 (S.D. Cal. 2015)............18

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109
    (1st Cir. 2014) ......................................................................19

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000) ..........................18

*Omori v. Brandeis Univ.*, 673 F. Supp. 3d 21 (D. Mass 2023) ...............19

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266
    (11th Cir. 2000)..................................................................4, 7

*Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017)..........................20

*Vara v. DeVos*, 2020 WL 3489679 (D. Mass. June 25, 2020).................18

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288
    (1st Cir. 2000) ............................................................... passim

## Other Authorities

3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 7:44 (6th ed. 2024)........5

Pursuant to Federal Rule of Civil Procedure Rule 23(f) and Federal Rule of Appellate Procedure 5, Plaintiff-Respondent Natalia Ortiz and all similarly situated class members ("Plaintiffs" or the "Class") respectfully submit this Opposition to the Rule 23(f) Petition for Permission to Appeal Class Certification ("Petition") filed by Defendants-Petitioners Saba University School of Medicine and R3 Education, Inc. (collectively, "Saba" or "Defendants").[1]

## **INTRODUCTION**

Saba University School of Medicine is a for-profit medical school located on Saba Island in the Dutch Caribbean and headquartered in Massachusetts. This case centers around Defendants' deliberate scheme to boost enrollment by misleading prospective medical students about one of the most important indicators of a medical school's track record of success—the percentage of students who pass Step 1 of the United States Medical Licensing Exam ("USMLE").

---

[1]     Defendants seek to appeal an order granting class certification that was stated on the record during oral argument on September 17, 2024 and reflected in an electronic clerk's note entered on October 1, 2024. *See* Doc. 102. The district court indicated "[t]his ruling is subject to a written decision and is subject to revision upon written opinion." *Id.* As of the date of this opposition, the written order has not yet issued.

From their corporate offices in Massachusetts, Defendants have, for years, boasted that Saba's USMLE passage rate was an "unprecedented achievement" that is "unmatched by any other international medical school," "exceeds most US medical schools and ALL international medical schools," and is a "testament to the quality" of Saba's education. Doc. 51 at 8 & nn. 3–4. Saba assured prospective students that "virtually every Saba student passes the USMLE on their first attempt" and that its "99% USMLE Step 1 first-time pass rate speaks for itself." *Id.*; Doc. 82 at 7.

Defendants' focus on Step 1 passage rates is based on internal data showing that they are "the selling points" for prospective students deciding whether to enroll, *see* Doc. 84-8; Doc. 84-9, and their Petition openly acknowledges that the Step 1 marketing campaign was intended "to encourage enrollment of prospective medical students." Pet. Br. at 1.

Although Saba's USMLE statistics appear impressive and commensurate with prestigious U.S. medical institutions, Defendants go to great lengths to conceal that their Step 1 rates only account for roughly half the students who enroll. *See* Doc. 83 at 5–6; Doc. 84-20. Rather than disclose this truth to prospective students, Defendants' senior executives implemented a coordinated campaign of concealment, training

admissions staff to dodge questions from prospective students about attrition. Doc. 82 at 8–9. Internal communications reveal that Saba "do[es] not publish anything on this [attrition] number" and that its executives "are trying to protect that [attrition] number from getting out," because it is "really bad." *Id.* Dozens of emails with prospective students confirm that Defendants routinely misled or even outright lied to prospective students who simply wanted to know how many students made it through the program. *Id.* at 9 & n.13.

Chapter 93A—Massachusetts' consumer protection statute—forbids representations like these that have "the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Phillip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004). The district court properly certified a class of former Saba students who were deceived by Defendants' widespread misrepresentations in violation of Chapter 93A.

Defendants now seek interlocutory review of the district court's decision under Rule 23(f). *Except for a single sentence in their twenty-page Petition*, Defendants ignore this Court's strict standards for obtaining interlocutory review of a class certification order. In that one sentence,

3

Defendants baldly assert that the district court's order imposes an irresistible pressure on them to settle the case, without any evidence to support this conclusory aside. Pet. Br. at 7–8.

Instead of grappling with this Court's Rule 23(f) standards, Defendants simply rehash their arguments below, contending that the district court erred by certifying the class. But even if the district court erred—which it did not—that is not sufficient to grant the Petition. Rather, Defendants would still need to show that the district court's decision places inordinate pressure on them to settle—a showing Defendants do not and cannot make. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293–94 (1st Cir. 2000) (holding that, unless one of the three Rule 23(f) standards is met, a flawed certification decision does not warrant interlocutory review).

Defendants have not carried their considerable burden of justifying why this Court should depart from its usual practice and consider the interlocutory appeal. *Id.* at 294 ("[Rule 23(f)] interlocutory appeals should be the exception, not the rule."); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) ("We reiterate [] that interlocutory appeals . . . are generally disfavored. Piecemeal appellate

review has a deleterious effect on judicial administration.") (citing *Mowbray*, 208 F.3d at 294). The Court should deny the Petition.

## LEGAL STANDARD

Observing that "interlocutory appeals are disruptive, time-consuming, and expensive," this Court "discourage[s] piecemeal appeals" and grants a Rule 23(f) interlocutory petition only in three limited circumstances: (1) "when a denial of class status effectively ends the case"; (2) "when the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle"; or (3) when "an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." *Mowbray*, 208 F.3d at 293–94.

The second standard—the only *Mowbray* prong invoked here—sets such a high standard that it is known as the "defendant death knell." *See* 3 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 7:44 (6th ed. 2024); *see also Mowbray*, 208 F.3d at 293. Moreover, under the second standard, "no matter how strong the economic pressure to settle, a Rule 23(f) application, in order to succeed, also must demonstrate some

significant weakness in the class certification decision." *Mowbray*, 208 F.3d at 295. In determining whether there is "significant weakness," the Court "must . . . tak[e] into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Id.* at 293.

## ARGUMENT

Defendants all but ignore the First Circuit's Rule 23(f) framework. They do not mention the first or third grounds of the *Mowbray* test, thereby waiving reliance on them. With respect to *Mowbray*'s second prong, they offer nothing more than an offhand reference to an "irresistible pressure to settle," but provide no explanation to support their position. Pet. Br. at 7–8. The rest of their Petition does nothing more than restate the same class certification arguments unsuccessfully presented to the district court. Their efforts come nowhere close to establishing "significant weakness in the class certification decision." *Mowbray*, 208 F.3d at 293, 295.

## I. DEFENDANTS FAIL TO SHOW AN IRRESISTIBLE PRESSURE TO SETTLE

Defendants provide no support for their bare assertion that the "district court has put 'irresistible pressure' on [them] to settle." Pet. Br.

at 7. In their twenty-page brief, Defendants muster only a single conclusory sentence to support this claim, stating that the damages in this action "could approach $16 million." *Id.* Putting aside that Defendants do not explain how they arrived at this sum, a petitioner cannot carry its burden of showing an irresistible pressure to settle by simple say-so. *See Mowbray*, 208 F.3d at 294–95; *In re Lorazepam*, 289 F.3d 98, 108 (D.C. Cir. 2002) ("Other than mere assertions, [Defendant] makes no showing that it will be unduly pressured to settle because of the class's certification. [Defendant] failed to submit any evidence that the damages claimed would force a company of its size to settle without relation to the merits of the class's claims."). If that were the case, any dissatisfied petitioner could achieve interlocutory review of a district court's certification decision. Context is crucial—$16 million might be "ruinous" for some companies and "merely unpleasant" to others. *See Mowbray*, 208 F.3d at 294–95; *see also In re Lorazepam*, 289 F.3d at 108; *Prado-Steiman*, 221 F.3d at 1274.

Defendants have not attempted, let alone satisfied, their burden to show that their purported $16 million exposure would be potentially "ruinous." They cite to no evidence that reveals the relative financial size

7

or soundness of the medical school, R3 Education, Inc. ("R3"), or R3's corporate parents. The record does reveal, however, that in addition to owning Saba, R3 owns two other for-profit medical schools—St. Matthew's University School of Medicine and Medical University of the Americas—as well as a for-profit veterinary school. *See* Doc. 84-15 ("[A]ttrition is up across all three medical schools; the veterinary program is currently holding its own").

While Defendants' failure to carry their burden has left this Court without the ability to properly assess the likelihood of an irresistible pressure to settle, it is at least clear that R3 has the means to own and operate three medical schools which collectively received at least $253 million in federal student aid funds during the class period, as well as a veterinary school.[2] Moreover, Defendants' appellate corporate disclosure

---

[2]     From the second quarter of 2017 through the fourth quarter of 2024 (most but not all of the class period), the Department of Education disbursed a total of $253,167,861 in federal student loans to R3 medical schools. This amount includes $93,600,929 disbursed to Saba University School of Medicine (from Quarter 2 FY 2017- Quarter 4 FY 2024), $102,789,972 distributed to the Medical University of the Americas (same period) and $56,776,960 disbursed to St. Matthew's University (Quarter 1 FY 2018-Quarter 4 FY 2024).    Fed. Student Aid, Title IV Program Volume Reports: Loan Volume – Direct Loan Program, https://studentaid.gov/data-center/student/title-iv#loan-volume (last visited Oct. 24, 2024).

statement reveals that R3 is wholly owned by Global University Systems Holding, BV ("G.U.S. BV")—a corporation in the United Kingdom that owns thirty (30) for-profit educational institutions across the globe.[3] Publicly available sources indicate that, as of November 2023, G.U.S. BV had a cash balance of approximately £500 million.[4]

Neglecting these facts, Saba bizarrely implies that the district court tried to coerce it into settlement by [1] "instructing Plaintiff[s] to proceed with the class-certification notice at 'at once,' [2] setting the case for trial a few months from now, and [3] explicitly stating that the defendants should 'be talking about resolving this case' by settling." Pet. Br. at 8. These oblique attacks on the district court omit vital context.

*First*, the district court instructed Plaintiffs to transmit notice to the potential class "at once" because of a fast-approaching trial deadline that was set months ago with Defendants' consent. *See* Doc. 34; Doc. 35.

*Second*, with respect to the trial date, Defendants fail to acknowledge that they cooperated with Plaintiffs in drafting the

---

[3]     https://www.globaluniversitysystems.com/our-network.

[4]     https://www.fitchratings.com/research/corporate-finance/global-university-systems-holding-bv-28-06-2024. £500 million is equivalent to around $636 million USD. *See* https://fiscaldata.treasury.gov/currency-exchange-rates-converter/.

Scheduling Order—and that the Court entered the Scheduling Order setting trial for this case seven months prior to the class certification hearing. Doc. 34 (joint proposed scheduling order); Doc. 35 (district court's entry of scheduling order on February 1, 2024). Defendants were not suddenly sand-bagged by the trial date at the class certification hearing.

*Third*, the district court stated that *both sides* (not just Defendants) "ought to be talking about resolving this case." Tr. at 14:19-20.[5] Trial courts in civil cases routinely advise the parties to talk about settlement. If the district court sought to pressure a settlement, it could have ordered the parties to mediate—a decision typically within its discretion—but has not done so. *Cf. In re Atl. Pipe Corp.*, 304 F.3d 135, 145 (1st Cir. 2002). And despite what Defendants imply, the district court did *not* tell the Defendants to forgo the filing of a Rule 23(f) petition—quite the contrary. Tr. at 14:21-22, 15:2-3 (wherein the district court stated that "I haven't done you out of your appeal by denying" the request for interlocutory review).

---

[5]     "Tr." refers to the transcript of the class certification hearing that is attached to Defendants' Petition.

Defendants' conclusory, unsupported, and self-interested assertions stating that they face "irresistible pressure" to settle falls well short of what this Court requires under Rule 23(f). This alone is sufficient to deny Saba's petition.

## II.    DEFENDANTS FAIL TO DEMONSTRATE SIGNIFICANT WEAKNESS IN THE DISTRICT COURT'S DECISION

Given Defendants' inability to demonstrate irresistible pressure to settle, this Court need not proceed any further. Even if Defendants could establish an irresistible pressure to settle, their Petition should be denied because it fails to show "significant weakness in the class certification decision." *Mowbray*, 208 F.3d at 295. Defendants devote almost all of their Petition to the merits of the district court's certification decision, but they never mention the "significant weakness" standard, let alone come close to satisfying it.

Instead, Defendants just re-argue the same contentions raised before the district court, namely that three obstacles purportedly thwart certification: (1) choice of law; (2) damages; and (3) causation/injury. The briefing below examined these issues at length, and the district court questioned counsel about each during oral argument before rendering its

11

decision to certify. Tr. 4:14–13:21. The district court properly considered, and rejected, each of Defendants' arguments and acted well within its discretion in certifying the Class.[6]

## A.   Chapter 93A applies to the entire Class

Defendants argue that the district court erroneously found that Chapter 93A applies to the class, defeating commonality, typicality, and predominance. Defendants' argument depends on the unwarranted assumption that Section 9 of Chapter 93A (the pertinent provision here) prohibits out-of-state plaintiffs from asserting claims against Massachusetts-based defendants who disseminate misrepresentations from their corporate headquarters. According to Defendants, the *only* factor that matters in the choice-of-law analysis is the place where each consumer "relied" upon the misrepresentations. Pet. Br. at 10–11.

Aside from the fact that Chapter 93A does not require reliance— which Defendants conceded at the hearing, *see* Tr. 12:19–21— Defendants' one-size-fits-all categorical rule contravenes Massachusetts' "functional approach to resolving choice of law questions," which

---

[6]   Because Defendants' analysis of the Rule 23 factors hinges entirely on arguments relating to choice of law, damages, and causation/injury, Plaintiffs have organized their discussion around these arguments.

12

"eschew[s]" categorical rules. *Conway v. Planet Fitness Holdings, LLC*, 189 N.E.3d 675, 681 (Mass. App. Ct. 2022); *see also Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985).

The functional approach requires consideration of various case-specific interests—so much so that the Supreme Judicial Court has cautioned that the result in one case often "provides little guidance for anticipating the 'fair result' in other cases." *Bushkin Assocs., Inc.*, 473 N.E.2d at 668. In addition to contravening this established precedent, Defendants' approach is unsound and impractical because it would prevent any aggrieved out-of-state plaintiff—whether part of a class action or not—from asserting a Chapter 93A claim against the Massachusetts-based malefactor who deceived them.

Not only does Defendants' novel proposal run afoul of Massachusetts' functional choice-of-law approach, it also lacks any basis in the text of Chapter 93A. Numerous courts have recognized that Section 9 of Chapter 93A allows out-of-state plaintiffs to assert Chapter 93A claims—including in the class setting. *See*, *e.g.*, *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1, 14 (D. Mass. 2022) (Section 9 of Chapter 93A "provides sufficient basis for a nationwide claim against

a Massachusetts company because it does not require a plaintiff to reside in Massachusetts"); *Geis v. Nestlé Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 241 (D. Mass. 2018) ("[T]he Court declines to hold that Massachusetts residents are the only consumers who can bring chapter 93A actions, particularly when a consumer is harmed by a fraudulent statement that was made in Massachusetts.").

Unlike Defendants, Plaintiffs presented the district court with an analysis of these "functional" choice-of-law factors, including the interests of the parties and the states involved. As Plaintiffs explained, from their headquarters in Massachusetts, Defendants: (i) crafted the misleading USMLE representations—down to the precise turn of phrase—and posted them throughout Saba's online footprint; (ii) drafted training materials requiring admissions staff to evade questions about attrition; and (iii) misled and lied to countless prospective students seeking basic information about attrition. Doc. 82 at 11–12. Moreover, Defendants chose to operate out of Massachusetts, are familiar with its laws, and, when they believe the Commonwealth benefits them, they seek its protection. Doc. 82 at 11. Ultimately, the district court correctly concluded that Massachusetts has the most significant relationship to

the parties and this litigation. *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41–42 (1st Cir. 2020) ("[I]t is pellucid that Massachusetts would apply the law of the state with the 'most significant relationship' to the parties.") (citations omitted).

Moreover, Massachusetts has a "significant interest' in seeing a resident defendant . . . 'be held accountable for its conduct, which took place in Massachusetts, and which allegedly caused the plaintiff's injury.'" *Holbrook v. Bos. Sci. Corp.*, 487 F. Supp. 3d 100, 106 (D. Mass. 2020) (citation omitted); *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2013 WL 5466628, at *2 (D. Mass. Sept. 30, 2013) (applying Massachusetts choice-of-law rules in a case involving rating agencies' misrepresentations to find that, for "the sake of uniformity and predictability," the law of the state where the corporate defendant conducted its business should apply, "rather than the law of the various and numerous States to which the ratings ended up being disseminated."). By contrast, the interest of states in which class members reside is "less compelling" where, as here, they have no defendants that face liability. *Holbrook*, 487 F. Supp. 3d at 106.

Accordingly, there is no jurisdiction that has a greater interest than Massachusetts.

Defendants also contend that the district court erred because there are no prior cases where a nationwide Chapter 93A class was certified. Pet. Br. at 10. This is false. *See Hebert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 374 (D. Mass. 2019) (certifying nationwide Chapter 93A class on a *contested* certification motion); *see also In re M3 Power Razor*, 270 F.R.D. 45, 56 (D. Mass. 2010) (holding that "Chapter 93A . . . [was] available to all plaintiffs challenging alleged misrepresentations made during a North American marketing campaign by a Massachusetts corporate defendant"); *Bezdek v. Vibram USA*, 79 F. Supp. 3d 324, 339 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (certifying a nationwide class of consumers who purchased shoes based on misrepresentations of their benefits because "93A provides a serviceable and appropriate cause of action common to all class members."). For all of these reasons, the district court did not abuse its discretion by finding that Chapter 93A applies classwide.[7]

---

[7]    Defendants also argue that, even if Chapter 93A applies classwide, the statute of limitations defeats class certification. Pet. Br. at 14. Not so. *See Mowbray*, 208 F.3d at 296 ("[P]ossible differences in the

**B.   The district court properly found that Plaintiffs'
damages theory is sound and capable of classwide
measurement**

Before the district court, Defendants made the risible argument
that Plaintiffs failed to establish predominance because "no damages
theory [was set forth] whatsoever." Doc. 69 at 16, 24–25; Tr. 11:17-20.
Changing tack in the Petition, Defendants now emphasize their
argument (also made before the district court) that Plaintiffs' "damages
theory is not capable of measurement on a classwide basis." Pet. Br. at
19. Defendants are wrong on both fronts.

As detailed at length before the district court, Plaintiffs' damages
theory—which seeks recovery of tuition, costs, and fees paid to Saba—is
well recognized in unfair and deceptive trade practices case law,

---

application of a statute of limitations to individual class members . . .
does not preclude certification of a class action so long as the necessary
commonality and, in a 23(b)(3) class action, predominance, are otherwise
present.") (citation omitted). This issue was also fully briefed below. *See*
Doc. 82 at 18-19 (citing *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 39
(1st Cir. 2003) ("Courts traditionally have been reluctant to deny class
action status under Rule 23(b)(3) simply because affirmative defenses
may be available against individual members. Instead, where common
issues otherwise predominated, courts have usually certified Rule
23(b)(3) classes even though individual issues were present in one or
more affirmative defenses.") (citations omitted). The district court did not
abuse its discretion on this issue.

17

including under Chapter 93A.[8] This framework requires no individual assessments, and the requisite data for calculating damages is ascertainable from Defendants' business records. Doc 82 at 16–17. These damages are "consistent" with Plaintiffs' theory of liability and are "susceptible of measurement across the entire class." *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Defendants attempt to distinguish certain of these cases because they were initiated by a government regulator. Pet. Br. at 19 n.11. But the Supreme Judicial Court has explicitly directed courts to "be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to [the FTC Act]" when interpreting Chapter 93A. *See Klairmont v. Gainsboro Rest., Inc.*, 987 N.E.2d 1247, 1256 n.17 (Mass. 2013); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d

---

[8]     *See, e.g.*, *Commonwealth v. Corinthian Colls.*, No. 2014-1093-E, at 2, 5 (Mass. Super. Aug. 1, 2016) (Doc. 71-5) (awarding damages consisting of "all monies acquired by [a for-profit college] from [students]" because the college misrepresented, *inter alia*, "the value and quality of the education provided" in violation of Chapter 93A); *Vara v. DeVos*, 2020 WL 3489679, at *7, *32 n.27 (D. Mass. June 25, 2020) (noting that the damages award in the *Corinthian Colleges* litigation was consistent with Chapter 93A case law); *see also F.T.C. v. Trudeau*, 579 F.3d 754, 773 n.16 (7th Cir. 2009); *McGregor v. Chierico*, 206 F.3d 1378, 1388–89 (11th Cir. 2000); *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 637–40 (S.D. Cal. 2015).

109, 122 (1st Cir. 2014) ("The SJC [has] announced with striking clarity that Massachusetts has 'wholly incorporated' the FTC Act . . . into Chapter 93A.") (citation omitted).

Tellingly, Defendants fail to cite any contrary legal authority indicating that Plaintiffs' damages theory is improper, nor do they critique the rationale of the foregoing decisions.[9] The district court's acceptance of Plaintiffs' damage theory is both correct and unsurprising.

### C.   The Class suffered a cognizable injury that has a causal connection to Defendants' deception

As they did below, Defendants confusingly assert that the Class suffered no injury, or alternatively, if the Class did suffer an injury, that there is no causal connection between the injury and Defendants' misrepresentations regarding its Step 1 passage rates. Pet. Br. at 9–10, 12, 15–18. These perfunctory arguments can be quickly dispatched.[10]

---

[9]    Defendants' *sole* authority on damages—*Omori v. Brandeis Univ.*, 673 F. Supp. 3d 21 (D. Mass 2023)—is inapplicable. *Omori* involved a breach of contract—not Chapter 93A or any other cause of action involving unfair or deceptive trade practices—and the plaintiffs' damages theory there was premised on the difference between the value of online education and the price paid for in-person education after the outbreak of COVID-19. *Id.* at 23. Plaintiffs' theories of liability and damages here are fundamentally different.

[10]   As a subset of their causation argument, Defendants contend that Plaintiffs did not establish numerosity because there was no evidentiary

For their no-injury argument, Defendants rely on *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017)—just as they did below. Doc. 69 at 17. But Defendants mischaracterize *Shaulis*'s reasoning and import. *E.g.*, Pet. Br. at 17. *Shaulis* stands for the uncontroversial principle that "legally cognizable injuries under Chapter 93A must involve objective, 'identifiable' harm that goes beyond the deception itself." *Shaulis*, 865 F.3d at 10. For example, "falsely advertising a watch as a 'Rolex' is a material misstatement about the watch's quality," sufficient to establish injury. *Id.* at 12. The *Shaulis* plaintiff failed this "Rolex" test because she did not allege an "objective injury traceable to the purchased item itself—for example, that the . . . materials [of the sweater she bought] were misrepresented." *Id.* at 11.

---

showing that any other person was affected. This is wrong for the reasons explained herein and to the district court. Doc. 82 at 19–24. Further, Defendants appear to conflate numerosity with commonality. Ultimately, the numerosity requirement is a "low threshold," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009), and a class of "forty individuals generally . . . establish[es] numerosity," *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003). Defendants have produced charts and spreadsheets revealing that at least five hundred former students fit the class definition, more than enough to establish numerosity. Doc. 51 at 14–15 & nn. 27–28.

Unlike in *Shaulis*, Plaintiffs here allege a clear, objective injury traceable to enrollment at Saba: they bargained for "one of the world's leading international medical schools" with a "top-quality medical education" as evidenced by its nearly perfect Step 1 pass rate —but they got something much worse in its place—a medical school where approximately half of the matriculating students do not even sit for Step 1, and where the executive leadership conceals this truth to boost enrollment. *Id.* This is more than enough to establish injury.

Defendants' no-causal-connection argument suffers the same fate. As a threshold matter, Defendants improperly conflate causation and reliance. As noted above, the Class need not prove that they relied upon Defendants' Step 1 misrepresentations to establish a Chapter 93A violation. *See Aspinall*, 813 N.E.2d at 486 ("A successful [Chapter] 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation."). At the certification hearing, Defendants conceded that reliance is not required, *see* Tr. 12:19–21, yet in their Petition, they try to revive their erroneous reliance arguments. Pet. Br. at 12.

Chapter 93A's causation inquiry is objective—as confirmed by *Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc.*, 840 N.E.2d 526 (Mass. 2006)—a case cited (and mischaracterized) by Defendants. Pet. Br. at 16–17. *Hershenow* provides that, in the deceptive advertising context, "causation [is] established" under Chapter 93A where "deceptive advertising 'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Hershenow*, 840 N.E.2d at 535 (citation omitted); *see also In re M3 Power Razor*, 270 F.R.D. at 60 ("[C]ausation [is] established by a showing that the deceptive representation 'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'") (citation omitted). As it requires no exploration of individualized issues or subjective motivations, Chapter 93A's objective causation standard is capable of class treatment.

Plaintiffs readily meet the *Hershenow* standard. As noted, Defendants admit that the Step 1 marketing campaign was intended "to encourage enrollment of prospective medical students." Pet. Br. at 1. They also have acknowledged that USMLE passage rates are one of their biggest "selling points" and that a medical school's "[f]irst-time pass rate

is critical" to students evaluating medical schools, with make-or-break ramifications for a prospective student's entire medical career. Doc. 82 at 7 n.4, 22 n.38. Defendants' advertisements boasting of Saba's supposedly "near perfect" Step 1 pass rate would thus have influenced the decision of any reasonable applicant because, as Defendants themselves stated, it is a "testament to the quality" of Saba's education and is comparable to top-ranked U.S. medical schools. Doc. 82 at 7.

Finally, Defendants make the false claim that Plaintiffs "presented no evidence that Saba's Step 1 marketing campaign has been 'widely disseminated.'" Pet. Br. at 12. To the contrary, Plaintiffs presented evidence that Defendants' USMLE Step 1 representations appeared on Saba's website, in marketing emails to prospective and admitted students, in search engine ads, on YouTube, at the top of Saba's social media profiles, in brochures, and in PowerPoint presentations at webinars and open houses. Doc. 82 at 21–22.

For these reasons, the district court correctly determined that Plaintiffs satisfied Chapter 93A's causation and injury requirements.

## III. PLAINTIFFS' REPLY WAS PROPER, AND DEFENDANTS WERE NOT ENTITLED TO A SUR-REPLY

In the closing lines of their Petition, Defendants mount a last-ditch effort to impugn the district court, venturing into minutiae that is inappropriate for a Rule 23(f) petition. They claim that the district court erred by "allowing Plaintiff[s] to submit entirely new arguments and evidence" in their class certification reply brief without giving Defendants leave to file a sur-reply. Pet. Br. at 20. This claim is as baseless as it is irrelevant. All of the arguments and evidence contained in Plaintiffs' reply were necessary to clarify arguments that were challenged in Defendants' opposition. The resolution of such questions— *i.e.*, whether an argument is properly characterized as a "reply" or "new"—is committed to the sound discretion of the district court and is a textbook example of what is *not* suitable for interlocutory review. *See*, *e.g.*, *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 91 (1st Cir. 1996) ("It is well settled that the trial judge has broad discretion in ruling on pre-trial management matters.").

24

## CONCLUSION

For the foregoing reasons, this Court should reject Defendants'
Petition.

Dated: October 25, 2024          Respectfully submitted,


                                 */s/ Patrick T. Egan*
                                 **BERMAN TABACCO**
                                 Patrick T. Egan
                                 1st Cir. Bar No. 92444
                                 One Liberty Square
                                 Boston, MA 02109
                                 (617) 542-8300
                                 pegan@bermantabacco.com


                                 **MAYNARD NEXSEN PC**
                                 Margaret M. Siller
                                 1st Cir. Bar No. 1214229
                                 1131 4th Ave. S., Suite 320
                                 Nashville, TN 37210
                                 (629) 258-2253
                                 msiller@maynardnexsen.com


                                 **NATIONAL STUDENT**
                                 **LEGAL DEFENSE NETWORK**
                                 Daniel A. Zibel
                                 1st Cir. Bar No. 1190437
                                 1701 Rhode Island Ave. NW
                                 Washington, DC 20036
                                 (202) 734-7495
                                 dan@defendstudents.org

                                 *Counsel for Plaintiffs-Respondents*

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with Fed. R. App. P. 5(c) and 32(a). This document is proportionally spaced and complies with the typeface of 14-point font and length limitations, containing 4,890 words— exempting the parts of the document exempted by Rule 32(f).

*/s/ Patrick T. Egan*
OF COUNSEL

# CERTIFICATE OF FILING AND SERVICE

I certify that, on October 25, 2024, a copy of the foregoing brief was filed via this Court's electronic filing system, and was served by email on the Counsel of Record for Petitioner-Defendants listed below:

| | |
|---|---|
| Daryl J. Lapp (BBO No. 554980)<br>daryl.lapp@lockelord.com<br>Locke Lord LLP<br>111 Huntington Avenue<br>Boston, MA 02199<br>Tel: 617.230.0100 | Michael J. McMorrow<br>michael.mcmorrow@lockelord.com<br>Locke Lord LLP<br>111 S. Wacker Drive<br>Chicago, IL 60606<br>Tel: 312.443.0246 |
| Dale A. Evans, Jr.<br>dale.evans@lockelord.com<br>Locke Lord LLP<br>777 South Flagler Drive – East Tower Suite 215<br>West Palm Beach, FL 33401<br>Tel: 561.820.0248 | |

*/s/ Patrick T. Egan*
OF COUNSEL