UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons,<br><br>        Plaintiff<br><br>   v.<br><br>SABA UNIVERSITY SCHOOL OF MEDICINE; and R3 EDUCATION, INC.,<br><br>        Defendants. | Civil Action No.: 1:23-cv-12002-WGY |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

*/s/ Daryl J. Lapp*
Daryl J. Lapp, BBO # 554980
daryl.lapp@lockelord.com
LOCKE LORD, LLP
111 Huntington Avenue, 9th Floor
Boston, MA  02199
617.239.0100

Dale A. Evans, Jr., (*pro hac vice*)
dale.evans@lockelord.com
LOCKE LORD, LLP
777 South Flagler Drive – East Tower
Suite 215
West Palm Beach, FL  33401
561.820.0248

Michael J. McMorrow (*pro hac vice*)
michael.mcmorrow@lockelord.com
LOCKE LORD, LLP
111 S. Wacker Drive
Chicago, IL 60606
312.443.0246

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................1

ARGUMENT .............................................................................................................................2

    I.      SUMMARY JUDGMENT IS APPROPRIATE ON THE CHAPTER 93A CLAIM.........................................................................................................................2

        A.     Massachusetts Law Does Not Apply. ........................................................2

        B.     Assuming Chapter 93A Applies, the Claim Nevertheless Fails. ................5

             1.     Saba's Statements are neither "misrepresentations" nor "unfair." ...........................................................................................5

                   a.     Saba made no misrepresentations. .......................................5

                   b.     Saba's statements are not unfair. ........................................6

             2.     Saba's statements are not material................................................10

             3.     There is no causal connection between Saba's statements and any injury. ...............................................................................13

    II.      SUMMARY JUDGMENT IS APPROPRIATE ON THE CHAPTER 266 CLAIM.......................................................................................................................15

        A.     Massachusetts Law Does Not Apply. ......................................................15

        B.     Assuming Chapter 266, §91 Applies, the Claim Nevertheless Fails. ........16

             1.     Plaintiff and the class lack standing...............................................16

             2.     The statements in Saba's advertisements are neither "literally false" nor "impliedly false." ...........................................17

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
  774 F. Supp. 2d 375 (D. Mass. 2011) ..................................................................................17

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
  8 F.4th 1 (1st. Cir. 2021) ...................................................................................................6

*Aspinall v. Philip Morris Cos.*,
  442 Mass. 381 (2004) .........................................................................................................12

*Baker v. Goldman, Sachs & Co.*,
  771 F.3d 37 (1st Cir. 2014) ..............................................................................................6

*Camey v. Force Factor, LLC*,
  No. CV 14-14717-RWZ, 2016 WL 10998440 (D. Mass. May 16, 2016) .....................2, 3, 16

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
  65 F. Supp. 3d 283 (D. Mass. 2014) ...............................................................................3

*Cincinnati Ins. Co. v. KT Health Holdings, LLC*,
  No. CV 16-11722, 2017 WL 1147450 (D. Mass. Mar. 27, 2017) .........................................16

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
  228 F.3d 24 (1st Cir. 2000) ..........................................................................................17, 18

*Cohen v. State St. Bank & Tr. Co.*,
  72 Mass. App. Ct. 627 (2008) ...........................................................................................12

*Cummings v. HPG Int'l, Inc.*,
  244 F.3d 16 (1st Cir. 2001) ...........................................................................................4, 14

*Derby v. Jos A. Bank Clothiers, Inc.*,
  2014 WL 7361023 (D. Mass. 2014) .................................................................................16

*Gossels v. Fleet Nat. Bank*,
  453 Mass. 366 (2009) ........................................................................................................5

*Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*,
  445 Mass. 790 (2006) ........................................................................................................13

*In re Int'l Harvester Co.*,
  104 F.T.C. 949 (1984) ...................................................................................................8, 9

*Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.,*
   573 F. Supp. 3d 513 (D. Mass. 2021) ................................................................4, 11

*Levin v. Dalva Bros.,*
   459 F.3d 68 (1st Cir. 2006) ..............................................................................2

*Loughlin v. Vi-Jon, LLC,*
   No. 20-11555-MLW, 2024 WL 1347092 (D. Mass. 2024) ...................................14

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,*
   552 F.3d 47 .......................................................................................................6

*Nordberg v. Ivy Studio, LLC,*
   No. CV 21-10648-FDS, 2022 WL 20138586 (D. Mass. July 19, 2022) .................8

*O'Hara v. Diageo-Guinness, USA, Inc.,*
   306 F. Supp. 3d 441 (D. Mass. 2018) ................................................................16

*O'Shea v. Littleton,*
   414 U.S. 488 (1974).........................................................................................16

*Ortiz v. Examworks, Inc.,*
   470 Mass. 784 (2015) ........................................................................................5

*Overjet, Inc. v. VideaHealth, Inc.,*
   No. 24-CV-10446, 2024 WL 3480212 (D. Mass. July 19, 2024)..........................17

*Oxford Global Res., LLC v. Hernandez,*
   480 Mass. 462 (2018) ........................................................................................2

*Patenaude v. Orgain, LLC,*
   594 F. Supp. 3d 108 (D. Mass. 2022), appeal dismissed, No. 22-1255, 2022
   WL 4844337 (1st Cir. July 18, 2022) ..................................................................8

*In re Pharm. Indus. Average Wholesale Price Litig.,*
   230 F.R.D. 61 (D. Mass. 2005).....................................................................2, 3, 16

*PMP Assocs., Inc. v. Globe Newspaper Co.,*
   366 Mass. 593 (1975) ........................................................................................6

*In re Relafen Antitrust Litig.,*
   221 F.R.D. 260 (D. Mass 2004)......................................................................3, 4

*Rodi v. S. New England Sch. of L.,*
   532 F.3d 11 (1st Cir. 2008)...............................................................................12

*Schuster v. Wynn Ma, LLC,*
   118 F.4th 30 (1st Cir. 2024)................................................................................6

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017) ..................................................................................13, 14

*Smith v. Zipcar, Inc.*,
  125 F. Supp. 3d 340 (D. Mass. 2015) ..................................................................5, 6

*Southern States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip.,
  Inc.*,
  241 F.R.D. 85 (D. Mass. 2007) ...............................................................................3

*Spruce Env't Techs., Inc. v. Festa Radon Techs.*,
  Co., 248 F. Supp. 3d 316 (D. Mass. 2017) .............................................................11

*Stolzoff v. Waste Sys. Intl., Inc.*,
  58 Mass. App. Ct. 747 (2003) .................................................................................12

*Thornton v. Harvard Univ.*,
  2 F. Supp. 2d 89 (D. Mass. 1998) ...........................................................................16

*Tomasella v. Nestlé U.S., Inc.*,
  962 F.3d 60 (1st Cir. 2020) ...........................................................................8, 9, 10

*Walsh v. TelTech Sys., Inc.*,
  821 F.3d 155 (1st Cir. 2016) ............................................................................5, 13

*Wolf v. Prudential-Bache Securities, Inc.*,
  41 Mass. App. Ct. 474 (1996) ..................................................................................6

*Zimmerman v. Kent*,
  31 Mass. App. Ct. 72(1991) ...................................................................................11

**Statutes and Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................18

Higher Education Act Title IV ..............................................................................4, 7

Lanham Act....................................................................................................................17

Mass. Gen. Laws ch. 93A .............................................1, 2, 4, 5, 6, 8, 12, 13, 14, 15

Mass. Gen. Laws ch. 93A, §2 ...............................................................................1, 4, 5

Mass. Gen. Laws ch. 266 .......................................................................................2, 15

Mass. Gen. Laws ch. 266, §91 .............................................................1, 15, 16, 17

**Treatises and Commentary**

Restatement (Second) of Conflict of Laws (1971) ...........................................................................2

Restatement (Second) of Conflict of Laws § 148 ....................................................................2, 16

Restatement (Second) of Torts § 551(2)(e), cmt. j (1977).............................................................6

Defendants Saba University School of Medicine and R3 Education, Inc. (collectively, "Saba") submit this Memorandum in support of their Motion for Summary Judgment.

### INTRODUCTION

Plaintiff was a student at Saba University School of Medicine. She claims that Saba falsely advertised its students' success and the quality of the school by publishing the rate at which its students have passed the United States Medical Licensing Examination ("USMLE") Step 1 Exam on their first attempt, at the conclusion of their first two years of study, without also disclosing an "attrition rate"—a term neither defined nor required by any entity having jurisdiction over Saba. The Complaint, now certified as a class action, has two counts remaining—claims for violation of Mass. Gen. Laws ch. 93A, §2 and ch. 266, §91.

Summary judgment is appropriate on the Chapter 93A claim for three reasons. First, Massachusetts law does not apply. Second, there is no genuine issue of material fact as to whether Saba's advertisements were "deceptive," "unfair," or material. Finally, there is no genuine issue of material fact as to whether Plaintiff or any class member was proximately injured by any advertisement in this case.

Summary judgment also is appropriate on the Chapter 266 claim for three reasons. First, Massachusetts law does not apply here as well. Second, Plaintiff and the class lack standing to pursue the only relief available under the statute—an injunction—because they are no longer enrolled at Saba and have no financial obligation to Saba. Third, Plaintiff also cannot demonstrate that Saba made any claim that was either "literally false" or "impliedly false."

**ARGUMENT**

## I.       SUMMARY JUDGMENT IS APPROPRIATE ON THE CHAPTER 93A CLAIM.

### A.       Massachusetts Law Does Not Apply.

In diversity actions, a federal court must apply the law that would be applied under the choice of law rules of the forum state. *Levin v. Dalva Bros.*, 459 F.3d 68, 73 (1st Cir. 2006). Massachusetts courts apply a "functional approach" to choice of law that is "explicitly guided by the Restatement (Second) of Conflict of Laws (1971)." *Id.* at 74.

Chapter 93A claims alleging misrepresentation are treated as tort claims for purposes of choice of law. *See Camey v. Force Factor, LLC*, No. CV 14-14717-RWZ, 2016 WL 10998440, at *3 (D. Mass. May 16, 2016) (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82 (D. Mass. 2005)) ("A plaintiff alleging misrepresentations invokes Section 148 of the Restatement."). The "choice-of-law analysis for intentional and negligent misrepresentation claims is set forth in § 148 of the Restatement [which] focuses on where the representations were made and received, and where the plaintiff relied on the representations." *Levin*, 459 F.3d at 74 (collecting authorities); *see Oxford Global Res., LLC v. Hernandez*, 480 Mass. 462, 467 (2018). Where the "representations and reliance took place in different states, the court examines (1) the place or places where the plaintiff acted in reliance upon the defendant's representations, (2) the place where the plaintiff received the representations, (3) the place where the defendant made the representations, (4) the domiciles and places of business of the parties, (5) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time of the transaction, (6) and the place where the plaintiff agreed to render performance under a contract induced by an alleged misrepresentation." *Levin*, 459 F.3d at 74.

2

Here, the relevant contacts are as follows: (1) Plaintiff acted in reliance upon the supposed misrepresentations in Florida. SUF ¶ 8. (2) Plaintiff received the representations in Florida. *Id.* (3) Saba made the representations from a variety of locations, including Saba, Connecticut, and New Jersey. SUF ¶¶ 2. (4) Plaintiff's domicile is Florida [SUF ¶ 8]; Saba's domicile and place of business is the Dutch Caribbean island of Saba [SUF ¶ 2]; while R3's domicile is Massachusetts[1] and its places of business include Massachusetts, Connecticut, Florida, Colorado, New Jersey, Canada, and its three campus locations in Saba, Dutch Caribbean, Nevis, West Indies, and Grand Cayman, Cayman Islands. SUF ¶ 2. (5) Saba's campus on the island of Saba is the only place where a tangible thing at issue was located. (6) Plaintiff agreed to render performance in Florida (payment of tuition), and rendered performance on the island of Saba and in Florida (her studies). SUF ¶ 8.

A review of the decisions from the Courts of this District reveals that they uniformly weigh "the law of the state in which a plaintiff took action in reliance on a defendant's representations" most heavily. *Southern States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 65 F. Supp. 3d 283, 295 (D. Mass. 2014); *Camey*, 2016 WL 10998440, at *2-3. Because "the primary aim of . . . consumer protection laws generally . . . is compensating consumers, not policing corporate conduct . . . [,] the more significant contact in this context [is]

---

[1] The consumer protection laws of other states are not displaced simply because Saba and R3 are alleged to have their principal places of business in Massachusetts. *See In re Pharm. Indus. Avg. Wholesale Price Litig.*, 230 F.R.D. at 83 (rejecting application of the law of a defendant's principal place of business even if "tempting" because "under the Restatement, the laws of the home states of the consumers govern"). *See also In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass 2004).

. . . the location of the injury—that is, the location of the sales to the end payor plaintiffs." *In re Relafen*, 221 F.R.D. at 277.[2] That place of injury is not Massachusetts; it is Florida.

Chapter 93A, §2 thus does not apply to Plaintiff's claim against Saba, nor can it apply to the claims of the class.[3]  Saba is entitled to summary judgment on Count I of the Complaint on this basis alone.

### B.    Assuming Chapter 93A Applies, the Claim Nevertheless Fails.

Plaintiff's claims and those of the class revolve around Saba's statements in its advertising that the first-time USMLE Step 1 pass rate of its students was between 95% and 100% (the number varied from year to year).[4]  This pass rate is accurately reflected in all of Saba's advertisements, and is calculated by the Educational Commission for Foreign Medical Graduates ("ECFMG"), an independent body that administers the USMLE exams.[5]  SUF ¶ 24. Saba reports that same rate to the U.S. Department of Education to demonstrate compliance with its requirements under Title IV of the Higher Education Act. SUF ¶ 30.

---

[2] Worded differently by another court in this District, the "center of gravity" of this case "is outside of Massachusetts and thus Chapter 93A jurisdiction does not exist." *See Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 573 F. Supp. 3d 513, 552 (D. Mass. 2021).

[3] Applying these factors to the claims of the absent class members does not change the analysis. The class members are residents of 40 different U.S. states and 13 foreign countries. SUF ¶¶ 11. Few, if any, class members are residents of Massachusetts, and Plaintiff has not identified a single class member who is a resident of Massachusetts, was domiciled in Massachusetts, received the representations in Massachusetts (or at all), or rendered performance, even in part, in Massachusetts.

[4] Plaintiff's other claimed representations are not representations of any fact, only opinion. "[O]nly statements of fact are actionable; statements of opinion cannot give rise to a deceit action, or to a negligent misrepresentation action." *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21 (1st Cir. 2001).

[5] Plaintiff's purported expert witness, Dr. William Pinsky, was the CEO of ECFMG at all times relevant to Plaintiff's Complaint and reported the USMLE passage rates of Saba's students to Saba. SUF, ¶ 25.

**1.      Saba's Statements are neither "misrepresentations" nor "unfair."**

To obtain relief under Chapter 93A, a plaintiff first "must prove that the defendant engaged in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting ch. 93A, § 2). Plaintiff's claim is that Saba's nondisclosure of the fact that some of the students never progress far enough in their studies to take the USMLE Step 1 is either a "misrepresentation" or "unfair" under Chapter 93A. [6] It is neither.

**a.      Saba made no misrepresentations.**

First, the statements at issue are not "deceptive" and do not constitute "misrepresentations." True statements are neither unfair nor deceptive under Chapter 93A. *See Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 374 (2009); *see also Ortiz v. Examworks, Inc.*, 470 Mass. 784, 794 (2015). Saba's statements about its students' first-time USMLE Step 1 pass rates are true, and Plaintiff identifies no statement by Saba that is false.[7] Because none of the statements made by Saba in its advertisements are false, they are actionable only if there is "both concealment of material information and a duty requiring disclosure." *Smith v. Zipcar, Inc.*, 125 F. Supp. 3d 340, 344 (D. Mass. 2015). A partially truthful or ambiguous statement may be actionable where full disclosure is necessary to make the statement not misleading or where the

---

[6] Plaintiff originally claimed that Saba's "deception" was its supposed non-disclosure of the requirement for students to take and pass a "pre-test" (the Comprehensive Basic Sciences Examination administered by the NBME). The Complaint referenced the "pre-test" twelve times and devoted an entire section to the failure to disclose the "pre-test." Dkt. 1, ¶¶ 86-96. But Plaintiff abandoned that theory of the case in her opposition to Saba's motion to dismiss, admitting that she "does not claim that the failure to disclose the Comp Exam was itself a Chapter 93A violation." Dkt. 25, at 7, fn.7. Moreover, Plaintiff's deposition testimony amply demonstrates that those allegations were false. SUF ¶¶ 19.

[7] Plaintiff has claimed that Saba has misrepresented "the USMLE Step 1 passage rates of its past students." Dkt. 25, at 13, fn. 17. There is no evidence to support this assertion. All of the rates that Saba has put in its advertisements are true, derived from an independent body, and the same rates it reports to the U.S. Department of Education. SUF ¶ 24, 27, 30.

5

nondisclosed fact goes to the essence of the transaction. *Id*. at 345-46 (collecting cases).[8]  Saba's statements about first-time USMLE Step 1 pass rates are neither ambiguous nor "partially true." They are simply true. No qualifying information is required to understand them.

### b.     Saba's statements are not unfair.

Saba's statements are not "unfair" either.  While the question of "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a 93A violation is a question of law." *Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 39 (1st Cir. 2024) (quoting *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 15 (1st. Cir. 2021)). Conduct does not amount to a deceptive act under Chapter 93A "by virtue of the mere fact that the conduct affects a person's actions in a way that eventually causes that person harm." *Schuster*, 118 F.4th at 43 (quoting *Baker v. Goldman, Sachs & Co*., 771 F.3d 37, 54 (1st Cir. 2014)).  Massachusetts follows Section 5 of the Federal Trade Commission's ("FTC") guidance in asking: "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." *PMP Assocs., Inc. v. Globe Newspaper Co*., 366 Mass. 593, 596 (1975); *see Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69.

---

[8] Only a "fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with" requires disclosure. *Wolf v. Prudential-Bache Securities, Inc*., 41 Mass. App. Ct. 474, 477 (1996), *citing* Restatement (Second) of Torts § 551(2)(e), cmt. j (1977). To the extent that Plaintiff or any class member had a mistaken belief that every student who enrolls at Saba takes the USMLE Step 1 exam (which is administered at the conclusion of fifth semester of medical school), Saba was under no obligation to correct that mistaken belief. *See, e.g*., Restatement § 551(2)(e), cmt. j, illus. 4; SUF ¶ 19. Plaintiff also did not ask any questions about Saba's supposed "attrition rate," despite several opportunities to do so.  SUF ¶ 52.

Several undisputed facts demonstrate that Saba's advertisement of its first-time USMLE Step 1 pass rates without disclosing an "attrition rate" meets none of these three criteria.  First, Saba is regulated by several governing bodies, none of which require Saba to report any "attrition rate" to it. SUF ¶ 31. Saba is accredited by Nederlands-Vlaamse Accreditatieorganisatie (the "NVAO"). SUF ¶ 3. Saba's conduct is regularly reviewed by the Inspectorate of the Netherlands Ministry of Education pursuant to that accreditation. SUF ¶ 4. Saba maintains approvals from three state education boards–the New York State Education Department, the California Medical Board, and the Florida Department of Education. SUF ¶ 3. Saba is also regulated by the U.S. Department of Education in connection with its participation in Title IV student loan programs. SUF ¶ 4. None of these regulatory bodies requires Saba to report any "attrition rate," though some of these authorities have asked Saba about the concept of "attrition" generally. SUF ¶ 31. While the undefined term "attrition" is used in many different contexts, none of these regulatory bodies ever promulgated a method for calculating an "attrition rate" (which could include any number of variables), discussed an "attrition rate" with Saba, nor requested that it report one. SUF ¶¶ 31, 33.

Second, there is no law, regulation or common practice requiring any medical school (or other institution of higher learning) to report, much less publicize, an "attrition rate." Massachusetts has no such requirement. Neither Saba nor the Dutch governments have one. None of the Florida, New York or California governments have one, either. The U.S. Department of Education also has none.

There is no commonly understood definition of what an "attrition rate" is, and Plaintiff provides none.  Moreover, Saba does not calculate an "attrition rate." Saba is required to report its first-time USMLE Step 1, Step 2 passage rates, and its "on-time graduation rate" to the U.S.

Department of Education. SUF ¶ 21. The inputs that determine these rates are defined by the Department of Education and those definitions are followed by Saba in reporting them. SUF ¶¶ 21, 23. Saba reports those rates truthfully to the Department, and then publishes those same rates it reports. SUF ¶¶ 21, 24, 30. Saba reports similar information to its other regulators as well. SUF ¶ 22.

Not publishing an "attrition rate" without having one or being asked to do so, falls outside the "penumbra" of any "common-law, statutory, or other established concept of unfairness" when no regulatory body mentions it in any way. Similarly, it cannot be considered "immoral, unethical, oppressive, or unscrupulous" when no regulator requests that Saba report or publish such a rate. And it cannot be considered injurious to competitors or consumers when none of Saba's competitors publish or are required to publish any similar rate. SUF ¶ 32.

Not publishing an "attrition rate" is simply nondisclosure. It is settled law in Massachusetts that there can be no liability for "bare nondisclosure." *Nordberg v. Ivy Studio, LLC,* No. CV 21-10648-FDS, 2022 WL 20138586, at \*4 (D. Mass. July 19, 2022). Saba made no statement about the percentage of students who reach Step 1. Such a "pure omission" is not deceptive under Chapter 93A. *See In re Int'l Harvester Co*., 104 F.T.C. 949, 1059 (1984); *Tomasella v. Nestlé U.S., Inc*., 962 F.3d 60 (1st Cir. 2020); *Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 115 (D. Mass. 2022), appeal dismissed, No. 22-1255, 2022 WL 4844337 (1st Cir. July 18, 2022).

The First Circuit's *Tomasella* decision and the FTC's *International Harvester* decision demonstrate that Saba's silence as to any supposed "attrition rate" is not actionable under Chapter 93A. In *International Harvester*, the FTC ruled that a "pure omission" is "merely staying silent about a subject 'in circumstances that do not give any particular meaning to [the]

8

silence.'" 962 F.3d at 73 (quoting 104 F.T.C. at 1059). Both the FTC and the First Circuit held that "pure omissions" are "not appropriately characterized as deceptive or reached through deception analysis" unless they render the product "unfit for normal use." 962 F.3d at 73 (quoting 104 F.T.C. at 1059-60). This is true even if the omissions "may lead to erroneous consumer beliefs if [the] consumer had a false, pre-existing conception which the seller failed to correct." *Id*.

Plaintiff makes no allegation or argument that the medical school education she purchased was "unfit for normal use." Nor could she credibly make such an argument. If Saba's education was "unfit for normal use," the various regulating bodies that oversee the school would not continue to renew its good standing and licensure, or its ability to offer federal government student loans. The Step 1 Exam itself demonstrates that Saba's education is fit for normal use. Despite being a small school, Saba has graduated over 3,000 doctors, all of whom need to pass the USMLE exams to demonstrate their competence to practice medicine. SUF ¶ 7. Indeed, many of Plaintiff's fellow students completed or are completing their education at Saba and are doctors or on their way to becoming doctors licensed in the United States. SUF ¶ 76.

To the extent Plaintiff had a "false, pre-existing conception" that Saba's first-time USMLE Step 1 pass rate included every student who enrolled, Saba was under no obligation to correct it. *See supra*, fn. 10. Moreover, the undisputed evidence is that Plaintiff had no such conception. Plaintiff knew, before she enrolled at Saba, that "Step 1 was an exam that you took after completing the basic science portion of the degree" and that "not everyone completes the basic science program." SUF ¶ 45. Plaintiff understood that this is "true at every university." *Id*. Plaintiff also understood that "if someone doesn't complete the basic science program, then

necessarily they wouldn't reach the Step 1," SUF ¶ 46, and understood that "those folks wouldn't be part of the pass rate because they never got there." SUF ¶ 47.

Moreover, Saba's supposed "attrition rate" was unimportant to Plaintiff when she decided to enroll at Saba. Plaintiff never asked what Saba's "attrition rate" was before she enrolled. SUF ¶ 52. The Complaint pleads that Saba made "false guarantees of passing" the Step 1 Exam. Dkt. 1, ¶ 4. But Plaintiff admits that Saba made no guarantees.[9] Plaintiff later disclaimed that such "guarantees" are even at issue, admitting that she "does not allege that Saba falsely assured her success by predicting the future." Dkt. 25 at 13, fn. 17.

In *Tomasella*, the First Circuit affirmed summary judgment, holding that a company's "act of offering [a product] for sale without mentioning" the labor practices of its suppliers "is not a deceptive act," and the "allegation that Defendants did not correct [Plaintiff's] 'false, pre-existing conception'" about [their] labor practices "does not translate into deception liability." 962 F.3d at 74, citing 104 F.T.C. at 1059. Similarly, offering Plaintiff the opportunity to apply to medical school without correcting any preconceived notion that all Saba students would sit for the USMLE Step 1 Exam does not translate into deception.

Because Saba's statements about its first-time USMLE Step 1 pass rate are neither "misrepresentations" nor "unfair," they are not actionable by Plaintiff or any member of the class.  Summary judgment is therefore appropriate.

### 2.    Saba's statements are not material.

Even if Saba's statements about the first-time USMLE Step 1 pass rate were "misrepresentations" or "unfair," which they are not, there is no triable issue of fact as to

---

[9] Plaintiff testified: "I don't know if Saba says that, the near certain to succeed part," SUF, ¶ 49, and "I don't know where it says that, 'near certain to succeed.' But my lawyers helped put this together." *Id.*

whether they were material. Plaintiff has adduced no evidence that any class member saw any advertisement of which she complains, and Plaintiff herself admitted she saw none of the advertisements that she claimed to have seen in the Complaint other than in emails sent only to her. SUF ¶ 48. None of the public advertisements could have been material—they all postdate her enrollment. *Id.* There is no evidence that any class member saw any public advertisements in this case, and there is no basis to infer they did, when Plaintiff herself did not.

A misrepresentation is material if "a reasonable man would attach importance [to the fact not disclosed] in determining his choice of action in the transaction in question." *Integrated Commc'ns & Techs., Inc.*, 573 F. Supp. 3d at 549 (*Zimmerman v. Kent*, 31 Mass. App. Ct. 72(1991)).

Plaintiff openly acknowledged in her deposition that Saba's advertised USMLE Step 1 pass rate was not a meaningful factor in her decision to attend Saba, and that the most important factor was its rolling admissions policy, whereby students could commence their medical school studies at one of three times throughout the year as opposed to waiting an entire year, as would be the case in the United States. SUF ¶ 37. Plaintiff testified that "[h]aving a high USMLE Step 1 first-time pass rate, that ***specifically*** was not important to [her]." SUF ¶ 38. She reiterated that she "thought [she] had what it took to pass the Step 1, but that wasn't important to [her], because to [her] what was important is the education you are getting." *Id.*

To meet the materiality requirement, the claimant must demonstrate that the false statement is "likely to influence the purchasing decision" or involves an "inherent characteristic[s]." *Spruce Env't Techs., Inc. v. Festa Radon Techs*., Co., 248 F. Supp. 3d 316,

320 (D. Mass. 2017). Here, Plaintiff has affirmatively demonstrated that the allegedly-false statements did not influence her purchasing decision. They cannot possibly be material.[10]

Plaintiff herself understood, before enrolling, that she would not take the USMLE Step 1 Exam until she successfully completed the "Basic Sciences Curriculum," and that not all students would complete that curriculum and take the exam.[11]  Although the question of whether a "reasonable consumer" would know those facts is often a fact issue in a Chapter 93A claim, *see Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 396 (2004), the facts of this case demonstrate that Plaintiff understood exactly what Saba's first-time USMLE Step 1 pass rate meant, and what it did not mean. The reasonableness of Plaintiff's reaction is not an issue here.  Plaintiff's testimony proves that she did not misunderstand the advertisements in the way that the Complaint states she did. There is no triable issue of fact as to whether she was deceived by any misrepresentation.

Because the statements that Plaintiff claims Saba should have made about its supposed "attrition rate" were not material to her decision, and because she did not rely on them, reasonably or otherwise, there is no genuine issue of material fact, and Saba is entitled to

---

[10] Additionally, in order to recover under Chapter 93A based on a claim of fraudulent misrepresentation, which Plaintiff appears to do here, a claimant also "must prove reasonable reliance." *Rodi v. S. New England Sch. of L.*, 532 F.3d 11, 19 (1st Cir. 2008). Stating that one relied on any misrepresentation is "merely a conclusory allegation insufficient to defeat summary judgment." *Rodi*, 532 F.3d at 16.  It "is settled law that the reasonableness of a party's reliance is not necessarily a jury question." *Rodi*, 532 F.3d at 18. For all of the same reasons set forth above, Plaintiff clearly did not rely upon the statements in Saba's advertisements to mean that all students would take the USMLE Step 1 exam. Plaintiff understood that Saba's Step 1 pass rate only included the students who sat for the test, understood that not every student sits for the test, and understood that students who failed to complete their basic sciences did not sit for the test.  SUF ¶¶ 44-47.

[11] Insofar as Plaintiff claims that Saba's statements suggested that she herself would take or pass the USMLE Step 1 Exam, which her Complaint suggests are "false assurances of success," Dkt. 1, ¶ 3, "false guarantees of passing" the USMLE, *id.*, ¶ 4, or false statements that students "are near certain to succeed," *id.*, ¶ 9, any such statements are not actionable under Chapter 93A. Saba made no such guarantees, as Plaintiff has since admitted; even if it had, any such statements would be in the nature of "a prediction about the future," which cannot support a claim of fraud for allegedly concealing "past or present conditions." *Cohen v. State St. Bank & Tr. Co.*, 72 Mass. App. Ct. 627, 631 (2008) (citing *Stolzoff v. Waste Sys. Intl., Inc.*, 58 Mass. App. Ct. 747, 759 (2003)).

judgment as a matter of law on Plaintiff's claim. Because there is no evidence that the advertisements about which Plaintiff complains were seen by any class member, or that those undisclosed statements about Saba's supposed "attrition rate" were material to any other class member, Saba is entitled to judgment as a matter of law on the class claim as well.

### 3. There is no causal connection between Saba's statements and any injury.

Plaintiff cannot demonstrate an injury to herself or any class member that is causally related to any of Saba's statements. Causation is a required element of a Chapter 93A claim. To establish causation, a plaintiff must "prove that the defendant's unfair or deceptive act caused an adverse consequence or loss." *Walsh*, 821 F.3d at 160.  To prove an injury, Plaintiff or any class member will need to show "an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself." *Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 10 (1st Cir. 2017); *see Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc*., 445 Mass. 790, 791 (2006) ("causal connection" between deceptive act and loss is "essential predicate for recovery"). Plaintiff must demonstrate that the "product itself [the education] was deficient in some objectively identifiable way" and show something that the claimant "bargained for that she did not, in fact, receive." *Shaulis*, 865 F.3d at 12.

There is no disputed issue of material fact as to whether Plaintiff bargained for something that she did not receive. Plaintiff enrolled in medical school; she bargained for a medical education. What she received is a medical education. There is no injury from that. To the extent that Plaintiff "bargained for" a medical school with a high first-time USMLE Step 1 pass rate, she got that.  Plaintiff did not "bargain for" a medical school from which all its students progressed to the USMLE Step 1 Exam – she identifies no promise made or implied by Saba that all students would progress to take the exam. And she understood before enrolling that Saba's

Step 1 pass rate only included the students who sat for the test, that not every student sits for the test, and that students who failed to complete their basic sciences did not sit for the test.  SUF ¶¶ 44-47.

Although Plaintiff has argued in this case that she "bargained for" a school that was "one of the world's leading international medical schools" with a "top-quality medical education," Dkt. 117, those statements are simply statements of opinion, and thus are not actionable. *Cummings v. HPG Int'l, Inc.*, 244 F.3d at 21. They cannot be "deficient in some objectively identifiable way" if they are not objective statements.[12] Plaintiff has pled nothing that she bargained for that she did not receive.

*Shaulis* demonstrates that Plaintiff has no claim to injury or damages under Chapter 93A, nor would any class member have injury under it. The *Shaulis* court found that the plaintiff "identifie[d] no objective injury traceable to the purchased item itself" and refused to apply "a consumer's disappointed expectations of value in place of an allegation of real economic loss" because it "fails to identify anything objective that Shaulis bargained for that she did not, in fact, receive." 865 F.3d at 11-12; *see Loughlin v. Vi-Jon, LLC*, No. 20-11555-MLW, 2024 WL 1347092, at *12 (D. Mass. 2024) (following *Shaulis*). Here, Plaintiff admits she received all the classes that she bargained for [SUF ¶ 72]; she received credits for the classes she passed, SUF [*id.*]; and she learned the materials in those classes. SUF ¶ 73. Plaintiff admits that if she was

---

[12] Plaintiff also complains about advertisements where Saba compared its first-time Step 1 passage rates to U.S. medical schools. Dkt. 1. ¶¶ 5, 58, 93. The statements in those advertisements are irrelevant; all of the cited advertisements postdate her enrollment at Saba, so she could not have possibly relied on them in deciding to enroll. Moreover, the advertisements demonstrating that Saba's first-time USMLE Step 1 passage rates are better than most U.S. based medical schools is both objective and true. Saba's rate is the rate that is reported to it by EFCMG, and the rates for the U.S. based schools were taken from a current edition of *U.S. News and World Report*, which is cited as the source of that information. SUF ¶ 29. These statements could not have deceived her.

able to transfer her credits to another medical school, that would save her money.[13] SUF ¶ 75. Plaintiff also admits that if she "had actually passed Foundations of Clinical Medicine and passed Step 1, [she] obviously wouldn't say [her] basic sciences course work was worthless." *Id.* Therefore, Plaintiff suffered no injury under Chapter 93A.  Similarly, there is no evidence that any other class members failed to receive anything they bargained for. There is no dispute as to whether the class members attended the same classes, had the opportunity to learn the same material, earned the same credits, and could have transferred those credits to another school. There simply is no "injury."

Even if there were "injury," there was no causal connection between Saba's advertisements and any injury. As discussed above, the "assertions that over 98% of Saba's students passed the USMLE Step 1," Dkt. 1, ¶ 119 were unimportant to Plaintiff. SUF, ¶ 38.  If Plaintiff was "harmed by [her] decision to attend Saba," Dkt. 1, ¶125, that harm is causally unconnected to Saba's advertisements. Plaintiff testified that although the Step 1 was not important to her, "because to [her] what was important is the education you are getting." SUF, ¶ 38. As discussed above, she received that education.

## II.    SUMMARY JUDGMENT IS APPROPRIATE ON THE CHAPTER 266 CLAIM.

### A.    Massachusetts Law Does Not Apply.

For the same reasons that Massachusetts law does not apply to the Chapter 93A claim of Plaintiff or the class, it also does not apply to the Chapter 266, §91.[14]  Similar to the Chapter 93A claim, a plaintiff alleging a false advertising claim is alleging "misrepresentations" and thereby

---

[13] Plaintiff admits her classmates transferred their credits to other schools, SUF ¶ 76, and the court has excluded such students from the certified class in this case.

[14] It is unclear whether the class certified by the Court on October 1, 2024 encompasses the false advertising claim. The claim was not mentioned anywhere in Plaintiff's Motion for Class Certification, Dkt. 51, and the Court has not issued a written order on class certification. This argument assumes the claim is part of the certified class claims. If the Court determines that the claim is outside the class, this argument remains against the claim pled by Plaintiff.

"invokes Section 148 of the Restatement." *See Camey*, 2016 WL 10998440, at *3, citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. at 82.

### B. Assuming Chapter 266, §91 Applies, the Claim Nevertheless Fails.

#### 1. Plaintiff and the class lack standing.

Neither Plaintiff nor any member of the class has standing to bring a claim under Chapter 266, §91. The statute provides no private right of action for damages. *See Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998); *see also Cincinnati Ins. Co. v. KT Health Holdings, LLC*, No. CV 16-11722, 2017 WL 1147450, at *4, n.3 (D. Mass. Mar. 27, 2017) (same). The only relief available under the statute to a private litigant is injunctive relief. *See id.* But Plaintiff lacks standing to pursue the only injunctive relief that she seeks – enjoining Saba "from continuing to misrepresent Saba's USMLE passage rate," Dkt. 1, *Request for Relief*, ¶ 3, and "enjoining Defendants from collecting on any private loans or other tuition payment plans of Plaintiff or members of the [putative] Class." *Id.*, *Request for Relief,* ¶ 7.

Plaintiff lacks standing to seek injunctive relief because she was dismissed from Saba and does not allege that she is likely to re-enroll in the future. In fact, Plaintiff has enrolled in another program of higher education at a different school and has no intention of attempting to re-enroll at Saba. SUF ¶¶ 77, 79.  Plaintiff also did not take out any private loans from Saba or enter any tuition payment plan. SUF ¶¶ 68-69. Plaintiff even submitted to the U.S. Department of Education a Borrower Defense to Repayment Application, and it was denied. SUF ¶ 71.

Where, as here, a "plaintiff is under no threat whatsoever of future injury, [s]he cannot maintain a claim for injunctive relief." *Derby v. Jos A. Bank Clothiers, Inc.,* 2014 WL 7361023, at *7-8 (D. Mass. 2014); *see also O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 466-67 (D. Mass. 2018).

Additionally, no members of the class took out any loans from Saba. Saba has not offered private student loans at any point during the class period. SUF ¶ 68. There also is no evidence that any class member intends to re-enroll at Saba. Even if there were evidence that a class member intended to re-enroll at Saba, they could not be deceived by any advertisements issued by Saba and be injured by its advertisements. Summary Judgment on the class's Chapter 266, §91 claim is also proper.

### 2. The statements in Saba's advertisements are neither "literally false" nor "impliedly false."

Chapter 266, § 91 prohibits the publication, dissemination, or circulation of advertisements containing "any assertion, representation or statement of fact which is untrue, deceptive or misleading." Mass. Gen. Laws ch. 266, § 91. Because there is limited caselaw on Chapter 266, § 91, courts have looked to the federal Lanham Act for guidance when applying the statute. *Am. Med. Sys., Inc. v. Biolitec, Inc.,* 774 F. Supp. 2d 375, 392-93 (D. Mass. 2011).

Plaintiff has not identified any false statement in Saba's advertisements. False advertising claims under the Lanham Act must contain a statement of fact that is either "literally false" or "implicitly false." *Overjet, Inc. v. VideaHealth, Inc*., No. 24-CV-10446, 2024 WL 3480212, at *7 (D. Mass. July 19, 2024), (quoting *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co*., 228 F.3d 24, 34-35 (1st Cir. 2000)).  A "literally false" statement may "either be explicit or 'convey[ed] by necessary implication,' meaning that a claim is considered false when, 'considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Overjet, Inc.*, 2024 WL 3480212, at *7.

As discussed above, there is no claim that the statements in Saba's advertisements are "literally false."  The only statements of fact in Saba's advertisements are the first-time USMLE Step 1 pass rates of Saba's students. As discussed above, these statements are derived from rates

provided to Saba by ECFMG and are the same rates that Saba reports to the U.S. Department of Education and other regulatory and accrediting bodies. Saba's statements as to the first-time USMLE Step 1 pass rates of its students are therefore true, and cannot be "literally false." Plaintiff identifies no other statement by Saba that is false.

Saba's statements cannot be "implicitly false" either. Where the advertisement is implicitly false, "the plaintiff alleging a misleading advertisement has the burden of proving that a substantial portion of the audience for that advertisement was actually misled. *Clorox*, 228 F.3d at 36 (collecting authorities). An advertisement's "propensity to deceive the viewing public is most often proven by consumer survey data." *Id.* Plaintiff has come forward with no such evidence, and thus cannot prove a claim of falsity. Summary judgment is appropriate.

## CONCLUSION

For the reasons stated above, Defendants Saba and R3 respectfully request that the Court grant their motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) and award such other and further relief as the Court finds just and appropriate.

November 15, 2024

SABA UNIVERSITY SCHOOL OF
MEDICINE, and R3 EDUCATION, INC.,

*/s/ Daryl J. Lapp*
Daryl J. Lapp, BBO # 554980
daryl.lapp@lockelord.com
LOCKE LORD, LLP
111 Huntington Avenue, 9th Floor
Boston, MA  02199
617.239.0100

Dale A. Evans, Jr., (*pro hac vice*)
dale.evans@lockelord.com
LOCKE LORD, LLP
777 South Flagler Drive – East Tower Suite 215
West Palm Beach, FL  33401
561.820.0248

Michael J. McMorrow (*pro hac vice*)
michael.mcmorrow@lockelord.com
LOCKE LORD, LLP
111 S. Wacker Drive
Chicago, IL 60606
312.443.0246

## Certificate of Service

I certify that on November 15, 2024, this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

*/s/Daryl J. Lapp*
Daryl J. Lapp