# EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons, | ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) 1:23-cv-12002-WGY |
| SABA UNIVERSITY SCHOOL OF MEDICINE AND R3 EDUCATION, INC., | ) ) ) ) |
| *Defendants*. | ) ) ) ) |

## REPLY EXPERT REPORT OF WILLIAM W. PINSKY, MD

1. I submit this reply report in response to the October 4, 2024 rebuttal report of Przemyslaw Jeziorski. Dkt. 103-1 ("Jeziorski Report").

2. Dr. Jeziorski states that he is an associate professor of marketing with "20 years of experience as a scholar in marketing and economics." Jeziorski Report ¶ 2. His report and attachments do not provide any indication that he has any knowledge of or experience with medical education, including the process for applying and choosing a medical school, factors that determine students' success, career motivation, requirements, and challenges. He apparently has no experience or first-hand knowledge of the USMLE exam or the process for licensing physicians. Additionally, as a self-proclaimed marketing expert, he makes no comments on the issues of truthfulness and transparency in advertising.

3. Dr. Jeziorski does not challenge most of my report, including: (a) my overview of the USMLE and why it is critical for aspiring doctors; (b) my overview of Caribbean medical schools, the students they attract and how they differ from United States medical students; (c) my

1

explanation of why USMLE passage rates are critical to prospective students, especially those considering enrolling in a Caribbean medical school; and (d) my explanation of the differences in attrition prior to taking the USMLE Step 1 at Caribbean medical schools compared to United States medical schools.

4. In this short reply, I will address two topics—attrition and value—that Dr. Jeziorski gets wrong.

### A. Prospective medical students deciding whether to enroll at a Caribbean medical school want—and should receive—information about the number of students who enroll but do not make it far enough to sit for the USMLE

5. As stated in my report, if a medical school has high levels of attrition, prospective students deciding whether to enroll want—and should receive—that attrition information so that they can make an informed decision. Dr. Jeziorski states that he "found no evidence to suggest that attrition rates are a major factor considered by students when choosing an academic institution." Jeziorski Report ¶ 19. He further states that my opinion regarding attrition rates "lacks foundation" because I do not "provide evidence or cite any studies to suggest that the omission of attrition rates would result in substantial harm to students." *Id.* ¶ 20.

6. As I explained in detail in my report, my opinions on the importance of attrition rates to prospective medical students are based on forty years of working in medical education, both nationally and internationally, which have provided me with the knowledge, skill, experience, training, and education to understand Caribbean medical students.

7. Prospective Caribbean medical students are particularly concerned about a medical school's track record of success on the USMLE because they cannot obtain a license to practice medicine in the United States without passing this series of exams. An institution publicizing a high USMLE passage rate without disclosing that half of its medical students do not advance far

2

enough to sit for the test denies prospective students the information they need to assess whether to risk hundreds of thousands of dollars in tuition.

8. My expertise in medical education led to my conclusion that the disclosure of high attrition rates is important to prospective medical students. Regardless, Dr. Jeziorski need not rely solely on my opinion. The list of documents he reviewed, Dkt. 103-3, includes documents that have examples of real conversations with prospective students asking Saba admissions officers for information about the number of students who complete the program.[1] Dr. Jeziorski disregards these prospective students' request for information regarding Defendants' attrition rates.

9. Notably, Dr. Jeziorski's report does not refute my conclusion that a medical school advertising high USMLE passage rates *without disclosing its high attrition rates* leaves prospective medical students without critical information necessary to make an informed decision as to enrolling at that institution.

10. Beyond claiming my conclusions on attrition rates are unfounded, Dr Jeziorski attempts to complicate the calculation of attrition. *See* Jeziorski Report ¶ 21. As I explained in my deposition,[2] the data hidden from prospective students is "a basic arithmetic calculation" that can be reduced to a simple ratio of students who enroll at Saba compared to students who sit for the USMLE Step 1. *See, e.g.,* Pinsky Deposition Transcript 39:18-41:8; 153: 5-20; 164:18-166:14.

---

[1] *See* Dkt. 82 (Pl.'s Reply in Supp of Class Cert.) at 3, n.13.

[2] I did not have the opportunity to consider Dr. Jeziorski's deposition testimony in developing this reply report as he did in preparing his rebuttal expert report. It is my understanding, based on an email chain I reviewed between counsel in this case, that on October 7 counsel for the Plaintiff noticed Dr. Jeziorski for his deposition to take place on October 21, four days before this report was due. Counsel for Defendants did not respond to the notice until October 16, when they stated that Dr. Jeziorski would not be available until dates in November, well after the deadline for this report.

11. Dr. Jeziorski devises three factors—leaves of absences, dropouts for academic vs non-academic reasons, and the fact that attrition can vary—to suggest attrition rates are complex and difficult to measure. Jeziorski Report ¶ 22.

12. It is my understanding that the present case concerns students that enrolled at Saba but did not sit for the USMLE over the past several years. This is a simple figure to calculate.

13. In any event, as noted previously, attrition rates are not complicated. In my experience as an executive and leader in medical education (detailed in the "qualifications" section of my report), institutions can easily determine the number of students that matriculated and then left prior to taking the USMLE, as this information is readily available and closely tracked and analyzed by medical schools. Moreover, Defendants can disclose their attrition rates with an explanation as to how they calculated the figure, thus avoiding any complications.

14. Finally, Dr. Jeziorski criticizes me for failing to "personally evaluate[] Saba's attrition rate," Jeziorski Report ¶ 37. As I stated in my deposition, to my knowledge no one external to the Defendants has calculated Saba's attrition rates because the data is not publicly available. This lack of information is the reason why I cannot "personally evaluate" Saba's attrition, and why prospective students cannot make an informed decision when enrolling at Saba.

15. While I have no interest in disparaging Dr. Jeziorski, I believe his lack of expertise in the field of medical education makes it difficult for him to evaluate the facts at hand. For example, his understanding of the Educational Commission for Foreign Medical Graduates ("ECFMG") is fundamentally wrong. He proposes that ECFMG's decision not to publish attrition rates supports his conclusion that attrition is too complicated to calculate. Jeziorski Report ¶ 31. Dr. Jeziorski misunderstands the role ECFMG plays in the medical education community. ECFMG—which I oversaw as CEO of Intealth (ECFMG's parent company) from July 2016

4

through December 2023—does not evaluate schools but rather certifies international medical graduates seeking to practice in the United States; publishing graduation or attrition rates is beyond ECFMG's mandate.

### B. Dr. Jeziorski provides no evidence to suggest that two years or less of education at a Caribbean medical school has economic value

16. At paragraph 39 of my report, I conclude that a partial medical education, specifically from a Caribbean medical school, has little to no economic value by itself. Dr. Jeziorski states that I presented no "empirical evidence" or "relevant research" to support that conclusion. Jeziorski Report ¶ 10. To make this point, he states that my conclusion is attributable to what he calls the "sheepskin" effect, a theory that appears to state that people with completed academic degrees earn greater income than people who have an equivalent amount of studying without possessing an academic degree.

17. My opinions and conclusions in this case are not based on the "sheepskin effect" because it is not applicable in this context. Far from merely giving individuals a "premium" that helps them earn more money with the same amount of education, a medical degree is a barrier to individuals' entry into the medical profession.

18. Indeed, the type of generalized intellectual value one receives from attending high school or college has nothing to do with a prospective medical student's decision to invest years of time and hundreds of thousands of dollars into a professional career in medicine. This is especially true of students who are unable to gain admittance into a United States-based medical school and are considering taking the large financial risk of attending a Caribbean school.

19. As I explained in my report, nearly all students who enroll in medical school do so for the obvious purpose of obtaining their medical degree so that they can practice medicine. If

medical students do not complete their education, then they do not receive a "partial medical degree"; they receive nothing.

20. Finally, Dr. Jeziorski does not discuss the negative impact that failing to complete two years of medical school can have on former students. Former medical students typically face significant, enduring economic hardships given the large amount of debt accrued.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of October, 2024, in New Orleans, Louisiana.

*[signature]*
William W. Pinsky, MD

6