UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons,<br><br>　　　　　　Plaintiff<br><br>　v.<br><br>SABA UNIVERSITY SCHOOL OF MEDICINE; and R3 EDUCATION, INC.,<br><br>　　　　　　Defendants. | Civil Action No.: 1:23-cv-12002-WGY |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.　　The Parties**

　　　1.　　Saba University School of Medicine ("Saba") is a for-profit medical school located in the Caribbean and owned by R3 Education, Inc. ("R3"), which provides administrative and support services to Saba. (Compl. ¶¶ 1, 13—attached to the Declaration of Dale Evans ("Evans Decl.") as **Exhibit 1**).

　　　2.　　R3 is a Delaware corporation domiciled in Devens, Massachusetts, that operates from various places of business, including Colorado, Connecticut, Florida, Massachusetts, New Jersey, Canada, and its three campus locations in Saba, Dutch Caribbean, Nevis, West Indies, and Grand Cayman, Cayman Islands. Most R3 employees operate remotely. (**Ex. 1,** ¶¶12–13, 40; Donnellan Dep. at 54:19–21, 61:10–11, 95:20–25, 306:3–5, 330:2–6—attached to Evans Decl. as **Exhibit 2**; Russell Dep. at 191:18–21—attached to Evans Decl. as **Exhibit 4**; Wargo Dep. at 52:1–2, 79:7–11—attached to Evans Decl. as **Exhibit 5**).

　　　3.　　As a Dutch Caribbean medical school, Saba is accredited by Nederlands-Vlaamse Accreditatieorganisatie ("NVAO") and approved by the Inspectorate of the Netherlands Ministry of Education. Saba is also licensed in Florida, approved in New York, and recognized in

1

California. (**Ex. 1**, Compl., ¶ 23; **Ex. 2**, Donnellan Dep. at 331:12–21; **Ex. 5**, Wargo Dep. at 150:2–19; Pathway to GUS Health Medical Schools, R3S00016502—attached to Evans Decl. as **Exhibit 6**).

4. Saba is also eligible to participate in U.S. student financial aid programs under Title IV of the Higher Education Act, which allows U.S. students to obtain student loans. (**Ex. 1,** Compl., ¶ 33; **Ex. 2**, Donnellan Dep. at 42:20–43:3; Rodger Dep. at 176:21–177:9—attached to Evans Decl. as **Exhibit 7**).

5. Saba's conduct is regularly reviewed by the Inspectorate of the Netherlands Ministry of Education pursuant to that accreditation. (**Ex. 2**, Donnellan Dep. at 331:14–21).

6. Saba is compliant with all the accrediting and approving governmental bodies' requirements. (**Ex. 2**, Donnellan Dep. at 345:20–24, 349:14–16; Donnellan Indiv. Dep. at 58:12–59:5—attached to Evans Decl. as **Exhibit 9**).

7. Saba students can practice medicine in all fifty (50) states of the United States and throughout Canada. (**Ex. 5**, Wargo Dep. at 150:10–12). Saba has graduated over 3,000 doctors. (**Ex. 2**, Donnellan Dep at 376:17–377:14, 240:22–241:4; Saba advertising email—attached to Evans Decl. as **Exhibit 8**).

8. Plaintiff Natalia Ortiz is a resident of Tampa, Florida, and has been a Florida resident at all times relevant to this litigation. (Pl. Dep. at 14:24–17:10—attached to Evans Decl. as **Exhibit 10**). She has never resided in Massachusetts. (*Id.* at 17:7–10)

9. Plaintiff was enrolled as a medical student at Saba from July 2019 to August 2022. (**Ex. 10**, Pl. Dep. at 111:1-2). Plaintiff was dismissed from Saba for her failure to maintain satisfactory academic performance. (*Id.* at 162:11-13).

10. Plaintiff is the representative of a class of individuals who enrolled at Saba from September 1, 2017 to October 1, 2024 but are no longer enrolled and did not sit for the United States Licensing Examination ("USMLE") Step 1. Excluded from the class are students who transferred to another school or who are no longer enrolled due to having failed a majority of their Saba courses. (Dkt. 98, Class Cert. Hr.'g 13:12-21—attached to Evans Decl. as **Exhibit 11**).

11. The class is comprised of former Saba students who reside in forty (40) different states and thirteen (13) foreign countries. (Saba Enrollment from September 2017 to August 2023, R3S00011799—attached to Evans Decl. as **Exhibit 12**; Dkt. 70, Decl. Terry Moya, ¶ 4—attached to Evans Decl. as **Exhibit 13**). Plaintiff is unaware of any class member who resides in Massachusetts. (**Ex. 10**, Pl. Dep. at 207:14-16).

**B.    Saba's Basic Sciences Curriculum and the Comprehensive Basic Sciences Exam**

12. Saba's medical program is composed of a Basic Sciences curriculum, which entails a five-semester program with various science courses, and a Clinical Medicine curriculum that consists of an eighty-week program comprising research and clinical clerkship rotations through various medical specialties focused on practical experience. (Saba Course Catalog 2018–2020 ("Saba Catalog"), pp. 11, 16—attached to Evans Decl. as **Exhibit 14**; **Ex. 10**, Pl. Dep. at 117:8–15).

13. In order to complete the Basic Sciences curriculum and advance onto the Clinical Medicine curriculum, students must pass all Basic Sciences courses and the USMLE Step 1 Exam. (**Ex. 14**, Saba Catalog, p. 17).

14. A medical student's performance in the USMLE Step 1 Exam is important because it predicts the student's level of competency to practice medicine in the United States

and it impacts a student's residency opportunities, which is the ultimate statistic of Saba's success. (**Ex. 2**, Donnellan Dep. at 169:20–170:7; **Ex. 5** at 151:13–152:12).

15.     It is particularly important to pass the USMLE Step 1 Exam on the first time, as it will show on students' records to potential residency directors. (**Ex. 5**, Wargo Dep. at 152:17–153:7).

16.     Amongst its efforts to prepare its students to achieve passing scores on the USMLE Step 1 Exam, Saba requires students to first pass the Comprehensive Basic Science Exam ("CBSE") sponsored by the National Board of Medical Examiners ("NBME") as part of Saba's Foundations of Clinical Medicine Course ("FOCM") that students take at the conclusion of their Basic Sciences curriculum. (**Ex. 2**, Donnellan Dep. at 183:14–20; **Ex. 14**, Saba Catalog, p. 14; Saba Teaching and Examination Regulations 2018-2020 ("OER 2018") § 4.3(c)—attached to Evans Decl. as **Exhibit 15**).

17.     The CBSE is a full-length simulated comprehensive practice test designed for students planning to take the USMLE Step 1 Exam, as it features multiple-choice questions on content typically covered during basic science medical courses. (https://www.nbme.org/examinees/nbme-self-assessments/comprehensive-basic-science-self-assessment, accessed November 15, 2024—attached to Evans Decl. as **Exhibit 16**).

18.     Saba requires its students to pass the CBSE because it helps them evaluate their readiness to take the USMLE Step 1 Exam and obtain an estimate of their probability of passing that exam. (**Ex. 2**, Donnellan Dep. at 183:1–184:24, 192:11–193:2). Most other Caribbean medical schools require their students to take the CBSE. (*Id.* at 184:7–15).

19.     Since at least 2018 through Plaintiff's enrollment, Saba has disclosed the requirement to pass the Basic Sciences curriculum and the FOCM course in the Saba Course

Catalog, which is available online. (**Ex. 2**, Donnellan Dep. at 338:9–11; Clifton Dep. at 185:10–13—attached to Evans Decl. as **Exhibit 17**; **Ex. 10**, Pl. Dep. at 117:13–20). During this relevant time period, the Saba Course Catalog has included a reference to the CBSE as the "comprehensive exam" administered at the end of the FOCM course and also references "shelf exam" fees as part of the tuition and fees. (**Ex. 14**, Saba Catalog, pp. 14, 29).

20. Saba also discloses the requirement to take and pass the CBSE in the Teaching and Examination Regulations ("OER"), which is also available online. (**Ex. 2**, Donnellan Dep. at 186:10–23; **Ex. 15**, OER 2018 § 4.3(c)).

C. **Saba's USMLE Step 1 Exam First-Time Pass Rates**

21. Pursuant to rules and regulations promulgated by the U.S. Department of Education, 34 C.F.R. § 600.55(d)(1)(iii) and 34 C.F.R. § 600.55(f)(1)(ii), Saba annually reports its first-time USMLE Step 1 Exam pass rates to the Department of Education. (**Ex. 2**, Donnellan Dep. at 147:3–15; 270:12–17). Saba is also required to report its Step 2 passage rates and "on-time graduation rate" to the U.S. Department of Education. (2023 Department of Education Letter—attached to Evans Decl. as **Exhibit 18**).

22. Saba submits similar information to its other accrediting and government regulators, such as the NVAO and the New York State Department of Education. (2017 NVAO Doctor of Medicine (M.D.) Programme Extensive Accreditation Critical Reflection—attached to Evans Decl. as **Exhibit 19**; 2021 NYSED Self-Study—attached to Evans Decl. as **Exhibit 20**).

23. As required by the U.S. Department of Education, Saba calculates its students' first-time pass rates as the number of Saba students who pass the USMLE Step 1 Exam on their first attempt divided by the total number of Saba students making that first attempt. (**Ex. 2**, Donnellan Dep. at 144:12–24; 34 C.F.R. § 600.55(d)(1)(iii); 34 C.F.R. § 600.55(f)(1)(ii)).

24. The Educational Commission for Foreign Medical Graduates ("ECFMG") also calculates and reports USMLE Step 1 Exam scores to medical schools, including Saba. (**Ex. 2**, Donnellan Dep. at 145:11–18).

25. At all times relevant to Plaintiff's Complaint, Plaintiff's purported expert witness, Dr. William Pinsky, was the CEO of ECFMG and reported the USMLE passage rates of Saba's students to Saba. (Pinsky Dep. at 9:13–22—attached to Evans Decl. as **Exhibit 21**).

26. From 2017 to the present, 96-100% of Saba medical students who took the USMLE Step 1 Exam passed the exam on their first attempt. For example, in 2017, 2021 and 2022, 100% of Saba medical students who took the USMLE Step 1 Exam passed on the first attempt. (**Ex. 1**, Compl, ¶¶ 60-61; **Ex. 6**, Pathway to GUS Health Medical Schools). In 2018 and 2019, Saba's first-time Step 1 pass rate was 98% and in 2020, it was 96%. (**Ex. 20**, 2021 NYSED Self-Study).

27. These are the same rates Saba reported to the Department of Education for the respective years. (**Ex. 2**, Donnellan Dep. at 144:16–24).

**D.      Saba's Advertisements to Prospective Students**

28. Saba's admissions and marketing teams prepare advertisements for prospective students to promote various aspects of Saba's program, such as its residency placement rates, faculty-to-student ratio, accreditation and approvals, Title IV funding eligibility, USMLE pass rates, among others. (**Ex. 5**, Wargo Dep. at 146:18–148:4; **Ex. 2**, Donnellan Dep. at 199:7–202:11).

29. Saba advertises its first-time USMLE Step 1 pass rates because they are very strong compared to other institutions, which data can be found in the U.S. News and World Report. (**Ex. 4**, Russell Dep. at 103:2–7; **Ex. 2**, Donnellan Dep. at 172:6–15).

30. Saba advertises the same first-time Step 1 pass rates it receives from the ECFMG and that it reports to the U.S. Department of Education. (**Ex. 2**, Donnellan Dep. at 145:11–147:15).

31. Saba does not advertise an "attrition rate" because there is no standard or definition for that term, and it is not required by any of Saba's accrediting or approving government bodies. (**Ex. 2**, Donnellan Dep. at 270:4–17; **Ex. 4**, Russell Dep. at 197:12–198:13; **Ex. 7**, Rodger Dep. at 115:23–116:17, 117:5–7, 186:5–8).

32. None of Saba's competitors publish or are required to publish an attrition rate. (**Ex. 2**, Donnellan Dep. at 177:10–178:6).

33. Attrition may be calculated in multiple different ways, depending on the variables factored into the equation. At Saba, the term "attrition" was used in the context of making enrollment assumptions for future revenue projections. (**Ex. 2**, Donnellan Dep. at 272:22–273:17; **Ex. 7**, Rodger Dep. at 119:18–23).

34. If a prospective student asked about attrition, it would typically be due to the students' concerns of not doing well in medical school, which is what Saba's staff would focus on addressing. (**Ex. 4**, Russell Dep. at 142:5–143:2; Donahue Dep. at 67:15–68:2—attached to Evans Decl. as **Exhibit 22**).

**E.    Plaintiff's Application and Admission to Saba**

35. Before applying to medical school, Plaintiff researched various schools in Florida and in the Caribbean by looking at their websites and conducting general research on Caribbean schools.  (**Ex. 10**, Pl. Dep. at 54:1–57:8).

36. Plaintiff applied to Saba in June 2019. (Plaintiff's student application to Saba—attached to Evans Decl. as **Exhibit 23**). Plaintiff applied to no other medical school. (**Ex. 10**, Pl. Dep. at 62:9–10).

7

37. One of the things Plaintiff considered when looking at Saba was its ongoing admissions three times a year. (**Ex. 10**, Pl. Dep. at 55:13–23). The most important factor in Plaintiff's decision to attend Saba was "starting early." (*Id.* at 95:23–96:2).

38. Having a high USMLE Step 1 first-time pass rate was not specifically important to Plaintiff. (**Ex. 10**, Pl. Dep. at 91:21–22). Plaintiff testified, that it "wasn't important to [her], because to [her] what was important is the education you are getting in order to take this exam. Because that education is what you use to actually take the exam. So that's what was important." (*Id.* at 92:17–22).

39. Plaintiff was accepted to Saba for the Spring 2019 semester. (**Ex. 23**, Plaintiff's Saba Application).

**F.     Plaintiff's Knowledge and Exposure to USMLE Step 1 Exam Pre-Enrollment**

39. Before applying to Saba, Plaintiff did not research any medical school's requirements for sitting for the USMLE Step 1 Exam. (**Ex. 10**, Pl. Dep. at 59:14–16, 66:21–23). Plaintiff does not know whether any other schools advertise their USMLE Step 1 pass rate. (*Id.* at 68:5–9).

40. Plaintiff thought the only prerequisite for the USMLE was to "be attending school." (**Ex. 10**, Pl. Dep. at 59:14–19).

41. Plaintiff attended an open house before enrolling at Saba, but she does not remember having asked any questions about the USMLE Step 1. (**Ex. 10**, Pl. Dep. at 78:17–19). Plaintiff had the opportunity to ask questions during her Saba admissions interview, but she does not recall having asked questions about the USMLE Step 1. (**Ex. 10**, Pl. Dep. at 82:5–16).

42. When Plaintiff visited Saba before enrolling, she spoke only with some students in a taxi about finishing their exams and did not discuss anything else with them. (**Ex. 10**, Pl. Dep. at 83:5–23).

43. Plaintiff never asked anyone at Saba about preparation for the USMLE Step 1. (**Ex. 10**, Pl. Dep. at 85:7–12).

44. At the time prior to her enrollment, Plaintiff understood that Saba's "Step 1 pass rate" meant "the amount of students that are passing on their first time taking this." That it was "the people that took the exam on their first time and passed it." (**Ex. 10**, Pl. Dep. at 114:4–12).

45. Plaintiff also understood that "Step 1 was an exam that you took after completing the basic science portion of the degree" and that "[n]ot everyone completes the basic science program." (**Ex. 10**, Pl. Dep. at 114:13–19). Plaintiff conceded that this is "true at every university." (*Id.* at 114:17–22).

46. Plaintiff similarly understood that "if someone doesn't complete the basic science program, then necessarily they wouldn't reach the Step 1." (**Ex. 10**, Pl. Dep. at 114:23–115:2).

47. Plaintiff acknowledged that "those folks wouldn't be part of the pass rate because they never got there." (**Ex. 10**, Pl. Dep. at 115:3–5).

48. Plaintiff does not recall seeing the ads included in her Complaint prior to the filing of the Complaint, other than emails sent directly to her. (**Ex. 10**, Pl. Dep. 176:9–181:23). All of the public advertisements in the Complaint postdate Plaintiff's enrollment at Saba. (*Id.*; **Ex. 1**, Compl., pp. 15–25).

49. Plaintiff also admitted that she did not "know if Saba says that, the near certain to succeed part," (**Ex. 10**, Pl. Dep. at 173:16–17), or "where it says that, 'near certain to succeed.'" (*Id.* at 173:18–20).

9

50. Plaintiff could not identify any USMLE Step 1 advertisements that any class members may have seen. (**Ex. 10**, Pl. Dep. at 197:15–18).

**G.    Plaintiff's Knowledge and Exposure to Attrition Rate Pre-Enrollment**

51. Plaintiff did not research the attrition rates of Saba or any other medical school. (**Ex. 10**, Pl. Dep. at 68:10–13; 68:20–69:3). She had no understanding of what the attrition rate was at Saba when she applied, (*id.* at 74:2–5), or for any of the years she attended, (*id.* at 74:21–75:8).

52. Plaintiff never asked what Saba's attrition rate was. (**Ex. 10**, Pl. Dep. at 82:20–22; 168:14–16).

53. Plaintiff does not know whether any other medical schools publish attrition rates, (**Ex. 10**, Pl. Dep. at 168:11–13), but she agrees that "attrition happens in all medical schools." (**Ex. 10**, Pl. Dep. at 184:14–16).

**H.    Plaintiff's Academic Performance and Dismissal from Saba**

54. Saba has established a series of satisfactory academic progress policies and regulations with which students must comply during their enrollment. (2017 Saba Student Handbook, pp. 13–15—attached to Evans Decl. as **Exhibit 24**).

55. Students at Saba are subject to dismissal if they fail (1) a course worth six or more credits while on academic probation for failing a course worth six or more credits; or (2) the same course or competency a second time whether by remediation or otherwise while on probation. (**Ex. 24**, 2017 Saba Student Handbook, p. 14).

56. Students may be placed on probation for (1) failing one course; (2) dropping one or more courses; or (3) being a transfer student admitted with advanced standing. (**Ex. 24**, 2017 Saba Student Handbook, p. 13).

57. Students may appeal academic probation and dismissal decisions. (**Ex. 24**, 2017 Saba Student Handbook, pp. 14–15).

58. During her time at Saba, Plaintiff missed class the maximum "allowed amount of times more than once throughout [her] Saba time." (**Ex. 10**, Pl. Dep. at 127:12–15).

59. In August 2021, at the end of the FOCM course, Plaintiff failed the CBSE the first time. (**Ex. 10**, Pl. Dep. at 128:18–23).

60. Plaintiff chose to not "take an actual review course" before retaking the CBSE, and instead did "a self-directed study." (**Ex. 10**, Pl. Dep. at 129:10–13).

61. Plaintiff failed the CBSE a second time in December 2021 and had to retake the FOCM course.  (**Ex. 10**, Pl. Dep. at 132:4–8; 133:3–5; Plaintiff's Saba Academic Transcript—attached to Evans Decl. at **Exhibit 25**).

62. Plaintiff acknowledged she didn't study as hard as she could have. On December 9, 2021, Plaintiff had texted her schoolmate stating, "I didn't pass. I knew I wasn't going too [sic] because honestly I didn't study like I should have and I contemplate leaving the program." (**Ex. 10**, Pl. Dep. at 133:6–7, 134:6–16; Plaintiff's Text Messages—attached to Evans Decl. as **Exhibit 26**).

63. Plaintiff failed the CBSE a third time in April 2022. (**Ex. 10**, Pl. Dep. at 134:20–135:4).

64. After failing the third time, Plaintiff again chose not to retake the FOCM, but "used the review course on [her] own" which was "t[]he same materials [she] used before." (**Ex. 10**, Pl. Dep. at 135:5–11).

65. In August 2022, after having failed the CBSE a fourth time, Plaintiff was notified that she "did not pass Foundations of Clinical Medicine and that [she] was dismissed from the

11

basic sciences program." (**Ex. 10**, Pl. Dep. at 136:23–137:7; Dismissal Letter from Saba—attached to Evans Decl. as **Exhibit 27**).

66. Plaintiff did not appeal Saba's decision to dismiss her. (**Ex. 10**, Pl. Dep. at 138:15–139:1; No Intent to Appeal Email—attached to Evans Decl. as **Exhibit 28**).

67. Plaintiff did not feel that Saba failed to follow its guidelines or curriculum in dismissing her. (**Ex. 10**, Pl. Dep. at 137:16–18; 138:8–14).

I.   **Tuition Payments and Education Received**

68. Saba has not offered private student loans at any point during the class period. (Donnellan Dep. Vol. II at 410:1–8—attached to Evans Decl. as **Exhibit 3**).

69. Plaintiff did not pay for her Saba education; her mother did—and Plaintiff has not paid her back. (**Ex. 10**, Pl. Dep. at 172:8–19). Plaintiff also obtained federal student loans, which she used to pay living accommodations. (*Id.* at 214:11–23).

70. Plaintiff has not reached an understanding with her mother as to whether or how to repay her mother and has not paid any of her student loans back. (**Ex. 10**, Pl. Dep. at 171:11–172:2, 172:20–22).

71. Plaintiff submitted to the U.S. Department of Education a Borrower Defense to Repayment Application, which was denied. (**Ex. 10**, Pl. Dep. at 143:4–144:11; DOE Denial of Defense to Repayment Application letter—attached to Evans Decl. as **Exhibit 29**).

72. Plaintiff admits she received the classes she paid for and course credits for the classes she passed. (**Ex. 10**, Pl. Dep. at 174:15–21).

73. Plaintiff also learned the materials in the classes she passed. (**Ex. 10**, Pl. Dep. at 174:22–175:3).

74. Plaintiff admits that "because of the knowledge [she] obtained at the time of these courses" that she passed, "there was an educational value." (**Ex. 10**, Pl. Dep. at 188:14–189:15).

75. Plaintiff concedes that if she "had actually passed Foundations of Clinical Medicine and passed Step 1, [she] obviously wouldn't say [Saba's] basic sciences course work was worthless." (**Ex. 10**, Pl. Dep. at 176:4–8). She also testified that if she was able to transfer her credits to another medical school, "that would save her money." (*Id.* at 175:22–176:2).

76. Many of Plaintiff's fellow students completed or are completing their education at Saba and are doctors or on their way to becoming doctors licensed in the United States. (**Ex. 10**, Pl. Dep. 197:9–14, 203:4–9; **Ex. 13**, Decl. of Terry Moya, ¶ 4).

**J.    Post-Saba**

77. After being dismissed from Saba, Plaintiff enrolled at University of South Florida for a post-bachelor's degree in biology in the spring of 2023. (**Ex. 10**, Pl. Dep. at 44:13–24, 45:22–23, 46:12–14).

78. Some of Plaintiff's post-bachelor biology program courses were similar to courses she took at Saba. (**Ex. 10**, Pl. Dep. at 48:11–21). Plaintiff graduated from University of South Florida in the spring of 2024. (*Id.* at 47:5–6).

79. Plaintiff did not look to see whether her Saba credits would transfer to a U.S. or Caribbean medical school. (**Ex. 10**, Pl. Dep. at 49:17–19). She has not applied to any medical schools, nor intends to do so. (*Id.* at 43:22–24, 51:19–23).

80. Plaintiff is interested in pursuing a degree as an anesthesiologist assistant and plans to apply to two different schools: South University and Nova Southeastern University. (**Ex. 10**, Pl. Dep. at 49:24–50:14).

81. Plaintiff has not applied for any other jobs since leaving Saba. (**Ex. 10**, Pl. Dep. at 20:18–20).

November 15, 2024	SABA UNIVERSITY SCHOOL OF
MEDICINE, and R3 EDUCATION, INC.,

*/s/ Daryl J. Lapp*
Daryl J. Lapp, BBO # 554980
daryl.lapp@lockelord.com
LOCKE LORD, LLP
111 Huntington Avenue, 9th Floor
Boston, MA  02199
617.239.0100

Dale A. Evans, Jr., (*pro hac vice*)
dale.evans@lockelord.com
LOCKE LORD, LLP
777 South Flagler Drive – East Tower Suite 215
West Palm Beach, FL  33401
561.820.0248

Michael J. McMorrow (*pro hac vice*)
michael.mcmorrow@lockelord.com
LOCKE LORD, LLP
111 S. Wacker Drive
Chicago, IL 60606
312.443.0246

**Certificate of Service**

I certify that on November 15, 2024, this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

*/s/Daryl J. Lapp*
Daryl J. Lapp

140127176