EXHIBIT A

Received Electronically
December 10, 2024
United States Court of Appeals
For the First Circuit

No. 24-_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NATALIA ORTIZ,
ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Petitioner,*

v.

SABA UNIVERSITY SCHOOL OF MEDICINE, AND R3 EDUCATION, INC.,

*Defendants-Respondents.*

PETITION TO APPEAL PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

On Petition for Permission to Appeal from the
United States District Court for the District of Massachusetts
(Hon. William G. Young, No. 1:23-cv-12002)

Patrick T. Egan
1st Cir. Bar No. 92444
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
(617) 542-8300
pegan@bermantabacco.com

Margaret M. Siller
1st Cir. Bar No. 1214229
**MAYNARD NEXSEN PC**
1131 4th Ave. S., Suite 320
Nashville, TN 37210
(629) 258-2253
msiller@maynardnexsen.com

Daniel A. Zibel
1st Cir. Bar No. 1190437
**NATIONAL STUDENT
LEGAL DEFENSE NETWORK**
1701 Rhode Island Ave. NW
Washington, DC 20036
(202) 734-7495
dan@defendstudents.org

*Counsel for Plaintiff-Petitioner Natalia Ortiz*

# TABLE OF CONTENTS

BACKGROUND ...................................................................... 1

THE DISTRICT COURT'S DECERTIFICATION DECISION ............... 4

QUESTIONS PRESENTED ..................................................... 6

LEGAL STANDARD ............................................................ 6

ARGUMENT .................................................................... 8

   I.  Interlocutory review is appropriate because it would give this Court the opportunity to resolve an important and unsettled issue ............................................................... 9

   II.  Interlocutory review is also appropriate because Ms. Ortiz faces a death knell scenario as a result of the district court's "questionable" decertification decision ......................... 11

      A.  Ms. Ortiz faces a death knell scenario ................................... 11

      B.  The district court's decision is sufficiently "questionable" to warrant review under Rule 23(f) ......................................... 12

         1.  The district court's decision is inconsistent with Massachusetts' functional choice-of-law rules and undermines Chapter 93A's purpose ................................... 13

         2.  To the extent the district court relied on its analysis of damages to decertify the class, that analysis was erroneous .......................................................... 22

CONCLUSION ................................................................. 26

ATTACHMENT:  Memorandum and Order,

                dated November 26, 2024 (Doc. 134)

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Aspinall v. Philip Morris Cos.*,
  813 N.E.2d 476 (Mass. 2004) ................................................................. 4

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
  17 N.E.3d 1066 (Mass. 2014) ............................................................... 10

*Bezdek v. Vibram USA*,
  79 F. Supp. 3d 324 (D. Mass. 2015) ............................................... 19, 20

*Blair v. Equifax Check Services, Inc.*,
  181 F.3d 832 (7th Cir. 1999) ............................................................... 11

*Boos v. Abbott Labs.*,
  925 F. Supp. 49 (D. Mass. 1996) ......................................................... 13

*Bushkin Assocs., Inc. v. Raytheon Co.*,
  473 N.E.2d 662 (Mass. 1985) ......................................................... 14, 15

*Comerica Bank & Tr., N.A. v. Brown & Rosen, LLC*,
  195 N.E.3d 432 (Mass. App. Ct. 2022) ............................................... 15

*Costa v. FCA US*,
  2022 WL 18910359 (D. Mass. Sept. 30, 2022) .................................... 21

*Cristostomo v. New Balance Athletics*,
  647 F. Supp. 3d 1 (D. Mass. 2022) ............................................... 10, 13

*Drakopoulos v. U.S. Bank Nat. Ass'n*,
  991 N.E.2d 1086 (Mass. 2013) ........................................................... 22

*F.T.C. v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993) ......................................................... 24, 25

*F.T.C. v. Kuykendall*,
    371 F.3d 745 (10th Cir. 2004) ............................................................. 25

*F.T.C. v. Trudeau*,
    579 F.3d 754 (7th Cir. 2009) ............................................................... 24

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*,
    2013 WL 5466628 (D. Mass. Sept. 30, 2013) ................................. 17, 18

*Feeney v. Dell Inc.*,
    908 N.E.2d 753 (Mass. 2009) ......................................................... 10, 21

*Foisie v. Worcester Polytechnic Inst.*,
    967 F.3d 27 (1st Cir. 2020) ................................................................. 15

*Geis v. Nestlé Waters N. Am.*,
    321 F. Supp. 3d 230 (D. Mass. 2018) ................................................... 14

*Goebel v. Schmid Bros.*,
    871 F. Supp. 68 (D. Mass. 1994) ......................................................... 17

*Hebert v. Vantage Travel Serv., Inc.*,
    334 F.R.D. 362 (D. Mass. 2019) .......................................................... 20

*Holbrook v. Bos. Sci. Corp.*,
    487 F. Supp. 3d 100 (D. Mass. 2020) ...................................... 18, 19, 21

*In re Delta Air Lines*,
    310 F.3d 953 (6th Cir. 2002) ............................................................... 11

*In re M3 Power Razor*,
    270 F.R.D. .................................................................................... 20, 21

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ..................................................................... 7

*In re Nexium Antitrust Litig.*,
    777 F.3d 9 (1st Cir. 2015) ................................................................... 23

*In re Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass. 2004) ............................................................. 19

*In re Relafen Antitrust Litig.*,
    225 F.R.D. 14 (D. Mass. 2004) ............................................................... 20

*Makaeff v. Trump Univ., LLC*,
    309 F.R.D. 631 (S.D. Cal. 2015) ............................................................ 23

*McGregor v. Chierico*,
    206 F.3d 1378 (11th Cir. 2000) .............................................................. 24

*Nei v. Burley*,
    446 N.E.2d 674 (Mass. 1983) ................................................................. 16

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ................................................................ 7

*Pride Hyundai v. Chrysler Fin.*,
    263 F. Supp. 2d 374 (D.R.I. 2003) ........................................................ 22

*Purity Supreme v. Att'y Gen.*,
    407 N.E.2d 297 (Mass. 1980) ................................................................. 22

*Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*,
    29 N.E.3d 197 (Mass. App. Ct. 2015) ................................................... 14

*Smilow v. Sw. Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003) ...................................................................... 7

*Tardiff v. Knox Cnty.*,
    365 F.3d 1 (1st Cir. 2004) ........................................................................ 8

*UBS Fin. Servs. v. Aliberti*,
    133 N.E.3d 277 (Mass. 2019) ................................................................. 22

*Vara v. DeVos,*
  2020 WL 3489679 (D. Mass. June 25, 2020) ......................................24

*Waithaka v. Amazon.com,*
  966 F.3d 10 (1st Cir. 2020) ........................................................... 10, 21

*Waste Mgt. Holdings, Inc. v. Mowbray,*
  208 F.3d 288 (1st Cir. 2000) .......................................................Passim

## STATUTES

Mass. Gen. Laws ch. 93A, § 2 .................................................................4

## RULES

Fed. R. Civ. P. 23(f)...........................................................................Passim

Fed. R. App. P. 5 ......................................................................................1

## OTHER AUTHORITIES

*From Rancid to Reasonable: Unfair Methods of Competition Under
  State Little FTC Acts,*
  73 Am. U. L. Rev. 857 (2024)................................................................16

*The Multistate Problem in Consumer Class Actions and Three Solutions,*
  17 Harv. L. & Pol'y Rev. 301 (2022) .........................................5, 16, 19

Newberg on Class Actions § 4:54 (6th ed. 2024) .................................23

Pursuant to Rule 23(f) of the Federal Rules of Civil Procedure and Rule 5 of the Federal Rules of Appellate Procedure, Plaintiff-Petitioner Natalia Ortiz ("Ms. Ortiz") respectfully submits this Petition for permission to appeal the district court's November 26, 2024 Memorandum and Order decertifying the Chapter 93A class action that it previously certified on October 1, 2024. Doc. 134.[1] As set forth below, this Court should grant the Petition and hear Ms. Ortiz's interlocutory appeal.

## BACKGROUND

Saba University School of Medicine is a for-profit medical school headquartered in Massachusetts and located on Saba Island in the Dutch Caribbean. R3 Education, Inc. has its principal place of business in Massachusetts and owns Saba. Doc. 1 at ¶ 1; Doc. 32 at ¶ 1; Doc. 84-6; Doc. 126-5 at 4. This case centers around Defendants' deliberate scheme to boost enrollment by misleading prospective medical students about one of the most important indicators of a medical school's track record of

---

[1]     "Doc." refers to docket entries in the district court's "CM/ECF" system.

success—the percentage of students who pass Step 1 of the United States Medical Licensing Exam ("USMLE").

The USMLE is a critical component of medical education and licensure. Doc. 53-3 at 9. Without a passing score on the USMLE Step 1, students cannot obtain a medical license. Doc. 83 at 4, ¶ 16. A high first-time Step 1 passage rate is extremely important to prospective students because it signifies that students who attend a medical school almost always succeed, making the substantial financial commitment a sound investment. Doc. 84-37 at 2; Doc. 84-38 at 2; Doc. 84-39 at 2.

From their corporate offices in Massachusetts, Defendants have, for years, boasted that Saba's 98-100% USMLE passage rate was an "unprecedented achievement" that is "unmatched by any other international medical school," "exceeds most US medical schools and ALL international medical schools," and is a "testament to the quality" of the medical education a prospective student would receive at Saba. Doc. 51 at 8 & nn. 3–4; Doc. 53-10 at 2-3; Doc. 53-11 at 6; Doc. 53-12 at 9; Doc. 53-13 at 6. Saba also assured prospective students that "virtually every Saba student passes the USMLE on their first attempt" and that its "99% USMLE Step 1 first-time pass rate speaks for itself." Doc. 53-10 at 2-3;

53-15 at 3; Doc. 53-14 at 5. These advertisements were widely disseminated, appearing on Saba's website, in marketing emails, in search engine ads, in social media ads, on YouTube, in brochures, at open houses, and during webinars. Doc. 53-4; Doc. 53-5; Doc. 53-6 at 11; Doc. 53-7 at 5; Doc. 53-8 at 3; Doc. 53-9 at 29; Doc. 53-13 at 6; Doc. 53-19.

Defendants' focus on Step 1 passage rates is based on internal data showing that they are "the selling points" for prospective students deciding whether to enroll. Doc. 84-8; Doc. 84-9. In this litigation, they have openly acknowledged that the Step 1 marketing campaign was intended "to encourage enrollment of prospective medical students." Doc. 115-1 at 8.

Although Saba's USMLE statistics appear impressive and commensurate with prestigious U.S. medical institutions, Defendants go to great lengths to conceal that their Step 1 rates only account for roughly half the students who enroll. Doc. 83 at 5–6; Doc. 84-20. Rather than disclose this truth to prospective students, Defendants' senior executives implemented a coordinated campaign of concealment, training admissions staff to dodge questions from prospective students about attrition. Doc. 82 at 8–9. Internal communications reveal that Saba

"do[es] not publish anything on this [attrition] number" and that its executives "are trying to protect that [attrition] number from getting out," because it is "really bad." *Id*. Dozens of emails with prospective students confirm that Defendants routinely misled or even outright lied to prospective students who simply wanted to know how many students make it through the program. Doc 82 at n.13.

Defendants' conduct violates Chapter 93A, which forbids representations that have "the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004); *see* MASS. GEN. LAWS CH. 93A, § 2.

## THE DISTRICT COURT'S DECERTIFICATION DECISION

On September 17, 2024, the district court certified a nationwide class of certain former Saba students who were injured by Defendants' misconduct, and directed Ms. Ortiz's counsel to commence class notice "at once." Doc. 98 at 13–14. Just two months later, on November 26, 2024, the district court abruptly reversed course, decertified the class, and held that Ms. Ortiz failed to meet her burden of demonstrating that Massachusetts law applied to her claims. *See* Doc. 134. Finding that each

class member's claim against Saba must be reviewed under the substantive law of that class member's home jurisdiction, the district court determined that Ms. Ortiz failed to demonstrate that common questions of law or fact predominate over individualized questions. *Id.*

With respect to damages, though the district court did not state that its holding precluded class certification, the court found that members of the proposed class were not entitled to seek a full refund of tuition and fees paid to Saba for attendance. *Id.* at 23–24.

Notwithstanding these holdings, the district court recognized that Plaintiff had "made a compelling argument supporting class certification as to liability" and acknowledged that deceptive advertising is "a type of claim that calls out for class treatment." *Id.* at 1–2. Indeed, the district court even "decr[ied its own decertification decision]. . . because it not only causes injustice but also weakens deterrence of corporate misconduct." *Id.* at 25 (citing Elias, *The Multistate Problem in Consumer Class Actions and Three Solutions*, 17 HARV. L. & POL'Y REV. 301, 343 (2022)).

## QUESTIONS PRESENTED

1.      Whether this Court should grant Rule 23(f) review to address whether a nationwide class can be certified under Chapter 93A to hold Massachusetts-based defendants accountable for unfair and deceptive marketing that emanated from Massachusetts when that conduct harmed out-of-state class members.

2.      Whether this Court should grant Rule 23(f) review where Petitioner faces a "death knell" scenario because of the district court's "questionable" choice-of-law analysis and refusal to apply Massachusetts law to Massachusetts-based defendants whose unlawful conduct occurred in Massachusetts.[2]

## LEGAL STANDARD

"Rule 23(f) provides this court with discretion to hear an interlocutory appeal of a district court order certifying or decertifying a

---

[2]      As discussed more below, although choice of law was the only stated basis for the district court's determination that Ms. Ortiz failed to meet Rule 23(b)(3)'s predominance requirement, *see* Doc. 134 at 23–25, the district court nonetheless rejected her theory of damages. *Id.* at 23. To the extent the court intended to rely on that analysis as part of its predominance inquiry, that decision was erroneous and, at the very least, "questionable" thus also justifying Rule 23(f) review.

6

class." *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 37 n.4 (1st Cir. 2003). This Court will "ordinarily" grant a Rule 23(f) petition in the context of class certification if either: (1) the appeal "will lead to clarification of a fundamental issue of law;" or (2) the plaintiff faces a death knell situation—*i.e.*, "the named plaintiff's claim is not of a sufficient magnitude to warrant the costs of stand-alone litigation." *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000) (citation omitted). A petitioner who proceeds under the "death knell" category "must also demonstrate that the district court's ruling on class certification is questionable." *Id.* (citation omitted). Moreover, this Court may also "grant leave to appeal in cases that do not match" either of these categories. *Id.* at 294; *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) ("We do not create any bright-line rules or rigid categories for accepting or denying Rule 23(f) petitions[.]").

In reviewing a decision granting or denying class certification, "pure issues of law [are] reviewed *de novo*" while "mixed questions of law and fact var[y] from non-deferential review for law-dominated issues to deferential clear-error review for fact-dominated ones." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008)

(citation omitted); *see also Tardiff v. Knox Cnty.*, 365 F.3d 1, 4 (1st Cir. 2004). Because the district court did not purport to resolve any contested factual issues in reaching its decision, the issues in this Petition are, at least, "law-dominated," and this Court's review should be "non-deferential." *Id*.

## **ARGUMENT**

Interlocutory review is warranted under either *Mowbray* test and, more generally, under the Court's discretionary authority to grant interlocutory review. First, this Petition presents an important, unsettled legal issue, namely whether a Chapter 93A class action is an appropriate way to hold Massachusetts defendants accountable for unfair and deceptive conduct emanating from Massachusetts, when that conduct harms out-of-state consumers. In other words, this Court should grant this Petition because this issue is "important to th[is] particular litigation as well as important in itself[.]" *Mowbray*, 208 F.3d at 294.

Second, the district court's decertification decision tolls the death knell for Ms. Ortiz's case and is substantively "questionable." Ms. Ortiz brings her claim under Chapter 93A, which the district court determined cannot govern the claims of out-of-state consumers. That choice-of-law

decision reflects an erroneous application of Massachusetts' functional approach to the inquiry. In addition, the district court's analysis of damages is questionable at best.

## I. INTERLOCUTORY REVIEW IS APPROPRIATE BECAUSE IT WOULD GIVE THIS COURT THE OPPORTUNITY TO RESOLVE AN IMPORTANT AND UNSETTLED ISSUE.

Rule 23(f) review is warranted here because it would allow this Court to clarify an "unsettled legal issue that is important to th[is] particular litigation as well as important in itself[.]" *Id.* Namely, in the class action context, does Chapter 93A hold Massachusetts-based entities accountable for misconduct *only* if the injured consumers were harmed or reside within Massachusetts? This question is of obvious importance to this litigation because the district court found it to be determinative of class certification.

The issue is also "important in itself" because it goes to the heart of Chapter 93A's protections: a finding that Chapter 93A does not protect the citizens of other jurisdictions from misconduct by Massachusetts entities would undercut the purpose of Chapter 93A, as well as the precedent interpreting it. The Legislature intended Chapter 93A to serve as "a broad remedial statute" that could "deter misconduct, and . . .

encourage vindicative lawsuits." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1078 (Mass. 2014) (citations omitted). Chapter 93A "does not require a plaintiff to reside in Massachusetts or for the allegedly deceptive activity to have primarily and substantially occurred in Massachusetts." *See Cristostomo v. New Balance Athletics*, 647 F. Supp. 3d 1, 14 (D. Mass. 2022) (holding that Section 9 of Chapter 93A "provides sufficient basis for a nationwide claim against a Massachusetts company"). And as this Court has acknowledged, "Massachusetts public policy strongly favors class actions in the consumer context[.]" *Waithaka v. Amazon.com*, 966 F.3d 10, 30 (1st Cir. 2020); *see also Feeney v. Dell Inc.*, 908 N.E.2d 753, 762 (Mass. 2009) ("[E]xpressions of three branches of Massachusetts government indicate that the public policy of the Commonwealth strongly favors G.L. c. 93A class actions."). Even the district court acknowledged that its choice-of-law ruling "causes injustice" and "weakens deterrence of corporate misconduct" in a case that "calls out for class treatment." Doc. 134 at 1, 25 (citation omitted).[3]

---

[3]     This unsettled and important issue is also "likely to escape effective review," *Mowbray*, 208 F.3d at 294, for the reasons explained in the following section. *See infra* at II.A.

## II. INTERLOCUTORY REVIEW IS ALSO APPROPRIATE BECAUSE MS. ORTIZ FACES A DEATH KNELL SCENARIO AS A RESULT OF THE DISTRICT COURT'S "QUESTIONABLE" DECERTIFICATION DECISION

### A. Ms. Ortiz Faces a Death Knell

Without Rule 23(f) review, Ms. Ortiz faces a death knell. Under the district court's choice-of-law analysis, the law she sued under (Massachusetts) would likely not apply. Doc. 134 at 19–20 (finding that "the guiding factors [] point to the application of the laws of the plaintiffs' home states"). Because Ms. Ortiz was living in Florida when she received Defendants' misrepresentations, the district court's ruling could effectively terminate her litigation.

Further, absent class-wide relief, Ms. Ortiz's "claim is not of a sufficient magnitude to warrant the costs of stand-alone litigation." *See Mowbray*, 208 F.3d at 293. In a class action, the denial of class certification "sometimes defeats the case as a practical matter because the stakes are too small and the litigation costs are too high for the individual plaintiff to go forward." *In re Delta Air Lines*, 310 F.3d 953, 957 (6th Cir. 2002). "Rule 23(f) would permit an appeal in such a 'death-knell' case." *Id.* (citing *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999)). Here, the substantial costs of continued litigation—

including a trial with experts and multiple witnesses—are much too high when compared to Ms. Ortiz's potential recovery. This is especially true given the district court's finding that Ms. Ortiz is not entitled to seek a full refund of tuition, costs, and fees paid to Saba. Doc. 134 at 23–24. Although that conclusion is incorrect as explained below, without this Court's intervention, Ms. Ortiz's damages are not "of a sufficient magnitude to warrant the costs of stand-alone litigation." *Mowbray*, 208 F.3d at 293.

### B. The District Court's Decision is Sufficiently "Questionable" to Warrant Review Under Rule 23(f)

The district court's ruling is "questionable" because (1) it runs counter to Massachusetts' "functional" choice-of-law rules, which countenance a finding that Chapter 93A should apply classwide against the resident defendants in this case, and (2) its treatment of damages disregards well-established case law approving full refunds in analogous contexts and ignores precedent holding that where there are concerns about individual damages issues, bifurcation—not decertification—is the proper way to proceed.

### 1. The district court's decision is inconsistent with Massachusetts' functional choice-of-law rules and undermines Chapter 93A's purpose

The district court erred in ruling that Chapter 93A does not apply classwide. The district court's reasoning suggests that out-of-state consumers can rarely—if ever—assert Chapter 93A claims against Massachusetts-based defendants who deceive them, whether individually or as part of a class. But under Massachusetts's choice-of-law principles, a plaintiff's home state is not given dispositive weight. Rather, as detailed below, out-of-state consumers may bring Chapter 93A claims, and Massachusetts's choice-of-law rules favor the classwide application of Chapter 93A.

As an initial matter, Massachusetts courts routinely permit out-of-state consumers to assert Chapter 93A claims, especially against resident defendants. *See, e.g.*, *Boos v. Abbott Labs.*, 925 F. Supp. 49, 55 (D. Mass. 1996) (discussing the 1979 amendment to Chapter 93A, which removed any geographic restriction on consumer actions); *Cristostomo*, 647 F. Supp. 3d at 14 (explaining that Section 9 of Chapter 93A "provides sufficient basis for a nationwide claim against a Massachusetts company because it does not require a plaintiff to reside in Massachusetts or for

13

the allegedly deceptive activity to have primarily and substantially occurred in Massachusetts.") (citations omitted); *Geis v. Nestlé Waters N. Am.*, 321 F. Supp. 3d 230, 241 (D. Mass. 2018) ("[T]he Court declines to hold that Massachusetts residents are the only consumers who can bring chapter 93A actions, particularly when a consumer is harmed by a fraudulent statement that was made in Massachusetts.").

The district court ruled otherwise after finding that the law governing the place of the plaintiff's reliance—*i.e.*, the law of each class member's home jurisdiction—controls each individual class member's claims against Saba, even though reliance is not an element of "little FTC Acts" like Chapter 93A. Doc. 134 at 13–23. In so ruling, the district court placed great emphasis on the commentary provided in Section 148 of the *Restatement (Second) of Conflicts of Laws* regarding this factor. *Id.* at 17–20. The district court's ruling was legally incorrect, as it contravenes Massachusetts's "functional approach" to choice of law that "eschew[s]" such categorical rules. *Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 29 N.E.3d 197, 202 (Mass. App. Ct. 2015) (citation omitted); *see also Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 670 (Mass. 1985)

("No simple and objective test can provide an acceptable choice-of-law answer in this case, nor should it.").

The "functional choice-of-law approach . . . responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs.*, 473 N.E.2d at 668; *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41–42 (1st Cir. 2020) ("Regardless of the particular flavor of the underlying action, it is pellucid that Massachusetts would apply the law of the state with the 'most significant relationship' to the parties[.]") (citations omitted). In other words, "rather than simply adding up the parties' various contacts with each State," courts "focus [their] attention on the considerations particularly relevant to the case before [them]." *Comerica Bank & Tr., N.A. v. Brown & Rosen, LLC*, 195 N.E.3d 432, 437 (Mass. App. Ct. 2022) (citing *Bushkin Assocs.*, 473 N.E.2d at 669–70) (cleaned up). Because this inquiry requires careful scrutiny of case-specific interests, the Supreme Judicial Court has cautioned that the result in one case often "provide[s] little guidance for anticipating the 'fair result' in other cases." *Bushkin Assocs.*, 473 N.E.2d at 668.

The district court was wrong to apply a categorical approach and to assume that Section 148 of the *Restatement (Second) of Conflicts of Laws*

controls the outcome of the choice-of-law analysis in this case. And the decision was particularly erroneous in the Chapter 93A context for two reasons.

*First*, Section 148's guidance is focused on common law fraud and misrepresentation claims rather than "little FTC Acts" like Chapter 93A. *See* Milner, *From Rancid to Reasonable: Unfair Methods of Competition Under State Little FTC Acts*, 73 AM. U. L. REV. 857, 857 (2024). Little FTC Acts are designed to enable private plaintiffs to target a wider range of deceptive conduct than was possible under the common law; for example, Chapter 93A "dispenses with the need to prove many of the essential elements" of common law claims like fraud and deceit. *Nei v. Burley*, 446 N.E.2d 674, 678 (Mass. 1983). Further, little FTC Acts are "ideal for class certification" because of their focus on the defendant's conduct, and they typically do not require a showing of reliance. *See* Elias, *supra,* at 317–18. Little FTC Acts, including Chapter 93A, were created with a purpose and function that is distinct from the common law claims that Section 148 was designed to address, counseling against the application of Section 148 here.

*Second*, courts have properly rejected the invitation to "mechanically apply[] Section 148" in the Chapter 93A context because it fails to account for the case-specific, choice-influencing considerations required by Massachusetts's choice-of-law rules. *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2013 WL 5466628, at *1 (D. Mass. Sept. 30, 2013); *see Goebel v. Schmid Bros.*, 871 F. Supp. 68, 76 (D. Mass. 1994) (finding Section 148 deficient under Supreme Judicial Court precedent because Section 148 did not determine which state had "the more significant relationship to the transaction or parties") (citing *Bushkin*, 473 N.E.2d at 669–70).

A functional choice-of-law inquiry favors application of Chapter 93A to the claims of all putative class members in this case because Massachusetts has the most significant relationship to the parties and this litigation. Defendants have chosen to operate out of Massachusetts, are familiar with its laws, and seek the protection of its laws when they believe doing so will benefit them. Doc. 82 at 11 & n.18; Doc. 84-43 at 1. From their headquarters in Massachusetts, Defendants: (i) crafted the misleading USMLE representations—down to the precise turn of phrase that would best sell their school—and posted them throughout Saba's

online footprint; (ii) drafted training materials directing admissions staff to evade questions about attrition; and (iii) misled and lied to countless prospective students seeking basic information about attrition. Doc. 84-1 at 3; Doc. 84-2; Doc. 84-3; Doc. 84-4; Doc. 84-5; Doc. 84-6; Doc. 84-24; Doc. 84-25; Doc. 84-27 at 2; Doc. 84-29; Doc. 84-30; Doc. 84-31; Doc. 84-32. In addition, students, including Ms. Ortiz, were required to send all checks and other tuition payments, to Defendants' headquarters in Massachusetts. Doc. 16-1; Doc. 1, ¶ 47. No other state has such a connection to the issues in this case.

Moreover, Massachusetts has a "significant interest' in seeing a resident defendant . . . 'be held accountable for its conduct, which took place in Massachusetts, and which allegedly caused the plaintiff's injury.'" *Holbrook v. Bos. Sci. Corp.*, 487 F. Supp. 3d 100, 106 (D. Mass. 2020) (citation omitted); *Fed. Home Loan*, 2013 WL 5466628, at *2 (applying Massachusetts choice-of-law rules in a case involving rating agencies' misrepresentations to find that, for "the sake of uniformity and predictability," the law of the state where the corporate defendant conducted its business should apply, "rather than the law of the various and numerous States to which the ratings ended up being

disseminated"). By contrast, the interest of states in which class members reside is "less compelling" where, as here, they have no defendants that face liability. *Holbrook*, 487 F. Supp. 3d at 106. As such, there is no jurisdiction that has a greater interest than Massachusetts.

Although the district court expressed concern that applying Chapter 93A to claims asserted by out-of-state consumers "could undermine [the] local interests" of other states (Doc. 134 at 21, 23), that is not, in actuality, a problem here. As the district court observed in a previous case, the "primary aim . . . of consumer protection laws generally . . . is compensating consumers." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004) (Young, J.) (citations omitted). Applying Chapter 93A to Ms. Ortiz's claim would best achieve this "primary aim" because "the protections provided by . . . [Chapter 93A] are quite robust and arguably more consumer friendly than any other state consumer protection provision." *Bezdek v. Vibram USA*, 79 F. Supp. 3d 324, 341 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (citation omitted). Thus, the application of Chapter 93A would not undermine the interests that class members' home states have in ensuring that their residents obtain redress for Defendants' deceptive conduct. *See* Elias, *supra*, at 339

("[W]hen a plaintiff allegedly injured by [a defendant's] conduct accepts the law of the defendant's home state, the interests of the plaintiff's state are neither frustrated nor defeated[.]").

Unsurprisingly, in similar circumstances, multiple courts have recognized the propriety of nationwide Chapter 93A class actions. *See Hebert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 374 (D. Mass. 2019) (certifying nationwide Chapter 93A class on a *contested* certification motion);[4] *see also Bezdek*, 79 F. Supp. 3d at 339 & 343 (certifying a nationwide class of consumers who purchased shoes based on misrepresentations of their benefits because "93A provides a serviceable and appropriate cause of action common to all class members" and "a consumer class action against a Massachusetts corporate defendant alleging misrepresentations made in advertising and promotional

---

[4]     The district court indicated that nationwide Chapter 93A class actions have only been certified for settlement. That is incorrect as shown above. Moreover, even if that were true, cases involving settlement classes have the same persuasive value as cases involving contested certification motions because choice-of-law considerations continue to apply with full force when settlement classes are certified. *See In re M3 Power Razor*, 270 F.R.D. 45, 57 (D. Mass. 2010) (noting that various "Circuits have required [that] a rigorous analysis of state law variation must precede class certification" in the settlement context); *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 22 (D. Mass. 2004) (Young, J.).

materials in violation of Chapter 93A . . . is superior to any other mechanism for adjudicating the case"); *In re M3 Power Razor*, 270 F.R.D. at 56 (holding that "Chapter 93A . . . [was] available to all plaintiffs challenging alleged misrepresentations made during a North American marketing campaign by a Massachusetts corporate defendant").

Massachusetts's "significant interest" is heightened here because "Massachusetts public policy strongly favors class actions in the consumer context," *Waithaka*, 966 F.3d at 30—especially Chapter 93A class actions. *See Costa v. FCA US*, 2022 WL 18910359, at *13 (D. Mass. Sept. 30, 2022) (noting "the Commonwealth's general legislative policy favor[ing] class actions in Chapter 93A cases") (citation omitted); *Feeney*, 908 N.E.2d at 762 ("[E]xpressions of three branches of Massachusetts government indicate that the public policy of the Commonwealth strongly favors G.L. c. 93A class actions.").

In sum, by "imposing liability on [Defendants]" for "seeking to profit from unfair practices," the Commonwealth's fundamental public policy interests, embodied in Chapter 93A, would be advanced: Defendants would "be held accountable for [their] conduct, which took place in Massachusetts," *Holbrook*, 487 F. Supp. 3d at 106 (citation omitted); the

"proper disclosure of information" to prospective students would be promoted, *Purity Supreme v. Att'y Gen.*, 407 N.E.2d 297, 306–07 (Mass. 1980) (citation omitted); and educational institutions would be deterred from making similar misrepresentations in the future, thereby "improv[ing] the commercial relationship between consumers and business persons and . . . encourage[ing] more equitable behavior in the marketplace," *UBS Fin. Servs. v. Aliberti*, 133 N.E.3d 277, 291 (Mass. 2019) (citation omitted).[5] For all of these reasons, Chapter 93A applies to the entire class, and the district court erred in concluding otherwise.

### 2. To the extent the district court relied on its analysis of damages to decertify the class, that analysis was erroneous.

Although choice of law was the only stated basis for the district court's determination that Ms. Ortiz failed to meet Rule 23(b)(3)'s

---

[5]     *See also Drakopoulos v. U.S. Bank Nat. Ass'n*, 991 N.E.2d 1086, 1097 n.20 (Mass. 2013) (noting that the SJC "interpret[s] consumer protection statutes broadly to effectuate their remedial purposes") (citation omitted); *Pride Hyundai v. Chrysler Fin.*, 263 F. Supp. 2d 374, 397 (D.R.I. 2003), *aff'd* 369 F.3d 603 (1st Cir. 2004) (observing "that the increased interventionism contemplated by Chapter 93A . . . stemmed, at least in part, from a desire to remedy what had been gross inequalities in bargaining power that had resulted in deceitful or unfair practices by powerful market players against weak ones").

predominance requirement, *see* Doc. 134 at 23–25, the district court also rejected her theory of damages. *Id.* at 23. To the extent the court intended to rely on that analysis as part of its predominance inquiry, that decision was erroneous and, at the very least, "questionable" for the following reasons, thus making Rule 23(f) review appropriate.

*First*, it is "well-established" that individual damages issues are "rarely determinative" of predominance. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (internal quotation marks omitted). Instead, where "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Id.* (citation omitted); *see also* NEWBERG ON CLASS ACTIONS § 4:54 (6th ed. 2024).[6]

---

[6]    In support of its finding against a full refund model, the district court cited *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 642 (S.D. Cal. 2015). Doc. 134 at 24. But that case actually supports Plaintiff's position. In *Makaeff*, the court held that "a baseline of full-recovery is the starting point in the damages analysis" and that, during a subsequent damages phase, Defendants may be allowed to put forth evidence supporting an offset. *Id.* at 642. The court further held that, where there are concerns about individual damages issues, the appropriate way to proceed is not through denial of class certification but rather, through bifurcating liability and damages. *Id.* at 643 (holding, in a case involving a full-refund damages theory similar to Plaintiff's, that "[b]ifurcation will

*Second*, the recovery of tuition, costs, and fees paid to Saba is consistent with well-established law regarding the calculation of damages in unfair and deceptive trade practices case law, including actions brought under Chapter 93A. *See, e.g.*, *Commonwealth v. Corinthian Colls.*, No. 2014-1093-E, at 2, 5 (Mass. Super. Aug. 1, 2016) (Doc. 71-5) (awarding damages consisting of "all monies acquired by [a for-profit college] from [students]" because the college misrepresented, *inter alia*, "the value and quality of the education provided" in violation of Chapter 93A); *Vara v. DeVos*, 2020 WL 3489679, at *7, *32 n.27 (D. Mass. June 25, 2020) (noting that the damages award in the *Corinthian Colleges* litigation was consistent with Chapter 93A precedent).[7]

*Third*, this theory of damages also makes good sense and is tied to Ms. Ortiz's theory of liability: that Defendants' unfair and deceptive USMLE representations deprived her of the opportunity to make an informed decision about whether to take the financial risk of attending

---

permit available defenses to be litigated and economies of class certification to be realized").

[7]     *See also F.T.C. v. Trudeau*, 579 F.3d 754, 773 n.16 (7th Cir. 2009); *McGregor v. Chierico*, 206 F.3d 1378, 1388–89 (11th Cir. 2000); *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993).

Saba.[8] Indeed, where "[t]he seller's misrepresentations tainted the customers' purchasing decisions," consumers are entitled to seek full refunds because they were robbed of a free choice in the marketplace. *See Figgie Int'l*, 994 F.2d at 606. "If [students] had been told the truth," they could have assessed whether attending a medical school where only half the students who enroll make it through two years was worth the substantial financial risk. *See id.* In such circumstances, an offset for value is inappropriate. *See F.T.C. v. Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004) (holding that, when the "fraud [is] in the selling, not the value of the thing sold," the district court "need not offset the value of any product the defrauded consumers received") (citations omitted).

For these reasons, the district court's analysis of the damages issue was erroneous, as it misapprehends Ms. Ortiz's theory of liability, disregards well-established case law approving full refunds under Chapter 93A in analogous scenarios, and ignores precedent holding that

---

[8]    Contrary to the district court's ruling, Ms. Ortiz has never asserted that Defendants' violation was the "failure to deliver on *licensure*," *see* Doc. 134 at 24 (emphasis added). Rather, she argues that Defendants' unfair and deceptive statements deprived her of a meaningful choice, making a full-refund theory of damages entirely appropriate. *See, e.g.*, *Figgie Int'l*, 994 F.2d at 606.

where there are concerns about individual damages issues, bifurcation—not denial of class certification—is the appropriate way to proceed. *See supra* at n.6. Rule 23(f) review is therefore appropriate.

## CONCLUSION

The Petitioner raises important questions of law and seeks to appeal a "questionable" order decertifying a class of students who paid tuition and incurred student debt on the basis of unfair and deceptive representations. If the district court's decertification order is allowed to stand, Massachusetts defendants will be insulated from accountability under Massachusetts law and will have no incentive to discontinue their harmful practices. This Court should grant the Petition.

Dated: December 10, 2024          Respectfully submitted,


/s/ Patrick T. Egan
**BERMAN TABACCO**
Patrick T. Egan
1st Cir. Bar No. 92444
One Liberty Square
Boston, MA 02109
(617) 542-8300
pegan@bermantabacco.com

**MAYNARD NEXSEN PC**
Margaret M. Siller
1st Cir. Bar No. 1214229
1131 4th Ave. S., Suite 320
Nashville, TN 37210
(629) 258-2253
msiller@maynardnexsen.com


**NATIONAL STUDENT
LEGAL DEFENSE NETWORK**
Daniel A. Zibel
1st Cir. Bar No. 1190437
1701 Rhode Island Ave. NW
Washington, DC 20036
(202) 734-7495
dan@defendstudents.org

*Counsel for Plaintiff-Petitioner*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with Fed. R. App. P. 5(c) and 32(a). This document is proportionally spaced and complies with the typeface of 14-point font and length limitations, containing 5146 words— exempting the parts of the document exempted by Rule 32(f).

/s/ Patrick T. Egan
Patrick T. Egan

## CERTIFICATE OF FILING AND SERVICE

I certify that, on December 10, 2024, a copy of the foregoing brief was filed via this Court's electronic filing system, and was served by email on the Counsel of Record for Defendants-Respondents listed below:

| Daryl J. Lapp (BBO No. 554980) | Michael J. McMorrow |
|---|---|
| daryl.lapp@lockelord.com | michael.mcmorrow@lockelord.com |
| Locke Lord LLP | Locke Lord LLP |
| 111 Huntington Avenue | 111 S. Wacker Drive |
| Boston, MA 02199 | Chicago, IL 60606 |
| Tel: 617.230.0100 | Tel: 312.443.0246 |
| Dale A. Evans, Jr. | Nathalie M. Vega |
| dale.evans@lockelord.com | nathalie.vega@lockelord.com |
| Locke Lord LLP | Locke Lord LLP |
| 777 South Flagler Drive – East Tower Suite 215 | 2800 Financial Plaza |
| West Palm Beach, FL 33401 | Providence, RI 02903 |
| Tel: 561.820.0248 | T: 401-276-6421 |

/s/ Patrick T. Egan
Patrick T. Egan

# ATTACHMENT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION No. 23-12002-WGY |
| SABA UNIVERSITY SCHOOL OF MEDICINE, R3 EDUCATION, INC., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

YOUNG, D.J.                                                          November 26, 2024

## MEMORANDUM AND ORDER

## I.   INTRODUCTION AND RELEVANT PROCEEDINGS

This decision illustrates the power of oral argument.  The present complaint seeks class treatment for a claim of false advertising, a type of claim that calls out for class treatment.  See Jordan Elias, The Multistate Problem in Consumer Class Actions and Three Solutions, 17 Harv. L. & Pol'y Rev. 301 (2022).  On September 17, 2024, the Court held a full hearing addressing the issue of class certification.  See Tr. Mot. Certify Class, ECF No. 98.  In both her brief and at oral argument, the plaintiff's counsel made a compelling argument

1

supporting class certification as to liability.[1]  Id.; Pl.'s Mem.

Supp. Mot. Class Cert. ("Pl.'s Mem."), ECF No. 51.  Undaunted,

_____

[1] Natalia Ortiz, a former student of Saba University School of Medicine, on behalf of herself and all those similarly situated (collectively, "Ortiz") moved for class certification under Federal Rule of Civil Procedure 23(b)(3).

On June 29, 2019, Ortiz sent a "Letter of Intent to Enroll" to R3 Education, Inc. seeking to enroll in Saba University School of Medicine ("Saba").  Mem. Supp. Defs.' Mot. Dismiss, Ex. A, Letter of Intent to Enroll & Tuition Deposit Form, ECF No. 16-1.  Ortiz began classes in September of 2019.  Compl. ¶ 77, ECF No. 1.

Saba is a for-profit medical school in the Dutch Caribbean, headquartered in Massachusetts, that caters mainly to students with comparatively low GPAs and MCAT scores.  Id. ¶¶ 1-2, 19, 22.  Generally, the first USMLE exam, USMLE Step 1, is taken after students complete their basic science courses in their first two years or five semesters of medical school, and the series of USMLE exams is required to be completed in order to obtain a medical license.  Id. ¶¶ 53-54.  The overall average passage rate for first-time USMLE Step 1 test takers from American and Canadian medical schools was 97% in 2019, 98% in 2020, 96% in 2021, and 93% in 2022.  Id. ¶ 56.

Ortiz alleges that Saba consistently advertised, since at least June 2015, that its students' passage rate for the USMLE Step 1 was 95-100%, and that Saba's Director of Admissions stated via e-mail to Ortiz that "virtually every Saba student passes the USMLE on their first attempt."  Id. ¶¶ 57, 60, 69-70, 74.  Ortiz alleges that this high passage rate was represented as indicative of the quality of Saba's education, id. ¶ 63, and that it was due to these high passage rates that she applied to Saba, id. ¶ 76.

Ortiz soon came to learn that in order for students at Saba to sit for the USMLE Step 1, they must first achieve a certain score on an internal Saba University pre-test.  Id. ¶ 87.  This was not something she was informed about prior to enrolling. Id. ¶ 93.  On average, only 50% of students at Saba sit for the USMLE Step 1.  Id. ¶ 80.  In contrast, of students that matriculated at American medical schools in the period 2017- 2019, 89.3% sat for the USMLE Step 1.  Id. ¶ 81.  Therefore, while an average of 85.6% of students at all American medical schools passed the USMLE on their first attempt, the vast majority of students sat for it.  Id.  In contrast, the near- 100% pass rate that Saba advertised was based on the scores of

defense counsel focused on the difficulties in calculating damages and the concomitant administrative problems in administrating a worldwide class action. Tr. Mot. Certify Class 8-13.

Sensitive to the need -- present in every case, see Manual for Complex Litigation (Fourth) § 10.13 (2004); Robert H. Klonoff, The Decline of Class Actions, 90 Wash. U. L. Rev. 729, 756 (2013) -- to move the case along, the Court ruled from the bench and tentatively certified the following class:

> All individuals who enrolled at Saba from September 2017 to the date of the certification order in this matter who: 1) are no longer enrolled at Saba and 2) did not sit for the USMLE Step 1 exam. Excluded from the Class are: [Students who transferred credit to another school, or failed to pass a majority of the classes that they took]; Defendants, any entity in which Defendants have a controlling interest, and Defendants['] officers, directors, legal representatives, successors, and assigns.

---

the around only 50% of its students who sat for the exam. Id. ¶ 80.

Ortiz claims that she would not have taken out hefty student loans and matriculated at Saba if she had been aware that only half of Saba's students sat for the USMLE Step 1. Id. ¶ 84. After completing her first five semesters at Saba, Ortiz failed to pass the pre-test within three attempts and was dismissed in accordance with Saba's policies. Id. ¶¶ 95-96.

Ortiz brought this action on behalf of herself and others similarly situated, seeking damages from Saba University and other relief -- including an injunction against Saba's continuing its deceptive advertisement -- based on the claim that it misled her and other class members through its advertisements about its near-100% USMLE Step 1 pass rates while omitting that an average of only 50% of its students sit for Step 1. Id., Prayer for Relief.

3

[Proposed] Order Granting Pl.'s Mot. Class Cert., ECF No. 50-1; see Tr. Mot. Certify Class 13. It did so with the following caveat:

> That's the ruling of the Court. Subject to the risk that when I . . . write my opinion, I . . . conclude, on further review, that it just won't work and I decertify the class. . . . Obviously we're not sitting still, it's a dynamic. So if you have something to say, I'm writing the thing up, so feel free. . . . The rest of it you can put in writing.

Tr. Mot. Certify Class 14-16.

Saba, as is its right, promptly filed a petition seeking interlocutory review with the First Circuit. Fed. R. Civ. P. 23(f). In the meantime, this Court was writing up its certification decision -- and realized that decision was wrong. Because jurisdiction as to the order of class certification divests when the appeals court accepts the petition seeking interlocutory review, see In re Intuniv Antitrust Litig. (Indirect Purchasers), No. 16-CV-12396, 2019 WL 5789837, at *2 (D. Mass. Nov. 6, 2019) (Burroughs, J.); Schultz v. Emory Univ., No. 23-12929, 2024 WL 4534428, at *3 (11th Cir. Oct. 21, 2024); Amaya v. DGS Constr., LLC, No. TDC-16-3350, 2019 WL 1501584 (D. Md. Jan. 28, 2019), and since the First Circuit has not yet accepted jurisdiction over Saba's appeal, this Court has jurisdiction to decertify the class pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), see City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 886 (9th Cir.

2001) ("A district court therefore retains jurisdiction over an interlocutory order -- and thus may reconsider, rescind, or modify such an order -- until a court of appeals grants a party permission to appeal."); see also In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570(GBD)(SN), 2024 WL 809887, at *2 n.3 (S.D.N.Y. Feb. 27, 2024); see generally Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 294 (1st Cir. 2000). Therefore, this Court here issues its memorandum of decision decertifying the class.

## II. ANALYSIS

### A. Legal Standard

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

"To qualify for class certification under Rule 23, a plaintiff must demonstrate that: 1) there are so many class members that joinder of all members is impracticable; 2) common questions of law or fact exist among the class members; 3) the named plaintiff's claims or defenses are typical of those of the class; and 4) the named plaintiff will fairly and adequately represent the interests of the class." Wortman v. LogMeIn,

Inc., No. 18-11475-GAO, 2022 WL 3714620, at *1 (D. Mass. Aug. 29, 2022) (O'Toole, J.). These are also known as the Rule 23(a) requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a); Wal-Mart Stores, 564 U.S. at 349.

In addition affirmatively to establishing the Rule 23(a) requirements, the party seeking class certification must also establish one of the three grounds listed under Rule 23(b). See Amchem Prods. v. Windsor, 521 U.S. 591, 614 (1997); Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). If challenged, the party seeking class certification must establish the facts underlying the Rule 23(a) and 23(b) requirements by a preponderance of the evidence. Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012); In re Nexium Antitrust Litig., 777 F.3d 9, 27 (1st Cir. 2015). "Once plaintiffs have made their initial showing, defendants have the burden of producing sufficient evidence to rebut the plaintiff's showing." In re Nexium, 777 F.3d at 27.

In reviewing requests for class certification, the district court must conduct a "rigorous analysis" which will "entail some overlap with the merits of the plaintiff's underlying claim." Wal-Mart Stores, 564 U.S. at 351 (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)). A court must not, however, "turn the class-certification proceeding into an

6

unwieldy trial on the merits." In re PolyMedica Corp. Sec.
Litig., 432 F.3d 1, 17 (1st Cir. 2005).

### A. Rule 23(a)

#### 1. Numerosity

For a class to be certified, it must be "so numerous that
joinder of all members is impracticable." Fed. R. Civ. P.
23(a)(1). Courts have routinely referred to this as the
"numerosity" requirement. See, e.g., Wal-Mart Stores, 564 U.S.
at 349; General Tel., 457 U.S. at 156. While there is no
minimum number of class members needed to satisfy this
requirement, as a general matter, courts have held that if the
moving party can establish that its class's potential members
exceed 40, the requirement has been met. See, e.g., Garcia-
Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting
Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)) ("No
minimum number of plaintiffs is required to maintain a suit as a
class action, but generally if the named plaintiff demonstrates
that the potential number of plaintiffs exceeds 40, the first
prong of Rule 23(a) has been met.").

With Ortiz's proposed class definition, and based on Saba's
records of former students, at least 500 former students are
implicated in the class, establishing the impracticability of
joinder. See Pl.'s Mem. 9; Decl. Siller Supp. Pl.'s Mot. Class
Cert., Ex. 40, ECF No. 53-40; id., Ex. 41, ECF No. 53-41.

Therefore, the numerosity requirement of Rule 23(a)(1) is
satisfied.

### 2. Commonality

For a class to be certified, there must also be "questions
of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).
Courts have called this the "commonality" requirement. See,
e.g., Wal-Mart Stores, 564 U.S. at 349; General Tel., 457 U.S.
at 156. A question is common if it is "capable of classwide
resolution -- which means that determination of its truth or
falsity will resolve an issue that is central to the validity of
each one of the claims in one stroke." Wal-Mart Stores, 564
U.S. at 350; see also Parent/Professional Advocacy League v.
City of Springfield, 934 F.3d 13, 28 (1st Cir. 2019). At its
crux, commonality is typically about "'a particular and
sufficiently well-defined set of allegedly illegal policies [or]
practices' that work similar harm on the class plaintiffs."
Parent/Professional Advocacy League, 934 F.3d 13, 28 (alteration
in original) (quoting Parsons v. Ryan, 754 F.3d 657, 679 (9th
Cir. 2014)).

To meet this commonality standard, a class need not
establish that every question of law or fact is identical;
rather, the existence of a single significant common issue of
fact or law is sufficient. In re Pharmaceutical Indus. Average
Wholesale Price Litig., 230 F.R.D. 61, 78 (D. Mass. 2005)

(Saris, J.). "The threshold of 'commonality' is not high." <u>Id.</u> (quoting <u>Jenkins</u> v. <u>Raymark Indus., Inc.</u>, 782 F.2d 468, 472 (5th Cir. 1986)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Id.</u> (quoting <u>Hanlon</u> v. <u>Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Ortiz has established a "common core of salient facts" through identifying a significant, uniform representation made by Saba University to all prospective students: the institution's USMLE Step 1 pass rates. <u>See</u> Compl. ¶¶ 58-66, 140. Ortiz contends that this representation, made through widely disseminated advertisements and standardized marketing materials, was misleading. <u>See</u> Pl.'s Mem. 10-11. Consequently, Ortiz has satisfied the commonality requirement under Rule 23(a)(2).

### 3. Typicality

For a class to be certified, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts refer to this as the "typicality" requirement. <u>See</u> <u>Wal-Mart Stores</u>, 564 U.S. at 349; <u>General Tel.</u>, 457 U.S. at 156. This standard is met when the plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class, and . . .

9

its claims are based on the same legal theory as those of the class." In re Boston Sci. Corp. Sec. Litig., 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (Woodlock, J.). Moreover, typicality is not a highly demanding requirement, and is met when there is "congruence between particular claims of the named class representatives and the generalized claims that are common to the class." Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 26 (D. Mass. 2003) (Gertner, J.); see also In re Suffolk Univ. Covid Refund Litig., No. 20-10985, 2022 WL 6819485, at *1 (D. Mass. Oct. 11, 2022). Saba's arguments against typicality repeat the same arguments it makes regarding commonality. See Defs.' Mem. Opp'n Class Cert. ("Defs.' Mem.") 13 n.15, ECF No. 69.

Ortiz's claims are based on the same factual and legal premises as those of the proposed class members: both she and the class were allegedly harmed by the same marketing misrepresentations by Saba, and both allege harm under the same consumer protection laws. See In re Boston Sci. Corp., 604 F. Supp. 2d at 282. Ortiz, therefore, can "fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns." Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 264 (D. Mass. 2005) (Woodlock, J.).

### 4. Adequacy

The final requirement for class certification under Rule
23(a) is that "the representative parties . . . fairly and
adequately protect the interests of the class." Fed. R. Civ. P.
23(a)(4). Courts commonly refer to this as the "adequacy of
representation" requirement. See Wal-Mart Stores, 564 U.S. at
349; General Tel., 457 U.S. at 156.

To satisfy the adequacy requirement, the moving party must
meet a two-step standard: "The moving party must show first that
the interests of the representative party will not conflict with
the interests of any of the class members, and second, that
counsel chosen by the representative party is qualified,
experienced and able to vigorously conduct the proposed
litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130
(1st Cir. 1985).

Ortiz asserts that her claims, like those of the proposed
class, are rooted in Saba University's representations regarding
USMLE Step 1 pass rates. As alleged, Ortiz was induced to
enroll by these same representations, which similarly impacted
other class members. See Compl. ¶ 119-21. Therefore, her
interests in addressing and redressing these alleged
misrepresentations are aligned with those of the class. See In
re Boston Sci. Corp., 604 F. Supp. 2d at 282.

11

Saba has not raised any specific challenges to the adequacy of Ortiz as class representative, nor has it contested the qualifications or experience of her counsel.  Accordingly, the Court finds that Ortiz has satisfied the adequacy requirement.

***

For the reasons examined above, the Court holds that Ortiz successfully establishes the four requirements for class certification under Rule 23(a).  The Court next turns to an analysis of the Rule 23(b) requirements.

### B. Rule 23(b)(3) -- Predominance

Under Rule 23(b)(3), plaintiffs must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) contains two prongs, that is, the "requirements of predominance and superiority." In re Boston Sci. Corp., 604 F. Supp. 2d at 282.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623.  "[T]he need for some individualized determinations at the liability and damages stage does not defeat class certification. . . .  Rather, the question is whether there is 'reason to think that [individualized]

12

questions will <u>overwhelm</u> common ones and render class
certification inappropriate[.]'" <u>In re Nexium</u>, 777 F.3d at 21
(quoting <u>Halliburton Co.</u> v. <u>Erica P. John Fund, Inc.</u>, 573 U.S.
258, 276 (2014)). The First Circuit has noted that, in
conducting a predominance inquiry, "a district court must
formulate some prediction as to how specific issues will play
out in order to determine whether common or individual issues
predominate in a given case." <u>Waste Mgmt. Holdings, Inc.</u> v.
<u>Mowbray</u>, 208 F.3d 288, 298 (1st Cir. 2000). "In order to obtain
class certification, a plaintiff at all times bears the burden
of demonstrating that the Rule 23 requirements have been
satisfied." <u>Southern States Police Benev. Ass'n, Inc.</u> v. <u>First</u>
<u>Choice Armor & Equip., Inc.</u>, 241 F.R.D. 85, 90 (D. Mass. 2007)
(Gorton, J.) (citing  <u>Smilow</u>, 323 F.3d at 38; <u>Swack</u>, 230 F.R.D.
at 257).

### 1. Choice-of-Law

The presence of divergent state laws can "swamp any common
issues and defeat predominance"; therefore, the Court must
determine which states' laws govern the claims of the class
members in order to conduct its predominance analysis. <u>In re</u>
<u>Nexium (Esomeprazole) Antitrust Litig.</u>, 297 F.R.D. 168, 175 (D.
Mass. 2013) (quoting <u>Mowbray</u> v. <u>Waste Mgmt. Holdings, Inc.</u>, 189
F.R.D. 194, 199 (D. Mass. 1999)), <u>aff'd</u>, 777 F.3d 9 (1st Cir.
2015). This requires an initial assessment of whether a genuine

13

conflict exists among the potentially applicable state laws that could defeat predominance. See, e.g., Powers v. Lycoming Engines, 328 F. App'x 121, 124 (3d Cir. 2009); Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 928 (9th Cir. 2019); Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 140 (2d Cir. 2015); Hale v. Emerson Elec. Co., 942 F.3d 401, 404 (8th Cir. 2019); see also In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1017-18 (7th Cir. 2002).

Plaintiffs seeking class certification bear the burden of conducting a "rigorous analysis" of the relevant laws of the states at issue, particularly when the claims involve plaintiffs from multiple jurisdictions. In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig., 270 F.R.D. 45, 57 (D. Mass. 2010) (Woodlock, J.); see also Gariety v. Grant Thornton, LLP, 368 F.3d 356, 370 (4th Cir. 2004). Courts have repeatedly held that the predominance requirement cannot be met "when the various laws have not been identified and compared." Gariety, 368 F.3d at 370; see also Grandalski v. Quest Diagnostics Inc., 767 F.3d 175, 180 (3d Cir. 2014); Southern States, 241 F.R.D. at 90 (discussing plaintiffs' burden of demonstrating that variations in state law do not defeat predominance).

In opposing class certification, Saba highlights numerous material differences between the law of Massachusetts and other states' consumer protection laws. See Defs.' Mem. 5 & nn.7-10.

14

The state laws cited include some that require a showing of reliance on representations, and one state which only permits suit to be brought for affirmative misrepresentations. Id. (citing Correa v. Pecos Valley Dev. Corp., 617 P.2d 767, 771 (Ariz. Ct. App. 1980) ("Injury occurs when the consumer relies on the misrepresentation . . . ."); Weinberg v. Sun Co., Inc., 777 A.2d 442, 446 (Pa. 2001); Cruz v. Andrews Restoration, Inc., 364 S.W.3d 817, 823-24 (Tex. 2012); Adardour v. American Settlements Inc., 2009 WL 1971458, at *3 (E.D. Va. 2009); Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 245 (Wis. 2004) ("Silence -- an omission to speak -- is insufficient to support a claim under Wis. Stat. § 100.18(1).")).  This materially differs from a claim under the Massachusetts consumer protection statute, which only requires a showing that the alleged misrepresentation "'caused' an identifiable 'harm,'" and which permits claims based on omissions. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017) (quoting Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 50 (D. Mass. 2015) (Saylor, J.)).  The parties do not dispute that a material conflict exists between Massachusetts law and the laws of the class members' home states.  These discrepancies underscore the challenge plaintiffs face in proving that common questions of law predominate across a nationwide class.

15

Despite these challenges, Ortiz attempts to circumvent the need for a detailed comparison of state laws by asserting that Massachusetts law should apply uniformly to the entire proposed class. See Pl.'s Mem. 15. Her argument hinges on the premise that in conducting a "functional" choice-of-law analysis, this Court will find that Massachusetts has the most significant relationship to the plaintiffs' claims, and that Massachusetts has a strong interest in regulating business conduct within its borders.

Nevertheless, after finding "at least one potentially relevant difference among the state laws," this Court is guided to undertake a choice-of-law analysis. DaSilva v. Border Transfer of MA, Inc., 296 F.Supp.3d 389, 399 (D. Mass. 2017) (Saris, J.). Since subject matter jurisdiction is grounded in diversity, the Court applies the choice-of-law rules of the forum state -- here, Massachusetts. Viscito v. National Plan. Corp., 34 F.4th 78, 83 (1st Cir. 2022); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Massachusetts applies a "functional approach to choice of law." Dahua Tech. USA Inc. v. Feng Zhang, 988 F.3d 531, 538 (1st Cir. 2021) (citing Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 645 (1994)). To conduct this analysis, courts are "explicitly guided" by the Restatement (Second) of Conflict of Laws ("Restatement"). Viscito, 34 F.4th at 83 (quoting UBS Fin.

16

Servs., Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019)).
"Although Section 9 of the Massachusetts Consumer Protection Act
has no textual constraints on its application, Massachusetts
choice-of-law principles are not so unlimited." Camey v. Force
Factor, LLC, No. 14-14717-RWZ, 2016 WL 10998440, at *3 (D. Mass.
May 16, 2016) (Zobel, J.). Guided by the Restatement, in a
consumer fraud case courts look to which state has the "most
significant relationship" to the claim and to the parties. In
re Pharmaceutical, 230 F.R.D. at 82 n. 21.

In determining which state has the most significant
relationship to a nationwide consumer fraud claim, the Court is
guided by the factors set forth in Section 148(2) of the
Restatement. Id. at 82-83; Conway v. Planet Fitness Holdings,
LLC, 101 Mass. App. Ct. 89, 97-99 (2022); Camey, 2016 WL
10998440, at *3; Downing v. Keurig Green Mountain, Inc., No. 20-
CV-11673, 2021 WL 2403811, at *7-8 (D. Mass. June 11, 2021)
(Talwani, J.). Section 148(2) lists six contacts to be
considered:

> (a) the place, or places, where the plaintiff acted in
> reliance upon the defendant's representations; (b) the
> place where the plaintiff received the
> representations; (c) the place where the defendant
> made the representations; (d) the domicil, residence,
> nationality, place of incorporation and place of
> business of the parties; (e) the place where a
> tangible thing which is the subject of the transaction
> between the parties was situated at the time, and (f)
> the place where the plaintiff is to render performance

under a contract which he has been induced to enter by
the false representations of the defendant.

Restatement § 148(2) (1971). These choice-influencing factors
are to be considered in light of the overarching principles set
forth by Section 6 of the Restatement. Restatement § 148 cmt.
e.[2]

The parties disagree on the application of Restatement §
148, with Ortiz stating that Section 148 has "no applicability
in the Chapter 93A context because 'reliance' is not a component
of a Chapter 93A claim." Pl.'s Reply Supp. Class Cert. ("Pl.'s
Reply") 8 n. 22, ECF No. 82. Nevertheless, this preemptively
assumes the application of Massachusetts law. When conducting a
choice-of-law analysis, the Court is explicitly guided by the
Restatement's sections 148 and 6, which require a neutral
analysis of the implicated states' laws.

---

[2] Section 148's "Comment on Subsection 2" provides that the
"relative importance" of the factors "in a given case should be
determined in light of the choice-of-law principles stated in §
6." Restatement § 148 cmt. e. Section 6 lists seven principles
for a court to consider: (1) the needs of the interstate and
international systems, (2) the relevant policies of the forum,
(3) the relevant policies of other interested states and the
relative interests of those states in the determination of the
particular issue, (4) the protection of justified expectations,
(5) the basic policies underlying the particular field of law,
(6) certainty, predictability and uniformity of result, and (7)
ease in the determination and application of the law to be
applied. Restatement § 6(2). Comment c to Section 6, however,
makes clear that this list is not to be considered exclusive,
and that courts will "[u]ndoubtedly" give consideration to
factors not listed. Restatement § 6 cmt. c.

Here, the alleged misrepresentations were created and disseminated from Massachusetts, and the class members received and acted in reliance on Saba's alleged misrepresentations in their home states.[3] Ortiz has not specifically identified the states where class members are domiciled, but it is undisputed that potential plaintiffs are disbursed worldwide.[4] As explained in the commentary to Restatement § 148, while the place where the defendant made the representations is "approximately as important" as the place where the plaintiff received the representations, the place where the plaintiff relied on a defendant's alleged misrepresentation is "more important." Restatement § 148 cmt. g.[5] Furthermore, when a plaintiff received and relied on representations in a single state, that

---

[3] While reliance is not a per se requirement for a claim under Chapter 93A, the language of Chapter 93A refers to reliance. See Mass. Gen. Laws ch. 93A, § 9 (requiring a demand for relief "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered"). For the purpose of conducting a functional choice-of-law analysis as directed by the Massachusetts Supreme Judicial Court, the location that formed the basis for the plaintiffs' causal relationship to the alleged misrepresentations will be construed as the place of reliance.

[4] Defs.' Mem. 2 (explaining that former students implicated in the class come from "40 states, the District of Columbia, Puerto Rico, and at least 13 foreign nations.")

[5] "[T]he place where a plaintiff acted in reliance on defendant's representations is more important than the place where the defendant made or the plaintiff received the representations." Restatement § 148 cmt. g.

state's laws will generally apply.  Restatement § 148 cmt. j.[6]
Factor five is not applicable here, and factor six points to
Massachusetts, but this contact is not as relevant as where the
plaintiff relied on the representations.  See id.  Accordingly,
as the plaintiffs received and relied on the alleged
misrepresentations in their home states, the guiding factors of
Section 148(2) point to the application of the laws of the
plaintiffs' home states.

Furthermore, this court is guided to analyze these factors
in light of Restatement § 6.  Recognizing the risk of
conflicting with other states' policies, courts in this district
have followed an "unbroken string of opinions" declining to
extend Chapter 93A to multi-state classes.  Camey, 2016 WL
10998440, at *2-3; see, e.g., In re Pharmaceutical, 230 F.R.D.
at 83; Downing, 2021 WL 2403811, at *8; Faherty v. CVS Pharmacy,
Inc., No. 09-CV-12102, 2011 WL 810178, at *5 (D. Mass. Mar. 9,
2011) (Stearns, J.); Southern States, 241 F.R.D. at 93; Feingold
v. John Hancock Life Ins. Co. (USA), No. 13-CV-10185, 2013 WL
4495126, at *3 (D. Mass. Aug. 19, 2013) (Tauro, J.), aff'd, 753

---

[6] When a "plaintiff acted in reliance upon the defendant's
representations in a single state, this state will usually be
the state of the applicable law, with respect to most issues, if
(a) the defendant's representations were received by the
plaintiff in this state, or (b) this state is the state of the
plaintiff's domicile or principal place of business."
Restatement § 148 cmt. j.

F.3d 55 (1st Cir. 2014). This is in part because each state involved has an interest in applying its own consumer protection laws to transactions within its borders. Restatement 148 cmt. i.[7]

Applying Massachusetts law across all states in this action could undermine these local interests by limiting each state's ability to enforce its standards. Thus, to avoid imposing inconsistent liability standards across jurisdictions, the Court cannot disregard each state's regulatory framework for consumer protection. In re Pharmaceutical, 230 F.R.D. at 83 (collecting cases rejecting application of the law of a defendant's principal place of business to a nationwide class). Although applying Massachusetts law to a Massachusetts defendant would significantly simplify the choice-of-law determination, a "tempting" proposition, it is well established that "under the Restatement, the laws of the home states of the consumers govern." Id.

---

[7] "The plaintiff's domicil or residence, if he is a natural person, or the principal place of business, if plaintiff is a corporation, are contacts of substantial significance when the loss is pecuniary in its nature, as is true of the situations covered by the rule of this Section. This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." Restatement § 148 cmt. i.

Although courts in this district have permitted nationwide class certification under Chapter 93A in the Bezdek and In re M3 cases, these cases involved **settlement** classes. Bezdek v. Vibram USA, 79 F. Supp. 3d 324 (D. Mass. 2015) (Woodlock, J.), aff'd, 809 F.3d 78 (1st Cir. 2015); In re M3 Power Razor, 270 F.R.D. Moreover, while the courts in Bezdek and In re M3 took a "common sense approach" to certifying the settlement class, the courts still carefully evaluated the applicable consumer protection laws as analyzed by the parties, and found that the variations in state law relating to the plaintiffs' claims did not "overcome the common factual and legal issues shared by the potential class members." In re M3 Power Razor, 270 F.R.D. at 61, 64. The court in In re M3 noted that courts must conduct a "rigorous analysis" of the varying state laws before certifying a class. Id. at 57.

Here, Ortiz has not conducted any analysis of state law variation, and therefore fails to meet her burden of demonstrating that the variations in state laws do not overcome common legal issues. See Southern States, 241 F.R.D. at 90. Consequently, the predominance of individual state laws poses significant barriers to a uniform application of Chapter 93A. In re M3 Power Razor, 270 F.R.D. at 57 (collecting cases explaining that "a rigorous analysis of state law variation must precede class certification.").

Ultimately, Massachusetts choice-of-law principles consistently favor applying the consumer's home state laws to consumer fraud claims. Applying Chapter 93A broadly to a nationwide class would undermine these principles and impair the regulatory authority of states outside Massachusetts. Accordingly, in conducting a comprehensive, functional choice-of-law analysis, the Court holds that the plaintiff has failed to meet her burden of demonstrating that Massachusetts law applies to the plaintiffs' claims.

### A. Damages

Saba argues that Ortiz's "damages theory is unworkable on a class basis" because Ortiz has failed "to demonstrate: (1) any cognizable theory to calculate damages on a class basis; (2) that she or any class member has standing in this case; or (3) that any injury was caused by the USMLE Step 1 first-time pass rates advertisements." Defs.' Mem. 6-7. Ortiz has requested that damages be calculated as the "tuition, fees, and costs of attending Saba" that class members paid. Pl.'s Reply 9.

While Ortiz has argued for a full refund of tuition and fees as damages, claiming that the entire educational experience was premised on the promise of a high likelihood of licensure, the Court finds that a full refund model would not be the most accurate measure of damages. Under Massachusetts law, Chapter 93A aims to make plaintiffs whole by compensating for the actual

23

harm caused by the defendant's conduct, not to punish or to provide a windfall.  See Hershenow v. Enterprise Rent-A-Car Co. of Bos., 445 Mass. 790, 802 (2006) ("A consumer is not, however, entitled to redress under G.L. c. 93A, where no loss has occurred.").

Additionally, the Court is mindful of precedents that have assessed damages in similar contexts.  For example, in the cases Spangler and Makaeff, the court determined that damages models seeking the full amount paid without accounting for residual value would effectively overcompensate the class, ignoring any benefit that students may have derived from the education they received, and ignoring potential affirmative defenses the defendants could raise as to individual plaintiffs.  See Spangler v. National Coll. of Tech. Instruction, No. 14-CV-3005, 2016 WL 11772282, at *9-10 (S.D. Cal. May 19, 2016); Makaeff v. Trump Univ., LLC, 309 F.R.D. 631, 634 (S.D. Cal. 2015). Applying this principle, although Ortiz alleges that the program's failure to deliver on licensure resulted in students' education being worthless, because Saba University still provided education which could have led to licensure, this may have conferred some value on its students.  Therefore, the Court finds that the full refund model is inapposite to Ortiz's classwide claims.

## III. CONCLUSION

Because the laws of multiple jurisdictions apply to this putative worldwide class of consumers, the differences in state and national laws predominate over common issues, leaving the predominance requirement of 23(b)(3) unsatisfied. As a result, certification of the nationwide class is precluded, and the class must be decertified. But see Elias, supra, at 343 (decrying this result on this ground because it "not only causes injustice but also weakens deterrence of corporate misconduct"). The Court decertifies the class. Ortiz's motion for class notice is denied as moot, and Saba's motion to stay proceedings pending the resolution of the appeal is likewise denied as moot.

"The point is simply that in a large class action such as this, management for trial is a dynamic process, one which requires constant reevaluation and adjustment." In re Nexium (Esomeprazole), 297 F.R.D. at 183 (footnote omitted).

**So ordered,**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[8]

---

[8] This is how my predecessor, Peleg Sprague (D. Mass. 1841–1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.