UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALIA ORTIZ, on behalf of herself and a class of similarly situated persons,<br><br>Plaintiff<br><br>v.<br><br>SABA UNIVERSITY SCHOOL OF MEDICINE; and R3 EDUCATION, INC.,<br><br>Defendants. | Civil Action No.: 1:23-cv-12002-WGY |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

*/s/ Daryl J. Lapp*
Daryl J. Lapp, BBO # 554980
daryl.lapp@lockelord.com
LOCKE LORD, LLP
111 Huntington Avenue, 9th Floor
Boston, MA  02199
617.239.0100

Dale A. Evans, Jr., (*pro hac vice*)
dale.evans@lockelord.com
LOCKE LORD, LLP
777 South Flagler Drive – East Tower
Suite 215
West Palm Beach, FL  33401
561.820.0248

Michael J. McMorrow (*pro hac vice*)
michael.mcmorrow@lockelord.com
LOCKE LORD, LLP
111 S. Wacker Drive
Chicago, IL 60606
312.443.0246

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

    A.    Chapter 93A Does Not Apply..............................................................................2

    B.    Assuming Chapter 93A Applies, the Claim Nevertheless Fails. ...........................9

        1.    Saba's Statements are not "deceptive," "misrepresentations" nor "unfair." ..............................................................................................10

        2.    Saba's statements are not material.............................................................15

        3.    Plaintiff Cannot Demonstrate Injury or Damages. ...................................18

CONCLUSION...................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1199 SEIU National Benefit Fund, et al. v. Actavis Holdco Us, Inc. et al.*,
   No. 2:18-cv-2401 (E.D. Pa.) ........................................................................................6

*Aspinall v. Philip Morris Companies, Inc*.,
   442 Mass. 381 (2004) .............................................................................................12, 13

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
   469 Mass. 813 (Mass. 2014) .......................................................................................8

*Bernstein v. Conopco, Inc*.,
   No. 3:21-CV-10160-KAR, 2022 WL 2161149 (D. Mass. June 15, 2022) .............................15

*Boos v. Abbott Labs*,
   925 F. Supp. 49 (D. Mass. 1996) ...............................................................................2, 3

*Bradach v. Pharmavite, LLC*,
   735 F. App'x 251 (9th Cir. 2018) ...............................................................................5

*Bush v. WellPet, LLC*,
   534 F. Supp. 3d 179 (D. Mass. 2021) .........................................................................11

*Bushkin Assocs., Inc. v. Raytheon Co*.,
   393 Mass. 622 (1985) ...............................................................................................4

*In Re California Gasoline Spot Market Antitrust Litigation*,
   No. 3:20-cv-3131 (N.D. Cal.) ...................................................................................6

*In Re Capacitors Antitrust Litigation*,
   No. 3:17-md-2801 (N.D. Cal.) ..................................................................................6

*Chervin v. Travelers Ins. Co*.,
   448 Mass. 95 (2006) ...............................................................................................10

*Colantuoni v. Alfred Calcagni & Sons*,
   44 F.3d 1 (1st Cir. 1994) ..........................................................................................16

*Crago Corporation, et al v. Sharp Corporation, et al*.,
   No. 10-80088 (9th Cir.) ..........................................................................................6

*Cristostomo v. New Balance Athletics, Inc*.,
   647 F. Supp. 3d 1 (D. Mass. 2022) ............................................................................3

*Cummings v. HPG Int'l, Inc.*,
    244 F.3d 16 (1st Cir. 2001) ............................................................................... 18

*Dorris v. Danone Waters of Am.*,
    No. 22 CIV. 8717, 2024 WL 4792048 (S.D.N.Y. Nov. 14, 2024) .......................... 11

*Drakopoulos v. U.S. Bank Nat. Ass'n*,
    465 Mass. 775 (Mass. 2013) ............................................................................... 8

*Dumont v. Reily Foods C*o.,
    934 F.3d 35 (1st Cir. 2019) ............................................................................... 10

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*,
    2013 WL 5466628 (D. Mass. Sept. 30, 2013) ...................................................... 8

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*,
    2019 WL 4739263 (Mass. Super. Aug. 29, 2019) ................................................. 8

*Foisie v. Worcester Polytechnic Inst.*,
    967 F.3d 27 (1st Cir. 2020) ................................................................................. 4

*Geis v. Nestle Waters N. Am., Inc.*,
    321 F. Supp. 3d 230 (D. Mass. 2018) .................................................................. 3

*Goebel v. Schmid Bros.*,
    871 F. Supp. 68 (D. Mass. 1994) .................................................................... 4, 5

*Gossels v. Fleet Nat'l Bank*,
    453 Mass. 366 (2009) ....................................................................................... 15

*Henshaw v. Cabeceiras*,
    14 Mass. App. Ct. (Mass. App. 1982) ............................................................... 15

*Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*,
    445 Mass. 790 (2006) ....................................................................................... 19

*Holbrook v. Bos. Sci. Corp.*,
    487 F. Supp. 3d 100 (D. Mass. 2020) .................................................................. 7

*In re Int'l Harvester Co.*,
    104 F.T.C. 949 (1984) ....................................................................................... 14

*Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co*,
    573 F. Supp. 3d 513 (D. Mass. 2021) ................................................................ 16

*Kannavos v. Annino*,
    356 Mass. 42 (1969) ......................................................................................... 15

*Lima v. Post Consumer Brands, LLC*,
No. 1:18-CV-12100, 2019 WL 3802885 (D. Mass. Aug. 13, 2019) .......................................12

*Loughlin v. Vi-Jon, LLC*,
728 F. Supp. 3d 163 (D. Mass. 2024) ..................................................................................19

*Marlborough E. Main LLC v. Karnak Realty LLC*,
No. 01-1565, 2009 WL 57766 (Mass. Land Ct. Jan. 12, 2009)............................................11

*In Re: Moveit Customer Data Security Breach Litigation*,
No. 1:23-md-3083 (D. Mass.)...............................................................................................6

*Nei v. Bos. Surv. Consultants, Inc*.,
388 Mass. 320 (1983) ...................................................................................................14, 15

*Nordberg v. Ivy Studio, LLC*,
No. CV 21-10648-FDS, 2022 WL 20138586 (D. Mass. July 19, 2022) ...............................14

*Ortiz v. Examworks, Inc*.,
470 Mass. 784 (2015) .........................................................................................................15

*Patenaude v. Orgain, LLC*,
594 F. Supp. 3d 108 (D. Mass. 2022), appeal dismissed, No. 22-1255, 2022
WL 4844337 (1st Cir. July 18, 2022) ..............................................................................14, 15

*In re Pharmaceutical Indus. Average Wholesale Price Litig*.,
230 F.R.D. 61 (D. Mass. 2005)..............................................................................................2

*Puopolo v. Com. Ins. Co.*,
101 Mass. App. Ct. 1102, review denied, 490 Mass. 1102 (2022).........................................11

*Purity Supreme, Inc. v. Att'y Gen.*,
380 Mass. 762 (Mass. 1980) ..................................................................................................8

*Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*,
87 Mass. App. Ct. 296 (2015)................................................................................................3

*River Farm Realty Tr. v. Farm Fam. Cas. Ins. Co.*,
943 F.3d 27 (1st Cir. 2019)..................................................................................................10

*Robert Kerson, et al v. Samsung Electronics Co., Ltd., et al.*,
No. 10-80089 (9th Cir.) .......................................................................................................6

*Salhuana V. Diamond Foods, Inc., et al.*,
No. 3:11-cv-5386 (N.D. Cal.) ...............................................................................................6

*Sampson v. MacDougall*,
60 Mass. App. Ct. (Mass. App. 2004) ..................................................................................15

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017) ..............................................................................19, 20

*Silva v. Steadfast Ins. Co.*,
  87 Mass. App. Ct. 800 (2015) ................................................................................11

*Sullivan v. Five Acres Realty Tr.*,
  487 Mass. 64 (2021) ...............................................................................................15

*Surabian Realty Co. v. CUNA Mut. Grp.*,
  95 Mass. App. Ct. 1118 (2019) ..............................................................................11

*Swanson v. Bankers Life Co.*,
  389 Mass. 345 (1983) .............................................................................................11

*In Re Tft-Lcd (Flat Panel) Antitrust Litigation*,
  No. 3:07-md-1827 (N.D. Cal.) .................................................................................6

*Tomasella v. Nestle USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020) ......................................................................13, 14, 15

*UBS Fin. Servs. v. Aliberti*,
  483 Mass. 396 (Mass. 2019) ....................................................................................8

*Underwood v. Risman*,
  414 Mass. 96 (1993) ...............................................................................................14

*Zimmerman v. Kent*,
  31 Mass. App. Ct. 72 (1991) ..................................................................................18

**Statutes and Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................20

Mass. Gen. Laws ch. 93A, § 2 ..............................................................................1, 2, 9

Mass. Gen. Laws ch. 266, §91 ........................................................................................9

Rule 12(b) ..............................................................................................................10, 15

**Treatises and Commentary**

Milner, *From Rancid to Reasonable: Unfair Methods of Competition Under State
  Little FTC Acts*, 73 AM. U. L. REV. 857, 857 (2024) .................................................5

Restatement (Second) of Conflict of Laws ............................................................2, 4, 8

Restatement (Second) of Torts § 551 (1977) ................................................................14

**Other Authorities**

Jordan Elias, *The Multistate Problem in Consumer Class Actions and Three Solutions* ........................................................................................................................5

Defendants Saba University School of Medicine and R3 Education, Inc. (collectively, "Saba") submit this Reply Memorandum in support of their Motion for Summary Judgment.

## INTRODUCTION

Plaintiff's Memorandum in Opposition fails to demonstrate a triable issue of material fact on her sole remaining claim for violation of Mass. Gen. Laws ch. 93A, § 2. Although she attempts to manufacture facts to support the idea that Massachusetts has the most significant relationship to her claim, the evidence does not support those purported facts. As this Court ruled in its order on class certification (after Saba's Summary Judgment Motion was filed), Plaintiff has "failed to meet her burden of demonstrating that Massachusetts law applies." Dkt. 134 at 23.

Even if Chapter 93A did apply, she demonstrates no issue of material fact as to whether Saba's advertisements were "deceptive," misrepresentations" or "unfair." Plaintiff spends most of her brief claiming what she does not need to demonstrate, rather than showing a triable issue as to whether she was deceived. Her testimony demonstrates she was not deceived by either Saba's accurate statements about its students' first-time USMLE Step 1 pass rates or by its silence as to any undefined "attrition rate," neither of which influenced her decision to attend Saba. Plaintiff also cannot demonstrate injury or damage, as she has come forward with no evidence of the value of a Saba education, nor a witness competent to testify about that value.

To distract the Court, Plaintiff begins her brief with a five-page introduction that falsely impugns Saba and its employees, mischaracterizes their communications and their deposition testimony, and tries to construct a malevolent conspiracy where none existed. But nothing in that misleading introduction changes the analysis applicable to this motion. Summary judgment is appropriate and should be entered.

1

**ARGUMENT**

**A.     Chapter 93A Does Not Apply.**

Plaintiff's first argument is that Chapter 93A governs her claim. It does not, as she concedes elsewhere. Plaintiff recently filed a *Petition to Appeal* in the First Circuit, in which she admits that under this Court's choice of law analysis, Ch. 93A would likely not apply:

> Under the district court's choice-of-law analysis, the law she sued under (Massachusetts) would likely not apply. Doc. 134 at 19–20 (finding that "the guiding factors [] point to the application of the laws of the plaintiffs' home states"). Because Ms. Ortiz was living in Florida when she received Defendants' misrepresentations, the district court's ruling could effectively terminate her litigation.

*Pet. to Appeal*, Case No. 24-8033 (1st Cir.), at 11. Plaintiff is correct on this point. The choice of law analysis in this Court's decertification ruling requires a finding that Chapter 93A, § 2 is inapplicable to Plaintiff's claims.

This Court held that "Massachusetts choice-of-law principles consistently favor applying the consumer's home state laws to consumer fraud claims," Dkt. 134 at 23, noting that "it is well established that under the Restatement, the laws of the home states of the consumers govern." *Id.* at 21 (citing *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) (internal quotations omitted)). As this Court stated, "when a plaintiff received and relied on representations in a single state, that state's laws will generally apply." Dkt. 134 at 19-20 (citing RESTATEMENT § 148, cmt. j). This is so because "each state involved has an interest in applying its own consumer protection laws to transactions within its borders." *Id.* at 21 (citing RESTATEMENT § 148, cmt. i).

Plaintiff claims that "Massachusetts courts permit out-of-state consumers to assert Chapter 93A claims against in-state defendants." Dkt. 139 at 7. The cases she cites do not support that claim. The first of those cases, *Boos v. Abbott Labs*, 925 F. Supp. 49 (D. Mass.

1996), involved a class of (exclusively) Massachusetts residents. *Boos*, 925 F. Supp. at 50. Moreover, although Plaintiff claims that the case "removed any geographic restriction on consumer actions," Dkt. 139, at 7, it did not. As that court stated, "the legislature deleted the provision which limited the scope of Section 2 to acts occurring "primarily and substantially" within Massachusetts." *Boos*, 925 F. Supp. at 55. The case had nothing to do with whether the statute could apply to residents of other states.

Although *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1, 14 (D. Mass. 2022), does state that Chapter 93A "does not require a plaintiff to reside in Massachusetts," the court made that statement in denying a motion to strike class allegations where both a federal and a state claim were raised and did not address choice-of-law principles in any manner. Similarly, *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 241 (D. Mass. 2018), did not engage in a choice-of-law analysis; the issue in that case was standing, and the court noted that the parties cited "no cases that squarely deal with the standing issue under chapter 93A." *Geis*, 321 F. Supp. 3d at 241. Here, both Saba and this Court have cited cases that "squarely deal" with the choice-of-law issue.

Plaintiff claims next that Saba's position is a "categorical approach of applying the law of a plaintiff's home state no matter the facts." Dkt. 139, at 7. Saba's position is that Massachusetts' choice-of-law principles determine which law applies, that Massachusetts looks to the RESTATEMENT for those principles, and that the facts of this case—applying those principles— determine which law applies. Dkt. 121, at 2-3. That is not a categorical approach. Moreover, the cases Plaintiff cites actually support Saba's position, not Plaintiff's. In *Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 87 Mass. App. Ct. 296, 302 (2015), for example, the very next

sentence after the language plaintiff quotes (Dkt. 139, at 7) states that "We look to the Restatement (Second) of Conflict of Laws for guidance."

Plaintiff cites six times to *Bushkin Assocs., Inc. v. Raytheon Co*., 393 Mass. 622 (1985), to suggest that the six-factor test of RESTATEMENT § 148 should not be applied. Dkt. 139 at 7-9. *Bushkin* is of little use here; that case involved application of the statute of frauds in an oral contract between parties in New York and Massachusetts and the question of whether the transaction occurred "primarily and substantially within the commonwealth" for purposes of former Section 3(1)(b) of Chapter 93A, which no longer exists. *Raytheon*, 393 Mass. at 622, 637. It has nothing to do with the applicability of Restatement § 148 to misrepresentations.

Likewise, Plaintiff's citation to *Foisie v. Worcester Polytechnic Inst*., 967 F.3d 27 (1st Cir. 2020), is irrelevant. That case involved a choice-of-law decision between two states' versions of the Uniform Fraudulent Transfer Act, and after acknowledging that Massachusetts looks "to the Restatement (Second) of Conflict of Laws as [o]ne obvious source of guidance," the court applied Section 145's "most significant relationship" test to the conflict. *Foisie*, 967 F. 3d at 41 (internal quotations omitted) (alteration in original). That is no different from this Court's application of Section 148's test to misrepresentations, as this Court and every court before it has done.

*Goebel v. Schmid Bros*., 871 F. Supp. 68 (D. Mass. 1994), did not, as Plaintiff claims, "find[] Section 148 deficient under Supreme Judicial Court precedent." Dkt. 139, at 8. In that case, the first and most important factor under Section 148 – "where the plaintiff acted in reliance on defendant's representations" – pointed to three different places: "Massachusetts, New York, and Germany." *Goebel*, 871 F. Supp at 76. Because the Section 148 test did not give a clear answer under the facts of that case, the court turned to the more general test of Section 6.

*Id.* This Court similarly "analyze[d] these [Section 148] factors in light of Restatement § 6," Dkt. 134 at 20-21, before determining that "the laws of the home states of consumers govern," in decertifying the class. *Id.* at 21.

Plaintiff cites to Milner, *From Rancid to Reasonable: Unfair Methods of Competition Under State Little FTC Acts*, 73 AM. U. L. REV. 857, 857 (2024), to support the statement that "Section 148's guidance is focused on common law fraud and misrepresentation claims rather than 'little FTC Acts' like Chapter 93A." Dkt. 139, at 9. Why it is cited as support for that statement is a mystery because the article does not reference Section 148 or common law fraud.

Along the same lines, Plaintiff claims that Chapter 93A claims "are 'ideal for class certification" because of their focus on the defendant's conduct,'" citing as support Jordan Elias, *The Multistate Problem in Consumer Class Actions and Three Solutions*, 17 HARV. L. & POLICY REV. 301, 317-18 (2022). Dkt. 139, at 9. Mr. Elias's support for that statement is a single unreported case from the Ninth Circuit stating that the standard for claims under California's Consumer Legal Remedies Act and its Unfair Competition Law is merely "whether members of the public are likely to be deceived." *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th Cir. 2018) (internal quotations omitted). Cases under *those* statutes, the court found, are "ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Id.* at 255. Neither Mr. Elias's article nor Plaintiff's Opposition attempt to show any similarity between these California statutes and Chapter 93A.

Plaintiff also does not mention that the author of this article—Mr. Elias—is a plaintiff's class action lawyer who is co-counsel with her attorneys at Berman Tabacco in four different

pending federal class actions,[1] and is co-counsel directly with Mr. Egan—who signed the Opposition—in a Multidistrict Litigation currently pending in this District (*In Re: Moveit Customer Data Security Breach Litigation*, No. 1:23-md-3083 (D. Mass.). Mr. Elias also was plaintiff's counsel in 13 of the cases he cited in his article, which was obviously written with an eye towards his own interests.

Plaintiff cites to the terms of use on Saba's website as "strong support for the application of 93A" because Saba supposedly wants "the law of their home state—Massachusetts—to govern claims asserted against them by users of Saba's website." Dkt. 139, at 9, n. 37. Plaintiff does not state how a contractual choice of law provision on a website is relevant, and in any event Plaintiff chose not to bring any contractual claims. They are of no moment here.

In an attempt to tie this action closer to Massachusetts, Plaintiff falsely argues that from their headquarters in Massachusetts, Defendants:

> (i) crafted the misleading USMLE representations—down to the precise turn of phrase that would best sell their school—and posted them throughout Saba's online footprint; (ii) drafted training materials directing admissions staff to evade questions about attrition; and (iii) misled and lied to countless prospective students seeking basic information about attrition.

Dkt. 139, at 9-10. In support, Plaintiff cites Paragraphs 4, 5, 16, and 19-30 of her "Counterstatement of Material Facts." *See* Dkt. 139, at 10, n. 38; Dkt. 140, ¶¶ 4, 5, 16, 19-30. But nothing in any of those paragraphs suggests that any of those things happened, let alone in Massachusetts. Although Plaintiff does accurately state that R3's headquarters are in

---

[1] Those cases are: *1199 SEIU National Benefit Fund, et al. v. Actavis Holdco Us, Inc. et al.*, No. 2:18-cv-2401 (E.D. Pa.); *In Re California Gasoline Spot Market Antitrust Litigation*, No. 3:20-cv-3131 (N.D. Cal.); *In Re Capacitors Antitrust Litigation*, No. 3:17-md-2801 (N.D. Cal.); and *In Re: Moveit Customer Data* (see above).

In addition, Mr. Elias and Berman Tabacco were cocounsel on at least four other federal cases in the past: *Robert Kerson, et al v. Samsung Electronics Co., Ltd., et al.*, No. 10-80089 (9th Cir.); *Crago Corporation, et al v. Sharp Corporation, et al.*, No. 10-80088 (9th Cir.); *In Re Tft-Lcd (Flat Panel) Antitrust Litigation*, No. 3:07-md-1827 (N.D. Cal.); and *Salhuana V. Diamond Foods, Inc., et al.*, No. 3:11-cv-5386 (N.D. Cal.).

Massachusetts, she cites ***nothing*** in those paragraphs to support the notion that the USMLE representations were "crafted" or "posted" from Massachusetts; that any "training materials" existed, much less were "drafted" in Massachusetts; or that Saba "lied to … prospective students" from Massachusetts. None of the people Plaintiff references in those paragraphs are located in Massachusetts. Plaintiff cites to no evidence that any of Messrs. Donnellan, Wargo, Donahue, Moya, or Rodger live or regularly work in Massachusetts (because none do). There is no evidence that Ms. Bosco or Ms. Kushner work in Massachusetts. Saba's Registrar operates out of Massachusetts, but there is no claim that the Registrar took any of these actions. Plaintiff also falsely claims that she sent "all checks and other tuition payments" to Massachusetts (Dkt. 139, at 10), but there is no evidence that Plaintiff sent a check to Massachusetts, and the bank into which any checks would have been deposited is in Connecticut. Donnellan Dep. at 427:18-23.

Plaintiff's deception continues. She cites *Holbrook v. Bos. Sci. Corp*., 487 F. Supp. 3d 100 (D. Mass. 2020), to support the statement that Massachusetts "has the strongest interest in applying Chapter 93A to Ms. Ortiz's claim." Dkt. 139 at 10. Because this Court wrote that opinion, it knows that it did not apply Chapter 93A or Massachusetts substantive law at all. In *Holbrook*, this Court applied Massachusetts' choice of law analysis to the ***statute of limitations***, and noted that the "focus of this choice of law analysis is on the timeliness of the action, rather than the underlying claim." *Holbrook*, 487 F. Supp. 3d at 105–06 (D. Mass. 2020). On the limitations issue, it followed the RESTATEMENT and applied Massachusetts law, finding that no other state had a "dominant interest in having its own limitations statute enforced." *Id.* at 105. This Court still applied the substantive law of Louisiana to the underlying claim. *Id*. at 107, 111.

Plaintiff also relies upon *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2013 WL 5466628, at *1 (D. Mass. Sept. 30, 2013), to support the notion that "the law of the state where the corporate defendant conducted its business should apply." Dkt. 139 at 10. That case dealt with a highly specific quirk in choice of law. It found that "New York has a *strong interest in overseeing* the conduct of financial institutions operating within its borders." *Ally Fin.*, 2013 WL 5466628, at *2 (emphasis added). It also found that the ratings at issue were not communicated to the Massachusetts plaintiffs directly. *Id.* More importantly, that court's analysis was rejected and overturned when the case was remanded to Massachusetts state court. *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc*., 2019 WL 4739263, at *7 (Mass. Super. Aug. 29, 2019). That state-court judge applied Massachusetts law, including Chapter 93A, to the statements received by a bank in Massachusetts, "where the impact of the alleged misrepresentations will be experienced," and specifically followed the RESTATEMENT § 148 factors that this Court already has discussed. *Id.*

Plaintiff's next paragraph cites four cases to support the proposition that "Massachusetts has a significant interest in allowing out-of-state consumers like Ms. Ortiz to invoke Chapter 93A against resident defendants." Dkt. 139, at 11, citing *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.,* 469 Mass. 813 (Mass. 2014); *UBS Fin. Servs. v. Aliberti,* 483 Mass. 396 (Mass. 2019); *Purity Supreme, Inc. v. Att'y Gen.,* 380 Mass. 762 (Mass. 1980); and *Drakopoulos v. U.S. Bank Nat. Ass'n*, 465 Mass. 775 (Mass. 2013). None support that proposition in any way. The plaintiffs in every one of these cases was a Massachusetts resident, and none of those cases discusses either application of Chapter 93A to out-of-state residents or choice of law.

Plaintiff ends her argument with a footnote, stating that "even if a state law other than 93A applies … Defendants have not met their burden to show there is no genuine dispute as to any material fact such that they are entitled to judgment as a matter of law." Dkt. 139, at 11, n.

41. But Plaintiff does not attempt to identify which other state's law applies, or what facts are material under that unnamed state's laws. Massachusetts law does not apply to her claim, as both Saba and this Court have demonstrated. Thus, Saba is entitled to judgment as a matter of law as to the only claim she makes – under Mass. Gen. Laws ch. 93A, §2.[2]

### B.    Assuming Chapter 93A Applies, the Claim Nevertheless Fails.

Even if Massachusetts law did apply to Plaintiff's claim, summary judgment remains appropriate. Plaintiff's disjointed opposition mostly argues what she thinks she does not need to demonstrate to avoid summary judgment. She argues that she need not show any duty to disclose Saba's so-called "attrition rate," Dkt. 139, at 13, n. 42. She argues that her claim survives even if Saba's statements are true. *Id*. at 14. She argues it is irrelevant that none of Saba's regulatory bodies require it to report or disclose an "attrition rate." *Id*. at 15. She argues that what the term "attrition" means or the different ways it could be calculated "are not at issue." *Id*. at 16. She argues that she need not show that she relied on anything Saba said or didn't say in making her decision. *Id*. at 17. She even argues that statements of opinion are actionable under Chapter 93A. *Id*. at 20, n. 55.[3] Plaintiff threw every argument imaginable against the wall. None of it sticks.

---

[2] Plaintiff concedes summary judgment as to her only remaining claim, which she attempted to raise under Mass. Gen. Laws ch. 266, §91. *See* Dkt. 139, at 20 n. 56.

[3] Plaintiff also thinks that she need not cite to either the record or to the law to support her assertions. Plaintiff takes issue with Saba's assertion that its "USMLE Step 1 representations are not deceptive because they are true," arguing that "[t]he record reveals otherwise" and that those representations are "false and deceptive when over half of Saba students do not sit for the exam." Dkt. 139, at 14. Plaintiff cites nothing in the record to support the assertion that "over half of Saba students do not sit for the exam," because nothing supports that assertion. Although Plaintiff's Counterstatement of Undisputed Facts pretends to support it, *see* Dkt. 140, ¶17, Plaintiff cites only to the allegations of her Complaint, and to a forward-looking projection of future financial performance, which itself also provides no support for the assertion. Plaintiff also cites no law or other authority to support the conclusion that—even if that made-up assertion was true—it renders the USMLE performance statistics "false" or "deceptive."

1.      **Saba's Statements are not "deceptive," "misrepresentations" nor "unfair."**

Plaintiff's argument reduces to the idea that only a jury can decide whether ***any*** statement is "deceptive," a "misrepresentation," or "unfair," and that she needs to demonstrate nothing more than that Saba advertised something—anything—to allow her to proceed to trial. Plaintiff is incorrect. Even the cases on which she most heavily relies demonstrate that the boundaries of whether a statement or a nondisclosure can be "deceptive," a "misrepresentation," or "unfair" are to be decided by a judge, not a jury.

*Dumont v. Reily Foods C*o., 934 F.3d 35 (1st Cir. 2019), which Plaintiff cites six times, held that "the boundaries of what may qualify for consideration as a [chapter] 93A violation is a question of law." *Dumont*, 934 F.3d at 40 (quoting *Chervin v. Travelers Ins. Co*., 448 Mass. 95, 112 (2006)).[4] *Dumont* was a Rule 12(b) decision where the question was whether the "complaint states a plausible claim for relief," not a summary judgment decision. *Id.* at 41. As to the looser "plausibility" standard of Rule 12(b), the Court found it "certainly a close question" even though the advertised "Hazelnut Crème" coffee "contained no hazelnut at all." *Id.* at 41, 37. At the summary judgment stage, the court must determine whether there is a triable issue of fact; even if it was "plausible" at the outset of this case that Plaintiff was deceived, there is no longer a triable issue of fact. As Saba noted in its opening memorandum, at 11, Plaintiff admitted under oath that she wasn't deceived.[5] Dkt. 121. A "plaintiff cannot claim protection under 93A if he

---

[4] Later in 2019, and again quoting *Chervin's* discussion of this point, the First Circuit more explicitly stated that "[i]t is also quite clear that the boundaries of what are viable claims under [a related insurance statute] are matters of law for the court to decide." *River Farm Realty Tr. v. Farm Fam. Cas. Ins. Co.*, 943 F.3d 27, 36 (1st Cir. 2019).

[5] Many of the allegations of the Complaint have been proven false or abandoned. Plaintiff abandoned her primary theory of liability, that Saba failed to disclose its "pre-test," Dkt. 1, ¶ 92, when it was demonstrated that Saba had disclosed it. Plaintiff abandoned her false allegations that Saba made "false guarantees of passing the USMLE." ¶ 4. Her allegation that all school administrative functions are based out of Massachusetts, ¶ 17, including its advertising, ¶ 49, has been proven false. *See supra*, at 6-7; Plaintiff saw none of the advertisements cited in ¶¶ 58-65 of her Complaint. [Pl. Dep. 176:9-181:10] And Plaintiff has abandoned Counts II and III of her Complaint entirely.

was not in fact deceived, or if the deceptive conduct was not unfair." *Marlborough E. Main LLC v. Karnak Realty LLC*, No. 01-1565, 2009 WL 57766, at *3 (Mass. Land Ct. Jan. 12, 2009) (citing *Swanson v. Bankers Life Co*., 389 Mass. 345, 349 (1983)).

Even if, as Plaintiff seems to argue, the question is whether she **could have been** deceived rather than whether she **was** deceived, Massachusetts courts routinely grant summary judgment to Chapter 93A defendants on this basis. *See, e.g., Puopolo v. Com. Ins. Co.*, 101 Mass. App. Ct. 1102, review denied, 490 Mass. 1102 (2022); *Surabian Realty Co. v. CUNA Mut. Grp.*, 95 Mass. App. Ct. 1118 (2019) (affirming grant of summary judgment); *Silva v. Steadfast Ins. Co*., 87 Mass. App. Ct. 800, 806–07 (2015).

*Bush v. WellPet, LLC*, 534 F. Supp. 3d 179 (D. Mass. 2021), is instructive on this point. In that case, the plaintiff alleged that the defendant violated Chapter 93A "when it advertised its pet food as 'grain free' despite the presence of trace amounts of gluten in the finished products." *Bush*, 534 F. Supp. 3d at 181. The court noted that it "is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," and dismissed the case for that reason. In doing so, the court noted that, to "the extent that WellPet may be faulted for failing to disclose the possibility of gluten cross-contamination of its 'grain free' products, the court cannot discern how this disclosure would have had any material impact on plaintiffs' purchasing decisions (their conclusory allegations to the contrary notwithstanding)," *id*., at 185 (internal quotations omitted), and specifically relied upon the fact that the FDA does not require such a disclosure in its regulations. *Id*. at 185, n.11.[6] *See also, Dorris v. Danone Waters of Am*., No. 22 CIV. 8717, 2024 WL 4792048, at *3, n. 3

---

[6] Although Plaintiff claims, without citation to authority, that "it is irrelevant whether any regulatory agencies … require Saba to disclose an attrition rate," Dkt. 139, at 15, that claim is obviously false, as this case demonstrates.

(S.D.N.Y. Nov. 14, 2024) (following *Bush v. Wellpet* on this point); *Lima v. Post Consumer Brands, LLC*, No. 1:18-CV-12100, 2019 WL 3802885, at *4 (D. Mass. Aug. 13, 2019) ("a consumer could not reasonably have concluded that Honey Bunches of Oats was primarily sweetened with honey based upon Post's use of the word 'honey' and the related graphics.").

Similarly, here, despite Plaintiff's "conclusory allegations to the contrary," the undisputed evidence is that Saba's supposed "attrition rate" was unimportant to Plaintiff when she decided to enroll at Saba. Plaintiff admits that "attrition is expected at any educational institution." Dkt. 139 at 16. Despite that reasonable expectation, Plaintiff never asked for Saba's "attrition rate" before she enrolled, Dkt. 125, SUF, ¶ 52, and admits that Saba made no "false guarantees of passing" the Step 1 Exam, despite alleging that guarantee in her Complaint. *Id.* ¶ 49. Plaintiff later disclaimed that such "guarantees" are even at issue, admitting she "does not allege that Saba falsely assured her success by predicting the future." Dkt. 25 at 13, n. 17.

Plaintiff also knew that Saba's USMLE Step 1 pass rate did not include every student who enrolled. Plaintiff knew, before she enrolled at Saba, that "Step 1 was an exam that you took after completing the basic science portion of the degree," that "not everyone completes the basic science program," that this is "true at every university," that "if someone doesn't complete the basic science program, then necessarily they wouldn't reach the Step 1," and that "those folks wouldn't be part of the pass rate because they never got there." Dkt. 125, SUF ¶¶ 44-47. [7]

Plaintiff relies heavily, as she has throughout this case, on a phrase from *Aspinall v. Philip Morris Companies, Inc*., in which the court stated that "advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression

---

[7] Although Plaintiff's responses to the Statement of Undisputed Facts purports to dispute all the facts cited in this paragraph, the responses themselves admit that they are 100% accurate. *See* Dkt. 140, at 14-17, ¶¶ 44-47, 49, 52.

through failure to disclose material information." *Aspinall*, 442 Mass. 381, 395 (2004). She cites to *Aspinall* five times in her brief, all to suggest that a true statement can still be misleading, and therefore it is for a jury to decide. *See* Dkt. 139, at 12-14, 17. Plaintiff cites *Tomasella v. Nestle USA, Inc*., 962 F.3d 60, 71 (1st Cir. 2020), four times for this same point. Dkt. 139, at 12, 14-15, 17. But, as *Tomasella* demonstrates, "pure omissions" such as Saba's nondisclosure of what Plaintiff claims is its "attrition" rate, "lack the requisite capacity to mislead." *Tomasella*, 962 F.3d at 74. In *Tomasella*, the issue was whether the defendant's nondisclosure of child labor practices in its supply chain was actionable. The court determined it was not, stating that the "risk of hazard" does not "render the products 'unfit for normal use,'" and thus the act of offering the chocolate for sale without mention of these labor practices is not a deceptive act." *Id*.

Similarly here, omitting reference to an "attrition rate" metric that Saba neither maintains nor reports to regulators does not render a Saba education "unfit for normal use." Its fitness for normal use is evident; there are thousands of Saba graduates practicing medicine throughout the United States and Canada, all of whom have taken and passed the USMLE Step 1 Exam, and its fitness for normal use is further demonstrated by its continuous good standing by its many regulators at the NVAO, the Netherlands Ministry of Education, the U.S. Department of Education, and state boards in New York, Florida and California. *See* Dkt. 121, at 7, 9. None of those regulating entities would approve a medical school that was unfit for normal use. Indeed, Plaintiff's own expert witness, the former chief executive officer of the Educational Commission on Foreign Medical Graduates, confirmed that Saba meets the requirements of the ECFMG currently, and will meet the ECFMG's forthcoming recognized accreditation policy because Saba was "accredited by a recognized agency." Dkt. 119-4, Pinsky Dep. at 33:19-34:7.

Plaintiff curiously claims that a "duty requiring disclosure" of its so-called "attrition rate" is not an element of her claim. Dkt. 139, at 13, n. 42. This argument makes no sense; the entire basis of her case is that Saba did not disclose that "attrition rate." A duty to disclose that rate is her ***entire*** claim; without such a duty, Saba's failure to mention it is bare nondisclosure. And it is the law in Massachusetts that bare nondisclosure without a duty to disclose is not a violation of 93A. Dismissing a Chapter 93A claim, the SJC stated that "[n]ondisclosure is the failure to 'disclose to another a fact that [one] knows may justifiably induce the other to act or refrain from acting in a business transaction ... [if one] is under a duty to the other to exercise reasonable care to disclose the matter in question.'" *Underwood v. Risman*, 414 Mass. 96, 101 (1993) (citing RESTATEMENT (SECOND) OF TORTS § 551 (1977)). As discussed in Saba's Motion, there can be no liability for "bare nondisclosure" under Massachusetts law.[8] The FTC, the First Circuit and the SJC have held "pure omissions" as "not appropriately characterized as deceptive or reached through deception analysis" unless they render the product "unfit for normal use." *Tomasella*, 962 F.3d at 73-75 (quoting *In re Int'l Harvester Co.*, 104 F.T.C. at 1059-60); *Nei v. Bos. Surv. Consultants, Inc*., 388 Mass. 320, 323 (1983)). This is true even if they "may lead to erroneous consumer beliefs if [the] consumer had a false, pre-existing conception which the seller failed to correct." *Tomasella*, 962 F.3d at 73 (international quotations omitted) (alteration in original).

To avoid this conclusion, Plaintiff refers three times to Saba's so-called "attrition rate" as "qualifying information" that must be disclosed along with its USMLE Step 1 pass rate. Dkt. 139, at 14-15. But Plaintiff cites no authority for what constitutes "qualifying information," and

---

[8] Dkt. 121, at 8, citing *Nordberg v. Ivy Studio, LLC,* No. CV 21-10648-FDS, 2022 WL 20138586, at *4 (D. Mass. July 19, 2022); *In re Int'l Harvester Co*., 104 F.T.C. 949, 1059 (1984); *Tomasella v. Nestlé U.S., Inc*., 962 F.3d 60 (1st Cir. 2020); *Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 115 (D. Mass. 2022), appeal dismissed, No. 22-1255, 2022 WL 4844337 (1st Cir. July 18, 2022).

several cases demonstrate that Saba's "attrition rate" does not. *Tomasella* itself dismissed the

plaintiff's claim about nondisclosure of its labor practices on a Rule 12(b) motion.[9] *Tomasella*,

962 F.3d at 64; *see also Patenaude*, 594 F. Supp. 3d at 113 (holding that the word "vanilla"

without any qualifying terms does not lead a reasonable consumer to believe that the vanilla

flavor came exclusively or predominantly from vanilla beans"); *Bernstein v. Conopco, Inc.*, No.

3:21-CV-10160-KAR, 2022 WL 2161149, at *4 (D. Mass. June 15, 2022) ("there is no claim on

the product's packaging that vanilla bean is the predominant source of the vanilla flavor").

Saba's statements about its first-time USMLE Step 1 pass rate are not "deceptive,"

"misrepresentations," or "unfair." Summary judgment is therefore appropriate.

### 2.    Saba's statements are not material.

Plaintiff's attempt to demonstrate the materiality of Saba's statements about its students'

Step 1 pass rates demonstrates their immateriality to her, and she makes no attempt to

demonstrate the materiality of Saba's nondisclosure of its supposed "attrition rate." As noted in

Saba's Motion, a "misrepresentation is material if 'a reasonable man would attach importance [to

the fact not disclosed] in determining his choice of action in the transaction in question.'" Dkt.

---

[9] *Kannavos v. Annino*, 356 Mass. 42 (1969), on which plaintiff relies, found that "express assertions" that the properties were multi-family rentals and could "continue to operate" in that way was deceptive because the seller failed to disclose that the properties were not zoned for such use. 356 Mass. at 49. The SJC distinguished *Kannavos* on this point in *Sullivan v. Five Acres Realty Tr.*, 487 Mass. 64 (2021), affirming summary judgment where a seller failed to disclose that they did not apply for building permits when doing renovations on the property or that the renovations had not been inspected. Finding the defendants' conduct "closer to 'bare nondisclosure'" than in *Kannavos* where the "defendants did not make representations that were intended to cause the plaintiffs to believe something that was untrue," the Council affirmed summary judgment, stating that the "defendants' actions reflect a failure to reveal … rather than "[d]eclarations and conduct calculated to mislead." 487 Mass. at 75. *See also, Nei v. Bos. Surv. Consultants, Inc.*, 388 Mass. 320, 324 (1983); *Sampson v. MacDougall*, 60 Mass. App. Ct., 399-401 (Mass. App. 2004) ("Mere silence or nondisclosure does not impose liability in the absence of a duty to speak … [n]or was there a special relationship between [the parties] that would have imposed on him an obligation to inform her"); *Henshaw v. Cabeceiras*, 14 Mass. App. Ct., 227-28 (Mass. App. 1982); *Ortiz v. Examworks, Inc.*, 470 Mass. 784, 793-94 (2015) (*citing Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 373 (2009)).

121, at 11, citing *Integrated Comm'cns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co*, 573 F.

Supp. 3d 513, 549 (D. Mass. 2021). This holds both for what Saba said, and what it did not.

Saba's affirmative statements about the first-time USMLE Step 1 pass rates are not

misrepresentations; they are true, as amply demonstrated. And they were not material to

Plaintiff's decision to enroll at Saba, because she did not "attach importance" to them. She

testified to that—twice. Dkt. 125, SUF ¶ 38 ("Having a high USMLE Step 1 first-time pass rate

was not specifically important to Plaintiff. Plaintiff testified, that it "wasn't important to [her].")

She reiterated that she "thought [she] had what it took to pass the Step 1 (Dkt. 127-5, at 32), but

that wasn't important to [her], because to [her] what was important is the education you are

getting." Dkt. 125, SUF ¶ 38. Plaintiff attempts to avoid these admissions, but her attempts

simply demonstrate ***why*** Plaintiff did not "attach importance" to Saba's Step 1 pass rate. While

Plaintiff's Opposition claims that "one of the biggest things for [her] was the USMLE pass rates

that they were advertising," Dkt. 139, at 18, and while she claims that Saba takes her statements

out of context, Plaintiff's testimony is unequivocal, and it is Plaintiff who is taking things out of

context to avoid summary judgment. *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4-5 (1st

Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he

cannot create a conflict and resist summary judgment with an affidavit that is clearly

contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

Plaintiff repeatedly stated that the only reason she paid attention to Saba's USMLE pass

rate was not for the rate itself, but because it indicated the quality of the Saba education.

Plaintiff's Opposition even demonstrates this. She says that the pass rates "indicated an idea

about their education." Dkt. 127-5, at 22. The education was what was important, not the Step 1

pass rate, as Plaintiff reiterated several times in her deposition. After describing how the pass

rate was "specifically" not important, she explained why: "it spoke on their education, and ***that*** was important to me." Dkt. 127-5, at 31 (emphasis added). Plaintiff re-emphasized this point, stating that the Step 1 rate "wasn't important to me, because to me what was important is the education you are getting in order to take this exam. Because ***that education*** is what you use to actually take the exam. So ***that's*** what was important." Dkt. 127-5, at 32 (emphases added). Because Saba's statements about the USMLE Step 1 pass rate were true, they are not actionable. And because Plaintiff did not "attach importance" to them, they are not material.

This leaves only the materiality of what Saba did not state—its supposed "attrition rate." The standard is the same. Nowhere in her discussion of materiality does Plaintiff discuss whether nondisclosure of an "attrition rate" was important to her decision, because it was not. Plaintiff never asked what Saba's "attrition rate" was. Dkt. 125, SUF ¶ 52. She admits that "attrition is expected at any educational institution," Dkt. 139, at 16, and saw no need to inquire about it.

Plaintiff knew before she enrolled that "Step 1 was an exam that you took after completing the basic science portion of the degree" and that "[n]ot everyone completes the basic science program." Dkt. 125, SUF ¶ 45. Plaintiff also understood that "if someone doesn't complete the basic science program, then necessarily they wouldn't reach the Step 1," *id.* ¶ 46, and understood that "those folks wouldn't be part of the pass rate because they never got there." *Id.* ¶ 47. The immateriality of Saba's supposed "attrition rate" to Plaintiff has been demonstrated. Plaintiff even claims in her Opposition that the "***definition*** of attrition and ***the different ways that it might be calculated*** are not at issue in this case." Dkt. 139, at 16 (emphasis added). This begs the question—since Plaintiff cannot state what "attrition" is or which of the "different ways it might be calculated" should apply to Saba, and since no regulatory body defined a standard for calculating an "attrition rate," how could Saba or any educational institution comply?

Plaintiff curiously ends her Opposition with a footnote suggesting that she can sustain a Chapter 93A claim on a mere statement of opinion, not fact. She states that Saba "fail[s] to cite any case law indicating that a Chapter 93A claim cannot be premised on a deceptive 'statement of opinion.'" Dkt. 139, at 20, n. 55. This is not true. Saba cited in its brief to *Cummings v. HPG Int'l, Inc*., where the First Circuit noted that "only statements of fact are actionable" for "***any*** misrepresentation claim." *Cummings*, 244 F.3d 16, 21 (1st Cir. 2001) (emphasis added). Dkt. 121, at 14. And the same case she cites demonstrates that same fact. In *Zimmerman v. Kent*, the SJC stated that a "statement on which liability for misrepresentation may be based ***must be one of fact***, not of expectation, estimate, opinion, or judgment." 31 Mass. App. Ct. 72, 79 (1991) (emphasis added). While the SJC found in that case that a contractor's estimate of the cost of installing a septic system could be a statement of fact, it does not follow that "statements about the quality and prestige" of Saba's educational offerings can be "objective" or factual, as Plaintiff claims. See Dkt. 139 at 20, n. 55.

Saba's Motion demonstrates that neither its statements about the USMLE Step 1 pass rate nor its silence about its supposed "attrition rate" are actionable. Plaintiff fails to rebut it, so summary judgment is appropriate.

### 3.    Plaintiff Cannot Demonstrate Injury or Damages.

Plaintiff makes little attempt to dispute Saba's argument as to damages, and even if she had, the argument would be meaningless now. The Court determined her purported expert is not competent to testify as to the value of a Saba education or damages generally. [10] Dkt. 147. The Court has also rejected her "full refund" method of damages. Dkt. 134, at 24. Plaintiff has

---

[10] In response to Saba's interrogatories, Plaintiff declined to provide any specific information about her damages, instead deferring to the unproven allegations of her complaint and initial disclosures and stating that she planned to "retain[] an expert witness to opine on damages." Dkt. 71-2, Pl. Supplemental Responses and Objections to Defendants' First Set of Interrogatories, No, 13.

identified no other witness who is competent to testify as to her damages or the value of a Saba education, and she has produced no documents demonstrating damages or what she paid to attend Saba. Plaintiff cannot prove damages under any theory.

To prove an injury, Plaintiff or any class member will need to show "an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself." *Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 10 (1st Cir. 2017); *see Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc*., 445 Mass. 790, 791 (2006) ("causal connection" between deceptive act and loss is "essential predicate for recovery"). Plaintiff must demonstrate that the "product itself [the education] was deficient in some objectively identifiable way" and show something that the claimant "bargained for that she did not, in fact, receive." *Shaulis*, 865 F.3d at 12.

*Shaulis* demonstrates that Plaintiff has no claim to injury or damages under Chapter 93A. *Shaulis* refused to apply "a consumer's disappointed expectations of value in place of an allegation of real economic loss" because it "fails to identify anything objective that Shaulis bargained for that she did not, in fact, receive." *Id.* at 11-12; *see Loughlin v. Vi-Jon, LLC*, 728 F. Supp. 3d 163, 174 (D. Mass. 2024) (following *Shaulis*). And this Court has noted the same, holding that a damages model "seeking the full amount paid without accounting for residual value" would overcompensate Plaintiff by "ignoring any benefit that students may have derived from the education they received."  Dkt. 134, at 24.

As demonstrated in the Motion, Plaintiff received all that she bargained for. Dkt. 121, at 13-15. Plaintiff now seems to dispute that, saying she "purportedly received some classes and course credit." Dkt. 139, at 19. Her response to the Statement of Undisputed Facts purports to take issue with the facts that she received all the classes she bargained for, credit for those she passed, and could transfer those credits to another medical school, but (as above) her dispute of

19

these facts demonstrates that she acknowledges the truth of all but one.[11] There is no dispute that she received everything she bargained for. Therefore, Plaintiff suffered no injury.

Her damages theory, as she lays out in her Opposition, is that she "bargained for" a medical school where "virtually every Saba student passes the USMLE on their first attempt," a feat that is "an unprecedented" and "unmatched by any other international medical school." Dkt. 139, at 19. But she cites no evidence that she bargained for any of that. She also cites no evidence in the record that "half of the matriculants do not even sit for the Step 1 exam," or that "executive leadership conceals this truth to boost enrollment." *Id*. at 20. Plaintiff has never had a damages theory in this case beyond claiming that a Saba education is worthless. It is not worthless, as the Court has noted. Plaintiff cannot reasonably dispute that she received that education, she has come forward with no evidence to quantify the value of that education or what she paid for it, and she can identify no witness competent to testify to that value. She cannot prove any damages, and summary judgment is warranted for this additional reason.

## CONCLUSION

For the reasons stated above and in its Memorandum in Support of Motion for Summary Judgment, Defendants Saba and R3 respectfully request that the Court grant their motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) and award such other and further relief as the Court finds just and appropriate.

---

[11] That one is the statement that she "learned the materials in [her] classes." *See* Dkt. 140, at 20, ¶ 73 ("Disputed as to the varying degrees of content and materials Plaintiff may or may not have learned .... Disputed as to the definition of 'learned'"). Whether Plaintiff learned anything or not while attending Saba, it does not affect injury or damages.

December 20, 2024

SABA UNIVERSITY SCHOOL OF
MEDICINE, and R3 EDUCATION, INC.,

*/s/ Daryl J. Lapp*
Daryl J. Lapp, BBO # 554980
daryl.lapp@lockelord.com
LOCKE LORD, LLP
111 Huntington Avenue, 9th Floor
Boston, MA  02199
617.239.0100

Dale A. Evans, Jr., (*pro hac vice*)
dale.evans@lockelord.com
LOCKE LORD, LLP
777 South Flagler Drive – East Tower Suite 215
West Palm Beach, FL  33401
561.820.0248

Michael J. McMorrow (*pro hac vice*)
michael.mcmorrow@lockelord.com
LOCKE LORD, LLP
111 S. Wacker Drive
Chicago, IL 60606
312.443.0246

## Certificate of Service

I certify that on December 20, 2024, this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

*/s/Daryl J. Lapp*
Daryl J. Lapp