# Exhibit 1

No. 24-8033

_____

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

NATALIA ORTIZ,
on behalf of herself and all others similarly situated,

Plaintiff-Respondent,

v.

SABA UNIVERSITY SCHOOL OF MEDICINE, and R3 EDUCATION, INC.,

Defendants-Petitioners.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(The Honorable William G. Young, Case No. 1:23-cv-12002-WGY)

_____

## Opposition to Petition to Appeal
## Pursuant to Federal Rule of Civil Procedure 23(f)

_____

Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Petitioners*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Saba University School of Medicine is owned by Saba University School of Medicine B.V., a privately held company. Saba University School of Medicine B.V. is wholly owned by Saba University Management Company B.V., a privately held company. Saba University Management Company B.V. is wholly owned by R3 Education, Inc., a privately held company. R3 Education, Inc. is wholly owned by Trinity BidCo LLC, a privately held company. Trinity BidCo, LLC is wholly owned by Trinity HoldCo Ltd. (UK), a privately held company. Trinity HoldCo Ltd. (UK) is wholly owned by Global University Systems Holding BV, a privately held company. There is no publicly held company that owns, directly or indirectly, 10% or more of Saba University School of Medicine B.V. or R3 Education, Inc.'s stock.

# **TABLE OF CONTENTS**

BACKGROUND ...................................................................................1

REASONS FOR DENYING THE PETITION ......................................................2

    I.     Standard of Review .................................................................2

    II.    Petitioner Fails to Demonstrate Any "Important and Unsettled Issue" For this Court to Resolve. ........................................................3

    III.   The District Court's Decision is Neither the "Death Knell" of Petitioner's claim nor a "Questionable" Decision. ...........................6

        A.    The Bell to Sound the "Death Knell" Has Not Rung. ..............7

        B.    The District Court's Ruling is Not "Questionable" ..................9

    IV.   The District Court Correctly Determined that Plaintiff's Damages Model is Inapposite to Her Classwide Claims. .................17

CONCLUSION ..................................................................................19

ATTACHMENTS
    Memorandum and Order (Dkt. 134)

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Algarin v. Maybelline, LLC*,
2014 WL 690410 (S.D. Cal. Feb. 21, 2024)..........................................................8

*Aronstein v. Mass. Mut. Life Ins. Co.*,
15 F.4th 527 (1st Cir. 2021).................................................................................3

*Bezdek v. Vibram USA*,
79 F. Supp. 3d 324 (D. Mass. 2015)...................................................................16

*Boos v. Abbott Labs*,
925 F. Supp. 49 (D. Mass. 1996).......................................................................11

*Bradach v. Pharmavite, LLC*,
735 F. App'x 251 (9th Cir. 2018)........................................................................13

*Bushkin Assocs., Inc. v. Raytheon Co.*,
393 Mass. 622 (1985) ........................................................................................12

*Camey v. Force Factor, LLC*,
No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. May 16, 2016).................9

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..............................................................................................18

*Commonwealth v. Corinthian College*,
No. 2014-1093-E, at 2, 5 (Mass. Super. Aug. 1, 2016) .....................................19

*Cristostomo v. New Balance Athletics, Inc.*,
647 F. Supp. 3d 1 (D. Mass. 2022).............................................................5, 6, 11

*F.T.C. v. Figgie Int'l, Inc.*,
994 F.2d 595 (9th Cir. 1993) .............................................................................19

*F.T.C. v. Kuykendall*,
371 F.3d 745 (10th Cir. 2004) ...........................................................................19

*F.T.C. v. Trudeau*,
    579 F.3d 754 (7th Cir. 2009) ..............................................................19

*Faherty v. CVS Pharmacy, Inc.*,
    No. No. 09–CV–12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011)..................9

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*,
    2013 WL 5466628 (D. Mass. Sept. 30, 2013)......................................13, 15, 16

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*,
    2019 WL 4739263 (Mass. Super. Aug. 29, 2019)............................................16

*Feingold v. John Hancock Life Ins. Co. (USA)*,
    No. CIV.A. 13-10185-JLT, 2013 WL 4495126 (D. Mass. Aug. 19,
    2013), *aff'd*, 753 F.3d 55 (1st Cir. 2014) ............................................9

*Foisie v. Worcester Polytechnic Inst.*,
    967 F.3d 27 (1st Cir. 2020)..................................................................12

*Geis v. Nestle Waters N. Am., Inc.*,
    321 F. Supp. 3d 230 (D. Mass. 2018).........................................................11, 12

*Goebel v. Schmid Bros.*,
    871 F. Supp. 68 (D. Mass. 1994)................................................................13, 14

*In re Hardesty*,
    2018 WL 7046869 (6th Cir. Nov. 13, 2018) ..........................................7

*Herbert v. Vantage Travel Serv., Inc.*,
    334 F.R.D. 362 (D. Mass. 2019).......................................................16

*Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*,
    445 Mass. 790 (2006) ...........................................................................18

*Himler v. Comprehensive Care Corp.*,
    1993 WL 132941 (4th Cir. Apr. 28, 1993).........................................7

*Holbrook v. Bos. Sci. Corp.*,
    487 F. Supp. 3d 100 (D. Mass. 2020)..............................................15

*Levy v. Gutierrez*,
    448 F. Supp. 3d 46 (D.N.H. 2019).....................................................18

*In re M3 Power Razor*,
  270 F.R.D. 45 (D. Mass. 2010)...........................................................................16

*Makaeff v. Trump Univ.*,
  LLC, 309 F.R.D. 631 (S.D. Cal. 2015).........................................................18, 19

*McGregor v. Chierico*,
  206 F.3d 1378 (11th Cir. 2000) .........................................................................19

*In Re: Moveit Customer Data Security Breach Litigation*,
  No. 1:23-md-3083 ................................................................................................13

*Nightingale v. Nat'l Grid USA Serv. Co., Inc*,
  107 F.4th 1 (1st Cir. 2024)....................................................................................2

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005)............................................................................9

*Ramirez v. Geo Grp.*,
  2019 WL 6782920 (S.D. Cal. Dec. 11, 2019) .....................................................8

*Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*,
  87 Mass. App. Ct. 296 (2015)............................................................................12

*Romulus v. CVS Pharmacy, Inc.*,
  No. 17-8024, 2017 WL 7310384 (1st Cir. Dec. 21, 2017)...................................3

*Share v. Air Properties G., Inc.*,
  538 F.2d 279 (9th Cir. 1976) ...............................................................................8

*Southern States Police Benev. Ass'n, Inc. v. First Choice Armor &
  Equip., Inc.*,
  241 F.R.D. 85 (D. Mass. 2007)............................................................................9

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
  262 F.3d 134 (2d Cir. 2001) .................................................................................6

*Utopia Entm't v. Claiborne Parish*,
  2006 WL 680648 (W.D. La. Mar. 14, 2006).......................................................7

*Vara v. DeVos*,
  2020 WL 3489679 (D. Mass. June 25, 2020).....................................................19

*Viscito v. National Plan. Corp.*,
 34 F.3d 78 (1st Cir. 2022)........................................................................10

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
 208 F.3d 288 (1st Cir. 2000).............................................2, 3, 6, 7, 8

*Woode v. R3 Education, Inc. d/b/a Saba Univ. Sch. of Medicine*,
 No. 2381CV00982 (Mass. Super., filed Apr. 7, 2023)....................8, 20

**STATUTES AND RULES**

Fed. R. App. P. 5 .........................................................................................1

Fed. R. App. P. 32 .......................................................................................1

Fed. R. Civ. P. 23 ...................................................3, 6, 11, 17, 18, 19

**TREATISES AND COMMENTARY**

Milner, *From Rancid to Reasonable: Unfair Methods of Competition
 Under State Little FTC Acts*, 73 Am. U. L. Rev. 857, 857 (2024)....................12

Restatement (Second) of Conflict of Laws.......................9, 10, 12, 13, 14

**OTHER AUTHORITIES**

Jordan Elias, *The Multistate Problem in Consumer Class Actions and
 Three Solutions* ...............................................................................13

Defendants-Respondents Saba University School of Medicine and R3 Education, Inc. (collectively, "Saba") oppose the Petition for Review filed by Plaintiff-Petitioner Natalia Ortiz ("Petition").

## **BACKGROUND**

Petitioner filed her Motion for Class Certification (the "Motion") in this matter without any discussion of what law should apply to the claims of the proposed class members, who hail from dozens of jurisdictions throughout the United States and the world. The Motion simply assumed that Massachusetts law would apply, but made no attempt to explain why it should. Even after Saba pointed out the choice-of-law issues in its opposition brief, Petitioner made no attempt to identify the relevant jurisdictions, analyze their laws, or demonstrate that the variations in state law did not overcome the factual and legal issues shared by the putative class members.

The district court held oral argument on Petitioner's Motion on September 17, 2024. At the time, the court indicated it was inclined to certify a class. After some consideration, however, the court reconsidered its earlier inclination and issued its Memorandum and Order on Nov. 26, 2024. *See* Memorandum and Order, attached as Exhibit 1 (the "Order"). The Order decertified the proposed class, finding that Petitioner "has not conducted any analysis of state law variation, and therefore fails to meet her burden of demonstrating that the variations in state

laws do not overcome common legal issues." Ex. 1 at 22. The Order also observed that Plaintiff's full refund model was inapposite to her classwide claims because it was not the most accurate measure of damages and would overcompensate the class if the model did not account for the residual value of the education. *Id.* at 23-24.

Petitioner does not argue on appeal that the district court erred in finding that she engaged in no analysis of state law variations. Instead, she asks this Court to find that it was an error of law to even require the analysis in which she refused to engage. This Court need not accept Petitioner's argument. Petitioner similarly fails to show error in the district court's rejection of her full refund model of damages. The Petition should be denied.

## REASONS FOR DENYING THE PETITION

### I.    Standard of Review

Class certification rulings are reviewed for abuse of discretion. *Nightingale v. Nat'l Grid USA Serv. Co., Inc*, 107 F.4th 1, 11 (1st Cir. 2024). A court abuses its discretion when it "relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors," or when it "adopts an incorrect legal rule." *Id.* (internal quotations omitted); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000). Legal questions are reviewed *de novo*, and factual determinations are reviewed for clear

error. *See Aronstein v. Mass. Mut. Life Ins. Co.*, 15 F.4th 527, 534-35 (1st Cir. 2021).

*Mowbray* described three categories of cases that warrant discretionary review: (1) "when a denial of class status effectively ends the case"; (2) "when the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle"; or (3) when "an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." *Mowbray,* 208 F.3d at 293–94.

A petitioner proceeding under the first category also must "demonstrate that the district court's ruling on class certification is questionable—and must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Id.* (internal quotations omitted). This Court has since noted that a petition must identify some portion of the certification "analysis that is sufficiently 'questionable' to warrant immediate review by this [C]ourt." *Romulus v. CVS Pharmacy, Inc.*, No. 17-8024, 2017 WL 7310384, at *1 (1st Cir. Dec. 21, 2017).

## II.    Petitioner Fails to Demonstrate Any "Important and Unsettled Issue" For this Court to Resolve.

Petitioner's first argument is that review is warranted "to clarify an 'unsettled legal issue…'" Pet. at 9. There is no unsettled legal issue. The Order

does not hold, as Petitioner claims, that "Massachusetts-based entities" can be liable under Chapter 93A only "if the injured consumers were harmed or reside within Massachusetts." *See id*. That question was never even raised below.[1] What the Order held was that Petitioner "has not conducted any analysis of state law variation, and therefore fails to meet her burden of demonstrating that the variations in state laws do not overcome common legal issues." *See* Ex. 1 at 22. Therefore, she "failed to meet her burden of demonstrating that Massachusetts law applies." *Id*. at 23.

The District Court's holding is correct; Petitioner attempted to certify a class of former students from 40 states and 13 foreign nations. Ex. 1 at 19 n.4. Petitioner

---

[1] In the introduction to her argument, Petitioner frames the "important question" she asks the court to address as "whether a chapter 93A class action is an appropriate way to hold Massachusetts defendants accountable for unfair and deceptive conduct emanating from Massachusetts, when that conduct harms out-of-state consumers." Pet. at 8. But Petitioner failed to demonstrate that any of the conduct of which she complains was "emanating from Massachusetts." Her Memorandum in Support of Motion for Class Certification contains no reference to where anything happened nor any evidence of it; she made no attempt to demonstrate a connection to Massachusetts until her Reply. The first sentences of her two introductions are informative:

> Saba is a for-profit medical school located on Saba Island in the Dutch Caribbean that recruits students from the United States and around the world. (Dkt. 51, at 1)

> From their corporate headquarters in Massachusetts, Defendants devised and implemented a scheme to mislead …. (Dkt. 82, at 1).

Despite her sudden interest in the place where Defendants acted, Plaintiff's Reply referenced no evidence that any activities of which she complains occurred in Massachusetts. Each of the Petition, the Reply, and the (pending) Opposition to Motion for Summary Judgment below claim that Defendants took all the following actions in this case "[f]rom their headquarters in Massachusetts." Those actions were that the Defendants "crafted" and "posted" the "misleading" USMLE representations, "drafted training materials," and "misled and lied to" prospective students. Pet. at 17-18. *See* Dkt. 82, at 5-6; Dkt. 139, at 9-10. But nothing she cites demonstrates that any actions in this case occurred in Massachusetts.

did not identify those jurisdictions; instead she asserted that Massachusetts law applies simply because one of the defendants is located there. Petitioner introduced no evidence to show that any of the actions taken by either defendant occurred in Massachusetts, that any purported class member had contacts with Massachusetts, or even where any of the class members lived.

Petitioner suggests that failure to review the Order would be a "finding that Chapter 93A does not protect the citizens of other jurisdictions from misconduct by Massachusetts entities" and this would "undercut the purpose of Chapter 93A." Pet. at 9. It would not. The district court did not make any finding that Chapter 93A cannot apply to citizens of other states, and denial of the Petition would not be such a finding by this Court.

Petitioner claims that Chapter 93A does not require a plaintiff to reside in Massachusetts or for the defendant's activity to have occurred in Massachusetts for Chapter 93A to apply. Pet. at 10. She cites one case to support this notion. Although *Cristostomo v. New Balance Athletics, Inc*., 647 F. Supp. 3d 1, 14 (D. Mass. 2022) does state that Ch. 93A "does not require a plaintiff to reside in Massachusetts," that court made that statement in denying a motion to strike class allegations where the plaintiff raised both a federal and a state claim. It did not address choice-of-law principles in any manner and did not certify a class. No class was ever certified in the case, nor was a certification motion even filed. The case

was dismissed on an individual basis. *See Cristostomo*, No. 1:21cv12095, Dkt. 77 (D. Mass. May 10, 2024). Petitioner's references to Massachusetts' policy in favor of class actions is meaningless. This is a federal court; the relevant procedural rules governing class actions are embodied in Rule 23 and the cases interpreting it.

There simply is no "unsettled legal issue" in the Order. The Order made a straightforward application of Massachusetts' choice-of-law rules and followed an "unbroken string of opinions" in the district all "declining to extend Chapter 93A to multistate classes." *See* Section III(B), *infra*. This is the same analysis that the same district court made in *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000). In *Mowbray*, the district court assessed the variations in state law and certified a class despite them. *Id.* at 291-292. This Court approved the district court's choice-of-law analysis in *Mowbray*, acknowledged the lack of uniformity [in state law], and explained why the limitations problems nonetheless appeared to be inconsequential." 208 F.3d at 296. Petitioner here gave the court no basis on which to engage in any choice-of-law analysis; she never identified any of the jurisdictions. Petitioner's argument that there is an "unsettled" issue of law fails.

## III. The District Court's Decision is Neither the "Death Knell" of Petitioner's claim nor a "Questionable" Decision.

Courts that apply a "death knell" analysis to Rule 23(f) review do so because the claims are not economical to litigate individually. *See Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 138 (2d Cir. 2001) (explaining that

the "death knell" doctrine arises when a "class certification order effectively terminates the litigation…because the denial of certification makes the pursuit of individual claims prohibitively expensive"). Although this Circuit does not follow that doctrine, the related test from *Mowbray* is similar. One scenario where review is warranted under 23(f) is "when a denial of class status effectively ends [a] case" and the plaintiff can "demonstrate that the district court's ruling on class certification is questionable." *Mowbray*, 208 F.3d at 293.

### A. The Bell to Sound the "Death Knell" Has Not Rung.

Petitioner fails the first part of the test, for two reasons. First, denial of class certification did not "effectively end" her case. Despite denial of certification, Petitioner later filed a 20-page Opposition to Motion for Summary Judgment and a 40-page Counterstatement of Material Facts. Dkt. 139, 140. She obviously does not consider this case over. When the litigation is still active, the courts applying the "death knell" test find it inapplicable. *See In re Hardesty*, 2018 WL 7046869, *1 (6th Cir. Nov. 13, 2018) ("denial of class certification is not the death knell of the litigation"); *Himler v. Comprehensive Care Corp.*, 1993 WL 132941, *2 (4th Cir. Apr. 28, 1993) (finding that certification denial had no effect on underlying individual claims); *Utopia Entm't v. Claiborne Parish*, 2006 WL 680648, *1 (W.D. La. Mar. 14, 2006) ("exception does not apply" when "litigation will proceed").

Moreover, Petitioner's claim is not so small that it "is not of a sufficient magnitude to warrant the costs of stand-alone litigation." *Mowbray*, 208 F.3d at 293.[2] Petitioner does not state the amount of her claim in the petition, for obvious reasons. Petitioner claims—for herself alone—damages of $155,000.00 in payments and loans, "double or treble" that amount in statutory damages, plus attorneys' fees and costs. Dkt. 1, ¶¶ 85, 126. The continued economic viability of Petitioner's claim as an individual case is demonstrated by her friend and classmate, who is pursuing the same claim individually against Saba, and filed his individual suit before Petitioner later filed her class suit. *Woode v. R3 Education, Inc. d/b/a Saba Univ. Sch. of Medicine*, No. 2381CV00982 (Mass. Super., filed Apr. 7, 2023).

Petitioner also claims that the district court's finding that she is not entitled to a "full refund" of her "tuition, costs and fees" further rings the bell causing a "death knell." Pet. at 12. It does not. *See Share v. Air Properties G., Inc.*, 538 F.2d 279, 283 (9th Cir. 1976) (refusing to apply "death knell" even though claim was discounted to 40% of a $44,752.50 share, because "the claim is still for $17,901.

---

[2] In the courts that employ it, the "death knell" theory is reserved for truly *de minimis* damages claims. *Compare Algarin v. Maybelline, LLC*, 2014 WL 690410, *2 (S.D. Cal. Feb. 21, 2024) ("In the instant case, it is likely that denial of class certification will sound the 'death knell' of the litigation, as Plaintiffs have only alleged de minimis individual damages [of $10 to $22 dollars]"), with *Ramirez v. Geo Grp.*, 2019 WL 6782920, *3 (S.D. Cal. Dec. 11, 2019) ("Denial of class certification would not constitute the 'death knell' of this action. This is not a situation in which the individual plaintiffs have suffered de minimis harm. As GEO acknowledged when it removed this case from state court, Ramirez's individual claims alone exceed $145,000.").

This falls in the clearly viable range"). The fact that Petitioner cannot get everything she wants is not the "death knell" of her case. Petitioner has pointed to nothing other than her own conclusion to support the idea that her diminished claim is no longer viable, and she is continuing to litigate it.

## B.    The District Court's Ruling is Not "Questionable"

Even if Petitioner had demonstrated that denial of certification "effectively ends" her case, she fails to demonstrate that the district court's ruling is "questionable." The district court followed an "unbroken string of opinions" in the district all "declining to extend Chapter 93A to multistate classes." Ex. 1 at 20, citing *Camey v. Force Factor, LLC*, No. 14-14717-RWZ, 2016 WL 10998440, at *2–3 (D. Mass. May 16, 2016); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005); *Faherty v. CVS Pharmacy, Inc.*, No. No. 09–CV–12102, 2011 WL 810178, at *5 (D. Mass. Mar. 9, 2011); *Southern States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007); *Feingold v. John Hancock Life Ins. Co. (USA),* No. CIV.A. 13-10185-JLT, 2013 WL 4495126, at *3 (D. Mass. Aug. 19, 2013), *aff'd*, 753 F.3d 55 (1st Cir. 2014).[3] All of these cases applied Massachusetts choice-of-law principles to the facts of the particular case, guided by the RESTATEMENT (SECOND) CONFLICT

---

[3] Petitioner makes no effort to confront these authorities.

OF LAWS, and found under those principles that the law of the home states of the class members applied. The district court did the same here.

Petitioner calls the district court's ruling "questionable," but fails to even cite the six-factor test from RESTATEMENT § 148 that the district court applied, nor the "overarching principles" of RESTATEMENT § 6 that the district court analyzed as a guiding factor. Courts are "explicitly guided" by the RESTATEMENT in analyzing Massachusetts choice-of-law, as the district court noted. *See* Ex. 1 at 16, citing *Viscito v. National Plan. Corp.*, 34 F.3d 78, 83 (1st Cir. 2022). The district court, appropriately, applied Section 148 to the facts of this case and determined that "the guiding factors of Section 148(2) point to the application of the laws of the plaintiffs' home states," Ex. 1, at 19-20,[4] as did the many cases it followed.

Rather than address the Order head on, Petitioner instead engages in a diversionary ten-page diatribe, misrepresenting the authorities she cites and the facts of this case, to impugn the legal analysis of the district court. But unpacking her authorities lays bare the infirmities in her rambling argument. Petitioner opens

---

[4] In doing so, the district court even credited Massachusetts as being the place where the "alleged misrepresentations were created and disseminated from," when it is not. Ex. 1 at 19. This erroneous conclusion credited Petitioner's characterization of Massachusetts as the place where these actions took place despite no evidence to support that conclusion. Because the court nonetheless correctly determined that Massachusetts law did not apply to the class members' claims, it was not a meaningful error, and because Petitioner did not the raise the issue of where Defendants' actions occurred in class certification, there was no reason to brief it. But Petitioner has no evidence to support the idea that any actions took place in Massachusetts, and the evidence demonstrates that none did. *See* Mem. In Support of Mot. for Summary J., Dkt. 121, at 2-4 (discussing lack of evidence of actions taken in Massachusetts).

with a bait and switch. She claims that "Massachusetts' choice-of-law rules favor the classwide application of Chapter 93A." Pet. at 13. They do not, nor can they. Classwide application of any law is normally a matter of civil procedure—for example, Rule 23. Massachusetts may favor classwide application of Chapter 93A, but that is not a matter of its choice-of-law rules. Massachusetts choice-of-law rules do not concern themselves with whether a case is an individual or class claim, and Petitioner points to no authority which suggests they do.

Petitioner's citation to caselaw is disingenuous. To start, she claims that "Massachusetts courts routinely permit out-of-state consumers to assert Chapter 93A claims…against in-state defendants." Pet. at 13. The cases she cites do not support that claim. The first, *Boos v. Abbott Labs*, 925 F. Supp. 49 (D. Mass. 1996), in no way supports Petitioner's argument. That case involved a class limited to Massachusetts residents. *Boos*, 925 F. Supp. at 50. Moreover, although Petitioner claims that the case "removed any geographic restriction on consumer actions," (Pet. at 13) it did not. As that court stated, "the legislature deleted the provision which limited the scope of Section 2 to acts occurring 'primarily and substantially' within Massachusetts." *Boos*, 925 F. Supp. at 55. The case had nothing to do with whether Chapter 93A could apply to residents of other states.[5]

---

[5] As discussed above, *Cristostomo*, 647 F. Supp. 3d at 14, did not address choice-of-law in any manner. Similarly, *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 241 (D. Mass. 2018) did not address choice-of-law; the issue in that case was standing, and the court noted that the

Petitioner takes issue with the district court's choice-of-law analysis, claiming its reliance on the Restatement was "legally incorrect" and "contravenes Massachusetts' 'functional approach' to choice of law." Pet. at 14. But the cases Petitioner cites to support the idea of rejecting a "categorical approach" support the district court's Order, and also look to the Restatement for guidance.[6]

The Petition relies on two law review articles as support, rather than the extensive body of law that led to development of the RESTATEMENT or the cases applying it. Neither helps the argument. The first, Milner, *From Rancid to Reasonable: Unfair Methods of Competition Under State Little FTC Acts*, 73 Am. U. L. Rev. 857, 857 (2024) does not support Petitioner's statement that "Section 148's guidance is focused on common law fraud and misrepresentation claims

---

parties cited "no cases that squarely deal with the standing issue under chapter 93A." *Geis*, 321 F. Supp. 3d at 241. Here, the district court cited cases that "squarely deal" with choice-of-law, and whether a plaintiff has standing to bring a claim is a separate question from whether the law applies to that claim.

[6] *Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.*, 87 Mass. App. Ct. 296, 302 (2015), states that "We look to the Restatement (Second) of Conflict of Laws for guidance." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27 (1st Cir. 2020), similarly, stated that Massachusetts looks "to the Restatement (Second) of Conflict of Laws as [o]ne obvious source of guidance," and applied Section 145's "most significant relationship" test to the conflict. *Foisie*, 967 F. 3d at 41. That is no different than this Court's application of Section 6's identical test and does nothing to detract from applying Section 148's six-part test to misrepresentations, as this Court and every court before it has done. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 637 (1985), does nothing to suggest that the Restatement guidance is inapplicable; that case involved application of the statute of frauds and the question of whether the transaction occurred "primarily and substantially within the commonwealth" for purposes of former Section 3(1)(b) of Chapter 93A, which no longer exists.

rather than "little FTC Acts" like Chapter 93A." Pet. at 16. Nowhere does that article reference either Section 148 or common law fraud.

Petitioner also claims that Chapter 93A claims "are 'ideal for class certification'" because of their focus on the defendant's conduct," *id.*, citing as support Jordan Elias, *The Multistate Problem in Consumer Class Actions and Three Solutions*, 17 Harv. L. & Pol'y Rev. 301, 317-18 (2022). Mr. Elias' support for making that statement is a single unreported case from the Ninth Circuit, *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th Cir. 2018), that addressed only California law. *Bradach*, 735 F. App'x at 255. Neither Mr. Elias's article nor the Petition attempt to demonstrate any similarity between California and Massachusetts law. Petitioner also fails to mention that Mr. Elias is not an academic, but a plaintiff's class action lawyer who has been cocounsel with her attorneys at Berman Tabacco in eight different federal class actions. Four of those, including an MDL in Massachusetts, *In Re: Moveit Customer Data Security Breach Litigation*, No. 1:23-md-3083, are currently pending. Mr. Elias was also plaintiff's counsel in thirteen cases cited in his article, which was obviously written with an eye towards his own interests.

Petitioner then suggests that courts have rejected "mechanically" applying RESTATEMENT § 148, citing *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2013 WL 5466628, at *1 (D. Mass. Sept. 30, 2013) and *Goebel v. Schmid Bros.*, 871 F.

Supp. 68 (D. Mass. 1994). *Goebel* did not, as Petitioner claims, "find[] Section 148 deficient under Supreme Judicial Court precedent." *See* Pet. at 17. In that case, the first factor under Section 148—"where the plaintiff acted in reliance on defendant's representations" pointed to three different places—"Massachusetts, New York, and Germany." *Goebel*, 871 F. Supp at 76. Because the test did not give a clear answer under the facts of that case, the court turned to the more general test of Section 6. The district court here similarly "analyze[d] these [Section 148] factors in light of Restatement § 6," Ex. 1, at 20-21, before determining that "the laws of the home states of the consumers govern," in decertifying the class. *Id.* at 20.

Petitioner then, as noted above, attempts to cite the record to support the idea that the Defendants took all the actions in this case "from their headquarters in Massachusetts," Pet. at 17, but as also noted, the record fails to demonstrate that any actions in this case took place in Massachusetts. Even though the district court took Petitioner's false assertions regarding Massachusetts contacts at face value, it still held, in accordance with the RESTATEMENT tests, that the state with the "most significant relationship" with each class member is that class member's home state, not Massachusetts. Ex. 1, at 16, 20. As the court noted, although the places where the defendant made the representations is "approximately as important" as where the plaintiff received them, the place where the plaintiff relied on the representations is "more important." Ex. 1 at 19 (citing RESTATEMENT §148, cmt.

g). Because the class members relied on the representations in their home states/countries, and because universal application of Massachusetts law could undermine local interests of the other jurisdictions, the district court held, under Restatement §§ 6 and 148, that the "laws of the home states of the consumers govern." Ex. 1 at 20-21.

Petitioner misleadingly cites *Holbrook v. Bos. Sci. Corp*., 487 F. Supp. 3d 100 (D. Mass. 2020) to support the statement that Massachusetts "has a greater interest" in applying Chapter 93A to Ms. Ortiz's claim. Pet. at 18-19. *Holbrook* did not apply Chapter 93A or Massachusetts substantive law at all. It applied Massachusetts' choice-of-law analysis to the *statute of limitations*, and noted that the "focus of this choice-of-law analysis is on the timeliness of the action, rather than the underlying claim." *Holbrook*, 487 F. Supp. 3d at 105–06. On limitations, it followed the Restatement and applied Massachusetts law, finding that no other state had a "dominant interest in having its own limitations statute enforced." *Id*. at 105. The court still applied the substantive law of Louisiana to the underlying claim. *Id*. at 107, 111. Petitioner also relies upon *Fed. Home Loan Bank of Bos.*, 2013 WL 5466628, at \*1, to support the notion that "the law of the state where the corporate defendant conducted its business should apply." Pet. at 19. That case dealt with a highly specific quirk in choice-of-law. It found that "New York has a strong interest in overseeing the conduct of financial institutions operating within

15

its borders." *Fed. Home Loan Bank of Bos.*, 2013 WL 5466628, *2. It also found that the ratings at issue were not communicated to the Massachusetts plaintiffs directly. Even so, that court's analysis was rejected and overturned when the case was remanded to Massachusetts state court. *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.*, 2019 WL 4739263, at *7 (Mass. Super. Aug. 29, 2019). The state-court applied Massachusetts law to the statements received in Massachusetts, "where the impact of the alleged misrepresentations will be experienced," and followed the Restatement § 148 factors already discussed.

Petitioner then claims that "multiple courts have recognized the propriety of nationwide class actions under Chapter 93A." Pet. at 20. The cases do not support her argument. Petitioner cites to *Herbert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 374 (D. Mass. 2019), as authority, Pet. at 20, but she did not cite it below. Had she done so, Saba would have correctly noted *Hebert* never discussed choice-of-law, suggesting it was never raised. Petitioner also cites *Bezdek v. Vibram USA*, 79 F. Supp. 3d 324, 339 (D. Mass. 2015), and *In re M3 Power Razor*, 270 F.R.D. 45, 56 (D. Mass. 2010), as authority for certifying nationwide classes under Massachusetts law. Pet. at 20. Both were settlements. And even though the district court gave credence to *Bezdek* and *In re M3* despite being settlements, it noted that both cases "carefully evaluated the applicable consumer protection laws." Ex. 1, at

22. The district court here could not perform such an evaluation, because Petitioner failed to identify any of the relevant laws.

Petitioner closes this argument by suggesting that this court should defer to Massachusetts' supposed "significant interest" favoring consumer class actions, and its "fundamental public policy interests" in holding defendants "accountable for [their] conduct, which took place in Massachusetts." Pet. at 21 (alteration in original). But as discussed above, any interest Massachusetts has in favoring class actions is meaningless in this court, and its "public policy interests" do not favor application of its own law to out-of-state plaintiffs, as the district court noted. Moreover, Petitioner presented no evidence that any conduct took place in Massachusetts, and she presented no indication of what other jurisdictions' laws were implicated. By these failures, Petitioner did not give the district court the tools to engage in the "rigorous analysis" required by Rule 23.

## IV. The District Court Correctly Determined that Plaintiff's Damages Model is Inapposite to Her Classwide Claims.

The district court's Order found that Plaintiff's full refund model would not be the most accurate measure of damages, and damages models seeking the full amount paid without accounting for residual value would overcompensate the class. Ex. 1 at 23-24. The Court therefore found that the full refund model was inapposite to Plaintiff's classwide claims. Petitioner's argument against the court's opinion fails to demonstrate any error.

Rule 23(b)'s predominance element "requires, in part, that plaintiffs establish at the class certification stage" that "damages are capable of measurement on a classwide basis" based on a methodology that is "just and reasonable" rather than "speculative." *Levy v. Gutierrez*, 448 F. Supp. 3d 46, 64 (D.N.H. 2019) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-36 (2013)). Petitioner presented no cognizable damages model; her "model" was that the education was worthless, entitling all class members to a full refund of their tuition. How the omission of a nonexistent "attrition" metric from advertisements renders a medical education worthless is curious, and the district court rejected the theory, correctly noting that the purpose of Chapter 93A is not to punish or to provide a windfall. Ex. 1, at 23-24, citing *Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*, 445 Mass. 790, 802 (2006). Finding that a damages model that ignored both "any benefit that students may have derived from the education they received" and "potential affirmative defenses" was "inapposite to Ortiz' classwide claims," the court refused to credit it. Ex. 1 at 24.

None of the authorities Petitioner cites to support her damages theory support applying it on a class-wide basis. The sole class action case she cites, *Makaeff v. Trump Univ.*, LLC, 309 F.R.D. 631, 639 (S.D. Cal. 2015), dealt with a fraudulent, unaccredited "university" that "did not include any of the core elements (an accredited university, instructors hand-picked by Trump, one year of expert

support and mentoring) [the students] purchased." *Makaeff*, 309 F.R.D. at 639. None of these are at issue here. Even in that case, the court decertified the class as to damages in the same opinion, finding that it was an inappropriate to measure damages without taking into account the defenses to those damages. *Id.* at 644.

All other cases Petitioner cites are not class actions. *Commonwealth v. Corinthian College*, an unreported case from Massachusetts, No. 2014-1093-E, at 2, 5 (Mass. Super. Aug. 1, 2016), [7] *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993), *F.T.C. v. Trudeau*, 579 F.3d 754, 772 (7th Cir. 2009), *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000), and *F.T.C. v. Kuykendall*, 371 F.3d 745, 749 (10th Cir. 2004) were all government enforcement actions seeking restitution and had nothing to do with proof of damages in a certified class under Rule 23(b)(3).

Petitioner cannot demonstrate an error in refusing to apply that damages model to a class action when none of the cases it cites were class actions.[8] The argument does not support 23(f) review.

## **CONCLUSION**

Petitioner fails to demonstrate any basis for this Court's discretionary review

---

[7] *Vara v. DeVos*, 2020 WL 3489679, *1 (D. Mass. June 25, 2020) was a putative class action against the Secretary of Education under federal law and has nothing to do with this case. Petitioner cites it only because it refers to *Corinthian Colleges*, which is not available online as it was an unopposed enforcement action against a defunct college.

[8] Petitioner's new argument that she was damaged because by deprivation of a "meaningful choice" by Saba's advertisements (Pet. at 25 n. 8) was not raised below; she cannot raise it here.

of the district court's certification decision. Accordingly, Saba respectfully requests that this Court deny the Petition, and for such other and further relief as this Court deems just and appropriate.

**Saba University School of Medicine and R3 Education, Inc.,**

*Daryl J. Lapp*
Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Respondents R3 Education, Inc. and Saba University School of Medicine*

Dated:  December 23, 2024

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing Petition complies with Fed. R. App. P. 5(c) and 32(a). This document is proportionally spaced and complies with the typeface of 14-point font and length limitations, containing 5,173 words—exempting the parts of the document exempted by Rule 32(f).

*Daryl J. Lapp*
Daryl J. Lapp

## CERTIFICATE OF FILING AND SERVICE

I certify that on December 23, 2024, a copy of this Petition was filed *via* this Court's CM/ECF system and that all parties required to be served have been served.

*Daryl J. Lapp*
Daryl J. Lapp